Steven M. Goldberg (State Bar No. 82174)
sgoldberg@mzclaw.com
MARKUN ZUSMAN FRENIERE COMPTON LLP
3 Hutton Centre Dr., 9th Floor
Santa Ana, CA 92707
Telephone:  (310) 454-5900
Facsimile:  (310) 454-5970

Evan R. Chesler (N.Y. Bar No. 1475722)
(*Pro hac vice* application forthcoming)
echesler@cravath.com
J. Wesley Earnhardt (N.Y. Bar No. 4331609)
(*Pro hac vice* application forthcoming)
wearnhardt@cravath.com
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

*Attorneys for Plaintiff*
STARZ ENTERTAINMENT, LLC

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STARZ ENTERTAINMENT, LLC, <br><br> Plaintiff, <br><br> v. <br><br> MGM DOMESTIC TELEVISION DISTRIBUTION LLC, <br><br> Defendant. | Civil Action No. 2:20-cv-4048 _____ <br><br> **COMPLAINT FOR:** <br><br> **1) DIRECT COPYRIGHT INFRINGEMENT;** <br> **2) CONTRIBUTORY COPYRIGHT INFRINGEMENT;** <br> **3) VICARIOUS COPYRIGHT INFRINGEMENT;** <br> **4) BREACH OF CONTRACT; AND** <br> **5) BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING** <br><br> **DEMAND FOR JURY TRIAL** |

STARZ ENTERTAINMENT, LLC'S
COMPLAINT

## COMPLAINT

1.      Plaintiff, Starz Entertainment, LLC ("STARZ"), by and through its undersigned attorneys, for its Complaint brought pursuant to 17 U.S.C. §§ 101 *et seq.* and California law, against Defendant MGM Domestic Television Distribution LLC ("MGM"), alleges as follows.  This Court has subject matter jurisdiction over Counts 1-1020 pursuant to 28 U.S.C. §§ 1331 and 1338(a) and supplemental jurisdiction over Counts 1021 and 1022 pursuant to 28 U.S.C. § 1367(a).  STARZ bases its allegations on personal knowledge as to its own acts and on information and belief as to all other matters.

## NATURE OF THE ACTION

2.      STARZ has an exclusive license to hundreds of Defendant MGM's movies and television episodes ("Pictures") through two agreements, the 2013 and 2015 Library Agreements (as amended, the "Library Agreements"). MGM breached those agreements on a massive scale, ***admitting*** to licensing ***hundreds*** of the STARZ-exclusive works to STARZ's competitors during the very time periods in which STARZ was entitled to exclusivity.  Due to MGM's breach, distributors of STARZ's content believed that STARZ's movies were widely available from other services, when, in fact, they should have been available only through STARZ.  That lack of exclusivity damaged STARZ vis-à-vis distributors, who placed less value on STARZ's suite of offerings due to the belief that their customers could find STARZ's movies elsewhere.  The lack of exclusivity also damaged STARZ vis-à-vis consumers, who were motivated to turn to non-STARZ services (including MGM services) to watch movies that belonged exclusively on STARZ.  In short, not only has MGM admitted to breaching the exclusive rights it granted to STARZ, it is plain that MGM directly profited from that breach in numerous ways.

3.      For example, the manner in which MGM licensed the STARZ exclusive works to one of STARZ's distributors caused consumers searching for a

Picture on that distributor's service to be directed to a version of that movie made available directly from MGM to subscribers of that platform at no additional cost. Pursuant to the Library Agreements, the consumer should have been directed only to STARZ—because only STARZ should have had the right to exhibit the movie. In that way, MGM's breach both robbed STARZ of an opportunity to gain subscribers and allowed MGM to further benefit by directing those subscribers (and the associated fees) to itself.

4.     STARZ brings this action against MGM for direct copyright infringement, contributory copyright infringement, vicarious copyright infringement, breach of contract and breach of the covenant of good faith and fair dealing.  STARZ seeks monetary damages—in the form of, *inter alia*, its own lost profits and all of MGM's profits attributable to the infringement—and injunctive relief, as specified below.

5.     STARZ is a leading provider of premium subscription video programming in the United States for distribution via facilities-based multichannel video programming distributors, including cable operators, satellite television providers and telecommunications companies (collectively, "MVPDs"), and via the Internet, including STARZ's direct-to-consumer distribution.  STARZ built its business by offering viewers content they could find nowhere else, including recently released "first-run" movies and other library movies.  It primarily acquires this content by entering into exclusive license agreements with movie studios such as MGM.

