JAY P. SRINIVASAN, SBN 181471
jsrinivasan@gibsondunn.com
MINAE YU, SBN 268814
myu@gibsondunn.com
JONATHAN N. SOLEIMANI, SBN 295673
jsoleimani@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

ORIN SNYDER (*pro hac vice forthcoming*)
osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

Attorneys for Defendant MGM DOMESTIC TELEVISION DISTRIBUTION LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

STARZ ENTERTAINMENT, LLC,

Plaintiff,

v.

MGM DOMESTIC TELEVISION DISTRIBUTION LLC,

Defendant.

CASE NO. 2:20-cv-04085-DMG-KS

**DEFENDANT MGM DOMESTIC TELEVISION DISTRIBUTION LLC'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Judge: Hon. Dolly M. Gee
Hearing Date: Sept. 11, 2020
Time: 9:30 am
Courtroom: 8C, 8th Floor
Trial Date: Not set
Action Filed: May 4, 2020

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on September 11, 2020, at 9:30 a.m., or as soon thereafter as the matter may be heard before the Honorable Dolly M. Gee, in Courtroom 8C of the United States District Court, Central District of California, located at 350 W. First Street, Los Angeles, CA 90012, Defendant MGM Domestic Television Distribution LLC ("MGM") will and hereby does move this Court to dismiss the causes of action of Plaintiff Starz Entertainment LLC ("Starz") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the following grounds:

First, MGM moves to dismiss all of Starz' causes of action arising under the Copyright Act that are based on alleged infringements that occurred three years before the parties entered into a tolling agreement effective March 24, 2020.  Under the U.S. Supreme Court's holding in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014), no relief or recovery of any kind is permitted under the Copyright Act for infringing acts occurring more than three years prior to the plaintiff filing suit.  For 127 of 340 titles at issue in this action, no infringing act could have occurred as a matter of law within the three-year look-back period because the license periods for these titles expired before March 24, 2017.  Accordingly, there is no relief that the Court may grant for those pictures.  Further, Starz has not alleged that any infringements continued into the three-year lookback period prescribed by *Petrella* other than for one title, *Bill and Ted's Excellent Adventure*.  Accordingly, Starz has failed to allege a copyright violation within the three-year statute of limitations for 339 of the 340 titles at issue.

Second, Starz's copyright and breach of contract and breach of implied covenant claims are also subject to dismissal on statute of limitations grounds, which is four years for copyright claims and three years for contract-based claims.  Thus, any copyright infringement claims that accrued before March 24, 2017 and any claims for breach of contract that accrued before March 24, 2016 are time-barred.  Starz alleges that MGM infringed its copyright licenses and breached the parties agreements by permitting public exhibition of the titles at issue on third-party platforms during the license period for each

title. Starz is conclusively foreclosed as a matter of law from alleging any timely copyright claims for 127 titles whose license windows expired before March 24, 2017, or any timely breach-of-contract or implied-covenant claims for 4 titles whose license windows expired before March 24, 2016. Moreover, although Starz pleaded that MGM violated its rights starting in 2015 or earlier, it has failed to identify any title for which an alleged infringement or breach occurred within either limitations period for 339 of the 340 titles at issue in the Complaint. Accordingly, Starz has failed to properly allege any timely claims, warranting dismissal.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place by a telephonic conference on June 29, 2020. Plaintiff's counsel indicated at that time that Plaintiff will oppose MGM's motion to dismiss any of Plaintiff's claims.

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Blake Flynn and the exhibits attached thereto, MGM's Request for Judicial Notice, Declaration of Jay Srinivasan In Support of MGM's Request for Judicial Notice and all pleadings and papers on file in this action, and such oral argument and other evidence and/or argument as the Court shall consider prior to or at the time of the hearing on this motion.

DATED: July 6, 2020

GIBSON, DUNN & CRUTCHER LLP

By: /s/ *Jay P. Srinivasan*
JAY P. SRINIVASAN

Attorneys for Defendant
MGM DOMESTIC TELEVISION DISTRIBUTION LLC

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. BACKGROUND AND SUMMARY OF ALLEGATIONS ..... 3

A. The Parties and Their Library Agreements. ..... 3

B. Starz Claims that MGM Breached the Library Agreements and Infringed Its Copyright By At Least 2015 or Potentially Earlier. ..... 6

C. Starz Affirmatively Alleges That Consumers, the General Public, and Market Participants Were All Aware of the Alleged Infringement. ..... 6

III. LEGAL STANDARD ..... 8

IV. ARGUMENT ..... 9

A. The Copyright Act's Three-Year Statute of Limitations Precludes Starz From Recovering Damages For More Than a Third of Its Alleged Copyright Claims as a Matter of Law. ..... 9

B. The Court Should Dismiss Starz's Time-Barred Claims. ..... 12

1. Starz's Copyright Claims Based on Infringement that Occurred Before March 24, 2017 Are Time-Barred as a Matter of Law. ..... 12

2. Starz's Breach of Contract and Implied-Covenant Claims Are Time-Barred For Alleged Breaches that Occurred Before March 24, 2016. ..... 18

C. Any Amendment Would be Futile. ..... 22

V. CONCLUSION ..... 23

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aryeh v. Canon Bus. Sols., Inc.*,
55 Cal. 4th 1185 (2013) ........ 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 8

*Bay Area Laundry and Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*,
522 U.S. 192 (1997) ........ 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 8

*Brisbane Lodging, L.P. v. Webcor Builders, Inc.*,
216 Cal. App. 4th 1249 (2013) ........ 19

*Burnett v. Twentieth Century Fox Film Corp.*,
491 F. Supp. 2d 962 (C.D. Cal. 2007) ........ 23

*Coto Settlement v. Eisenberg*,
593 F.3d 1031 (9th Cir. 2010) ........ 9, 14

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) ........ 9

*DM Research, Inc. v. Coll. of Am. Pathologists*,
170 F.3d 53 (1st Cir. 1999) ........ 8

*Flowers v. Interscope Records, Inc.*,
2010 WL 11639969 (N.D. Cal. Nov. 15, 2010) ........ 15

*Fourstar v. Ness*,
276 F. App'x 661 (9th Cir. 2008) ........ 23

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005) ........ 19

*Goldberg v. Cameron*,
482 F. Supp. 2d 1136 (N.D. Cal. 2007) ........ 15, 16, 17, 18

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Grisham v. Philip Morris U.S.A., Inc.*,
40 Cal. 4th 623 (2007) .......... 20

*Guar. Trust Co. of N.Y. v. York*,
326 U.S. 99 (1945) .......... 18

*Hebrew Acad. of San Francisco v. Goldman*,
42 Cal. 4th 883 (2007) .......... 21

*Heidari v. Dog Ear Publ'g LLC*,
2012 WL 1980352 (N.D. Cal. June 1, 2012) .......... 17, 18

*Huynh v. Chase Manhattan Bank*,
465 F.3d 992 (9th Cir. 2006) .......... 9

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) .......... 9, 14

*Krieger v. Nick Alexander Imps., Inc.*,
234 Cal. App. 3d 205 (1991) .......... 18

*Menzel v. Scholastic, Inc.*,
2019 WL 6896145 (N.D. Cal. Dec. 18, 2019) .......... 12

*Minden Pictures, Inc. v. Buzzfeed, Inc.*,
390 F. Supp. 3d 461 (S.D.N.Y. 2019) .......... 15, 16, 18

*In re Napster, Inc. Copyright Litig.*,
2005 WL 289977 (N.D. Cal. Feb. 3, 2005) .......... 14, 15, 17, 18

*NBCUniversal Media, LLC v. Superior Court*,
225 Cal. App. 4th 1222 (2014) .......... 20, 21

*Orkin v. Taylor*,
487 F.3d 734 (9th Cir. 2007) .......... 21

*Papazian v. Sony Music Entm't*,
2017 WL 4339662 (S.D.N.Y. Sept. 28, 2017) .......... 12

*Park v. Skidmore, Owings & Merrill LLP*,
2019 WL 9228987 (S.D.N.Y. Sept. 30, 2019) .......... 12

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
572 U.S. 663 (2014)....................3, 10, 11, 13

*Plumlee v. Pfizer, Inc.*,
664 F. App'x 651 (9th Cir. 2016)....................20, 21

*Polar Bear Prods., Inc. v. Timex Corp.*,
384 F.3d 700 (9th Cir. 2004)....................15

*Roley v. New World Pictures, Ltd.*,
19 F.3d 479 (9th Cir. 1994)....................14

*Roth v. Am. Gen. Life Ins. Co.*,
2020 WL 2527053 (C.D. Cal. Feb. 7, 2020) ....................22

*Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC*,
733 F.3d 1251 (9th Cir. 2013)....................9

*Siddiqi v. JPMorgan Chase Bank, N.A.*,
2018 WL 7501123 (C.D. Cal. Nov. 30, 2018) ....................20

*In re Silicon Graphics, Inc. Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999)....................23

*Silver v. Hamrick & Evans, LLP*,
2019 WL 988686 (C.D. Cal. Jan. 4, 2019) ....................23

*Sohm v. Scholastic Inc.*,
959 F.3d 39 (2d Cir. 2020)....................11, 12

*STARZ Entm't LLC, v. Buena Vista Television Inc.*,
Case No. 2:07-cv-1895 (C.D. Cal.) (filed March 22, 2007)....................18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)....................9

*Tsemetzin v. Coast Fed. Sav. & Loan Ass'n.*,
57 Cal. App. 4th 1334 (1997)....................19

*Union Carbide Corp. v. Superior Court*,
36 Cal. 3d 15 (1984)....................19

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*United Mine Workers v. Gibbs*,
383 U.S. 715 (1966) 954 F.2d 1087 (5th Cir. 1992) ............ 18

