Steven M. Goldberg (State Bar No. 82174)
sgoldberg@mzclaw.com
MARKUN ZUSMAN FRENIERE
COMPTON LLP
3 Hutton Centre Dr., 9th Floor
Santa Ana, CA 92707
Telephone:  (310) 454-5900
Facsimile:  (310) 454-5970

Evan R. Chesler (N.Y. Bar No. 1475722)
(*Pro hac vice*)
echesler@cravath.com
J. Wesley Earnhardt (N.Y. Bar No. 4331609)
(*Pro hac vice*)
wearnhardt@cravath.com
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

Robert N. Klieger (State Bar No. 192962)
rklieger@hueston.com
HUESTON HENNIGAN LLP
523 West 6th St., Suite 400
Los Angeles, CA 90014
Telephone:  (213) 788-4340
Facsimile:  (888) 775-0898

*Attorneys for Plaintiff Starz Entertainment, LLC*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### Western Division

| | |
|---|---|
| STARZ ENTERTAINMENT, LLC,<br><br>                                 Plaintiff,<br><br>v.<br><br>MGM DOMESTIC TELEVISION<br>DISTRIBUTION LLC,<br><br>                                 Defendant. | No.  2:20-CV-04085 DMG (KSx)<br><br>**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Judge:         Hon. Dolly M. Gee<br>Hearing Date: Sept. 11, 2020<br>Time:          9:30 a.m.<br>Courtroom:     8C, 8th Floor |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................. ii

Preliminary Statement ...............................................................................1

Factual Background ..................................................................................3

Argument..................................................................................................6

I.   Applicable Legal Standard ................................................................6

II.  Starz's Copyright Infringement Claims Are Not Barred by the Statute of
     Limitations. ....................................................................................7

     A.   Starz's Copyright Infringement Claims Are Timely Because the
          Claims Accrued, at the Earliest, in August 2019. ...............................7

     B.   Starz Adequately Alleges a Timely Infringement for All
          Copyright Infringement Claims. ..........................................................16

III. Starz's Copyright Infringement Damages Are Not Limited by the
     Copyright Act's Statute of Limitations. ..........................................17

IV.  Starz's Contract Claims Are Not Barred by the Statute of Limitations.........22

Conclusion ...........................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarado Orthopedic Research, L.P. v. Linvatec Corp.*,
No. 11-CV-246-IEG RBB, 2013 WL 2351814 (S.D. Cal. May 24,
2013) .................................................................................................24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................6

*BMG Rights Mgmt. (US) LLC v. Glob. Eagle Entm't Inc.*,
No. 2:18-CV-03723-VAP, 2019 WL 4544424 (C.D. Cal. Aug. 20,
2019) ...............................................................................8, 9, 13, 19

*Broberg v. The Guardian Life Ins. Co. of Am.*,
171 Cal. App. 4th 912 (Cal. Ct. App. 2009).....................................24

*Carr v. AutoNation Inc.*,
No. 2:17-CV-01539-JAM-AC, 2018 WL 341692 (E.D. Cal. Jan. 8,
2018) .................................................................................................24

*Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*,
106 F.3d 284 (9th Cir. 1997) ..............................................................4

*Design Basics, LLC v. Chelsea Lumber Co.*,
977 F. Supp. 2d 714 (E.D. Mich. 2013) ..............................................9

*Design Basics, LLC v. McNaughton Co.*,
No. 3:17-CV-258, 2017 WL 11068761 (M.D. Pa. Nov. 15, 2017)...................20

*D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc.*,
No. 17-CV-747-LM, 2019 WL 188696 (D.N.H. Jan. 14, 2019).................18, 20

*El Pollo Loco, Inc. v. Hashim*,
316 F.3d 1032 (9th Cir. 2003) ..........................................................23

*Energy Intel. Grp., Inc. v. CHS McPherson Refinery, Inc.*,
300 F. Supp. 3d 1356 (D. Kan. 2018)................................................21

*Flores v. Gain Cap. Grp., LLC*,
    No. CV 17-7873-DMG (EX), 2018 WL 7501120 (C.D. Cal.
    Dec. 21, 2018) .................................................................................... 6

*Free Speech Sys., LLC v. Menzel*,
    390 F. Supp. 3d 1162 (N.D. Cal. 2019) ................................ 8, 9, 12, 13

*Frerck v. John Wiley & Sons, Inc.*,
    No. 11-CV-2727, 2014 WL 3512991 (N.D. Ill. July 14, 2014) ........... 9

*Goldberg v. Cameron*,
    482 F. Supp. 2d 1136 (N.D. Cal. 2007) ...................................... 13, 14

*Grisham v. Philip Morris, Inc.*,
    670 F. Supp. 2d 1014 (C.D. Cal. 2009) .............................................. 7

*Gryczman v. 4550 Pico Partners, Ltd.*,
    107 Cal. App. 4th 1 (Cal. Ct. App. 2003) ......................................... 23

*Heidari v. Dog Ear Pub. LLC*,
    No. 5:12-CV-00558-PSG, 2012 WL 1980352 (N.D. Cal. June 1,
    2012) ................................................................................................ 15

*Imageline Inc. v. Tacony Corp.*,
    No. SACV 09-353CJC (MLGx), 2009 WL 10676056 (C.D. Cal.
    June 16, 2009) .............................................................................. 16, 17

*In re Napster, Inc. Copyright Litig.*,
    No. C 04-3004 MHP, 2005 WL 289977 (N.D. Cal. Feb. 3, 2005) ............. 10, 13

*Jordan v. United States*,
    No. 15-cv-1199 BEN (NLS), 2015 WL 5919945 (S.D. Cal. Oct. 8,
    2015) ................................................................................................ 22

*Judd v. Weinstein*,
    No. CV 18-5724-PSG, 2018 WL 7448914 (C.D. Cal. Sept. 19,
    2018) .................................................................................................. 6

*Krist v. Scholastic, Inc.*,
    253 F. Supp. 3d 804 (E.D. Pa. 2017) ................................................ 20

*MacLean Assocs., Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc.*,
    952 F.2d 769 (3d Cir. 1991) .............................................................. 9

iii

*Marvel Enters., Inc. v. NCSoft Corp.*,
  No. CV 04-9253RGKPLAX, 2005 WL 878090 (C.D. Cal. Mar. 9,
  2005) ...........................................................................................................16

*Menzel v. Scholastic, Inc.*,
  No. 17-CV-05499-EMC, 2019 WL 6896145 (N.D. Cal. Dec. 18,
  2019) ................................................................................................18, 19, 21

*Minden Pictures, Inc. v. Buzzfeed, Inc.*,
  390 F. Supp. 3d 461 (S.D.N.Y. 2019) .........................................14, 15

*Mitchell v. Capitol Recs., LLC*,
  287 F. Supp. 3d 673 (W.D. Ky. 2017)................................................20

*NBCUniversal Media, LLC v. Superior Court*,
  225 Cal. App. 4th 1222 (Cal. Ct. App. 2014)....................................25

*Panoramic Stock Images, Ltd. v. McGraw-Hill Glob. Educ. Holdings,
  LLC*, No. 12 C 9881, 2015 WL 393381 (N.D. Ill. Jan. 27, 2015).....................21

*Perez-Encinas v. AmerUs Life Ins. Co.*,
  468 F. Supp. 2d 1127 (N.D. Cal. 2006)..............................................23