6.     For years, STARZ and MGM have had agreements in place—including the Library Agreements—through which STARZ acquired the exclusive right and license to exhibit hundreds of popular movies, including *Bill & Ted's Excellent Adventure*; *Bull Durham*; *Dances With Wolves*; *Rain Man*; *Hannibal*; *The Birdcage*; *Valkyrie*; *Be Cool*; *Moonstruck*; *Stargate*; *The Good, The Bad, and The Ugly*; *The Manchurian Candidate*; *Thelma & Louise*; *The Thomas Crown Affair*;

*Mad Max*; *The Terminator*; and James Bond films such as *Never Say Never Again*, *Die Another Day*, *The World is Not Enough* and *Tomorrow Never Dies*, among many others.

7. Pursuant to the terms of the Library Agreements, MGM both granted STARZ the exclusive right to exhibit the copyrighted Pictures during the time periods specified therein, and also represented and warranted that it would not take or authorize any action that would materially impair any of the rights for which STARZ had bargained and paid.[1]

8. MGM breached both promises. Unbeknownst to STARZ, by at least 2015 (and potentially earlier), MGM began granting licenses to the STARZ-exclusive Pictures to other competing content services during the very time periods in which STARZ had the exclusive rights. By its own admission, MGM licensed ***over 32%*** of the Pictures in the Library Agreements to competing services, in violation of STARZ's exclusive rights to those movies. Although MGM has admitted to the breach generally, it is not yet confirmed how many platforms licensed Pictures from MGM. STARZ's own investigation has revealed that over 150 titles have been breached, with some breaches occurring on MGM's own network, Epix, which competes with STARZ.

9. MGM's breach of the Library Agreements and infringement of STARZ's exclusive copyrights caused STARZ tremendous damage in the form of lost profits, diminished reputation and loss of goodwill. STARZ's offerings, which STARZ markets as exclusive, were de-valued both by customers and distributors because STARZ's exclusive copyrights were being infringed.

10. In August 2019, STARZ first became suspicious that MGM might have violated the terms of the Library Agreements after a STARZ employee

---

[1] Exclusive licenses transfer copyright ownership for the purposes of the Copyright Act. For that reason, STARZ uses the terms "licenses", "copyrights" and "rights" interchangeably throughout its Complaint.

discovered that *Bill & Ted's Excellent Adventure*—a film that should have been exclusive to STARZ—was available for streaming on Amazon.  After notifying MGM of this discovery, MGM admitted this breach.  STARZ, however, discovered that *Bill & Ted's Excellent Adventure* was far from the only film that MGM appeared to have improperly licensed.

11.     On November 1, 2019, after repeated communications from STARZ identifying additional Pictures in breach, MGM—claiming that it had, itself, just become aware of its rampant breach—sent STARZ a list of 136 movies and 108 television series episodes that it identified as in breach of the Library Agreements.  STARZ's own investigation has uncovered nearly 100 additional Pictures that MGM apparently has licensed to others, including MGM's own network Epix, in breach of the Library Agreements.  The Pictures with respect to which STARZ believes its copyright and/or contractual rights have been violated are attached as Exhibit A.

12.     MGM's failure to honor its grant of exclusivity to STARZ is a direct, willful and reckless infringement of STARZ's copyrights; MGM also willfully and recklessly induced others to infringe STARZ's copyrights when MGM purported to license to those companies the same Pictures to which STARZ already had an exclusive license.

13.     STARZ brings this action to enforce its rights under the Copyright Act and to seek redress for MGM's breaches of the Library Agreements.  STARZ seeks damages under the Copyright Act 17 U.S.C. §§ 502, 504 and 505, including actual losses and infringer's profits; injunctive relief; compensatory and consequential damages; and attorney's fees.

## THE PARTIES

14.     Plaintiff Starz Entertainment, LLC is a limited liability company organized and existing under the laws of the State of Colorado with its principal place of business in Santa Monica, California.

15.     Defendant MGM Domestic Television Distribution LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Beverly Hills, California.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over Counts 1-1020 pursuant to 28 U.S.C. §§ 1331 and 1338(a).

17.     This Court has supplemental jurisdiction over Counts 1021 and 1022 pursuant to 28 U.S.C. § 1367(a) because those claims are related to the federal claims such that they form part of the same case or controversy.

18.     This Court has personal jurisdiction over MGM because MGM is headquartered and does business in this district.  In addition, the Library Agreements, which were made and entered into in the State of California, provide that the "state and federal courts located in Los Angeles, California, shall have sole jurisdiction over any suit or other proceedings arising out of or based upon" those Agreements.

19.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and 1400(a).  MGM resides in this judicial district, has committed acts of infringement in this judicial district, has a regular and established place of business in California and in this district, and has purposely transacted business involving the at issue licenses in this district.