*Valley Surgical Ctr. LLC. v. Cty. of L.A.*,
2016 WL 7017208 (C.D. Cal. Dec. 1, 2016) ............ 21, 22

*Wu v. John Wiley & Sons, Inc.*,
2015 WL 5254885 (S.D.N.Y. Sept. 10, 2015) ............ 12

**Statutes**

17 U.S.C. §507(b) ............ 9, 10, 12, 13, 14

Cal. Civ. Proc. Code § 337(a) ............ 18

**Other Authorities**

3 M. Nimmer & D. Nimmer, Copyright § 12.05[B][1][b], p. 12–150.4 (2013) ............ 10

# I.  INTRODUCTION

Plaintiff Starz Entertainment LLC ("Starz") is trying to turn a routine licensing dispute with Defendant MGM Domestic Television Distribution LLC ("MGM") into an overblown federal copyright case.  Starz, a pay television network, seeks to blame MGM, a film and television studio, for Starz's decline in marketplace standing.  But Starz's competitive weakness is the result of secular market disruption from cord-cutting and streaming competition, not a run-of-the-mill licensing dispute with MGM.  Though the Complaint points the finger at MGM for "significantly damag[ing]" Starz's distributor relationships and hampering its ability to attract and retain subscribers, Starz's parent company Lionsgate has touted substantial increases in Starz's subscriber base and a successful transition to new distribution arrangements in its recent earnings calls and financial reports.  Whatever motivated Starz to file this lawsuit now, its claims are massively overstated and commercially insignificant.  And while MGM will fully expose a host of other fatal defects in Starz's larded-up Complaint in due time, this motion properly seeks dismissal of hundreds of incurably time-barred claims as a matter of law before the parties and the Court expend significant time and resources on meritless litigation.

The two "library" agreements at issue granted Starz the right to distribute certain MGM film and television-series titles for limited time periods (referred to as "windows") in specific territories exclusively on certain defined distribution platforms, with MGM retaining the right to concurrently exploit those titles on other platforms.  Although entertainment content owners and licensees maintain rights-tracking databases and contract-management systems to preemptively identify instances of overlapping windows (or "collisions") with other third-party licensees, these systems are dependent on human input and operation, so error sometimes occur.  While such often-technical collisions are customarily resolved in the ordinary course of business through "make goods" or other negotiated concessions, Starz flatly refused to meaningfully engage with MGM or discuss these issues on a title-by-title basis after the matter first surfaced and

MGM provided a preliminary assessment in November 2019. This could be because the vast majority of Starz's claims are stale, trivial, or entirely baseless, involving license windows that expired long ago and collisions that were brief, economically insignificant, or non-existent. Indeed, nearly ***one-third*** of Starz's exaggerated claims relate to a license of a television series that is nearly ***60*** years old (108 episodes of the 1950s television show *Bat Masterson*). Moreover, this license expired several years ago, and so claims relating to it are therefore barred by every applicable statute of limitations.

Starz alleges that in 2015 "and perhaps earlier," MGM permitted third parties to exhibit some of the deep library titles licensed to Starz when the content should have been "exclusive" to Starz, thereby breaching the library agreements and/or infringing Starz's copyrights. The exclusive license windows for each title were individually negotiated and varied from title to title, ranging from less than a month to fifteen months. The dates of the licenses also vary by title. Starz further alleges that because third-party exhibition of titles licensed to Starz was so open and well-known to the content-consuming public, Starz's existing and potential subscribers and distribution partners were aware of it. Yet despite the alleged open and notorious nature of MGM's alleged conduct, Starz did not file suit until May 2020.[1]

The statute of limitations prescribed by the Copyright Act is three years. Under the U.S. Supreme Court's holding in *Petrella v. Metro-Goldwyn-Mayer, Inc*., 572 U.S. 663 (2014), Starz cannot recover damages for any copyright infringement that occurred prior to three years before it filed suit. This limitation on recovery is absolute and cannot be altered by any tolling rules. Accordingly, insofar as Starz seeks to recover copyright infringement damages for titles whose license windows expired prior to March 24, 2017, which information is alleged in the Complaint or set forth in agreements incorporated

---

[1] Although Starz did not file its Complaint until May 4, 2020, the parties entered into a tolling agreement roughly 41 days earlier, on March 24, 2020. *See* RJN, Declaration of Jay Srinivasan ("Srinivasan Decl."), Ex. C (Tolling Agreement Agreement); *see also* RJN at 4 (citing authorities demonstrating tolling agreements may be considered on a 12(b)(6) motion). Accordingly, for purposes of this Motion, MGM treats the Complaint as having been filed on March 24, 2020.

by reference therein, such copyright claims should be dismissed with prejudice as a matter of law.

Many of Starz's claims are independently subject to dismissal on statute-of-limitations grounds. The limitations period that governs Starz's claims is three years for the copyright claims and four years for the breach of contract and breach of the implied covenant of good faith and fair dealing claims. Thus, any copyright infringement claims that accrued before March 24, 2017 and any claims for breach of contract that accrued before March 24, 2016 are time-barred, but more fundamentally, the claims involving 127 titles whose license windows expired ***prior*** to the applicable statute of limitations period ***cannot be cured by amendment***. The library agreements and amendments thereto clearly state the license windows for the titles at issue, and therefore Starz is conclusively foreclosed as a matter of law from alleging any timely copyright claims for the 127 titles whose license windows expired before March 24, 2017, or any timely breach-of-contract or implied-covenant claims for the seven titles whose license windows expired before March 24, 2016. Although Starz pleaded that MGM violated its rights starting in 2015 or earlier, it has failed to identify any title for which an alleged infringement or breach occurred within either limitations period except for *Bill & Ted's Excellent Adventure*. This defect in pleading warrants dismissal of 339 of the 340 titles at issue in the Complaint.

## II. BACKGROUND AND SUMMARY OF ALLEGATIONS

### A. The Parties and Their Library Agreements.

Starz is a provider of "premium subscription video programming with over 26.2 million subscribers" that "operates a suite of 17 STARZ, STARZEncore and MoviePlex premium cable television channels and corresponding on-demand services" featuring a library of "popular original television series and exclusive movies and television series." Compl. ¶ 20. MGM is a leading entertainment company that controls the rights to distribute thousands of feature films and television episodes across all platforms, which it licenses to third parties for a specified period of time under specified terms and

conditions. All 1,022 separate causes of action Starz asserts in this lawsuit are based on two licensing agreements executed by Starz and MGM in 2013 and 2015 (the "Library Agreements").[2] Compl. ¶¶ 2, 62, 70, 77, 83–85, 88–90.

The first of the two Library Agreements at issue is dated as of July 26, 2013 (the "2013 Library Agreement"). Compl. ¶ 27. Although Starz did not attach a copy of the agreement to the Complaint, the terms of the 2013 Library Agreement, including the license period for the titles at issue, are referenced throughout the Complaint and serve as the basis of its causes of action. *See, e.g.*, Compl. ¶¶ 7, 8, 27–32, 45, 50–52, 62, 63, 77–78, 85, 91. Under the 2013 Library Agreement and amendments thereto, MGM granted Starz a license to exhibit 421[3] titles ***only*** by means of pay television and SVOD (subscription-video-on-demand) services in the English and Spanish languages for a defined window of time, which window varied by title. RJN, Declaration of Blake Flynn ("Flynn Decl."), Ex. A (2013 Agreement) ¶ 3; Compl. ¶¶ 27, 29. This grant covered only the United States and its territories and, to the extent MGM controlled the pay television rights, Bermuda as well.[4] RJN, Flynn Decl. Ex. A ¶ 4. MGM did not grant Starz any license or right to exhibit the titles in any other form of distribution, territory, or language. *Id.* ¶¶ 3, 10.

---

[2] Specifically, for each of the 340 alleged "pictures" at issue, Starz asserts separate claims for direct copyright infringement (Counts 1–340), contributory copyright infringement (Counts 341–680), and vicarious copyright infringement (Counts 681–1020). Starz also asserts claims for breach of contract (Count 1021) and breach of the implied covenant of good faith and fair dealing (Count 1022).

[3] Starz's Complaint misleadingly counts each episode of a television series as a separate, individual "[p]icture" licensed under the agreement. Compl. ¶ 67; *id*. at Ex. A, Rows 17–124 (counting each episode of the television series *Bat Masterson* as a separate "picture"). For purposes of this Motion only and without waiving its right to challenge this improper characterization, MGM accepts Starz's inflated number of separate "pictures" at issue in this lawsuit. But as a practical matter, each episode of a television series does ***not*** constitute a separate title in the Library Agreements; Starz has presumably counted them this way to artificially pump up its alleged damages.

[4] In addition, MGM granted Starz a non-exclusive license to exhibit the titles in the Bahamas in the English language. Flynn Decl. Ex. A ¶ 4. This aspect of the grant is not at issue in this lawsuit.

As part of the agreement, MGM also contractually agreed to refrain from exhibiting or licensing the covered titles in the covered territories during each title's window of exclusivity by means of free television and basic cable, meaning MGM could not license the titles in these distribution formats during Starz's exclusive windows on pay television or SVOD. *Id.* ¶ 10(a); Compl. ¶ 29. But MGM expressly reserved for itself the right to continue to exhibit or authorize the exhibition of each title during its license period by means of theatrical, home video, electronic sell-through, and pay-per-view (including transactional video-on-demand and near-video-on demand). RJN, Flynn Decl. Ex. A ¶ 10(a) & (b). In other words, MGM remained free to exhibit every title subject to the 2013 Library Agreement even when it was "exclusively" licensed to Starz in these other formats, including by making such titles available on iTunes or Amazon on a pay-per-view basis.