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
  167 F. Supp. 2d 1114 (C.D. Cal. 2001) ..............................................16

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
  572 U.S. 663 (2014)..............................................................passim

*Polar Bear Prods., Inc. v. Timex Corp.*,
  384 F.3d 700 (9th Cir. 2004) ..............................................passim

*Psychic Readers Network, Inc. v. Take-Two Interactive Software, Inc.*,
  No. 17-61492-CIV, 2018 WL 3846046 (S.D. Fla. Aug. 13, 2018)...................20

*Raucci v. Candy & Toy Factory*,
  145 F. Supp. 3d 440 (E.D. Pa. 2015)..................................................21

*Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC*,
  733 F.3d 1251 (9th Cir. 2013) ..............................................................6

*Sohm v. Scholastic Inc.*,
  959 F.3d 39 (2d Cir. 2020) ........................................................18, 21, 22

iv

*Solo v. Dawson*,
No. CV 09-05623 MMM, 2010 WL 11508000 (C.D. Cal. Feb. 8, 2010) ...................................................................................8, 9, 12, 13

*Stewart v. Wachowski*,
No. CV03-2873 MMM, 2004 WL 5618385 (C.D. Cal. Sept. 28, 2004) ...................................................................................................7

*Supermail Cargo, Inc. v. United States*,
68 F.3d 1204 (9th Cir. 1995) ...........................................................8

*Syed v. M-I, LLC*,
853 F.3d 492 (9th Cir. 2017) ................................................passim

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*,
No. CV 14-3466-GW(JPRX), 2016 WL 3457179 (C.D. Cal. Apr. 20, 2016) .............................................................................9, 13, 20

*Wakefield v. Olenicoff*,
679 F. App'x 591 (9th Cir. 2017) ...................................................9

*Warren Freedenfeld Assocs., Inc. v. McTigue*,
531 F.3d 38 (1st Cir. 2008) .............................................................9

*Yue v. MSC Software Corp.*,
No. 15-CV-05526-PJH, 2016 WL 3913001 (N.D. Cal. July 20, 2016) .............................................................................................19

**Statutes & Rules**

17 U.S.C. § 106 ................................................................................8

17 U.S.C. § 507(b) ...............................................................7, 17, 20

Cal. Code Civ. Proc. § 337(a) ......................................................23

Fed. R. Civ. P. 8(a)(2) ..................................................................22

Fed. R. Civ. P. 12(b)(6) .............................................................6, 22

## **Preliminary Statement**

MGM Domestic Television Distribution LLC ("MGM") does not contest the core allegations against it.  MGM does not dispute that it breached the Parties' 2013 and 2015 Library Agreements by licensing to third parties the rights to hundreds of movies and television episodes it already had licensed exclusively to Starz Entertainment, LLC ("Starz").  MGM instead blames its breach on "error[s]" concerning "human input and operation" of its rights-tracking database that caused overlapping "collisions" of exclusivity, which, according to MGM, it was not aware of until "the matter first surfaced and MGM provided a preliminary assessment in November 2019."  (Defendant MGM's Motion to Dismiss ("MTD") at 1-2.)  MGM's motion thus confirms what Starz alleges in the Complaint and simultaneously illustrates the difficulty of discovering these "collisions"—not even MGM knew of MGM's breach until late 2019.

MGM also does not dispute the straightforward legal principle that a breach of an exclusive license gives rise both to breach of contract claims and copyright infringement claims.  Rather, MGM seeks to dismiss hundreds of Starz's claims at the pleading stage as untimely, arguing that Starz should have discovered MGM's breaches and infringements years before even MGM did, and that a three-year "damages bar" limits Starz's damages to those incurred within three years of Starz filing its Complaint.  MGM's arguments fail as a matter of law and its motion should be denied in its entirety.

***Copyright Infringement Statute of Limitations.***  A copyright infringement claim must be brought within three years of when it accrues.  Pursuant to the Ninth Circuit's discovery rule, a copyright infringement claim does not accrue until the injured party discovers or reasonably should have discovered the infringement.  At the pleading stage, "[a] complaint cannot be dismissed [for untimeliness] unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim."  *Syed v. M-I, LLC*, 853 F.3d

492, 507 (9th Cir. 2017) (citation omitted).  Here, to succeed on its motion to dismiss, it is MGM's burden to show "beyond doubt" that on the face of the Complaint there is "no set of facts" under which it would have been reasonable for Starz to discover MGM's infringement when it actually did.  *Id.*  MGM cannot make that showing.

As pleaded in the Complaint, Starz reasonably did not discover MGM's infringement until August 2019.  Starz exclusively licenses thousands of movies and television episodes from various sources during discrete exclusivity windows of assorted lengths that begin and end at different times.  Whether Starz owns the copyright to a particular picture at a particular point in time turns on the language of its various contracts.  To monitor in real time whether its copyrights are being infringed, Starz would need to check *every distribution platform* (cable, satellite, Amazon, etc.), *every day*, against *every exclusivity window*, for *every picture* licensed to Starz.  That would be an unreasonably heavy burden.

To avoid that onerous burden with respect to the pictures it licensed from MGM, while still protecting its valuable copyrights, Starz bargained for an explicit contractual commitment from MGM that it "has not taken or authorized, and will not take or authorize, any action by which any of the rights in any Picture granted herein by MGM to [STARZ] have been or may be materially impaired in any way." (Compl. ¶¶ 31, 36.)  Starz reasonably relied on MGM's contractual commitments and exclusivity promises to protect its copyrights from infringement.  Despite that, ***Starz not only discovered MGM's breach before MGM did***, Starz promptly brought the issue to MGM's attention, and—once Starz realized MGM did not take its massive infringement seriously—Starz quickly brought suit, demonstrating that Starz's discovery time frame was reasonable.  At a minimum, the question of whether it was reasonable for Starz to discover the infringement when it did is a question of fact for the jury, not an issue to be decided at the pleading stage, as numerous courts in the Ninth Circuit have held.  (*Infra* § II.)

***Purported Copyright Infringement "Damages Bar".***  MGM argues that, even for timely claims, Starz's copyright infringement damages are limited to those incurred during the three years before Starz filed the Complaint.  That is not the law in the Ninth Circuit.  In *Polar Bear Products, Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004), the Ninth Circuit ***expressly rejected*** the rule that MGM now asks the Court to impose.  And numerous courts in the Ninth Circuit have held that *Polar Bear* remains good law following the Supreme Court's decision in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014)—the source of the dicta on which MGM relies.  MGM does not even mention, let alone distinguish, the Ninth Circuit's binding holding in *Polar Bear*.

MGM also claims that "[t]he majority of district courts considering the issue" have adopted MGM's proposed rule.  (MTD at 11 n.6.)  That is not so.  In fact, no court outside of the Second Circuit has done so.  Every court outside of the Second Circuit to consider this issue after *Petrella* has held that, when the discovery rule applies, a plaintiff is entitled to recover damages dating back to the initial infringements.  And that is for good reason.  MGM's proposed rule would lead to perverse incentives—companies that successfully conceal lengthy copyright infringements would obtain a windfall, which is precisely what MGM is seeking to obtain here.  (*Infra* § III.)