## STATEMENT OF FACTS

### STARZ's Business and the Importance of Exclusivity

20.     STARZ is a leading provider of premium subscription video programming with over 26.2 million subscribers as of February 2020.  It operates a suite of 17 STARZ, STARZEncore and MoviePlex premium cable television channels and corresponding on-demand services (collectively, the "STARZ Services"), and its extensive library includes popular original television series and exclusive movies and television series from major and independent studios.

21.     The STARZ Services are available to consumers through MVPDs (such as Comcast, Charter, AT&T/DIRECTV, DISH Network and Verizon) and Internet-based distributors (such as Amazon's Prime Video service, Hulu and STARZ's own direct-to-consumer Internet service).  STARZ Services are offered on a recurring monthly basis as part of a program package or on an a la carte basis.

22.     To ensure that STARZ continues to offer competitive and compelling content, STARZ has entered into licensing agreements with several movie studios, including MGM.  Pursuant to the terms of those agreements, STARZ receives the exclusive rights to exhibit specific content throughout the STARZ network.  Those exclusive rights ensure that, for a given Picture, STARZ will be the only service with that Picture for a specified period of time.

23.     Content exclusivity always has been important to STARZ.  It built its business on offering consumers movies that are available only through it. Those exclusive offerings include a large, rotating selection of newer movies that are no longer in theaters but also are not available for viewing on any other subscription, advertising-supported or free video service ("first-run" movies) and classic movies.

24.     Exclusive content attracts customers and is vital to STARZ's relationships with distributors.  STARZ has built a library of exclusive movies so that at any given time since at least 2015 STARZ has had more exclusive movies on its service than competing services.  By being able to consistently offer more movies on an exclusive basis than other networks, STARZ has built its reputation among consumers and among MVPDs as a valuable premium channel. Historically, STARZ has sought *only* exclusive licenses.  Thus, for example, while there have been a few exceptions, more than 98% of the broadcast movies on the STARZ flagship channel in 2019 are licensed on an exclusive basis.

25. Exclusive licenses are extremely valuable to STARZ, not only because they allow the licensed Pictures to be shown on the STARZ Services, but also because they convey an ownership interest which enables STARZ to *exclude others* from showing the Pictures.

26. This exclusivity is critical to STARZ's ability to compete. Distributors have put pressure on STARZ to ensure that it offers a wide range of **exclusive** movies.

### STARZ's Exclusive Licensing Agreements with MGM

27. On July 26, 2013, STARZ entered into an exclusive licensing agreement with MGM—the Library Deal Memorandum agreement (the "2013 Library Agreement"). Pursuant to the terms of this agreement, MGM granted STARZ the exclusive right and license to exhibit within the United States 313 MGM movies and 108 television series episodes by means of pay television and subscription video on demand for various license periods for each Picture.

28. MGM represented and warranted that "each Picture is and will be protected by copyright in the U.S. throughout the duration of such Picture's License Period."

29. The 2013 Library Agreement explicitly provides STARZ with exclusive copyrights to show the listed Pictures on pay television and on-demand. Paragraph 3 provides that:

> [STARZ] will have the right and license to exhibit each Picture by means of Pay Television and SOD in the Territory during such Picture's License Period, on the [STARZ] services (as defined below) in the English language and, if and to the extent such rights are owned or controlled by MGM on a picture-by-picture basis as indicated on Exhibit "A-1" hereto, Spanish . . . . **Such Pay Television and SOD rights shall be exclusive** in the

Territory with respect to the Pictures, other than

[exceptions not relevant here].

30.     MGM further committed that it would not exhibit or authorize others to exhibit the content on virtually any platform, including free television.  In Paragraph 10, MGM promised that:

> MGM shall not exhibit or authorize the exhibition of, or
> promote or authorize the promotion of the exhibition of,
> any Picture in the Territory during its applicable License
> Period(s) in the Licensed Languages or any non-Licensed
> Language by means of any form of free television
> (including free-on-demand television), basic television,
> SOD or Pay Television (including without limitation
> distribution of each of the foregoing media by means of
> electronic delivery via the Internet, for example,
> distribution of free television by means of the Internet).

31.     In its representations and warranties, MGM represented in Paragraph 19 that it had not and would not grant rights in the Pictures to any other party:

> MGM represents, warrants and covenants (a) it has all
> rights necessary to enter into this Library Deal
> Memorandum and to perform all of its obligations
> hereunder; (b) MGM has not taken or authorized, and will
> not take or authorize, any action by which any of the
> rights in any Picture granted herein by MGM to [STARZ]
> have been or may be materially impaired in any way.