The second library agreement at issue in this case is dated as of May 7, 2015 (the "2015 Library Agreement"). Compl. ¶ 33. As with the 2013 Library Agreement, Starz did not attach a copy of the 2015 Library Agreement to its Complaint, but its terms are referenced throughout the Complaint. *See, e.g.*, Comp. ¶¶ 7, 8, 33–37, 45, 50–52, 62, 63, 77–78, 85, 91. Under the 2015 Library Agreement, MGM granted Starz a license to exclusively exhibit 540[5] titles on materially similar terms as the 2013 Library Agreement as described above. *Id.*¶ 34; RJN, Flynn Decl. Ex. B (2015 Agreement) ¶ 3.

The exclusivity windows and the license fees for each title covered by the 2013 and 2015 Library Agreements were individually negotiated and vary from title to title. For the Court's convenience, MGM has prepared a chart ("Schedule A") listing the titles that Starz alleges are at issue along with the window for which Starz licensed the exclusive right to exhibit that title on pay television and SVOD, which information comes from the face of the Library Agreements. *See* Schedule A attached hereto. Each

---

[5] As noted above, for purposes of this Motion only, MGM accepts Starz's count of the titles licensed under the 2015 Library Agreement, but reserves its right to contest the number of titles at issue.

title in the attached Schedule A tracks the numbers assigned by Starz in the left column of Exhibit A to its Complaint (Dkt. 1-1).  For 120 of the titles (highlighted in yellow) listed in Schedule A, the window for Starz's exclusive license expired between three and four years before this lawsuit was filed.  *See* Schedule A attached hereto.  In addition, for seven titles (highlighted in green), Starz's window of exclusivity expired four or more years before this lawsuit was filed.  *Id.*

**B.     Starz Claims that MGM Breached the Library Agreements and Infringed Its Copyright By At Least 2015 or Potentially Earlier.**

Starz broadly alleges that MGM breached the Library Agreements and the implied covenant of good faith and fair dealing, and infringed Starz's alleged copyright in the titles at issue "by at least 2015 (and potentially earlier)" by granting licenses to third parties during "the very time periods in which STARZ had the exclusive rights" for each of the 340 titles at issue.  Compl. ¶ 8; *see also* ¶¶ 63, 85, 91.  To be actionable, the alleged breaches/infringements must have occurred during the time period when Starz's pay television and SVOD license was exclusive for that particular title.  Starz does not contend that it has any rights to any of the 340 titles except during the exclusive license period applicable to each title per the Library Agreements.  RJN, Flynn Decl. Ex. A ¶¶ 1, 3, 4, 10; Ex. B ¶¶ 1, 3, 4, 10.

Notably, Starz does not allege how long the alleged infringements and breaches occurred after 2015; although MGM is limited to the Complaint and the documents incorporated by reference therein for purposes of this Motion, the reality is that Starz knows that MGM did not breach the Library Agreements or infringe Starz's copyright license any time in the past four years for the majority of the 340 titles identified in Starz's Complaint.

**C.     Starz Affirmatively Alleges That Consumers, the General Public, and Market Participants Were All Aware of the Alleged Infringement.**

The Complaint does not specifically allege how and when MGM committed any of the alleged misconduct except for one of the 340 titles, but Starz clearly and forcefully alleges that MGM permitted third parties to exhibit the titles at issue on popular public

platforms readily accessible by consumers, such as major pay television channels and streaming services. *See, e.g.*, Compl. ¶ 57 (alleging that "MGM made many of the infringed Pictures available for viewing on Amazon Prime Video services"); *id*. ¶¶ 77 (alleging that as a result of MGM's infringement, third parties are "distributing copyrighted Pictures to the public via pay television and SVOD"); *see also id*. ¶¶ 62, 64, 70.

Starz's theories of injury and damages are thus premised entirely on the open and public nature of the claimed breaches and infringements. The Complaint alleges that "the perceived lack of exclusivity caused by MGM's infringement of the Pictures has devalued STARZ in the eyes of some and significantly damaged STARZ's relationship with at least one major distributor." *Id.* ¶ 55; *see also id.* ¶ 42. But not only were sophisticated industry participants apparently aware of MGM's alleged misconduct, Starz also alleges that when ordinary consumers searched for movies or television shows online, the search results necessarily revealed MGM's breaches. *Id*. ¶ 43; *see also id.* ¶ 3 ("[T]he manner in which MGM licensed the STARZ exclusive works to one of STARZ's distributors caused consumers searching for a Picture on that distributor's service to be directed to a version of that movie made available directly from MGM to subscribers of that platform"), ¶ 56 ("[W]hen a viewer searched online for a Picture to watch and learned that the Picture was available either on STARZ or a third-party service (when it should have been available only on STARZ) that viewer was encouraged not to subscribe to STARZ, but instead to use the competing service."). Based on these allegations of widespread public awareness, Starz alleges harm to its reputation and goodwill among consumers and distributors. *Id.* ¶ 60.

In addition, Starz alleges that it too was able to discover MGM's alleged breaches and infringement through a simple Internet search. According to Starz, in August 2019, "a STARZ employee noticed that *Bill & Ted's Excellent Adventure*, a movie that STARZ had the exclusive right to exhibit, was being exhibited on Amazon Prime Video services." *Id.* ¶ 44. Starz further alleges that it then "discovered that 22 of the

approximately 70 MGM movies then available on STARZ were streaming on Amazon Prime Video services." *Id.* ¶ 46 (emphasis omitted). Then, through an "internal review," Starz alleges it identified "nearly 100 additional movies . . . that appear to have been licensed to third parties during time periods in which STARZ enjoyed exclusivity." *Id*. ¶ 52 (emphasis omitted). Overall, Starz alleges that its own investigation has revealed that its licenses to over 150 titles have allegedly been infringed/breached. *Id.* ¶ 8. But, save for one movie, Starz fails to allege how it discovered these infringements/breaches, when these alleged infringements/breaches occurred, or what alleged conduct constituted the infringements/breaches.

## III. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted); *see also DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999) ("Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition.").

As discussed more fully in MGM's Request for Judicial Notice, in ruling on a motion to dismiss, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss[,]" including documents "incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *accord Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). This "incorporation by reference" doctrine extends to situations where, as here, "the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the

authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *accord Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Coto*, 593 F.3d at 1038; *see also* RJN at 2-3.

A claim, ***or any portion thereof***, may be dismissed under Rule 12(b)(6) on the grounds that it is barred by the applicable statute of limitations where "the running of the statute is apparent on the face of the complaint." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006) (citations omitted) (internal quotation marks omitted); *accord Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) ("A statute-of-limitations defense, if 'apparent from the face of the complaint,' may properly be raised in a motion to dismiss." (citations omitted)).

## IV. ARGUMENT

### A. The Copyright Act's Three-Year Statute of Limitations Precludes Starz From Recovering Damages For More Than a Third of Its Alleged Copyright Claims as a Matter of Law.

The statute of limitations for a copyright infringement claim is three years. 17 U.S.C. §507(b). In *Petrella v. Metro-Goldwyn-Mayer Inc.*, the U.S. Supreme Court interpreted this statute to hold that ***no relief or recovery of any kind***, whether actual or statutory damages, is permitted under copyright law for infringing acts occurring more than three years prior to suit. 572 U.S. 663, 677 (2014) ("[A] successful plaintiff can gain retrospective relief only three years back from the time of suit. No recovery may be had for infringement in earlier years."). For 127 of the 340 titles at issue in this lawsuit, Starz's exclusive license expired—and any grant of copyrights conveyed in the Library Agreements reverted to MGM—by March 24, 2017, which is three years before the operative filing date of this lawsuit. Thus, all of Starz's copyright claims associated with these 127 titles—which total 381 counts (*viz.*, 127 for copyright infringement, 127 for contributory infringement, and 127 for vicarious infringement)—are barred as a matter of law and must be dismissed with prejudice. *See* Schedule A attached hereto, rows highlighted in green or yellow.

Regarding timeliness of copyright claims and recovery for copyright damages, the Supreme Court observed that "Congress provided two controlling time prescriptions: the copyright term, which endures for decades, and may pass from generation to another; and § 507(b)'s limitations period, which allows plaintiffs during that lengthy term to gain retrospective relief ***running only three years back*** from the date the complaint was filed." *Id.* at 672 (emphasis added). The Supreme Court held that these provisions worked in tandem to "allow[] a copyright owner to defer suit until she can estimate whether litigation is worth the candle," but expressly preclude "damages for periods prior to the three-year look-back." *Id.* at 682–83.

Thus, in expanding the rights of copyright holders to take as long as they want to bring a claim even where the infringement has been longstanding, the Supreme Court also made clear that the Copyright Act is a two-way street that limits the scope of recovery for such claims. In particular, the Court held that "[u]nder the Act's three-year provision, an infringement is actionable within three years, ***and only three years***, of its occurrence." *Id.* at 671 (emphasis added, citing 3 M. Nimmer & D. Nimmer, Copyright § 12.05[B][1][b], p. 12–150.4 (2013)). The Court observed that Section 507(b) "itself takes account of delay" by prescribing "a three-year look-back limitations period," such that "a successful plaintiff can gain retrospective relief ***only three years back*** from the time of suit." *Id.* at 670, 677 (emphasis added). The Supreme Court held unequivocally that "[n]o recovery may be had for infringement in earlier years. Profits made in those years remain the defendant's to keep." *Id.* at 677.

*Petrella* thus clearly bars a copyright plaintiff from obtaining relief for any infringement that occurred more than three years prior to the filing of the lawsuit, regardless of the circumstances. The Supreme Court acknowledged this potentially draconian aspect of what has become known as the "three-year look-back" damages bar in explaining why it declined to recognize laches as an equitable defense to a copyright claim. *See id.* at 685 ("Congress' time provisions secured to authors a copyright term of long duration, ***and a right to sue for infringement occurring no more than three***

***years back from the time of suit***. That regime leaves 'little place' for a doctrine that would further limit the timeliness of a copyright owner's suit." (emphasis added; citation omitted)).