***Breach of Contract Statute of Limitations.***  MGM seeks to dismiss Starz's breach of contract claims for seven Pictures for which the exclusivity windows expired over four years before the Complaint was filed.  Because the discovery rule also applies to contract claims, Starz's breach of contract claims are timely for the same reasons as are its copyright infringement claims.  (*Infra* § IV.)

## Factual Background

Starz's lawsuit concerns two agreements—the 2013 and 2015 Library Agreements—pursuant to which MGM granted Starz an exclusive license to 761

movies and television episodes (the "Pictures").[1]  (Compl. ¶¶ 2, 37.)  Pursuant to the terms of the Library Agreements, MGM granted Starz the exclusive right to exhibit the Pictures during the time periods specified therein.  (*Id*. ¶ 7.)  Starz did not have the exclusive right to exhibit the Pictures for the entire life of the Library Agreements; rather, Starz had the exclusive right to exhibit each Picture for a specified window of time.  (*Id*. ¶¶ 22, 37.)  Those windows of exclusivity, which are outlined in exhibits to the Library Agreements, range from one month to over a year and vary from Picture to Picture, with some Pictures having multiple windows of exclusivity.  (*Id*. ¶ 37; *see also* MTD Sch. A.)

Rather than take on the burdensome and difficult task of continually monitoring MGM's exclusivity compliance across all platforms on a Picture-by-Picture basis in real time, Starz bargained for contractual promises from MGM that it "has not taken or authorized, and will not take or authorize, any action by which any of the rights in any Picture granted herein by MGM to [STARZ] have been or may be materially impaired in any way."  (Compl. ¶¶ 31, 36.)  MGM breached both the promise to grant exclusive copyrights and the promise not to impair those rights, and recently admitted as much.  (*Id*. ¶ 2.)

In August 2019, a Starz employee happened to notice that *Bill & Ted's Excellent Adventure* was available on Amazon when it should have been exclusive to Starz.  (*Id*. ¶¶ 10, 44.)  This was the first time that Starz became suspicious that MGM may have violated the terms of the Library Agreements.  Starz immediately notified MGM of the discovery; MGM stated that it was unaware of the breach but would "dig into" the issue.  (*Id*. ¶ 44.)  On August 13,

---

[1] MGM argues that Starz "misleadingly counts each episode of a television series as a separate, individual" Picture.  (MTD at 4 n.3.)  But that is the law:  each episode of a television series is considered a separate "work" for purposes of copyright infringement claims.  *Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284, 295-96 (9th Cir. 1997), *rev'd on other grounds*, *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998).

2019, MGM admitted that *Bill & Ted's Excellent Adventure* had been improperly licensed to a third party.  (*Id.* ¶ 45.)

On September 11, 2019, MGM claimed that it had found the source of the problem.  (*Id.* ¶ 47.)  To comply with its contractual obligations not to "impair" Starz's copyrights (*Id.* ¶¶ 31, 36), MGM had in place a rights tracking system meant to track its exclusively licensed material to ensure Starz's copyrights would not be offered to other licensees.  (*Id.* ¶ 50.)  According to MGM, a defect in that system led MGM repeatedly to breach its exclusivity grants to Starz; in September 2019, MGM claimed it did not know about the defect, or the resulting breaches and infringements, until Starz brought the issue to MGM's attention.  (*Id.* ¶¶ 11, 47.)

But the issues did not end there.  Even after Starz brought the issue to MGM's attention, MGM appeared to have difficulty determining how many times it had infringed Starz's copyrights.  For example, on September 30, 2019, MGM provided Starz with a list of 22 Pictures it had infringed.  (*Id.* ¶ 48.)  But when Starz asked MGM on October 18, 2019 for assurances that MGM had otherwise complied with the terms of the Library Agreements (*Id.* ¶ 49), MGM responded on November 1, 2019 by identifying ***an additional 222 Pictures*** that it had licensed to third parties during times when they should have been exclusive to Starz.  (*Id.* ¶ 50.)  MGM again blamed its faulty rights tracking system.  (*Id.*)  At that point, Starz lost faith in MGM's ability to monitor its own licensing activities, and undertook an expensive and time consuming investigation of its own, which revealed ***nearly 100 additional infringements*** that MGM apparently had not found despite having a system set up specifically to monitor this activity.  (*Id.* ¶¶ 52, 53.)

As Starz pleaded, discovery is necessary to unveil the full scope of MGM's breach.  (*Id.* ¶ 53.)  Even today—after months of diligent investigation with the help of outside experts—Starz still likely has not "discovered" the full extent of MGM's infringements given the inherent difficulty in tracking all the licensed titles across all potential infringing platforms.

On March 24, 2020, six months after Starz first reached out to MGM to discuss its concerns, and after extensive back and forth between the Parties, the Parties entered into a Tolling Agreement; March 24, 2020 is therefore treated as the effective filing date of the Complaint (MTD at 2 n.1; Ex. C).  After discussions reached an impasse, Starz filed its Complaint on May 4, 2020.

**Argument**

## I.    Applicable Legal Standard

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In evaluating the sufficiency of a complaint, all factual allegations are accepted as true. *Id*. (citing *Twombly*, 550 U.S. at 555).

There is a "high hurdle for asserting statute of limitations defenses at the MTD stage". *Flores v. Gain Cap. Grp., LLC*, 2018 WL 7501120, at *3 (C.D. Cal. Dec. 21, 2018) (Gee, J.).  The Ninth Circuit has held that a statute of limitations defense may be raised on a motion to dismiss only "if apparent from the face of the complaint." *Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (citation and internal marks omitted).  In particular, "[a] complaint cannot be dismissed [for untimeliness] unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *See Syed*, 853 F.3d at 507 (citation omitted).

The standard is particularly difficult where the statute of limitations incorporates a discovery rule because whether the discovery rule tolls the statute of limitations is a "fact-specific question" and, typically, "[c]ourts do not resolve factual issues like these on a motion to dismiss." *Judd v. Weinstein*, 2018 WL

6

7448914, at *4 (C.D. Cal. Sept. 19, 2018). Even "summary judgment is rarely proper where the statute of limitations runs from when plaintiff discovered or should have discovered the elements of the cause of action." *Grisham v. Philip Morris, Inc.*, 670 F. Supp. 2d 1014, 1021 (C.D. Cal. 2009) (citation and internal marks omitted).

**II.   Starz's Copyright Infringement Claims Are Not Barred by the Statute of Limitations.**

MGM argues that Starz's copyright infringement claims for 127 Pictures[2] should be dismissed as untimely because the infringement of those Pictures occurred over three years ago. MGM's argument fails.

   A.   Starz's Copyright Infringement Claims Are Timely Because the Claims Accrued, at the Earliest, in August 2019.

A copyright infringement claim must be "commenced within three years after the claim *accrued.*" 17 U.S.C. § 507(b) (emphasis added). A claim does not accrue upon the act of infringement. "Rather, it is only when a plaintiff knows or should know of the infringement that the claim accrues and the statute [of limitations] begins to run." *Stewart v. Wachowski*, 2004 WL 5618385, at *3 (C.D. Cal. Sept. 28, 2004).