32.     In addition to granting STARZ exclusive rights, MGM delivered masters of each Picture to a "mutually agreed lab", which is the means by which MGM provides the physical copy of pictures to entities who then exhibit them.

33.    On May 7, 2015, STARZ and MGM entered into another exclusive licensing agreement—the 2015 Library Agreement (the "2015 Library Agreement").

34.    That agreement provided STARZ with the exclusive right to exhibit within the United States 472 MGM movies and 68 television series episodes.  Like the 2013 Library Agreement, the 2015 Library Agreement provided STARZ with exclusive copyrights in Paragraph 3:

> MGM hereby grants to [STARZ] the exclusive right and license (except as otherwise expressly set forth below) to exhibit each Picture by means of Pay Television and [Subscription Video On Demand] in the Territory during such Picture's License Period, on the [STARZ] Services (each, as defined below) in the English language and, if and to the extent such rights are owned or controlled by MGM on a picture-by-picture basis as indicated on Exhibit "A" hereto, Spanish . . . . Such Pay Television and SVOD rights shall be exclusive in the Territory with respect to the Pictures, other than [exceptions not relevant here].

35.    In Paragraph 10, MGM again promised:

> **MGM shall not exhibit or authorize the exhibition of, or promote or authorize the promotion of the exhibition of, any Picture in the Territory during its applicable License Period(s) in the Licensed Languages or any non-Licensed Language** by means of any form of free television (including free-on-demand television), basic television, SVOD or Pay Television (including without limitation distribution of each of the

foregoing media by means of electronic delivery via the
Internet, for example, distribution of free television by
means of the Internet).

36.     And, again, in Paragraph 19, MGM further promised that:
(a) it has all rights necessary to enter into this Library
Agreement and to perform all of its obligations hereunder;
(b) MGM has not taken or authorized, and will not take or
authorize, any action by which any of the rights in any
Picture granted herein by MGM to [STARZ] have been or
may be materially impaired in any way.

37.     The two Library Agreements provided STARZ with the exclusive right under copyright to exhibit 585 movies and 176 television series episodes for the time periods provided under their respective agreements.  In exchange for those exclusive rights and licenses, STARZ agreed to pay MGM nearly 70 million dollars over the life of the two Library Agreements.

38.     The value in entering into the Library Agreements was not only that they allowed STARZ to exhibit content, but also that the content would be provided to STARZ exclusively, such that STARZ could prohibit others (including MGM) from using or impairing STARZ's copyrights.  STARZ would not have entered into the Library Agreements without MGM providing exclusivity and without MGM committing to safeguard those rights.  As a premium pay network, STARZ is not in the business of acquiring or exhibiting non-exclusive content.

39.     MGM breached its representations, including its explicit representation and warranty that MGM "ha[d] not taken or authorized, and will not take or authorize, any action" impairing STARZ's rights to these Pictures. Contrary to MGM's representations and promises, MGM repeatedly and systematically breached its contractual obligations and infringed STARZ's exclusive copyrights by purporting to license the Pictures to STARZ's competitors.

## Exclusivity is Important For STARZ And Its Distributors For Its Ability to Attract and Retain Customers

40.     STARZ's ability to provide exclusive content is not only an important consideration in how STARZ values its agreements with its studio partners, but exclusivity also is vital to STARZ's ability to compete with other content providers.

41.     Traditionally, STARZ has negotiated distribution agreements with cable companies and others to provide STARZ to consumers.  Those agreements set forth the rates and carriage terms governing the distribution of the STARZ Services on their platforms.

42.     STARZ markets its library of predominantly exclusive films with strong, well-known titles.  Distributors of STARZ value its ability to provide exclusive content and have put pressure on STARZ to ensure the exclusivity of its content.  The overwhelming majority of STARZ's movies—in 2019 over 98% of the movies broadcast on the STARZ flagship channel and 91% of the movies broadcast across all STARZ-owned channels—are exclusive.  While STARZ continues to offer an extensive library of exclusive titles, and STARZ has been expanding its original content offerings, including hit series such as *Power*, *Outlander*, *American Gods* and *Vida*, the perceived lack of exclusivity caused by MGM's infringement of the Pictures—including on MGM's own competitor Epix channels—has caused at least one major distributor to question STARZ's value and significantly damaged STARZ's relationship with that distributor—to MGM and Epix's benefit.

43.     Exclusive content also is a way for STARZ to attract and retain consumers.  For example, when an individual searches for movies or television shows online and finds that the title they are looking for is available only on STARZ, it encourages them to subscribe to STARZ.  If, on the other hand, the online search reveals multiple options to view the title searched for, the consumer

would have no additional incentive to subscribe to STARZ specifically; instead, the consumer may choose to subscribe to one of STARZ's competitors or to watch the title on a platform to which they already have a subscription.  Thus, a lack of exclusivity deprives STARZ of the opportunity to attract new subscribers.