Lest Starz complain that it only discovered the alleged infringements in 2019, the Second Circuit recently considered *Petrella*'s "three-year look-back" damages bar and held that the "discovery rule" did not allow a copyright plaintiff to recover damages for more than three years prior to filing suit. *Sohm v. Scholastic Inc.*, 959 F.3d 39, 51 (2d Cir. 2020). In *Sohm*, Scholastic argued that "independent of whether the injury or discovery rule applies, '[u]nder the [Copyright] Act's three-year provision, an infringement is actionable within three years, *and only three years*, of its occurrence,' and that 'the infringer is insulated from liability for earlier infringements of the same work.'" *Id.* (quoting *Petrella*, 572 U.S. at 671 (emphasis in original)). The Second Circuit agreed: "Despite not passing on the propriety of the discovery rule in *Petrella*, the Supreme Court explicitly delimited damages to the three years prior to the commencement of a copyright infringement action." *Id.* at 51. Resolving a split among its district courts, the Second Circuit conclusively determined that "*Petrella*'s plain language explicitly dissociated the Copyright Act's statute of limitations from its time limit on damages."[6] *Id.* at 52. Under *Petrella*, courts must therefore apply "a three-year

[6] The majority of district courts considering the issue prior to *Sohm* reached the same conclusion, though not uniformly. *See, e.g*, *Park v. Skidmore, Owings & Merrill LLP*, 2019 WL 9228987, at *3 (S.D.N.Y. Sept. 30, 2019) ("[T]he Copyright Act provides for a three-year lookback period – a plaintiff can bring a suit for any infringing actions in the three years before the filing date, but cannot recover damages for infringements occurring more than three years before filing."); *Papazian v. Sony Music Entm't*, 2017 WL 4339662, at *5 (S.D.N.Y. Sept. 28, 2017) ("[B]ecause the clear and specific three-year limitation on damages under section 507(b) was necessary to the result in *Petrella*, it cannot be construed as dicta."); *and Wu v. John Wiley & Sons, Inc.*, 2015 WL 5254885, at *7 (S.D.N.Y. Sept. 10, 2015) ("Following *Petrella*, Wu can recover damages only for any Wiley infringing acts that occurred [not more than three years prior to filing the action]."). *But cf. Menzel v. Scholastic, Inc.*, 2019 WL 6896145, at *6–7 (N.D. Cal. Dec. 18, 2019) (finding *Petrella* did not limit plaintiff to seeking "damages that were incurred within the three years prior to [his] filing suit"). *Sohm* is the first Court of Appeals to consider this issue and while its opinion is not binding on this Court, the Second Circuit declined to adopt the analysis in *Menzel* on this point. The result in *Menzel* is inconsistent with the Supreme Court's unequivocal language in *Petrella*, which ***is*** binding precedent that this Court must follow. *Sohm*, 959 F.3d at 52.

lookback period from the time a suit is filed to determine the extent of the relief available." *Id.* at 51–52. Accordingly, the Second Circuit reversed the district court's decision to the contrary and held that "under the Copyright Act, a plaintiff's recovery is limited to damages incurred during the three years prior to filing suit." *Id.* at 52.

Applying *Petrella* to the Starz Complaint, Starz cannot recover any copyright damages for the 127 titles with exclusivity windows that indisputably expired and reverted to MGM more than three years before Starz filed this lawsuit. To the extent Starz was damaged at all, Starz could not have suffered any copyright damages during a period when it no longer possessed a copyright. Because *Petrella* holds that a copyright plaintiff is limited to recovering for infringement that occurred within the three years prior to filing suit, all of the copyright claims associated with these 127 titles fail as a matter of law. And as *Sohm* expressly noted, no amendment can overcome this defect because the discovery rule and other equitable doctrines cannot overcome *Petrella*'s three-year look-back damages bar. Accordingly, this Court should dismiss the 127 counts highlighted (in yellow or green) in Schedule A with prejudice.

**B. The Court Should Dismiss Starz's Time-Barred Claims.**

**1. Starz's Copyright Claims Based on Infringement that Occurred Before March 24, 2017 Are Time-Barred as a Matter of Law.**

Independent of the retrospective damages bar imposed by *Petrella*, virtually all of Starz's causes of action for copyright infringement (Counts 1–340), contributory copyright infringement (Counts 341–680), and vicarious copyright infringement (Counts 681–1020) are time-barred under the Copyright Act insofar as Starz failed to commence this action within three years of the ***accrual*** of such claims. 17 U.S.C. § 507(b) ("No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."). "A claim ordinarily accrues 'when [a] plaintiff has a complete and present cause of action.'" *Petrella*, 572 U.S. at 670 (quoting *Bay Area Laundry and Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)). "A copyright claim thus arises or accrues when an

infringing act occurs." *Id.* (internal quotations and brackets omitted). Moreover, where successive violations of a copyright are alleged, each alleged wrong "gives rise to a discrete 'claim' that 'accrue[s]' at the time the wrong occurs." *Id.* at 671.

Here, Starz alleges that MGM's purported infringement of the titles at issue began "by at least 2015 (and potentially earlier)." Compl. ¶ 8. But apart from *Bill & Ted's Excellent Adventure* (and 22 other unspecified titles), *id.* ¶¶ 44, 46, Starz has not alleged any infringement occurring within the Copyright Act's three-year statute of limitations period. This pleading defect alone warrants dismissal of ***all*** but one of Starz's copyright claims. Starz's failure to allege a timely infringement or breach for nearly all of the purportedly infringed titles is no accident of notice pleading, as Starz knows that most of its claims are time-barred—hence its allegation that MGM's alleged conduct began in 2015 or earlier. Though a complaint alleging more than a thousand counts may sound impressive, neither the Court nor the parties should expend their resources to adjudicate hundreds of claims that Starz knows are not viable. At a minimum, the Court should require Starz to allege a timely infringement or breach for each title for which it can truthfully do so and the Court should dismiss the hundreds of counts for which Starz cannot.

***a. Starz cannot amend its Complaint to cure the fatal defect in more than a third of its copyright claims.***

What's more, the Library Agreements, which are incorporated into the Complaint by reference, establish that Starz can never plead a timely copyright claim for a substantial number of the titles at issue. Starz alleges that MGM infringed its copyrights, directly and indirectly, by licensing the rights for the 340 titles at issue to third parties during Starz's exclusive license windows. *Id.* ¶¶ 4, 63, 71–72, 77–78. Naturally, Starz cannot allege (nor has it alleged) any wrongdoing by MGM ***after*** the expiration of Starz's period of exclusivity for a particular title. Although Starz's Complaint does not detail the exclusive license period for any of the 340 titles Starz claims are at issue in this lawsuit, those periods are clearly delineated in the underlying agreements

themselves, which the Court may consider in ruling on this motion. *See Knievel*, 393 F.3d at 1076; *Coto*, 593 F.3d at 1038. Schedule A attached hereto shows that the exclusive license period for 127 titles identified in the Complaint expired at least three years before Starz filed this case, meaning that no infringement of these titles could have occurred within the past three years. Accordingly, the 381 copyright-related causes of action associated with these titles (127 counts for copyright infringement, 127 counts for contributory infringement, and 127 counts for vicarious infringement) are necessarily time-barred and unsalvageable by amendment. *See* 17 U.S.C. § 507(b).

***b. The "discovery rule" is unavailable here as a matter of law.***

In some circumstances, the accrual of a copyright claim may be tolled by the application of the so-called "discovery rule." Under this rule, the accrual of a copyright claim may be delayed until the earlier of when the plaintiff "has knowledge of a violation ***or is chargeable with such knowledge***.'" *In re Napster, Inc. Copyright Litig.*, 2005 WL 289977, at *3 (N.D. Cal. Feb. 3, 2005) (emphasis added) (quoting *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994)). To benefit from the discovery rule and avoid dismissal on statute-of-limitations grounds, "the facts alleged in the complaint must allow for the possibility that plaintiff[] [1] lacked actual knowledge of the alleged acts of infringement [until at most three years prior to filing suit]," and—as is especially relevant here—"'[2] that lack of knowledge ***was reasonable under the circumstances***.'" *Id.* (emphasis added) (quoting *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004)); *accord Goldberg v. Cameron*, 482 F. Supp. 2d 1136, 1148 (N.D. Cal. 2007).

Whether the plaintiff's alleged lack of knowledge was "reasonable" is an objective inquiry—*i.e.*, the court considers what "a reasonable copyright owner in [plaintiff's] position would have known." *Napster*, 2005 WL 289977, at *4; *accord Goldberg*, 482 F. Supp. 2d at 1148. Moreover, a "copyright owner has a 'duty of diligence' to investigate whether a cause of action for copyright infringement has accrued." *Napster*, 2005 WL 289977 at *4 (quoting *Polar Bear*, 384 F.3d at 707);

*accord Flowers v. Interscope Records, Inc.*, 2010 WL 11639969, at *2 (N.D. Cal. Nov. 15, 2010) ("[The] mere ignorance of a cause of action does not toll the statute of limitations . . . plaintiff has a duty of diligence.") (quoting *Polar Bear*, 384 F.3d at 707). Numerous courts have applied these precepts in finding infringement claims to be time-barred ***as a matter of law*** and thus appropriately dismissed on the pleadings. *See, e.g.*, *Napster*, 2005 WL 289977, at *4; *Goldberg*, 482 F. Supp. 2d at 1148.