To succeed on its motion to dismiss, MGM has the burden to establish "beyond doubt" that Starz, based on the facts pleaded in the Complaint, reasonably should have discovered MGM's infringements before March 24, 2017. *Syed*, 853 F.3d at 507. If there is any set of facts pursuant to which it would have been reasonable for Starz to have discovered MGM's infringement after March 24,

---

[2] There are, at most, 126 Pictures at issue. It appears MGM included the film *Carrie (2002)* as one of the 127 Pictures MGM claims had license windows that expired before March 24, 2017. (MTD at 3; *see also* MTD Sch. A, Row 146.) MGM, however, failed to recognize that Starz also had an exclusivity window for *Carrie (2002)* in the 2015 Library Agreement that did not expire until after March 24, 2017, again underscoring the difficulty of discovering the infringements at issue. (*See* 2015 Library Agm't [Dkt. 26-03] at A-3.)

2017, Starz's claims are timely pled.  *See Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995) (reversing dismissal on timeliness grounds because plaintiff "may be able to prove a set of facts under which this action would be timely").  MGM cannot carry its heavy burden.

MGM's primary argument seems to be that the discovery rule should not apply here because the Pictures were infringed via exhibition on "public platforms".  (MTD at 17; *see also id.* at 2 ("Yet despite the alleged open and notorious nature of MGM's alleged conduct, Starz did not file suit until May 2020.").)  That is not—and cannot be—the appropriate test.  Almost all copyright infringements occur publicly; the very basis of a copyright is the right to exclude others from publicly exhibiting protected material.  *See* 17 U.S.C. § 106 (defining a copyright holder's exclusive rights as the rights "to distribute . . . the copyrighted work *to the public*", "to perform the copyrighted work *publicly*" and "to display the copyrighted work *publicly*" (emphasis added)).

Were public exhibition enough to defeat the discovery rule, the discovery rule would be rendered toothless, and virtually every copyright infringement claim would need to be brought within three years of infringement.  That, of course, is not the law.  *See, e.g.*, *Solo v. Dawson*, 2010 WL 11508000, at *14-16 (C.D. Cal. Feb. 8, 2010) (denying motion to dismiss due to application of the discovery rule despite alleged infringement occurring in an album that reached the Billboard #1 spot and received a Grammy nomination); *Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1170-71 (N.D. Cal. 2019) (denying motion to dismiss due to application of the discovery rule despite alleged infringements being posted on defendant's public website for at least six years before discovery); *BMG Rights Mgmt. (US) LLC v. Glob. Eagle Entm't Inc.*, 2019 WL 4544424, at *4 (C.D. Cal. Aug. 20, 2019) (rejecting argument that plaintiff was on notice of "open and notorious" use of its copyrighted music on airline playlists, even though at least nine of plaintiff's employees had traveled on airlines offering those playlists);

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 2016 WL 3457179, at *3 (C.D. Cal. Apr. 20, 2016) (same).

Similarly, contrary to MGM's assertions (MTD at 14-15, 17), a copyright holder's "duty of diligence" does not impose a continuous obligation to monitor for infringement; rather, suspicious events must put the copyright holder on reasonable notice to investigate further before any duty of diligence is triggered. If there were the continuous obligation MGM envisions, every plaintiff who had its copyrights infringed on widely available public sources would have been expected to have discovered the infringement when it occurred; again, that is not the law. *See Wakefield v. Olenicoff*, 679 F. App'x 591, 592 (9th Cir.) (applying the discovery rule to public infringements), *cert. denied*, 138 S. Ct. 211 (2017); *Solo*, 2010 WL 11508000, at *14-16 (C.D. Cal. Feb. 8, 2010) (same); *Free Speech*, 390 F. Supp. at 1170-71 (same); *BMG Rights Mgmt.*, 2019 WL 4544424, at *4 (C.D. Cal. Aug. 20, 2019) (same); *UMG Recordings*, 2016 WL 3457179, at *3 (C.D. Cal. Apr. 20, 2016) (same). Rather, "the duty to investigate is not always in the wind" because "inquiry notice must be triggered by some event or series of events that comes to the attention of the aggrieved party." *Warren Freedenfeld Assocs., Inc. v. McTigue*, 531 F.3d 38, 44 (1st Cir. 2008) (internal citations omitted). "The familiar aphorism teaches that where there is smoke there is fire; but smoke, or something tantamount to it, is necessary to put a person on inquiry notice that a fire has started." *Id.*[3]

---

[3] *See also MacLean Assocs., Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc.*, 952 F.2d 769, 780 (3d Cir. 1991) (rejecting defendant's argument because it "would have put [plaintiff] under a never ending obligation to discover whether anyone to whom he ever supplied his software would copy it. The Copyright Act does not recognize such an obligation."); *Design Basics, LLC v. Chelsea Lumber Co.*, 977 F. Supp. 2d 714, 725 (E.D. Mich. 2013) ("[I]t would be unreasonably burdensome to impose on a copyright owner a never ending obligation to discover whether anyone to whom he ever supplied his [copyrighted material] would copy it."(citations and internal marks omitted)); *Frerck v. John Wiley & Sons, Inc.*, 2014

Starz fulfilled its duty of diligence here.  It first secured a contractual commitment from MGM, the initial owner of each of the copyrights, that MGM would not take any steps to impair Starz's rights.  (Compl. ¶¶ 31, 36.)  That was enough reasonably to protect Starz from infringement *at the hands of MGM*.  Then, at the first sign of "smoke"—Starz's discovery that *Bill & Ted's Excellent Adventure* was available on Amazon during a window of known exclusivity—Starz quickly investigated the issue.  Starz promptly asked MGM about the apparent infringement and conducted its own investigation when MGM's answers were unsatisfactory and it appeared MGM itself could not keep track of the places the Pictures were available.  (*Id*. ¶¶ 44, 46.)  It was only after this investigation that Starz learned that MGM had failed to comply with its contractual commitments on a massive scale.  (*Id*. ¶¶ 49-50.)

MGM mistakenly relies on *In re Napster, Inc. Copyright Litig.*, 2005 WL 289977 (N.D. Cal. Feb. 3, 2005).  There, Napster—which was widely known for unlawful music sharing—"intentionally and *boastfully*" performed "billions of acts of infringement of copyrighted musical compositions".  *Id*. at *3.  Given plaintiff's ownership of "thousands of such works", the court held that plaintiffs should "have been on notice of the possibility that some of their works were being infringed by" Napster and, therefore, should have investigated the matter sooner. *Id.* (internal marks omitted).  Here, unlike the defendant in *Napster*, MGM has not identified any event prior to August 2019 that should have put Starz on notice of MGM's infringing activity.  MGM is nothing like Napster—MGM was not subject to public scrutiny for its infringing activity; it did not publicly boast about its infringements; it had promised Starz that it would *not* take any action to impair

---

WL 3512991, at *6 (N.D. Ill. July 14, 2014) ("If that were the expectation, then stock photo agencies and photographers likely would spend more money monitoring their licenses than they receive from issuing licenses.").

Starz's copyrights; and, unlike Napster, MGM claimed it was unaware of its own infringements until it was confronted by Starz.  (Compl. ¶ 11.)