### MGM is Forced To Admit the Massive Breaches Discovered By STARZ

44.     In August 2019, STARZ became suspicious for the first time that MGM might have violated the terms of the Library Agreements.  During that month, a STARZ employee noticed that *Bill & Ted's Excellent Adventure*, a movie that STARZ had the exclusive right to exhibit, was being exhibited on Amazon Prime Video services.  STARZ asked MGM about this apparent breach and MGM responded that it would "dig into this" and get back to STARZ.

45.     On August 13, 2019, MGM admitted that *Bill & Ted's Excellent Adventure* had been licensed improperly during the STARZ exclusive license period, and offered to provide additional periods of exclusivity.  MGM did not inform STARZ that the exclusivity of any other titles had been violated.

46.     On August 23, 2019, STARZ followed up to inform MGM that *Bill & Ted's Excellent Adventure* was not the only breach; STARZ had since discovered that ***22 of the approximately 70 MGM movies then available on STARZ were streaming on Amazon Prime Video services***.  Again, MGM told STARZ that it would "dig into this".

47.     On September 11, 2019, MGM claimed that it had found the source of the problem that STARZ had brought to its attention, that the issue had been "corrected", and that the 22 titles were no longer being infringed.  Again, MGM failed to disclose that other STARZ-exclusive Pictures also had been improperly licensed.

48.     On September 30, 2019, MGM provided STARZ with a list of 22 movies that it had identified as streaming on Amazon Prime Video services

1  when those movies should have only been available on STARZ.  But STARZ found

2  discrepancies in the information MGM provided—certain movies STARZ had

3  found were not included on MGM's list of 22 movies, and certain movies on

4  MGM's list of 22 were new to STARZ.  STARZ again asked MGM to investigate

5  the situation, and identified three additional movies that were being streamed by

6  Amazon Prime Video services in violation of STARZ's rights to exclusivity.

7  MGM again said it would "dig[] into" it.

8          49.    Becoming suspicious that MGM was not being forthcoming

9  about the scope and nature of its breach, on October 18, 2019, STARZ sent a letter

10  to MGM seeking formal assurances that (i) the 22 movies MGM had identified as

11  being exhibited by Amazon Prime, plus the three additional movies STARZ asked

12  MGM to investigate, were not licensed to any other service provider; (ii) that other

13  than those 25 movies, none of the other Pictures MGM licensed exclusively to

14  STARZ under the Library Agreements had been licensed to Amazon Prime or any

15  other service provider; and (iii) that MGM was taking affirmative measures to

16  ensure that no Pictures licensed to STARZ under the Library Agreements would be

17  licensed to any other service provider in violation of the terms of those agreements.

18          50.    On November 1, 2019, MGM finally admitted that the 25

19  movies STARZ had inquired about were, in fact, only the tip of the iceberg.  MGM

20  attached to its reply email *a list of 136 movies and 108 television series episodes*

21  that MGM identified as having been licensed to third parties during the STARZ

22  exclusive license periods.  That list also included the number of days of

23  "exclusivity overlap" for each Picture, meaning that MGM told STARZ the number

24  of days on which the Pictures were licensed to third parties when STARZ had the

25  exclusive copyright to those Pictures.  The exclusivity overlaps ranged from one

26  day for *Gang Related* to all 456 days of the license period for *The Thomas Crown*

27  *Affair* under the 2013 Library Agreement.  In that same email, MGM assured

28

STARZ that it had "taken action to ensure that [its] rights tracking system accurately reflects the terms of our deals and full exclusivity for all other licensed Pictures will be maintained".  But that was not true.  As of December 12, 2019, several of the breached and/or infringed Pictures were *still* available on various services when they should have been exclusive to STARZ.

51.     STARZ has since learned that MGM's breach of exclusivity has been happening since at least 2015 without STARZ's knowledge.  Certain Pictures were licensed in violation of STARZ's rights under copyright for hundreds of days.  For example, MGM licensed the James Bond movie *Never Say Never Again* to Amazon Prime Video services for *over 300 of the 429 days* that STARZ held the exclusive license to distribute that movie on pay television and SVOD.  MGM *admitted* that it did this with hundreds of Pictures, in breach of the Library Agreements and in violation of STARZ's copyrights.

52.     STARZ continues to discover new evidence that MGM has licensed *even more* of STARZ's exclusive Pictures to third parties than MGM admitted in its November 1, 2019 email.  Through STARZ's continuing internal review, it has so far identified *nearly 100 additional movies* (not included on MGM's list) that appear to have been licensed to third parties during time periods in which STARZ enjoyed exclusivity.