For example, in *Minden Pictures, Inc. v. Buzzfeed, Inc.*, 390 F. Supp. 3d 461 (S.D.N.Y. 2019), a case involving allegations similar to those alleged here, the court dismissed as time-barred copyright claims relating to alleged infringement that occurred more than three years prior to the commencement of the action. *Id.* at 467. In *Minden*, the plaintiff, a photo licensing agency with exclusive rights to use and license 40 photos, alleged the defendant had infringed plaintiff's copyrights by posting the photos on defendant's website without authorization. *Id.* at 465. The lawsuit was commenced in 2018, but 24 of the 40 photos were posted on defendant's website between 2011 and 2014. *Id.* at 466. For those photos, defendant moved to dismiss the copyright claims as time-barred. *Id.* Plaintiff maintained that it did not discover the infringing acts until 2017 and 2018 and that it "had no reason prior to that discovery to know of Defendants' unauthorized uses[.]" *Id.* at 466–67. After observing that a copyright infringement claim "does not accrue until the copyright holder 'discovers, or with due diligence should have discovered, the infringement[,]" *id.* at 466, the court held that plaintiff's claims nevertheless must be dismissed because a copyright holder in plaintiff's position—that is, a sophisticated licensing company that has initiated lawsuits in the past to protect its copyrights—should have discovered, through the exercise of due diligence, that defendant was posting the photos on its website within the three-year limitations period. *Id.* at 467.

Likewise, the court in *Goldberg v. Cameron* dismissed copyright infringement claims as time-barred upon finding plaintiff's claimed lack of knowledge to be objectively "unreasonable," "[n]otwithstanding the [typically] factual nature of [that]

inquiry." 482 F. Supp. 2d at 1148. The plaintiff filed suit in 2005, alleging that the creators of the *Terminator* trilogy, which films were released in 1984, 1991, and 2003, had infringed his copyrighted screenplay and musical compositions. *Id.* at 1141–42. The defendant moved to dismiss on statute-of-limitations grounds, arguing the plaintiff was charged with knowledge of infringement as of the release date for each *Terminator* film. *Id.* at 1148. Plaintiff claimed that (1) he did not know of the infringement because he had "shunned[] all forms of electronic media" for over twenty years (including any "actual exposure to the Terminator movies") and (2) his alleged lack of knowledge presented an issue of fact precluding dismissal. *Id.* at 1143, 1148. The court disagreed, concluding that "based on the facts alleged in the complaint, no reasonable finder of fact could conclude that plaintiff's asserted lack of knowledge of the alleged infringement was reasonable." *Id.* at 1148.

As the *Goldberg* court explained, the popularity of the *Terminator* movies and their wide availability rendered it objectively "unreasonable to assert that plaintiff had zero exposure" to them. *Id.* Moreover, even "assuming [plaintiff] truly lacked actual knowledge until within the three-year limitations period," it was objectively "unreasonable for a 'successful song writer and producer'" who "is not a novice in this regard" to emerge from isolation years after the movies' release to commence a copyright infringement suit. *Id.* at 1148–49. The court thus concluded that the "lack of actual knowledge was unreasonable under the circumstances" as a matter of law and dismissed the claims. *Id.* at 1149.

Similar authorities compel dismissal of Starz's copyright claims based on alleged infringement that necessarily occurred more than three years before the commencement of this action, which at a minimum includes all 381 claims associated with the 127 titles whose periods of exclusivity expired before March 24, 2017. *See, e.g.*, *Napster*, 2005 WL 289977, at *2–3 (finding claims time-barred on 12(b)(6) motion because plaintiff could not "reasonably [be] ignorant" of infringement on web-based filesharing network); *Heidari v. Dog Ear Publ'g LLC*, 2012 WL 1980352, at *3 (N.D. Cal. June 1,

2012) (same, where "reasonable person in [plaintiff's] position" would have had notice outside limitations period).

Here, the Complaint alleges that MGM infringed Starz's copyrights in the titles at issue by permitting third parties to exhibit them on widely-accessible public platforms. Compl. ¶¶ 57, 62, 64, 70, 77. Starz maintains these exhibitions were known not only by distributors in the industry, but ordinary consumers. *Id.* ¶¶ 3, 42, 43, 55, 56. The entire premise of Starz's theory of injury is that widespread public awareness of third-party exhibitions of these titles harmed Starz's reputation and good will. *Id.* ¶ 60. Because Starz's allegations must be taken as true for purposes of this Motion, Starz cannot argue that it did not know ***or could not reasonably have known*** of the third-party exhibitions when they occurred, which Starz alleges occurred as early as 2015 (or even earlier). *Id.* ¶ 8.

Tellingly, when Starz investigated, it apparently had no difficulty identifying over 150 allegedly infringed titles. *Id.* ¶¶ 8, 46, 52. Starz offers no reason why such diligence was not (and could not have been) conducted earlier, particularly considering its assertion that content exclusivity is "vital" to its business and the infringement was so readily discoverable. *Id.* ¶¶ 24, 40. Starz's lack of diligence is all the more unreasonable considering that Starz claims to be a sophisticated, "leading provider" of premium subscription video programming that licenses content from multiple movie studios. *Id.* ¶¶ 5, 20, 22. As Starz is well aware, issues concerning overlapping license windows are not uncommon in the industry; indeed, like the plaintiff in *Minden*, Starz has previously sued a licensor to enforce its exclusive rights. *See STARZ Entm't LLC, v. Buena Vista Television Inc.*, Case No. 2:07-cv-1895 (C.D. Cal.) (filed March 22, 2007).

Starz cannot reasonably excuse its lack of diligence and claimed ignorance of the alleged infringement at the time the titles were publicly exhibited as a matter of law. The Court should therefore dismiss the 381 counts related to alleged infringement that necessarily occurred more than three years before Starz filed suit. *See Minden*, 390 F.

Supp. 3d at 467; *Goldberg*, 482 F. Supp. 2d at 1148; *Napster*, 2005 WL 289977, at *2–3; *Heidari*, 2012 WL 1980352, at *3.

**2. Starz's Breach of Contract and Implied-Covenant Claims Are Time-Barred For Alleged Breaches that Occurred Before March 24, 2016.**

Because a four-year statute of limitations governs breach-of-contract and implied-covenant claims, Starz's claims for breach of contract (Count 1021) and breach of the implied covenant of good faith and fair dealing (Count 1022) are substantially time-barred—specifically, portions of these claims arising from alleged breaches that occurred before March 24, 2016 are untimely. *See* Cal. Civ. Proc. Code § 337(a); *Krieger v. Nick Alexander Imps., Inc.*, 234 Cal. App. 3d 205, 221 (1991).

California law determines the timeliness of Starz's contract-based claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (federal court exercising supplemental jurisdiction over state law claims applies state law in same manner it would if sitting in diversity) *superseded by statute on other grounds as stated in Whalen v. Carter*, 954 F.2d 1087 (5th Cir. 1992); *Guar. Trust Co. of N.Y. v. York*, 326 U.S. 99, 109–10 (1945) (in diversity cases, state law on statute of limitations governs). Under California law, "[a] cause of action ordinarily accrues when, under the substantive law, the wrongful act is done and the obligation or liability arises." *Brisbane Lodging, L.P. v. Webcor Builders, Inc.*, 216 Cal. App. 4th 1249, 1257 (2013) (internal quotation marks omitted). Further, where each new breach of an obligation "provides all the elements of a claim—wrongdoing, harm, and causation—each may be treated as an independently actionable wrong with its own time limit for recovery." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1199 (2013) (citation omitted); *see also Tsemetzin v. Coast Fed. Sav. & Loan Ass'n.*, 57 Cal. App. 4th 1334, 1344 (1997) (holding separate claims arise and "the statute begins to run on such severable obligations from the time performance of each is due").

Here, the alleged "wrongful acts" involve MGM purportedly permitting third-party exhibitions of titles exclusively licensed to Starz in breach of the Library

Agreements. Compl. ¶¶ 85, 91. According to the Complaint, MGM allegedly began licensing the titles at issue to third parties by at least 2015 (and perhaps earlier). *Id.* ¶ 8. And save for *Bill & Ted's Excellent Adventure* and 22 unidentified titles, Starz does not allege that ***any*** breaches occurred within the last four years. *Id.* ¶ 44, 46. Moreover, as set forth in Schedule A attached hereto, the window of exclusivity for at least seven of the titles at issue (highlighted in green) expired more than four years before Starz filed this lawsuit, meaning that no breach could have possibly occurred within the limitations period for these titles. Accordingly, the Complaint and the Library Agreements facially demonstrate that Starz's contract-based claims are substantially time-barred.

Though California has recognized the discovery rule for contract-based claims, *Aryeh*, 55 Cal. 4th at 1192, Starz cannot revive its time-barred claims on this basis. Where, as here, the running of the statute of limitations is apparent from the face of the complaint and the documents incorporated therein, the plaintiff bears the burden of "anticipat[ing] the defense and plead[ing] facts to negative the bar." *Union Carbide Corp. v. Superior Court*, 36 Cal. 3d 15, 20 (1984); *accord Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005) (noting "[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show" the discovery rule's applicability); *Siddiqi v. JPMorgan Chase Bank, N.A.*, 2018 WL 7501123, at *2–3 (C.D. Cal. Nov. 30, 2018) (Gee, J.) (dismissing time-barred claim where complaint failed to "allege facts showing that [p]laintiff could not have reasonably discovered" the harmful action in time). Starz was thus required to specifically plead facts to show "'(1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.'" *Plumlee v. Pfizer, Inc.*, 664 F. App'x 651, 653 (9th Cir. 2016) (quoting *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal. 4th 623, 638 (2007)).