MGM's argument that Starz should have discovered the infringements earlier because it was a "sophisticated" industry participant is also untenable. (MTD at 17.)  As pleaded in the Complaint, it was perfectly reasonable for Starz not to have discovered MGM's infringing activity until August 2019.  Identifying an infringement here is not as simple as seeing that one of the "585 movies and 176 television series episodes" that MGM licensed to Starz was being exhibited on another platform.  (Compl. ¶ 37.)  The Library Agreements granted Starz the exclusive right to exhibit the 761 Pictures only for specific windows of exclusivity that varied in length for each Picture, some of which were as short as one month. (*Id.*; MTD Sch. A.)  The windows for each Picture also began at different points during the term of the Library Agreements, with some windows beginning shortly after their execution and others beginning years later.  (Compl. ¶ 37; MTD Sch. A.) Pictures could—and likely did—appear on third party platforms during the term of the Library Agreements without constituting copyright infringement, so long as the exhibition did not overlap with a Starz window of exclusivity.

For Starz to have known that a Picture was being infringed, Starz would not only have had to see a Picture being exhibited on a third party's platform, but also would have needed to know that, at that point in time, the Picture was currently in a window of Starz exclusivity.  With thousands of movies in Starz's "large, rotating" library (Compl. ¶ 23), to discover an infringement upon the act of exhibition—as MGM suggests Starz should have done—Starz would have needed to monitor the offerings of *every* third-party platform that exhibits movies or television episodes, *every* day, against *every exclusivity window*, to ensure that *every* title in Starz's rotating library at that time was not being infringed, all despite Starz having obtained from MGM a binding commitment that it would not take any act that would allow a third party to infringe Starz's rights.

The law does not impose such an onerous burden on copyright holders, even sophisticated ones.  To the contrary, courts have repeatedly applied the discovery rule to deny motions to dismiss where the infringing activity was far more apparent and far more easily discoverable than the infringements here.

For example, in *Solo*, the plaintiff alleged that the defendants had copied plaintiff's musical compositions for use in various albums, with one album becoming a Billboard #1 hit and Grammy nominee.  2010 WL 11508000, at *2, 2 n.17 (C.D. Cal. Feb. 8, 2010).  One of the allegedly copied songs became the infringing band's "top iTunes download" and appeared publicly in commercials, television shows and video games.  *Id*.  The plaintiff alleged that he discovered the infringement more than three years after the song's release "while watching [MTV] one evening".  *Id.* at *16.  Despite the infringement being apparent merely from hearing the song (without any need to check complicated windows of exclusivity), and despite plaintiff owning two production companies and being an "experienced music professional who could be expected to be aware of certain high profile events", "the court [was] unable to conclude on a motion to dismiss" that the plaintiff "should have been on notice" earlier.  *Id*.

Likewise, in *Free Speech*, Menzel, a photographer, sued the website Infowars for posting his copyrighted pictures on its website six years earlier.  390 F. Supp. 3d 1162 (N.D. Cal. 2019).  InfoWars argued that Menzel had a "habit of searching for infringement", as evidenced by him having filed eight copyright infringement suits between 2015 and 2018, including at least three involving these same photographs, and easily could have located instances of infringement through a Google reverse image search.  *Id.* at 1170.  The court, however, accepted Menzel's position that he had not accessed the Infowars website and held that "Menzel's pleading does not establish as a matter of law that his delay in filing suit was unreasonable."  *Id.*

In *BMG Rights Mgmt.*, the court denied summary judgment on a statute of limitations defense despite "open and notorious" infringements of musical rights through publicly available playlists.  2019 WL 4544424, at *4 (C.D. Cal. Aug. 20, 2019).  The court in *UMG Recordings* reached the same conclusion, holding that plaintiff's copyright infringement claims were timely, despite defendant's "open and notorious" infringement.  2016 WL 3457179, at *3 (C.D. Cal. Apr. 20, 2016).

The plaintiffs in *Solo*, *Free Speech*, *BMG Rights Mgmt.*, and *UMG Recordings* were able to discover the infringements much more easily than Starz could have here.  Yet, in each case, the court ruled for plaintiffs on the ground that it was potentially reasonable for plaintiffs not to have discovered the infringement.

Even the cases cited by MGM support Starz's reasonableness here because they illustrate the extreme circumstances that must be present to warrant dismissal under the discovery rule.  Apart from *Napster*, MGM cites three cases to argue that the discovery rule should not apply.

In the first, *Goldberg v. Cameron*, 482 F. Supp. 2d 1136 (N.D. Cal. 2007), the plaintiff alleged that *The Terminator* movies copied portions of the plot from plaintiff's movie script.  But the plaintiff did not file suit until 2005—over twenty years after *The Terminator* was first released.  *Id*. at 1143.  Without even pleading when "he learned of the alleged infringement", plaintiff sought application of the discovery rule because he "had embarked upon a [twenty-year] spiritual Yoga path wherein [he] was not only removed from, and [sic] shunned, all forms of electronic media and, most certainly, any media and actual exposure to the Terminator movies." *Id*. at 1143, 1148.  The court found it implausible that the plaintiff did not acquire actual knowledge of the infringement more than three years before he filed the complaint, holding that "the similarities are such that [it] would be difficult to tell his and the accused works apart, [and] practically any exposure would have reasonably resulted in actual knowledge of infringement."

*Id.* at 1148.  Because the court found it "unreasonable to assert that plaintiff had zero exposure" to the "exceedingly popular" *The Terminator* "in the twenty-one years following its release", the court dismissed the claims as untimely.  *Id*.

Starz's claims are nothing like those at issue in *Goldberg*.  Starz's claims involve hundreds of movies and television episodes exhibited over multiple distribution channels over an extended time period, not a single blockbuster movie that has become a cultural icon.  Starz bargained for contractual assurances that MGM would protect its grant of exclusivity; Goldberg embarked on a 20-year yoga retreat after sharing his movie script with third parties without obtaining any contractual protection at all.  The infringement in *Goldberg* would have been apparent from "practically any exposure" to *The Terminator* movie; the infringement here cannot be established without comparing numerous exclusivity windows to the content of dozens of distribution platforms.  Starz's behavior was reasonable and its lack of actual knowledge is plausible; Goldberg's was not.

In MGM's second cited case, *Minden Pictures, Inc. v. Buzzfeed, Inc.*, 390 F. Supp. 3d 461, 467 (S.D.N.Y. 2019), the Southern District of New York held (in an out-of-circuit non-binding opinion) that the Second Circuit's discovery rule did not apply.  In that case, plaintiff was "a seasoned litigator that ha[d] filed 36 lawsuits to protect its copyrights", over the very same photographs at issue, in the approximately eight years preceding the lawsuit in question.  *Id*. at 465, 467.  Buzzfeed moved to dismiss some of the claims as untimely.  In response, "Minden Pictures provide[d] no explanation for its delayed filing of [its] lawsuit beyond its allegation that it had no reason to discover the alleged infringement prior to 2017."  *Id*. at 467.  As a result, the court dismissed 24 of Minden's claims.

Again, *Minden* is nothing like this case.  Unlike the plaintiff in *Minden*, Starz has alleged the difficulty it faced in discovering the infringements earlier, and, unlike the plaintiff in *Minden*, Starz had secured a contractual commitment from the defendant that the defendant would not take any action to

infringe its copyrights.  Moreover, the plaintiff in *Minden* had filed 36 lawsuits against other defendants for infringing the very same copyrights at issue in that case.  MGM argues that "Starz has previously sued a licensor to enforce its exclusive rights".  (MTD at 17.)  But MGM cites a single Starz case *from 13 years ago*, which was against a different licensor and did not involve any of the copyrights at issue here, and, therefore, has no bearing on whether Starz reasonably should have discovered MGM's infringements before August 2019.