53.     Worse, STARZ discovered that some of the Pictures exclusively licensed to STARZ were exhibited on Epix—the competitor pay television and SVOD service *wholly owned by MGM*—during the periods in which STARZ had an exclusive right to exhibit those Pictures.  STARZ requires discovery to uncover the full extent of MGM's breach and infringement.

**MGM's Infringement Damaged STARZ vis-a-vis its Distributors and Customers**

54. By purporting to license the Pictures to which STARZ had been conveyed exclusive copyrights, MGM directly, willfully and recklessly infringed STARZ's copyright for each work, contributed to (and caused) others' infringement and breached the promises it made in the Library Agreements, including its representations and warranties.

55. Though the infringement and breach is ongoing, much damage already has been done. Despite the increasing popularity of STARZ's new original content, the perceived lack of exclusivity caused by MGM's infringement of the Pictures has devalued STARZ in the eyes of some and significantly damaged STARZ's relationship with at least one major distributor.

56. MGM's infringement and breach also hampered STARZ's ability to attract and retain subscribers to STARZ's own services. STARZ's exclusive content works as a marketing tool to attract new subscribers. But when a viewer searched online for a Picture to watch and learned that the Picture was available either on STARZ or a third-party service (when it should have been available only on STARZ) that viewer was encouraged not to subscribe to STARZ, but instead to use the competing service. A search for what should have been an exclusive Picture to STARZ, which should have been a boost to STARZ's business, instead caused STARZ potentially to lose customers.

57. For example, MGM made many of the infringed Pictures available for viewing on Amazon Prime Video services through its Prime Video Direct service. The Prime Video Direct service allows content owners, such as MGM, to directly publish pictures on the Amazon Prime Video platform, earning fees based on how many consumers watch the pictures. MGM licensed many of the STARZ-exclusive movies to Amazon via its Prime Video Direct Service.

58.     That had severe negative consequences for STARZ.  When a consumer is searching for a STARZ-exclusive title on Amazon, the platform should inform the consumer that the title is available for no additional charge to subscribers of STARZ.  For a consumer that is not a STARZ subscriber, the platform also promotes the STARZ service, offering a seven-day free trial.  This is a powerful way for STARZ to attract new subscribers based on the exclusive nature of its offerings.  But when a title is not exclusive to STARZ, but instead is also available on the Amazon Prime Video services (even when it should have been available only through STARZ), the platform first suggests that the consumer watch it through the Amazon Prime Video services, at no additional charge for Amazon Prime subscribers.  The platform does not highlight the STARZ service and, instead, the company that provided the movie through the Prime Video Direct service (such as MGM) gets a fee from Amazon if the customer watches the movie through Amazon Prime Video.  Thus, when MGM licensed STARZ-exclusive content to Amazon through the Prime Video Direct service, it both robbed STARZ of the opportunity to attract new subscribers, and directly profited from its own infringement.

59.     Not only is exclusivity important in attracting new subscribers, it also is a key component in maintaining consumer loyalty.  For example, one consumer recently stated in a review of STARZ on Apple's App Store that "Starz shows movies you don't always see on the other services and ***for that reason alone it's worth the price of a subscription***."  If consumers see that the Pictures they are looking for, time after time, are available not only on STARZ but also on Amazon Prime Video services or another third-party service, they are less likely to keep a STARZ subscription.

60.     STARZ has been irreparably harmed by MGM's actions.  This includes harm to its reputation and loss of goodwill among consumers and distributors as a source for exclusive, high-quality programming.

## COUNTS 1-340:  COPYRIGHT INFRINGEMENT IN VIOLATION OF

## 17 U.S.C. § 501

### (Against Defendant MGM)

61.    STARZ incorporates by reference paragraphs 1-60 as if fully set forth herein.

62.    STARZ is the exclusive licensee of registered copyrights in certain Pictures under the Library Agreements.  With each license, STARZ holds the exclusive rights and licenses to exhibit the at-issue Pictures within the United States for pay television and SVOD during the exclusivity periods.

63.    MGM infringed those rights and violated the Copyright Act, 17 U.S.C. § 501, when MGM purported to grant licenses for the same copyrights for the same Pictures to third parties during the exclusivity periods.

64.    At no time has STARZ authorized MGM to license or distribute those works to other competing services during the exclusivity periods.

65.    MGM knew that STARZ owned the exclusive rights and license to the infringed works.  Despite that knowledge, MGM willfully entered into agreements that purported to license the copyrighted works to other parties.