Starz fails to "allege any facts [indicating it] exercised reasonable diligence [before September 2019], or that [it] was unable to discover the factual bases for [its] claims [before September 2019] despite exercising reasonable diligence," *id.*, and even

more, the Complaint conclusively forecloses application of the discovery rule to Starz's claims. *NBCUniversal Media, LLC v. Superior Court*, 225 Cal. App. 4th 1222 (2014), is directly on point. There, the plaintiffs asserted claims for breach of implied contract and breach of confidence on the basis that the defendant developed a reality show using plaintiffs' ideas and concepts without permission and without compensating plaintiffs. *Id.* at 1225. Defendant sought summary judgment on the grounds that plaintiffs failed to timely file suit after the claim accrued, which defendant maintained was when the show premiered on a cable television channel. *Id.* at 1227. Plaintiffs opposed, arguing they were entitled to a later accrual date under the discovery rule because they did not see an episode of the show until a year after it premiered. *Id.* at 1227–28.

After the trial court denied defendant's motion, the California Court of Appeals vacated that order and issued a mandate ordering that the motion be granted. *Id*. at 1228. In so holding, the appellate court noted that for contract-based claims, the discovery rule was reserved "for certain, ***rather unusual breach of contract actions***," and that the discovery rule may be applied only to "breaches which can be, and are, ***committed in secret*** and, moreover, where the ***harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time***." *Id.* at 1233 (emphases added). Thus, after a show's initial exhibition on a publicly accessible cable channel, neither the breach nor the injury could be "hidden or beyond what the ordinary person could be expected to understand." *Id.* at 1234. Whether plaintiffs had actually seen the show was thus irrelevant because the "discovery rule does not operate to delay accrual of a cause of action 'beyond the point at which their factual basis became accessible to plaintiff to the same degree as it was accessible to every other member of the public.'" *Id.* at 1234. That the show was exhibited on a public cable channel, as opposed to a theatrical release, was likewise irrelevant because "public disclosure to even a limited audience is sufficient to preclude a plaintiff from arguing that the breach and injury were secretive and difficult to detect." *Id.* at 1235; *accord Hebrew Acad. of San Francisco v. Goldman*, 42 Cal. 4th 883, 888, 894–95 (2007) (discovery rule inapplicable where fewer

than 10 copies of transcripts containing defamatory statements were published and distributed to a limited audience).

Accordingly, because the discovery rule was inapplicable, plaintiffs' claim accrued as of the show's initial broadcast, rendering plaintiffs' claim time-barred. *NBCUniversal*, 225 Cal. App. 4th at 1234–35.  Federal courts have similarly held that, ***as a matter of law***, the discovery rule is inapplicable where the factual basis of plaintiff's claim was publicly disclosed.  *See, e.g.*, *Orkin v. Taylor*, 487 F.3d 734, 741–42 (9th Cir. 2007) (affirming 12(b)(6) dismissal of theft and conversion claims as time-barred because discovery rule was inapplicable where stolen paintings were sold at public auction); *Plumlee*, 664 F. App'x at 653 (affirming 12(b)(6) dismissal and finding discovery rule inapplicable where documents publicly available during the limitations period discussed facts underlying plaintiff's claims); *Valley Surgical Ctr. LLC. v. Cty. of L.A.*, 2016 WL 7017208, at *4–5 (C.D. Cal. Dec. 1, 2016) (citing *NBCUniversal* in granting 12(b)(6) dismissal on limitations grounds, noting allegedly tortious speeches could not "have been disseminated widely enough" outside limitations period to cause "loss of reputation or other harm without, at the same time, being notorious enough to put [plaintiff] on notice"); *Roth v. Am. Gen. Life Ins. Co.*, 2020 WL 2527053, at *4–5 (C.D. Cal. Feb. 7, 2020) (Gee, J.) (citing *NBCUniversal* and dismissing claims as time-barred on pleadings).

Here, Starz alleges that MGM breached the Library Agreements by permitting third parties to exhibit titles on various publicly available and widely accessible platforms, including "'free television', 'basic television', Subscription Video on Demand, or 'Pay Television.'"  Compl. ¶ 85; *see also id.* ¶ 91.  Starz does not allege these third party exhibitions were hidden or beyond what an ordinary person could be expected to discover.  Nor can it, given Starz's allegation that these third-party exhibitions caused injury to its reputation and good will because they were seen by industry participants and ordinary consumers alike, meaning they were also "notorious enough to put [Starz] on notice."  *Valley Surgical*, 2016 WL 7017208, at *4.  Indeed,

the exhibitions on third-party platforms "are alleged to have been harmful precisely because they were made in public. Accordingly, the discovery rule does not apply." *Id.*

Starz's allegation that it quickly discovered over 150 titles that MGM purportedly licensed to third parties by undertaking an internal investigation in 2019 further forecloses any application of the discovery rule. *See* Compl. ¶ 8, 44, 46. That Starz was so readily able to identify the claimed misconduct in 2019 precludes Starz from arguing that its claims were not reasonably discoverable by prior diligence, particularly given that (1) Starz is a sophisticated company; (2) it claims that exclusivity is vital to its entire business model; (3) it has the resources to ensure that its contracts are being complied with; and (4) it has a track record of bringing lawsuits against its licensors to enforce its rights. Starz is thus precluded from alleging that the exercise of reasonable diligence would have left it in the dark, especially considering its allegation that it identified additional collisions when it put its mind to it.

Because Starz's own allegations preclude application of the discovery rule, Starz cannot benefit from any tolling or delay of accrual of its contract-based claims. Accordingly, the Court should dismiss the breach-of-contract and implied-covenant claims to the extent they are based on an alleged breach that occurred more than four years before Starz filed suit, including, at minimum, any breach that occurred with respect to the seven titles whose period of exclusivity expired before March 24, 2016.

**C. Any Amendment Would be Futile.**

"Leave to amend should not be granted where the complaint is futile." *Burnett v. Twentieth Century Fox Film Corp.*, 491 F. Supp. 2d 962, 966 (C.D. Cal. 2007) (citing *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 991 (9th Cir. 1999)). Here, the facts alleged by Starz preclude any tolling of the accrual of its claims and no additional allegations may cure this untimeliness. *Fourstar v. Ness*, 276 F. App'x 661, 662 (9th Cir. 2008) (affirming dismissal without leave to amend when the action was barred by the statute of limitations); *Silver v. Hamrick & Evans, LLP*, 2019 WL 988686, at *4

(C.D. Cal. Jan. 4, 2019) (Gee, J.). Accordingly, MGM respectfully requests that the Court grant its motion to dismiss without leave to amend.

## V. CONCLUSION

For the foregoing reasons, MGM respectfully requests that the Court dismiss all of Starz's claims except those based on *Bill & Ted's Excellent Adventure* based on Starz's failure to plead infringement or breach within the applicable statute of limitations period. Further, for the copyright claims related to the 127 titles whose windows of exclusivity expired more than three years prior to the operative filing date of the Complaint, and for the breach of contract and implied-covenant claims related to the seven titles whose windows of exclusivity expired more than four years ago, the Court should dismiss these claims with prejudice and deny leave to amend.

DATED: July 6, 2020

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: /s/ *Jay P. Srinivasan*
JAY P. SRINIVASAN

Attorneys for Defendant
MGM DOMESTIC TELEVISION DISTRIBUTION LLC

# SCHEDULE A

DEFENDANT MGM DOMESTIC TELEVISION DISTRIBUTION LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS

# REDACTED VERSION

***UNREDACTED VERSION LODGED UNDER SEAL***

# Schedule A

| | Title | Start of Exclusivity Window(s) | End of Exclusivity Window(s) |
|---|---|---|---|
| 1 | 10 TO MIDNIGHT | | |
| 2 | ADVENTURES OF PRISCILLA QUEEN OF THE DESERT | | |
| 3 | AGENT CODY BANKS | | |
| 4 | AGENT CODY BANKS 2: DESTINATION LONDON | | |
| 5 | ALL DOGS GO TO HEAVEN 2 | | |
| 6 | ALLAN QUATERMAIN AND THE LOST CITY OF GOLD | | |
| 7 | AMERICAN NINJA | | |
| 8 | AMITYVILLE HORROR (1979), THE | | |
| 9 | AMITYVILLE HORROR (2005), THE | | |
| 10 | ANTI-TRUST | | |
| 11 | AT FIRST SIGHT | | |
| 12 | AUTUMN IN NEW YORK | | |
| 13 | AVENGING FORCE | | |
| 14 | BABY BOOM | | |
| 15 | BACK TO SCHOOL | | |
| 16 | BANDITS | | |
| 17 | BAT MASTERSON; television motion picture. No. 1015-19B | | |
| 18 | BAT MASTERSON; television motion picture. No. 1016-22B | | |
| 19 | BAT MASTERSON; television motion picture. No. 1017-20B | | |
| 20 | BAT MASTERSON; television motion picture. No. 1018-15B | | |
| 21 | BAT MASTERSON; television motion picture. No. 1019-21B | | |
| 22 | BAT MASTERSON; television motion picture. No. 1020-24B | | |
| 23 | BAT MASTERSON; television motion picture. No. 1021-23B | | |
| 24 | BAT MASTERSON; television motion picture. No. 1022-25B | | |
| 25 | BAT MASTERSON; television motion picture. No. 1023-26B | | |
| 26 | BAT MASTERSON; television motion picture. No. 1024-27B | | |
| 27 | BAT MASTERSON; television motion picture. No. 1025-28B | | |
| 28 | BAT MASTERSON; television motion picture. No. 1026-4B | | |
| 29 | BAT MASTERSON; television motion picture. No. 1027-30B | | |
| 30 | BAT MASTERSON; television motion picture. No. 1028-31B | | |
| 31 | BAT MASTERSON; television motion picture. No. 1029-29B | | |
| 32 | BAT MASTERSON; television motion picture. No. 1030-35B | | |
| 33 | BAT MASTERSON; television motion picture. No. 1031-34B | | |
| 34 | BAT MASTERSON; television motion picture. No. 1032-36B | | |
| 35 | BAT MASTERSON; television motion picture. No. 1033-37B | | |
| 36 | BAT MASTERSON; television motion picture. No. 1034-32B | | |
| 37 | BAT MASTERSON; television motion picture. No. 1036-33B | | |
| 38 | BAT MASTERSON; television motion picture. No. 1038-40B | | |
| 39 | BAT MASTERSON; television motion picture. No. 1039-38B | | |
| 40 | BAT MASTERSON; television motion picture. No. 1040-41B | | |
| 41 | BAT MASTERSON; television motion picture. No. 1041-44B | | |
| 42 | BAT MASTERSON; television motion picture. No. 1042-39B | | |
| 43 | BAT MASTERSON; television motion picture. No. 1043-43B | | |
| 44 | BAT MASTERSON; television motion picture. No. 1044-49B | | |
| 45 | BAT MASTERSON; television motion picture. No. 1045-42B | | |
| 46 | BAT MASTERSON; television motion picture. No. 1046-51B | | |
| 47 | BAT MASTERSON; television motion picture. No. 1047-55B | | |
| 48 | BAT MASTERSON; television motion picture. No. 1048-48B | | |
| 49 | BAT MASTERSON; television motion picture. No. 1049-47B | | |
| 50 | BAT MASTERSON; television motion picture. No. 1050-52B | | |
| 51 | BAT MASTERSON; television motion picture. No. 1051-57B | | |