In MGM's third cited case, *Heidari v. Dog Ear Pub. LLC*, 2012 WL 1980352, at *3 (N.D. Cal. June 1, 2012), plaintiff sued her publisher for copyright infringement because it published her book without her consent.  Plaintiff's claims were dismissed as untimely because she had *actual notice* of the infringements over three years before filing—her book agent "told her specifically that she may have a claim for copyright infringement, once again, before February 3, 2009." *Id.* Because there is no question—and MGM does not contest—that Starz did not actually discover MGM's infringement until August 2019, *Heidari* lends MGM no support.

Finally, "Starz's theory of injury" is not inconsistent with its statute of limitations position.  (MTD at 17.)  Starz did not allege—nor do its claims rely upon—a theory that consumers and distributors knew that MGM had breached the Library Agreements.  Starz was injured when consumers were able to watch on other platforms movies and television episodes that should have been exclusively on Starz.  Likewise, Starz was injured when distributors saw movies appearing on Starz's competitors' platforms, time and again, when the movies should have been available only on Starz.  Starz's injury stems from the public exhibition of works that belonged exclusively to Starz, even though consumers and distributors knew nothing about the underlying cause—MGM's breach of the Library Agreements. Starz's claims accrued when Starz discovered the infringements, not before.

15

B.   <u>Starz Adequately Alleges a Timely Infringement for All Copyright Infringement Claims.</u>

Because the discovery rule applies, all of Starz's copyright claims are timely, and the Court need not reach MGM's argument concerning whether Starz pleaded enough facts to establish that the infringements occurred within the preceding three years.  (MTD at 13.)  Put differently, because, at a minimum, Starz's claims should be deemed at this stage to have accrued in August 2019, all of Starz's claims are timely, irrespective of when the infringements occurred, as Starz sued a few months later.

To the extent MGM argues that Starz is required to plead the date each Picture was infringed, that is not the law.  Courts have explicitly and repeatedly held that plaintiffs' claims for copyright infringement are not "insufficiently pleaded because it does not include dates of the alleged infringement".  *Imagineline Inc. v. Tacony Corp.*, 2009 WL 10676056, at *2 (C.D. Cal. June 16, 2009) (rejecting defendant's argument that the claims were insufficient because the pleadings did not include dates for the alleged infringement where the plaintiff "attached the allegedly infringing images to the Complaint"); *see also Marvel Enters., Inc.  v. NCSoft Corp.*, 2005 WL 878090, at *2 (C.D. Cal. Mar. 9, 2005) (denying motion to dismiss because "[p]laintiffs are not required to specify each and every instance of infringement" nor "identify the times, similarities, or other details of the alleged infringements in their pleadings").  This is particularly true where a plaintiff alleges the infringement of hundreds of works, such as Starz alleges here.  *See Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114, 1120 (C.D. Cal. 2001) (holding that a copyright infringement complaint alleging "the existence of hundreds, even thousands" of infringements does not "[r]equir[e] a statement of each and every example").  Starz attached as an exhibit to the Complaint a list of every Picture currently known to

16

have been infringed by MGM, which is more than sufficient.  *See, e.g.*, *Imageline*, 2009 WL 10676056, at *2.

**III.   Starz's Copyright Infringement Damages Are Not Limited by the Copyright Act's Statute of Limitations.**

Independent of its timeliness argument, MGM argues that Starz should not be entitled to recover damages for any infringement that occurred more than three years before Starz filed the Complaint, "regardless of the circumstances."  (MTD at 9-12.)  MGM's argument contradicts—and ignores—binding Ninth Circuit precedent holding that, because the discovery rule applies, Starz may recover damages dating back to the first infringement.

The Ninth Circuit considered exactly this issue in *Polar Bear*, 384 F.3d at 706, noting that "[h]ere, [defendant] . . . asks us to rule that § 507(b) prohibits copyright plaintiffs from obtaining any damages resulting from infringement occurring more than three years before filing the copyright action, regardless of the date the plaintiff discovered the infringement."  In rejecting the precise argument MGM now makes, the Ninth Circuit held:  "***We conclude that § 507(b) permits damages occurring outside of the three-year window***, so long as the copyright owner did not discover—and reasonably could not have discovered—the infringement before the commencement of the three-year limitation period."  *Id.* (emphasis added).  Applying that holding to the facts at issue, the Ninth Circuit explained that "[b]ecause Polar Bear did not discover Timex's infringement until within three years of filing suit, Polar Bear may recover damages for infringement that occurred outside of the three-year window."  *Id.* Like the plaintiff in *Polar Bear*, Starz did not discover MGM's infringement until within three years of filing suit, and is therefore entitled to recover damages outside of the three-year window.  (*Supra* § II.A.)

MGM does not even acknowledge the Ninth Circuit's controlling holding in *Polar Bear*, let alone attempt to counter or distinguish it.  Rather than

confront the Ninth Circuit's holding in *Polar Bear*, MGM relies upon dicta from a later decided Supreme Court case, *Petrella v. Metro-Goldwyn-Mayer, Inc*., 572 U.S. 663 (2014), and a recent out-of-circuit summary judgment decision, *Sohm v. Scholastic Inc.*, 959 F.3d 39 (2d Cir. 2020).  (*See* MTD at 9-12.)

In *Petrella*, the Supreme Court considered whether defendants could rely on the equitable defense of laches to shorten the Copyright Act's three-year statute of limitations.  Importantly, the plaintiff in *Petrella* was not seeking damages outside of the three-year window—nor was she seeking to invoke the discovery rule—so questions related to the interplay of those two doctrines were never presented to the Court.  572 U.S. at 674-75 (noting that Petrella filed suit "on January 6, 2009" and "sought relief only for acts of infringement occurring on or after January 6, 2006").  In fact, the Supreme Court explicitly declined to analyze the interaction of the discovery rule and copyright damages, acknowledging in a footnote that, although the plaintiff was not invoking the discovery rule, the "overwhelming majority" of Courts of Appeals apply it.  *Id.* at 670 n.4 (citation omitted).  The Supreme Court elected not to "pass[] on the question" of its application in the case at hand.  *Id.*  The Supreme Court had no occasion to consider, let alone decide, whether a plaintiff relying on the discovery rule can recover damages outside of the Copyright Act's three year limitations period.

Accordingly, as multiple courts have held, the language MGM quotes from *Petrella* is dicta.  *See Menzel v. Scholastic, Inc.*, 2019 WL 6896145, at *6 (N.D. Cal. Dec. 18, 2019) (holding that "*Petrella* is not on point because, in the case, the plaintiff never sought damages outside of the three-year period before the filing of the complaint"); *see also D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc.*, 2019 WL 188696, at *3 (D.N.H. Jan. 14, 2019) (noting that the same language MGM relies on from *Petrella* was "dicta", because *Petrella* "was a case about laches, and the holding is limited to that issue" (citation omitted)).

In fact, numerous courts in the Ninth Circuit have recognized that *Polar Bear* remains good law—and binding precedent—even after the dicta in *Petrella*. As a result, courts in the Ninth Circuit continue to hold that plaintiffs are entitled to recover copyright damages outside of the three-year window, so long as the discovery rule applies.