66.    MGM's infringement is and has been willful, intentional, purposeful and reckless, in complete disregard of the rights it granted to STARZ, and has caused substantial damage to STARZ.

67.    Each violation of STARZ's rights in and to each copyrighted Picture constitutes a separate and distinct act of copyright infringement by MGM. MGM infringed STARZ's copyrights for the Pictures attached as Exhibit A.

## COUNTS 341-680:  CONTRIBUTORY COPYRIGHT INFRINGEMENT IN VIOLATION OF 17 U.S.C. § 501

### (Against Defendant MGM)

68.     STARZ incorporates by reference paragraphs 1-60 as if fully set forth herein.

69.     MGM is liable as a contributory infringer for the copyright infringement committed by Amazon and other third parties.  MGM knew that the infringement has occurred and is continuing to occur, and MGM caused, enabled, facilitated and materially contributed to that infringement.

70.     Amazon and other third parties have directly infringed and are directly infringing STARZ's copyrights by distributing copyrighted Pictures to the public via pay television and SVOD in violation of STARZ's exclusive rights under the Library Agreements and in violation of the Copyright Act, 17 U.S.C.§ 501.

71.     MGM caused, enabled, facilitated and materially contributed to that infringement by purporting to issue licenses to the at issue Pictures to those third parties and by giving those third parties access to the masters of the Pictures.

72.     MGM's knowledge of the infringement is both actual and constructive.  It has admitted that it entered into licensing agreements with third parties which purported to grant those third parties licenses to distribute Pictures when MGM knew that STARZ owned the exclusive copyrights to those Pictures, having granted STARZ those exclusive rights in the first instance.

73.     MGM's contributory infringement is and has been willful, intentional, purposeful and reckless, in complete disregard of the rights it granted to STARZ, and has caused substantial damage to STARZ.

74.     Each violation of STARZ's rights in and to each copyrighted Picture constitutes a separate and distinct act of copyright infringement.  MGM contributorily infringed STARZ's copyrights for the Pictures attached as Exhibit A.

## COUNTS 681-1020:  VICARIOUS COPYRIGHT INFRINGEMENT IN VIOLATION OF 17 U.S.C. § 501

### (Against Defendant MGM)

75.     STARZ incorporates by reference paragraphs 1-60 as if fully set forth herein.

76.     MGM is liable as a vicarious infringer for the copyright infringement committed via Amazon Prime Video services and other third-party services.  MGM (i) profited from the direct infringement while (ii) declining to exercise its rights to stop or limit it.

77.     Amazon and other third parties have directly infringed and are directly infringing STARZ's copyrights by distributing copyrighted Pictures to the public via pay television and SVOD in violation of STARZ's exclusive rights under the Library Agreements and in violation of the Copyright Act, 17 U.S.C.§ 501.

78.     MGM had the ability to prevent the infringing conduct by refusing to license to third parties works that already had been exclusively licensed to STARZ.  MGM did not do so, but, instead actively sought to license STARZ's exclusive Pictures to others.

79.     MGM profited from the direct infringement by, *inter alia*, (i) receiving license fees from Amazon and others for the STARZ-exclusive Pictures; and (ii) gaining an enhanced reputation as having rights to Pictures it does not have.

80.     MGM's vicarious infringement is and has been willful, intentional, purposeful and reckless, in complete disregard of the rights it granted to STARZ, and has caused substantial damage to STARZ.

81.     Each violation of STARZ's rights in and to each copyrighted Picture constitutes a separate and distinct act of copyright infringement.  MGM vicariously infringed STARZ's copyrights for the Pictures attached as Exhibit A.

## COUNT 1021:  BREACH OF CONTRACT

### (Against Defendant MGM)

82.     STARZ incorporates by reference paragraphs 1-60 as if fully set forth herein.

83.     The Library Agreements between STARZ and MGM are valid and enforceable agreements between the parties.

84.     STARZ has performed its obligations under the Library Agreements in all material respects.

85.     MGM breached the Library Agreements, which grant STARZ the exclusive right and license to exhibit certain Pictures on pay television and SVOD and provide that MGM shall not exhibit or authorize the exhibition of those same Pictures by means of free television, basic television, SVOD and pay television, by purporting to license Pictures to others that MGM already had licensed exclusively to STARZ.

A.     MGM breached paragraph 10 of the 2013 Library Agreement and paragraph 10 of the 2015 Library Agreement, which state that "MGM shall not exhibit or authorize the exhibition of, or promote or authorize the promotion of the exhibition of" any of the Pictures covered under that agreement "by means of any form of free television", "basic television", Subscription Video on Demand, or "Pay Television" when it purported to grant licenses for STARZ's exclusive content to third parties.