| | Title | Start of Exclusivity Window(s) | End of Exclusivity Window(s) |
|---|---|---|---|
| 52 | BAT MASTERSON; television motion picture. No. 1052-56B | | |
| 53 | BAT MASTERSON; television motion picture. No. 1053-58B | | |
| 54 | BAT MASTERSON; television motion picture. No. 1054-61B | | |
| 55 | BAT MASTERSON; television motion picture. No. 1055-60B | | |
| 56 | BAT MASTERSON; television motion picture. No. 1056-64B | | |
| 57 | BAT MASTERSON; television motion picture. No. 1057-59B | | |
| 58 | BAT MASTERSON; television motion picture. No. 1058-63B | | |
| 59 | BAT MASTERSON; television motion picture. No. 1059-62B | | |
| 60 | BAT MASTERSON; television motion picture. No. 1060-65B | | |
| 61 | BAT MASTERSON; television motion picture. No. 1061-67B | | |
| 62 | BAT MASTERSON; television motion picture. No. 1062-69B | | |
| 63 | BAT MASTERSON; television motion picture. No. 1063-46B | | |
| 64 | BAT MASTERSON; television motion picture. No. 1064-66B | | |
| 65 | BAT MASTERSON; television motion picture. No. 1065-68B | | |
| 66 | BAT MASTERSON; television motion picture. No. 1066-70B | | |
| 67 | BAT MASTERSON; television motion picture. No. 1067-71B | | |
| 68 | BAT MASTERSON; television motion picture. No. 1068-72B | | |
| 69 | BAT MASTERSON; television motion picture. No. 1069-73B | | |
| 70 | BAT MASTERSON; television motion picture. No. 1070-54B | | |
| 71 | BAT MASTERSON; television motion picture. No. 1071-74B | | |
| 72 | BAT MASTERSON; television motion picture. No. 1072-53B | | |
| 73 | BAT MASTERSON; television motion picture. No. 1073-45B | | |
| 74 | BAT MASTERSON; television motion picture. No. 1074-50B | | |
| 75 | BAT MASTERSON; television motion picture. No. 1075-83B | | |
| 76 | BAT MASTERSON; television motion picture. No. 1076-78B | | |
| 77 | BAT MASTERSON; television motion picture. No. 1077-76B | | |
| 78 | BAT MASTERSON; television motion picture. No. 1078-84B | | |
| 79 | BAT MASTERSON; television motion picture. No. 1079-85B | | |
| 80 | BAT MASTERSON; television motion picture. No. 1080-86B | | |
| 81 | BAT MASTERSON; television motion picture. No. 1081-75B | | |
| 82 | BAT MASTERSON; television motion picture. No. 1082-89B | | |
| 83 | BAT MASTERSON; television motion picture. No. 1083-90B | | |
| 84 | BAT MASTERSON; television motion picture. No. 1084-77B | | |
| 85 | BAT MASTERSON; television motion picture. No. 1085-92B | | |
| 86 | BAT MASTERSON; television motion picture. No. 1086-80B | | |
| 87 | BAT MASTERSON; television motion picture. No. 1087-81B | | |
| 88 | BAT MASTERSON; television motion picture. No. 1088-88B | | |
| 89 | BAT MASTERSON; television motion picture. No. 1089-97B | | |
| 90 | BAT MASTERSON; television motion picture. No. 1090-94B | | |
| 91 | BAT MASTERSON; television motion picture. No. 1091-91B | | |
| 92 | BAT MASTERSON; television motion picture. No. 1092-100B | | |
| 93 | BAT MASTERSON; television motion picture. No. 1093-98B | | |
| 94 | BAT MASTERSON; television motion picture. No. 1094-102B | | |
| 95 | BAT MASTERSON; television motion picture. No. 1095-101B | | |
| 96 | BAT MASTERSON; television motion picture. No. 1096-104B | | |
| 97 | BAT MASTERSON; television motion picture. No. 1097-105B | | |
| 98 | BAT MASTERSON; television motion picture. No. 1098-95B | | |
| 99 | BAT MASTERSON; television motion picture. No. 1099-108B | | |
| 100 | BAT MASTERSON; television motion picture. No. 1100-93B | | |
| 101 | BAT MASTERSON; television motion picture. No. 1101-106B | | |
| 102 | BAT MASTERSON; television motion picture. No. 1102-107B | | |

| | Title | Start of Exclusivity Window(s) | End of Exclusivity Window(s) |
|---|---|---|---|
| 103 | BAT MASTERSON; television motion picture. No. 1103-99B | | |
| 104 | BAT MASTERSON; television motion picture. No. 1104-96B | | |
| 105 | BAT MASTERSON; television motion picture. No. 1105-103B | | |
| 106 | BAT MASTERSON; television motion picture. No. 1107-87B | | |
| 107 | BAT MASTERSON; television motion picture. No. 1108-82B | | |
| 108 | BAT MASTERSON; TV motion picture. No. 1001- 1B | | |
| 109 | BAT MASTERSON; TV motion picture. No. 1002- 5B | | |
| 110 | BAT MASTERSON; TV motion picture. No. 1003- 3B | | |
| 111 | BAT MASTERSON; TV motion picture. No. 1004- 7B | | |
| 112 | BAT MASTERSON; TV motion picture. No. 1005- 2B | | |
| 113 | BAT MASTERSON; TV motion picture. No. 1006- 11B | | |
| 114 | BAT MASTERSON; TV motion picture. No. 1007- 10B | | |
| 115 | BAT MASTERSON; TV motion picture. No. 1008- 12B | | |
| 116 | BAT MASTERSON; TV motion picture. No. 1009- 16B | | |
| 117 | BAT MASTERSON; TV motion picture. No. 1010- 18B | | |
| 118 | BAT MASTERSON; TV motion picture. No. 1011- 9B | | |
| 119 | BAT MASTERSON; TV motion picture. No. 1012- 6B | | |
| 120 | BAT MASTERSON; TV motion picture. No. 1013- 17B | | |
| 121 | BAT MASTERSON; TV motion picture. No. 1014- 14B | | |
| 122 | BAT MASTERSON; TV motion picture. No. 1035- 13B | | |
| 123 | BAT MASTERSON; TV motion picture. No. 1036- 13B | | |
| 124 | BAT MASTERSON; TV motion picture. No. 1037- 8B | | |
| 125 | BE COOL | | |
| 126 | BEAUTY SHOP | | |
| 127 | BEST MEN | | |
| 128 | BILL & TED'S EXCELLENT ADVENTURE | | |
| 129 | BIO-DOME | | |
| 130 | BIRDCAGE, THE | | |
| 131 | BLACK CAESAR | | |
| 132 | BLACK STALLION, THE | | |
| 133 | BLACULA | | |
| 134 | BLOODSPORT | | |
| 135 | BLOW OUT | | |
| 136 | BLOWN AWAY | | |
| 137 | BLUE STEEL | | |
| 138 | BLUE VELVET | | |
| 139 | BOWLING FOR COLUMBINE | | |
| 140 | BREAKHEART PASS | | |
| 141 | BRIDGE TOO FAR, A | | |
| 142 | BULL DURHAM | | |
| 143 | BULLETPROOF MONK | | |
| 144 | CARE BEARS MOVIE, THE | | |
| 145 | CARRIE (1976) | | |
| 146 | CARRIE (2002) | | |
| 147 | CHILD'S PLAY (1988) | | |
| 148 | CHINA MOON | | |
| 149 | CHITTY CHITTY BANG BANG | | |
| 150 | CLAMBAKE | | |
| 151 | CLASS | | |
| 152 | CODE OF SILENCE | | |
| 153 | COLORS | | |