*Menzel* rejects the identical argument MGM makes here. In *Menzel*, the court held that the same language from *Petrella* on which MGM relies is dicta—"isolate[d] language . . . from the broader context of the case"—because the Supreme Court was applying the injury rule for the purpose of accrual and the plaintiff in *Petrella* was not seeking damages outside the three-year window. 2019 WL 6896145, at *6. The court held that "*Petrella* did not clearly create a damages bar independent of a time bar" because "[t]he discovery rule and the ability to recover damages consistent with that rule was not at issue." *Id.* The court then ruled that, "because *Petrella* did not clearly create a damages bar independent of the limitations bar, *Polar Bear* continues to be binding precedent on this Court, and, in *Polar Bear*, the Ninth Circuit made clear that a plaintiff can be awarded *damages* outside of the three-year period before the filing of his complaint." *Id.* at *7.

Likewise, in *Yue v. MSC Software Corp.*, 2016 WL 3913001, at *1 (N.D. Cal. July 20, 2016), the court reaffirmed the holding of *Polar Bear* when it addressed "the issue of the damages available for copyright claims in light of the Supreme Court's decision in *Petrella*" in the context of the appropriate discovery period for copyright infringement claims. The court held that "the Ninth Circuit's decision in *Polar Bear Products* remains binding precedent in this circuit" and, therefore, permitted the plaintiff to extend the discovery period for his copyright claims if he could show that the discovery rule applied to his claims. *Id.*

Similarly, in *BMG Rights Mgmt.*, the court denied defendants' motion for summary judgment and cited the central holding from *Polar Bear* in rejecting

19

defendants' argument that recovery on the "copyright infringement claims should be limited to Defendants' conduct occurring in the three years before this action was filed." 2019 WL 4544424, at *4.  The court in *UMG Recordings* reached the same conclusion, citing the operative language from *Polar Bear*—that Ninth Circuit law "permits damages occurring outside of the three-year window"—in ruling for plaintiff on a motion for summary judgment on the statute of limitations. 2016 WL 3457179, at *1.

The Ninth's Circuit's position is not an outlier.  We have found ***no court outside of the Second Circuit*** that has held that plaintiffs proceeding under the discovery rule are barred from recovering damages for copyright infringement outside the three-year window.  And numerous courts from around the country have held exactly the opposite—that *Petrella* did not set a damages bar.  *See, e.g.*, *D'Pergo Custom Guitars, Inc.*, 2019 WL 188696, at *3 (finding language from *Petrella* about limiting damages to be "dicta", as *Petrella* "was a case about laches, and the holding is limited to that issue"); *Design Basics, LLC v. McNaughton Co.*, 2017 WL 11068761, at *4–5 (M.D. Pa. Nov. 15, 2017) ("Until instructed otherwise by the Third Circuit or the Supreme Court, we shall continue to apply the discovery rule to interpret § 507(b) and decline to bifurcate that provision to include a separate damages limitation."); *Mitchell v. Capitol Recs., LLC*, 287 F. Supp. 3d 673, 678 (W.D. Ky. 2017) (rejecting argument that *Petrella* creates a damages bar because that reading "effectively obliterates the discovery rule"); *Krist v. Scholastic, Inc.*, 253 F. Supp. 3d 804, 811-12, 812 n.44 (E.D. Pa. 2017) (rejecting argument that *Petrella* creates a damages bar and noting that the discovery rule could allow recovery of damages prior to three years preceding the complaint); *Psychic Readers Network, Inc. v. Take-Two Interactive Software, Inc.*, 2018 WL 3846046, at *1 (S.D. Fla. Aug. 13, 2018) (rejecting argument that *Petrella* creates a damages bar and noting that "several courts subsequent to

*Patrella* [sic] have ruled that a plaintiff in a copyright case may recover damages beyond the three-year statute of limitations").

District courts in circuits that apply the discovery rule continue to hold after *Petrella* that plaintiffs may recover damages outside of the three-year window, implicitly rejecting any purported damages bar created by *Petrella*. *See, e.g.*, *Energy Intel. Grp., Inc. v. CHS McPherson Refinery, Inc.*, 300 F. Supp. 3d 1356, 1366, 1371 (D. Kan. 2018) (citing *Petrella* and noting that the discovery rule could allow recovery of damages prior to three years preceding the complaint); *Raucci v. Candy & Toy Factory*, 145 F. Supp. 3d 440, 448 (E.D. Pa. 2015) (same); *Panoramic Stock Images, Ltd. v. McGraw-Hill Glob. Educ. Holdings, LLC*, 2015 WL 393381, at *2-3 (N.D. Ill. Jan. 27, 2015) (same).

Against this backdrop, MGM cites *Sohm v. Scholastic Inc.*, 959 F.3d 39 (2d Cir. 2020), a recent Second Circuit decision for which the plaintiffs have filed a petition for rehearing *en banc* that has not yet been ruled upon, and (i) argues that this Court should apply the rule announced by the Second Circuit in *Sohm* even though it contradicts the rule announced by the Ninth Circuit in *Polar Bear* (whose holding MGM does not even mention); and (ii) states that "the majority of district courts considering the issue prior to *Sohm* reached the same conclusion". (MTD at 11 n.6, 12.) The first point is misguided, the second is simply not true. Significantly more district court decisions have rejected the rule announced in *Sohm* than have adopted it. And perhaps more importantly, not a single court outside of the Second Circuit has adopted the rule announced in *Sohm*, while numerous courts outside the Second Circuit have rejected it, including many courts in the Ninth Circuit and the Ninth Circuit itself. With the exception of a lone "*But cf.*" citation to *Menzel*, MGM ignores this extensive countervailing and controlling caselaw. (MTD at 11 n.6.) But the fact remains: because Starz's

1   claims are timely under the discovery rule, binding Ninth Circuit precedent
2   mandates that Starz may recover full damages for all of its alleged infringements.[4]

3           And that is for good reason.  MGM's proposed rule would eviscerate
4   the well-established discovery rule.  Under MGM's proposal, so long as an
5   infringement goes undetected for three years, the copyright holder would be unable
6   to recover damages for the infringement, even if the copyright holder reasonably
7   did not discover the infringement until just before filing suit.  That would upend
8   decades of caselaw in the Ninth Circuit.  It would also lead to perverse incentives.
9   Potential infringers would be motivated to infringe and cover their tracks, knowing
10  that, if the infringement does not come to light within three years, they will receive
11  a windfall.  Indeed, that is exactly what MGM is seeking to do here.  Ninth Circuit
12  law rightly rejects this gamesmanship.

13  **IV.   Starz's Contract Claims Are Not Barred by the Statute of Limitations.**

14          MGM argues that Starz's breach of contract and breach of the implied
15  covenant of good faith and fair dealing claims with respect to seven[5] of the 340
16  Pictures at issue should be dismissed because the exclusivity windows for those
17  seven Pictures expired over four years ago.  (MTD at 19.)  Even if MGM were to
18  succeed on this argument, dismissal of Starz's contract claims for these Pictures
19  would have a minimal effect on this case and no impact on discovery because the
20  copyright infringement claims for those Pictures are timely.  (*Supra* § II.)