B.     MGM breached its representations and warranties in paragraph 19 of the 2013 Library Agreement and paragraph 19 of the 2015 Library Agreement by failing to ensure that it "has not taken or authorized, and will not take or authorize, any action by which any of the rights in which any Picture granted [by MGM to STARZ] have been or may be materially impaired in any way."

86.     STARZ has been injured, and continues to be injured, by MGM's material breaches of the Library Agreements.  STARZ is entitled to compensatory and consequential damages in an amount to be proven at trial.

## COUNT 1022:  BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

### (Against Defendant MGM)

87.     STARZ incorporates by reference paragraphs 1-60 as if fully set forth herein.

88.     MGM and STARZ entered into the Library Agreements whereby MGM granted STARZ the exclusive right and license to certain Pictures.

89.     STARZ has performed its obligations under the Library Agreements in all material respects.

90.     MGM had a duty to act fairly and in good faith and to do nothing which would have the effect of destroying, interfering, frustrating or injuring the rights of STARZ to receive the benefits of the Library Agreements.

91.     MGM has breached the implied covenant of good faith and fair dealing by engaging in a course of conduct to deprive STARZ of its rights under the Library Agreements.  MGM has, among other things, destroyed, interfered with, frustrated and injured STARZ's rights by failing to ensure that MGM was not licensing STARZ-exclusive Pictures to third parties during the STARZ exclusivity periods.

92.     As a direct and proximate result of MGM's breach of the implied covenant of good faith and fair dealing under the Library Agreements, STARZ has been injured and damaged in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendant and respectfully requests the following relief:

A.      Judgment that MGM directly, contributorily and vicariously infringed STARZ's copyrights in violation of the Copyright Act;

B.      Judgment that MGM breached the Library Agreements and the implied covenant of good faith and fair dealing contained therein;

C.      An award to STARZ of MGM's profits attributable to its direct, contributory and vicarious copyright infringement pursuant to 17 U.S.C. § 504(b), including, but not limited to, licensing fees it collected from third parties for the STARZ-exclusive Pictures it purported to license in violation of STARZ's copyrights and all other profits it stands to gain from its infringement;

D.      An award to STARZ of monetary damages equal to STARZ's actual damages caused by MGM's direct, contributory and vicarious copyright infringement pursuant to 17 U.S.C. § 504(b), including, but not limited to, lost profits from receiving less in distribution fees from content distributors, lost profits due to the loss of subscribers to STARZ's services, loss of good will and reputational harm;

E.      In the alternative, STARZ reserves the right to elect maximum statutory damages (in lieu of actual damages) pursuant to 17 U.S.C. § 504(c) at anytime prior to final judgment;

F.      An order (i) enjoining MGM from infringing STARZ's copyrights, whether directly, indirectly or vicariously; and (ii) directing MGM to cease causing, enabling, facilitating, encouraging, promoting, inducing, contributing to, and participating in the infringement of STARZ's copyrights;

G.      Compensatory and consequential damages, including, but not limited to, lost profits, goodwill and reputational harm, resulting from MGM's

breach of the terms and representations and warranties in the Library Agreements, in an amount to be proven at trial;

        H.    Compensatory and consequential damages, including, but not limited to, lost profits, goodwill and reputational harm, resulting from the breach of the covenant of good faith and fair dealing in the Library Agreements in an amount to be proven at trial;

        I.    STARZ's costs and disbursements in this action, including reasonable attorneys' fees and prejudgment and post-judgment interest; and

        J.    Such other and further relief as the Court deems proper and just.

### Jury Demand

Pursuant to Fed. R. Civ. P. 38(b) and L.R. 38-1, STARZ demands a jury trial on all issues so triable.

Dated:  May 4, 2020

        Respectfully submitted,

        Steven M. Goldberg
        sgoldberg@mzclaw.com
        MARKUN ZUSMAN FRENIERE
        COMPTON LLP
        3 Hutton Centre Dr., 9th Floor
        Santa Ana, CA 92707
        Telephone:  (310) 454-5900
        Facsimile:  (310) 454-5970

        Evan R. Chesler
        echesler@cravath.com
        J. Wesley Earnhardt
        wearnhardt@cravath.com
        CRAVATH, SWAINE & MOORE LLP
        825 Eighth Avenue
        New York, New York 10019

STARZ ENTERTAINMENT, LLC'S
COMPLAINT

1

Telephone: (212) 474-1000
Facsimile: (212) 474-3700

2

3

*Attorneys for Plaintiff STARZ*
*Entertainment, LLC*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STARZ ENTERTAINMENT, LLC'S
COMPLAINT

- 25 -