| | Title | Start of Exclusivity Window(s) | End of Exclusivity Window(s) |
|---|---|---|---|
| 154 | CROCODILE HUNTER: COLLISION COURSE, THE | | |
| 155 | CUTTING EDGE, THE | | |
| 156 | DANCES WITH WOLVES | | |
| 157 | DARK BLUE | | |
| 158 | DARK HALF, THE | | |
| 159 | DEATH RIDES A HORSE | | |
| 160 | DEATH WISH 3 | | |
| 161 | DEATH WISH 4: THE CRACKDOWN | | |
| 162 | DEATH WISH II | | |
| 163 | DELIRIOUS | | |
| 164 | DE-LOVELY | | |
| 165 | DELTA FORCE 2: THE COLUMBIAN CONNECTION | | |
| 166 | DELTA FORCE, THE | | |
| 167 | DESPERATELY SEEKING SUSAN | | |
| 168 | DIAMONDS ARE FOREVER | | |
| 169 | DIE ANOTHER DAY | | |
| 170 | DIGGSTOWN | | |
| 171 | DIRTY ROTTEN SCOUNDRELS | | |
| 172 | DIRTY WORK | | |
| 173 | DISTURBING BEHAVIOR | | |
| 174 | DOUBLE IMPACT | | |
| 175 | DR. NO | | |
| 176 | DRESSED TO KILL | | |
| 177 | DUCK, YOU SUCKER | | |
| 178 | EVERYTHING YOU ALWAYS WANTED TO KNOW ABOUT SEX | | |
| 179 | EXTREMITIES | | |
| 180 | F/X | | |
| 181 | FALCON AND THE SNOWMAN, THE | | |
| 182 | FAME (2009) | | |
| 183 | FARGO (1996) | | |
| 184 | FATAL BEAUTY | | |
| 185 | FIDDLER ON THE ROOF | | |
| 186 | FISH CALLED WANDA, A | | |
| 187 | FISTFUL OF DOLLARS, A | | |
| 188 | FLAWLESS | | |
| 189 | FLED | | |
| 190 | FLESH + BLOOD | | |
| 191 | FLUKE | | |
| 192 | FOR A FEW DOLLARS MORE | | |
| 193 | FOR US, THE LIVING | | |
| 194 | FOR YOUR EYES ONLY | | |
| 195 | FRENCH LIEUTENANT'S WOMAN, THE | | |
| 196 | FRIDAY FOSTER | | |
| 197 | FROM NOON TILL THREE | | |
| 198 | GANG RELATED | | |
| 199 | GET SHORTY | | |
| 200 | GETTING EVEN WITH DAD | | |
| 201 | GHOST WORLD | | |
| 202 | GHOULIES | | |
| 203 | GHOULIES II | | |
| 204 | GOLDENEYE | | |

| | Title | Start of Exclusivity Window(s) | End of Exclusivity Window(s) |
|---|---|---|---|
| 205 | GOOD, THE BAD AND THE UGLY, THE | | |
| 206 | GREAT TRAIN ROBBERY, THE | | |
| 207 | GUNS OF THE MAGNIFICENT SEVEN | | |
| 208 | HACKERS | | |
| 209 | HAIR | | |
| 210 | HANG 'EM HIGH | | |
| 211 | HANNIBAL | | |
| 212 | HARD RIDE, THE | | |
| 213 | HART'S WAR | | |
| 214 | HEARTBREAKERS (2001) | | |
| 215 | HOME OF THE BRAVE | | |
| 216 | HOODLUM | | |
| 217 | HORSE SOLDIERS, THE | | |
| 218 | HOUR OF THE GUN | | |
| 219 | I'M GONNA GIT YOU SUCKA | | |
| 220 | INTO THE BLUE | | |
| 221 | INVASION OF THE BODY SNATCHERS | | |
| 222 | INVASION U.S.A. | | |
| 223 | JACKIE ROBINSON STORY, THE | | |
| 224 | JEEPERS CREEPERS | | |
| 225 | JEEPERS CREEPERS 2 | | |
| 226 | JOHNNY BE GOOD | | |
| 227 | JOURNEY TO THE CENTER OF THE EARTH | | |
| 228 | KALIFORNIA | | |
| 229 | KILL ME AGAIN | | |
| 230 | KILLER KLOWNS FROM OUTER SPACE | | |
| 231 | LADY VANISHES, THE | | |
| 232 | LARGER THAN LIFE | | |
| 233 | LEGALLY BLONDE 2: RED, WHITE & BLONDE | | |
| 234 | LICENCE TO KILL | | |
| 235 | LIFEFORCE | | |
| 236 | LITTLE MAN TATE | | |
| 237 | LIVE AND LET DIE | | |
| 238 | LIVING DAYLIGHTS, THE | | |
| 239 | LONE WOLF MCQUADE | | |
| 240 | LORD OF ILLUSIONS, CLIVE BARKER'S | | |
| 241 | MAD MAX | | |
| 242 | MAGNIFICENT SEVEN (1960), THE | | |
| 243 | MAGNIFICENT SEVEN RIDE!, THE | | |
| 244 | MAN IN THE IRON MASK, THE | | |
| 245 | MAN WITH THE GOLDEN GUN, THE | | |
| 246 | MANCHURIAN CANDIDATE, THE | | |
| 247 | MIAMI BLUES | | |
| 248 | MIDNIGHT COWBOY | | |
| 249 | MISSING IN ACTION | | |
| 250 | MISSING IN ACTION 2: THE BEGINNING | | |
| 251 | MISSISSIPPI BURNING | | |
| 252 | MISSOURI BREAKS, THE | | |
| 253 | MOD SQUAD, THE | | |
| 254 | MONKEY SHINES: AN EXPERIMENT IN FEAR | | |
| 255 | MOONRAKER | | |

| | Title | Start of Exclusivity Window(s) | End of Exclusivity Window(s) |
|---|---|---|---|
| 256 | MOONSTRUCK | | |
| 257 | MOTEL HELL | | |
| 258 | MR. MOM | | |
| 259 | MYSTIC PIZZA | | |
| 260 | NAVAJO JOE | | |
| 261 | NEVER SAY NEVER AGAIN | | |
| 262 | NICHOLAS NICKLEBY | | |
| 263 | NO MAN'S LAND | | |
| 264 | NO WAY OUT | | |
| 265 | OCTOPUSSY | | |
| 266 | OKLAHOMA TERRITORY | | |
| 267 | ON HER MAJESTY'S SECRET SERVICE | | |
| 268 | ORGANIZATION, THE | | |
| 269 | ORIGINAL GANGSTAS | | |
| 270 | OUT OF TIME | | |
| 271 | OVERBOARD | | |
| 272 | PACKAGE, THE | | |
| 273 | PEBBLE AND THE PENGUIN, THE | | |
| 274 | PINK PANTHER (1964), THE | | |
| 275 | PINK PANTHER, THE | | |
| 276 | POLTERGEIST II: THE OTHER SIDE | | |
| 277 | POLTERGEIST III | | |
| 278 | POPE OF GREENWICH VILLAGE, THE | | |
| 279 | POSSE | | |
| 280 | PUMPKINHEAD | | |
| 281 | PUMPKINHEAD II: BLOOD WINGS | | |
| 282 | PURPLE ROSE OF CAIRO, THE | | |
| 283 | QUIGLEY DOWN UNDER | | |
| 284 | RADIO DAYS | | |
| 285 | RAGE: CARRIE 2, THE | | |
| 286 | RAGING BULL | | |
| 287 | RAIN MAN | | |
| 288 | RED DAWN (1984) | | |
| 289 | RED RIDING HOOD | | |
| 290 | RED RIVER | | |
| 291 | REMO WILLIAMS: THE ADVENTURE BEGINS... | | |
| 292 | RESCUE DAWN | | |
| 293 | RETURN TO ME | | |
| 294 | RIVER OF DEATH | | |
| 295 | ROAD HOUSE | | |
| 296 | ROBOCOP (1987) | | |
| 297 | RONIN | | |
| 298 | SABATA | | |
| 299 | SABOTAGE | | |
| 300 | SECRET OF NIMH, THE | | |
| 301 | SHE-DEVIL | | |
| 302 | SLEEPOVER | | |
| 303 | SOME GIRLS | | |
| 304 | SOMETHING WILD (1986) | | |
| 305 | SOUL PLANE | | |
| 306 | SPECIES | | |

| | Title | Start of Exclusivity Window(s) | End of Exclusivity Window(s) |
|---|---|---|---|
| 307 | SPECIES II | | |
| 308 | SPECIES III | | |
| 309 | SPECIES: THE AWAKENING | | |
| 310 | STARGATE | | |
| 311 | STARGATE: CONTINUUM | | |
| 312 | STIGMATA | | |
| 313 | STREET SMART | | |
| 314 | SUPERNOVA | | |
| 315 | SUPPORT YOUR LOCAL GUNFIGHTER | | |
| 316 | SUPPORT YOUR LOCAL SHERIFF! | | |
| 317 | TALES OF TERROR | | |
| 318 | TEEN WOLF (1985) | | |
| 319 | TEEN WOLF TOO | | |
| 320 | TERMINATOR, THE | | |
| 321 | TERROR IN A TEXAS TOWN | | |
| 322 | THELMA & LOUISE | | |
| 323 | THIEF | | |
| 324 | THOMAS CROWN AFFAIR (1999), THE | | |
| 325 | THROW MOMMA FROM THE TRAIN | | |
| 326 | THUNDERBOLT AND LIGHTFOOT | | |
| 327 | TOMORROW NEVER DIES | | |
| 328 | TRAIL OF THE PINK PANTHER | | |
| 329 | UNFORGIVEN, THE | | |
| 330 | VALDEZ IS COMING | | |
| 331 | VALKYRIE | | |
| 332 | VAMPIRE'S KISS | | |
| 333 | WE'LL NEVER HAVE PARIS | | |
| 334 | WHAT'S THE WORST THAT COULD HAPPEN? | | |
| 335 | WICKER PARK | | |
| 336 | WILD BILL | | |
| 337 | WINDTALKERS | | |
| 338 | WITCHBOARD | | |
| 339 | WORLD IS NOT ENOUGH, THE | | |
| 340 | YOU ONLY LIVE TWICE | | |