---

21

22     [4] Moreover, at most, MGM's argument is an attempt to limit Starz's
23  recoverable damages—not a basis to dismiss claims under Rule 12(b)(6).  *See*
    *Jordan v. United States*, 2015 WL 5919945, at *3 (S.D. Cal. Oct. 8, 2015) ("Rule
24  12(b)(6) permits dismissal for failure to state a *claim*.  A prayer for damages
    constitutes a remedy, not a claim within the meaning of Rules 8(a)(2) or
25  12(b)(6).").  Even the *Sohm* decision upon which MGM relies was a motion for
26  summary judgment filed after the parties had the opportunity for discovery to
    confirm the conduct underlying the alleged infringements.  959 F.3d at 42.
27
       [5] At most, the contract claims for six Pictures are at issue.  As explained above,
28  MGM incorrectly included the film *Carrie (2002)* in its calculations.  (*Supra* n.2.)

In any event, MGM's argument fails because, while a breach of contract claim must be brought within four years of the claim's accrual, Cal. Code Civ. Proc. § 337(a),[6] California courts have held that the discovery rule delays the accrual of contract claims under certain circumstances, including where (1) "[t]he injury or the act causing the injury, or both, have been difficult for the plaintiff to detect"; (2) "the defendant has been in a far superior position to comprehend the act and the injury"; or (3) "the defendant had reason to believe the plaintiff remained ignorant he had been wronged." *Gryczman v. 4550 Pico Partners, Ltd.*, 107 Cal. App. 4th 1, 5 (Cal. Ct. App. 2003) (citation omitted); *see also El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1039 (9th Cir. 2003) (applying California law and stating the same three scenarios). As these circumstances demonstrate, application of the discovery rule should be governed "by two overarching principles: [p]laintiffs should not suffer where circumstances prevent them from knowing they have been harmed and defendants should not be allowed to knowingly profit from their injuree's ignorance." *Gryczman*, 107 Cal. App. 4th at 5-6 (citation and internal marks omitted).

Here, Starz's allegations establish that MGM "has been in a far superior position to comprehend the act and the injury" and, therefore, "should not be allowed to knowingly profit" from its wrongful actions. *Id.* Both the license agreements with third parties that breached the Library Agreements and the mechanism for ensuring MGM's compliance with the Library Agreements were in the exclusive control of MGM. (*See* Compl. ¶ 85 ("MGM breached the Library Agreements . . . by purporting to license Pictures to others that MGM already had exclusively licensed to STARZ.").)

---

[6] The statute of limitations is the same for claims of breach of contract and breach of the implied covenant of good faith and fair dealing. *See Perez-Encinas v. AmerUs Life Ins. Co.*, 468 F. Supp. 2d 1127, 1133-34 (N.D. Cal. 2006) ("The statute of limitations on a claim for breach of a written contract or breach of the implied covenant of good faith and fair dealing is four years").

MGM also had a contractual duty to monitor its compliance with the Library Agreements, wherein MGM promised that it "has not taken or authorized, and will not take or authorize, any action by which any of the rights in any Picture granted herein by MGM to [STARZ] have been or may be materially impaired in any way." (*Id*. ¶¶ 31, 36.)  MGM later admitted that the breach was due to its own faulty rights tracking system—meaning the cause of the breach was entirely within MGM's control.  (*See Id*. ¶ 50 ("[MGM] assured STARZ that it had 'taken action to ensure that [its] rights tracking system accurately reflects the terms of our deals and full exclusivity for all other licensed Pictures will be maintained.'").)

When there is a "disparity in access to data" underlying the breach and the "ability to comprehend the injury"—as there was here—defendants are "in a superior position" such that it warrants application of the discovery rule. *Alvarado Orthopedic Research, L.P. v. Linvatec Corp.*, 2013 WL 2351814, at *9 (S.D. Cal. May 24, 2013) (holding that the discovery rule applied to a claim for breach of a license agreement where the defendant possessed the relevant data underlying the breach).  And though MGM argues that the public exhibition of the Pictures prevents application of the discovery rule to the contract claims (MTD at 21), as explained above, mere public exhibition was not enough to put Starz on notice of the wrong.  *See also Carr v. AutoNation Inc.*, 2018 WL 341692, at *5-6 (E.D. Cal. Jan. 8, 2018) (denying motion to dismiss contract claim and applying the discovery rule despite argument that public documents should have alerted plaintiff of claim).

Moreover, the "application of the delayed discovery rule is generally a question of fact, properly decided as a matter of law only if the evidence (or, in this case, the allegations in the complaint and facts properly subject to judicial notice) can support only one reasonable conclusion." *Broberg v. The Guardian Life Ins. Co. of Am.*, 171 Cal. App. 4th 912, 921 (Cal. Ct. App. 2009); *see also Carr*, 2018 WL 341692, at *6 (denying motion to dismiss an implied contract claim under the

1  discovery rule because "[w]hether the existence of publicly available documents

2  about LKQ's origins show that Plaintiff should have suspected wrongdoing is a

3  factual issue the Court cannot resolve at this stage"). MGM cannot establish on the

4  face of the Complaint that Starz pleaded "no set of facts" that could support

5  application of the discovery rule. *Syed*, 853 F.3d at 507 (citation omitted).

6  MGM relies upon one breach of contract case—*NBCUniversal Media,*

7  *LLC v. Superior Court*, 225 Cal. App. 4th 1222 (Cal. Ct. App. 2014)—in support

8  of its position that the discovery rule should not apply to Starz's contract claims.

9  (MTD at 19-20.) But the motion before the court in *NBCUniversal* was one for

10  summary judgment—not a motion to dismiss—underscoring that application of a

11  discovery rule is typically a question of fact inappropriate for resolution on the

12  pleadings. *Id.* at 1226-27. Moreover, in *NBCUniversal*, defendants had evidence

13  that the plaintiff had in fact discovered or at least suspected the breach outside of

14  the statute of limitations, rendering plaintiff's discovery rule argument "legally

15  irrelevant". *Id.* at 1236 (finding that years before filing suit, the plaintiff asked via

16  email whether "this was our show that was stolen or not"). No such facts exist

17  here. As Starz alleged in the Complaint, Starz first suspected and discovered a

18  breach in August 2019 (Compl. ¶ 44.), after which Starz timely filed suit.

19  <u>**Conclusion**</u>

20  For the reasons stated above, Starz respectfully requests that the Court

21  deny MGM's motion to dismiss in its entirety. If the Court is inclined to grant any

22  part of MGM's motion to dismiss, Starz requests an opportunity to file an amended

23  complaint, which would be the first amendment in this action.

24  Dated:  August 10, 2020         CRAVATH, SWAINE & MOORE LLP

25                                 By:   */s/ J. Wesley Earnhardt*

26                                   Evan R. Chesler
                                     echesler@cravath.com
27                                   J. Wesley Earnhardt
                                     wearnhardt@cravath.com
28                                   825 Eighth Avenue

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

MARKUN ZUSMAN FRENIERE
COMPTON LLP
Steven M. Goldberg
sgoldberg@mzclaw.com
3 Hutton Centre Dr., 9th Floor
Santa Ana, CA 92707
Telephone: (310) 454-5900
Facsimile: (310) 454-5970

HUESTON HENNIGAN LLP
Robert N. Klieger
rklieger@hueston.com
523 West 6th St., Suite 400
Los Angeles, CA 90014
Telephone:  (213) 788-4340
Facsimile:  (888) 775-0898

*Attorneys for Plaintiff Starz
Entertainment LLC.*