UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-4085-DMG (KSx)** | Date | January 5, 2021 |
|---|---|---|---|
| Title | *Starz Entertainment, LLC v. MGM Domestic Television Distribution, LLC* | Page | 1 of 15 |

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE DEFENDANT MGM DOMESTIC TELEVISION DISTRUBITION, LLC'S MOTION TO DISMISS [24]**

On May 4, 2020, Plaintiff Starz Entertainment, LLC ("Starz") filed a Complaint alleging 340 counts each of direct, contributory, and vicarious copyright infringement, as well as claims for breach of contract and breach of the covenant of good faith and fair dealing, against Defendant MGM Domestic Television Distribution, LLC ("MGM") based upon MGM's alleged breach of exclusive licensing agreements it had with Starz for 340 movies and television episodes. [Doc. # 1.]

On July 6, 2020, MGM filed a Motion to Dismiss ("MTD"). [Doc. # 24.] MGM asserts that the copyright claims for 126 of the titles[1] at issue are barred by the Copyright Act's three-year statute of limitations, based on the time periods of their exclusive licenses. *Id.* at 2.[2] MGM further claims that six of those titles are also barred from forming the basis of the contract claims by California's four-year statute of limitations for such causes of action. *Id.* at 3.

The motion is fully briefed. [Doc. ## 35, 36.] For the reasons set forth below, the MTD is **DENIED**.

**I.
JUDICIAL NOTICE**

MGM requests that the Court take judicial notice of its 2013 and 2015 "Library Agreements" with Starz, which are referenced throughout the Complaint but are not attached to

---

[1] MGM's MTD originally asserted that 127 titles were subject to the time bar, but in its Reply, it corrected the number to 126. Reply at 8 [Doc. # 36].

[2] All page references herein are to page numbers inserted by the CM/ECF system.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-4085-DMG (KSx)** | Date | January 5, 2021 |
|---|---|---|---|
| Title | *Starz Entertainment, LLC v. MGM Domestic Television Distribution, LLC* | Page | 2 of 15 |

it. *See* Request for Judicial Notice ("RJN") [Doc. # 26], Ex. A and B [Doc. ## 26-2 and 26-3],[3] *see also* Compl. ¶¶ 2, 27-36. In ruling on a Rule 12(b)(6) motion, a court may consider extrinsic evidence on which the complaint "necessarily relies" if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). Because Starz referred to and relied upon the Library Agreements in the Complaint, and because Starz does not dispute their authenticity or otherwise object, the Court **GRANTS** the RJN of the two Agreements.

MGM also requests that the Court take judicial notice of a March 24, 2020 tolling agreement between the parties, which Starz also does not oppose. The RJN of the tolling agreement is therefore also **GRANTED**. *See Chinese Hosp. Ass'n v. Jacobs Eng'g Grp., Inc.*, 2018 WL 6069169, at *4 (N.D. Cal. Nov. 20, 2018) (granting unopposed request for judicial notice of a tolling agreement in ruling on a motion to dismiss).

## II.
## FACTUAL BACKGROUND

On July 26, 2013, Starz, a subscription video provider, entered into a licensing agreement with MGM for the exclusive right to exhibit 421 movies and television episodes that MGM controls. Compl. ¶ 27; RJN, Ex. A ("2013 Agreement"). MGM agreed that it would not exhibit or authorize others to exhibit the titles covered by the Agreement on any other television platform during the license period. Compl. ¶ 29; 2013 Agreement ¶ 10. On May 7, 2015, Starz and MGM entered into another licensing agreement for 540 titles with the same exclusivity language. Compl. ¶¶ 33-34; RJN, Ex. B ("2015 Agreement") ¶ 10.

Although the parties only entered into two agreements at issue here, they negotiated separate, individual license periods for each title within the agreements. *See* 2013 Agreement, Ex. A; 2015 Agreement, Ex. A. The license periods range from a few months to a few years, and began as early as 2013 and end as late as 2023. *See id.*

In August 2019, a Starz employee discovered that the film *Bill and Ted's Excellent Adventure* was available to view on Amazon's video streaming service, despite being subject to an exclusive license with Starz at the time. Compl. ¶ 44. On August 13, 2019, MGM admitted to licensing the film to Amazon in breach of its exclusivity with Starz. *Id.* at ¶ 45. Starz quickly

---

[3] The Library Agreements were filed under seal. [*See* Doc. # 32.]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-4085-DMG (KSx)** | Date | January 5, 2021 |
|---|---|---|---|
| Title | *Starz Entertainment, LLC v. MGM Domestic Television Distribution, LLC* | Page | 3 of 15 |

discovered that 22 titles that should have been exclusive to Starz were available on Amazon. *Id.* at ¶ 46. MGM admitted the error and assured Starz that it would correct the problem. *Id.* at ¶ 47. After further pressing from Starz, on November 1, 2019 MGM admitted that it had improperly licensed 244 titles to third parties during Starz exclusive license periods. *Id.* at ¶ 50. Starz then conducted its own investigation, discovering that breaches had "been happening since at least 2015 without STARZ's knowledge," and included nearly 100 additional violations beyond those that MGM admitted to. *Id.* at ¶¶ 51-52.

In total, the Complaint identifies 340 titles for which MGM allegedly breached its exclusivity agreement with Starz. *See id.*, Ex. A. These breaches began, "[u]nbeknownst to Starz, by at least 2015 (and potentially earlier)." *Id.* at ¶ 8.

### III.
### LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may seek to dismiss a complaint for failure to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a pleading need not contain "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id*. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating the sufficiency of a complaint, courts must accept all factual allegations as true. *Id.* (citing *Twombly*, 550 U.S. at 555). Legal conclusions, in contrast, are not entitled to the assumption of truth. *Id.*

### IV.
### DISCUSSION

MGM argues that the Copyright Act's three-year statute of limitations, *see* 17 U.S.C. § 507(b), bars infringement claims for 126 of the 340 titles as a matter of law because, per the Library Agreements, their exclusive license periods expired more than three years prior to March 24, 2020, the date the parties entered into their tolling agreement.[4] MGM also adds that,

---

[4] Although the Complaint was filed on May 4, 2020, the parties agree that pursuant to their tolling agreement, March 24 shall be treated as the operative date of the Complaint for any analysis of a time bar.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-4085-DMG (KSx)** | Date | January 5, 2021 |

| | | | |
|---|---|---|---|
| Title | *Starz Entertainment, LLC v. MGM Domestic Television Distribution, LLC* | Page | 4 of 15 |

independent of the statute of limitations, the Supreme Court's decision in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014), imposes a strict bar to collecting any damages for copyright infringements that occur more than three years prior to the filing of the complaint. Because of this damages bar, according to MGM, Starz has no remedy for any infringements of the 126 titles—which could not have occurred within three years of the operative filing date—and so the claims must be dismissed.

For its part, Starz argues that its claims are saved from the statute of limitations and any other damages bar by the "discovery rule," because it did not discover the infringements until August 2019. MGM counters that Starz reasonably should have discovered the infringements contemporaneously, and in any case, *Petrella* bars any damages outside the three-year lookback window regardless of the application of the discovery rule.

**A.    The Copyright Act's Time Limitations Doctrines**

As a preliminary matter, this case warrants some background discussion on the state of the law regarding the statute of limitations for copyright infringement claims.

The Copyright Act's statute of limitations is set forth in 17 U.S.C. section 507(b), which states:  "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." Out of this statute, two separate but intertwined doctrinal strains have developed, each involving a split in authority. *See generally* 3 Nimmer on Copyright § 12.05 (2020). One is the accrual rule—when a claim is said to have "accrued." Some courts apply the "discovery rule," under which the claim does not accrue—and so the three-year clock does not start—until "the plaintiff discovers, or with due diligence should have discovered," the infringement. *William A. Graham Co. v. Haughey*, 568 F.3d 425, 433 (3d Cir. 2009). Others instead apply the "injury rule," meaning that a claim accrues on the date the infringement occurred, regardless of the plaintiff's knowledge at the time or when the infringement was ultimately discovered. *See Auscape Int'l v. Nat'l Geographic Soc'y*, 409 F. Supp. 2d 235, 247 (S.D.N.Y. 2004). If the injury rule applies, a claim must be brought within three years of the date of the infringement, or else it is time-barred.

The second question introduced by Section 507(b) is how to handle cases of "continuing infringement"—that is, infringements that are ongoing for some extended period of time. *See* Nimmer § 12.05[B][1]. For example, how does the three-year statute of limitations apply to a Broadway show with an uninterrupted five-year theatrical run, or a book in publication for a decade straight? Some courts, applying the "continuing wrong" theory, have held that so long as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-4085-DMG (KSx)** | Date | January 5, 2021 |
|---|---|---|---|
| Title | *Starz Entertainment, LLC v. MGM Domestic Television Distribution, LLC* | Page | 5 of 15 |

the wrong continues into the three-year period, the defendant is liable for the entire duration of the infringement, reaching back to include those damages incurred before the three-year window. *See Taylor v. Meirick*, 712 F.2d 1112, 1118 (7th Cir. 1983) ("[T]he statute of limitations does not begin to run on a continuing wrong till the wrong is over and done with"). On the other hand, under the "rolling" approach (also known as the "separate-accrual rule"), the defendant is liable only for damages that arose within the three-year period, "such that the passage of each additional day forecloses one more day of past damages." Nimmer § 12.05[B][2][c]. In other words, if an infringing book was first published on January 1, 2000 and remained in publication on January 1, 2020, when the copyright holder first sued, the plaintiff can only recover damages that accrued from January 1, 2017 onward. The defendant's profits from the previous 17 years are hers to keep.

The Ninth Circuit first addressed the issue of continuing infringements in *Roley v. New World Pictures, Ltd.*, 19 F.3d 479 (9th Cir. 1994). Expressly considering and rejecting the "continuing wrong" theory, the court adopted the rolling approach. *Id.* at 481 ("Section 507(b) is clear on its face. 'It does not provide for a waiver of infringing acts within the limitation period if earlier infringements were discovered and not sued upon, nor does it provide for any reach back if an act of infringement occurs within the statutory period.'") (quoting *Hoey v. Dexel Systems Corp.*, 716 F. Supp. 222, 223 (E.D. Va. 1989)). Roley had discovered the infringing work in August 1987, but did not sue until February 7, 1991. The court therefore held that the three-year statute of limitations barred all recovery for any damages that accrued prior to February 7, 1988. *Id.* Because Roley failed to produce any evidence that the defendants had engaged in any infringing acts after that date, the court affirmed summary judgment against him. *Id.* at 482.

A decade later, the Ninth Circuit first weighed in on the accrual rule in *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004). Acknowledging its prior holding in *Roley*, the court found that the "general rule" established in that case "does not erect an impenetrable wall preventing recovery for infringement occurring prior to the three-year window." *Id.* at 706. Instead, it reasoned:

> *Roley* interpreted the term "accrue," as it is used in § 507(b), to be the moment when the copyright holder "has knowledge of a violation or is chargeable with such knowledge." *Roley,* 19 F.3d at 481. Synthesizing this definition of "accrue" with the language of § 507(b), the three-year clock begins upon discovery of the infringement. Because Roley was aware of the earlier infringement prior to the three-year limit for filing suit, those claims accrued outside the time allowed, and he was therefore prohibited from recovering damages for the earlier claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-4085-DMG (KSx)** | Date | January 5, 2021 |
|---|---|---|---|
| Title | *Starz Entertainment, LLC v. MGM Domestic Television Distribution, LLC* | Page | 6 of 15 |

> Thus, under *Roley,* the statute of limitations does not prohibit recovery of damages incurred more than three years prior to the filing of suit if the copyright plaintiff was unaware of the infringement, and that lack of knowledge was reasonable under the circumstances.

*Id.* In other words, *Polar Bear* established that the discovery rule applies in the Ninth Circuit, and that the rule operates as an exception to the general principle that damages are only recoverable for infringing acts within three years prior to filing suit. Since *Polar Bear*, every circuit that has reached the question has adopted the discovery rule. *See* Nimmer § 12.05[B][2][b].

After yet another decade, the Supreme Court entered the fray with *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014). There, the Court addressed "whether the equitable defense of laches . . . may bar relief on a copyright infringement claim brought within § 507(b)'s three-year limitations period." *Id.* at 677. The Court held that it does not, because "courts are not at liberty to jettison Congress' judgment on the timeliness of suit." *Id.* Along the way to this conclusion, the Court remarked that "a successful plaintiff can gain retrospective relief only three years back from the time of suit. No recovery may be had for infringement in earlier years. Profits made in those years remain the defendant's to keep." *Id.* at 677; *see also id.* at 671 ("Under the Act's three-year provision, an infringement is actionable within three years, and only three years, of its occurrence. And the infringer is insulated from liability for earlier infringements of the same work."). It also noted that "[a] copyright claim thus arises or 'accrue[s]' when an infringing act occurs." *Id.* at 670 (quoting § 507(b)). The Court further clarified in a footnote, "Although we have not passed on the question, nine Courts of Appeals have adopted, as an alternative to the incident of injury rule, a 'discovery rule' . . . ." *Id.* at 670 n.4.

Picking up on some of this language, litigants after *Petrella* began arguing that the Supreme Court had strictly barred any recovery for infringements occurring prior to three years before the date of filing, without exception, and that it had overruled or otherwise curtailed the discovery rule. District courts in the Ninth Circuit and elsewhere largely rejected this theory, deciding that because *Petrella* dealt with the availability of laches in cases *within* the three-year window, and because it expressly declined to pass on the question of the discovery rule, any statement regarding the availability of damages *outside* the window was either *dicta* or otherwise had no effect on the discovery rule. *See Mavrix Photo, Inc. v. Rant Media Network, LLC, et al.*, No. CV 19-07270-DMG (AFMx), at *5-6 (C.D. Cal. Nov. 2, 2020); *Menzel v. Scholastic, Inc.*, 2019 WL 6896145, at *5-6 (N.D. Cal. Dec. 18, 2019); *D'Pergo Custom Guitars, Inc. v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-4085-DMG (KSx)** | Date | January 5, 2021 |
|---|---|---|---|
| Title | *Starz Entertainment, LLC v. MGM Domestic Television Distribution, LLC* | Page | 7 of 15 |

*Sweetwater Sound, Inc.*, No. 17-CV-747-LM, 2019 WL 188696, at *3 (D.N.H. Jan. 14, 2019); *Mitchell v. Capitol Records, LLC*, 287 F. Supp. 3d 673, 677-78 (W.D. Ky. 2017); *Yue v. MSC Software Corp.*, No. 15-CV-05526-PJH, 2016 WL 3913001, at *1 (N.D. Cal. July 20, 2016); *Oracle USA, Inc. v. Rimini St., Inc.*, No. 2:10-CV-00106-LRH, 2015 WL 5089779, at *6 (D. Nev. Aug. 27, 2015); *Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC*, 23 F. Supp. 3d 344, 357 (S.D.N.Y. 2014); *Grant Heilman Photography, Inc. v. McGraw-Hill Companies, Inc.*, 28 F. Supp. 3d 399, 411 (E.D. Pa. 2014).  *Cf. Yue*, 2016 WL 3913001, at *1 ("Some language in *Petrella* does appear to embrace an injury-rule analysis.").

Some courts in the Southern District of New York, however, took a different approach. They interpreted *Petrella* to mean that while the discovery rule remains good law, plaintiffs are nonetheless barred from recovering for any infringing acts beyond the three-year window, regardless of when the plaintiff discovers the infringement.  *See Papazian v. Sony Music Entm't*, No. 16-cv-7911, 2017 WL 4339662, at *4-5 (S.D.N.Y. Sept. 28, 2017); *Wu v. John Wiley & Sons, Inc.*, No. 14 CIV. 6746 AKH AJP, 2015 WL 5254885, at *7 (S.D.N.Y. Sept. 10, 2015); *Jose Luis Pelaez, Inc. v. McGraw-Hill Glob. Educ. Holdings LLC*, 399 F. Supp. 3d 120, 135 (S.D.N.Y. 2019).  For example, in *Papazian*, the court agreed that "the suggestion that the Supreme Court may favor the injury rule, without more, does not trump Second Circuit precedent" and that it therefore must "apply the Second Circuit's discovery rule until explicitly directed otherwise."  2017 WL 4339662, at *4 (quoting *Lefkowitz*, 23 F. Supp. 3d at 357 n.11). Therefore, although Papazian filed suit in 2016 for infringements that ended in 2006, his claim was not time-barred because he could not have reasonably discovered them earlier.  *Id.* at *1, 4. But noting that "the language in *Petrella* adopt[ed] the rolling approach" to the statute of limitations, the court also determined that "the clear and specific three-year limitation on damages under section 507(b) was necessary to the result in *Petrella*," and so "Plaintiff cannot recover damages for infringing acts that occurred before October 10, 2013, three years before he filed his complaint."  *Id.* at *5-6.  The court granted summary judgment in favor of the defendant.  *Id.* at *6.

Just a couple months before MGM filed its MTD, the Second Circuit adopted this latter framework in *Sohm v. Scholastic Inc.*, 959 F.3d 39 (2d Cir. 2020).  On the discovery rule, the *Sohm* court confirmed that "while some language in *Petrella* is perhaps consistent with the injury rule, in light of the Supreme Court's direct and repeated representations that it has not opined on the propriety of the discovery or injury rules, it would contravene settled principles of *stare decisis* for this Court to depart from its prior holding" invoking the discovery rule.  *Id.* at 50.  But in assessing a three-year damages bar, the court reached a different conclusion: "Despite not passing on the propriety of the discovery rule in *Petrella*, the Supreme Court explicitly delimited

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-4085-DMG (KSx)** | Date | January 5, 2021 |
| Title | *Starz Entertainment, LLC v. MGM Domestic Television Distribution, LLC* | Page | 8 of 15 |

damages to the three years prior to the commencement of a copyright infringement action." *Id.* at 51. Therefore, the Second Circuit held that "we must apply the discover rule [sic] to determine when a copyright infringement claim accrues, but a three-year lookback period from the time a suit is filed to determine the extent of the relief available." *Id.* at 52. Consequently, Sohm's claims were not time-barred, but he could not recover on any of them that were based on infringements occurring before the three-year lookback window. *Id.*

Meanwhile, since *Petrella*, the Ninth Circuit has continued to cite to *Polar Bear* and the discovery rule approvingly, but has not had occasion to address whether a damages bar precludes recovery for infringements more than three years old that otherwise would be saved from the statute of limitations by the discovery rule. *See Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 971 F.3d 1042, 1047 (9th Cir. 2020); *Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1022 (9th Cir. 2019).

**B.     Reconciling *Petrella* and the Discovery Rule**

That brings us to this case. MGM argues essentially for the *Sohm* framework, insisting that while the discovery rule remains good law, *Petrella* prevents Starz from recovering for any of MGM's infringements that occurred more than three years before the operative date of the Complaint, regardless of when Starz discovered or reasonably should have discovered them. MTD at 17-20. Starz counters that any language in *Petrella* suggesting a strict three-year damages bar is *dicta* and should not be interpreted to "eviscerate" the well-established discovery rule. Opp. at 23-28.

The Court agrees that the statements in *Petrella* are not non-precedential *dicta* insofar as they set forth the rolling approach to the statute of limitations in a non-discovery rule case. But it is also true that they do not affect the Ninth Circuit's discovery rule, and adopting the rule that MGM proposes would eviscerate long-standing Ninth Circuit precedent unnecessarily.

As the *Papazian* court rightly recognized, the language in *Petrella* discussed herein adopted the "rolling" approach to the statute of limitations for continuing infringements. 2017 WL 4339662, at *4; *see also Petrella*, 572 U.S. at 671 ("It is widely recognized that the separate-accrual rule attends the copyright statute of limitations. Under that rule when a defendant commits successive violations, the statute of limitations runs separately from each violation. Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete 'claim' that 'accrue[s]' at the time the wrong occurs. In short, each infringing act starts a new limitations period."). This rule was essential to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-4085-DMG (KSx)** | Date | January 5, 2021 |
| Title | *Starz Entertainment, LLC v. MGM Domestic Television Distribution, LLC* | Page | 9 of 15 |

*Petrella* Court's holding on laches because it demonstrates how Section 507(b) "itself takes account of delay," thus obviating any judicial determination of undue delay. *Id.* at 677. To the extent any jurisdictions had utilized the "continuing wrong" rule, they have been overruled.

But the rolling approach has been the law in the Ninth Circuit at least since *Roley*, long before *Petrella*. *Cf. Papazian*, 2017 WL 4339662, at *4 ("The Second Circuit has always applied the rolling approach."). In fact, in *Roley*, the Ninth Circuit already declared that "the statute bars recovery on any claim for damages that accrued more than three years before *commencement of suit*." 19 F.3d at 481 (emphasis added). In articulating the discovery rule in *Polar Bear*, the court did not completely overturn this damages bar, but rather held that it was not an "impenetrable wall"—the discovery rule operates as an *exception* to the "general rule" barring recovery for infringements prior to the three-year window. *Polar Bear*, 384 F.3d at 706 ("Thus, under *Roley,* the statute of limitations does not prohibit recovery of damages incurred more than three years prior to the filing of suit *if* the copyright plaintiff was unaware of the infringement, and that lack of knowledge was reasonable under the circumstances.") (emphasis added).

The Supreme Court explicitly declined to "pass[] on the question" of the discovery rule in *Petrella*. 572 U.S. at 671 n.4. So, the best read of *Petrella* is that it did not change *any* law in the Ninth Circuit pertaining to the discovery rule and the three-year damages bar. It merely reaffirmed the rolling approach's "general" bar to recovery for infringements outside the three-year period, while letting stand the Ninth Circuit's exception for the discovery rule.

The Ninth Circuit's statements since *Petrella* reinforce this interpretation. In *Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014 (9th Cir. 2019), the court dutifully cited *Polar Bear* in reciting the discovery rule. *Id.* at 1022 ("Under the 'discovery rule,' a copyright infringement claim accrues—and the statute of limitations begins to run—when a party discovers, or reasonably should have discovered, the alleged infringement.") (citing *Polar Bear*, 384 F.3d at 706). It then went on to declare that, "*[i]n addition to the discovery rule*, the 'separate accrual rule'" applies. *Id.* (quoting *Petrella*, 572 U.S. at 671) (emphasis added). The court then applied the discovery rule in a case of continuing infringement, but found that the claims accrued near the time of the infringements because the plaintiff reasonably should have discovered them when they occurred. *Id.* The infringements occurring before the operative date were therefore not actionable—but under the separate-accrual rule, those occurring after the date *were* actionable. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-4085-DMG (KSx)** | Date | January 5, 2021 |
|---|---|---|---|
| Title | *Starz Entertainment, LLC v. MGM Domestic Television Distribution, LLC* | Page | 10 of 15 |

MGM's position cannot be reconciled with *Polar Bear* and *Media Rights*. MGM insists that *Petrella* did not alter the discovery rule. Reply at 13. But when confronted with *Polar Bear*—the case that established the rule, with direct application here—MGM's only answer is that it predates *Petrella* and so no longer has precedential value. *Id.* at 9. Yet, a strict damages bar would "eviscerate" the discovery rule, at least as it operates in the Ninth Circuit. If plaintiffs cannot recover for infringements that occurred more than three years before the lawsuit commenced, even if they were not aware of the infringements, then the discovery rule serves no practical purpose. MGM claims that the discovery rule still holds value even with a strict damages bar when infringing conduct begins before the three-year period but continues into it. There, according to MGM, the discovery rule would "save" the claim, even if the amount of recovery is limited to those damages within the three-year window. *Id.* at 15. But that outcome results from the injury rule, not the discovery rule. The recoverable claims are those that were brought within three years of their occurrence, while those that were not are barred—that is the injury rule (combined with the separate-accrual rule) in application. The discovery rule would have no real independent effect.[5]

MGM points to *Sohm* as proof that the discovery rule and a strict damages bar can be reconciled. But *Sohm* and *Papazian*, the case underlying *Sohm* with facts analogous to the present case, themselves illustrate just how hollow this approach leaves the discovery rule. In *Papazian*, the court found that the claims were not time-barred because the plaintiff could not have discovered them earlier—only to then grant summary judgment against plaintiff because the claims were more than three years old. 2017 WL 4339662, at *4-6. To the extent the discovery rule "saved" the claims, it was a pyrrhic victory. The *Papazian* court even acknowledged that "[a]dmittedly, there is some doctrinal tension in applying both the discovery rule and the rolling approach." *Id.* at *5 n.5; *see also Jose Luis Pelaez*, 399 F. Supp. 3d at 135 ("As courts in this district have pointed out, there is 'doctrinal tension' in applying both a three-year damages lookback and the discovery rule.") (quoting *Papazian*); Nimmer § 12.05[B][2][c] (observing that attempting to apply both the discovery rule and a strict damages bar leads to a situation with "no ready application" because the rules are "inherently in conflict"). Nevertheless, the *Papazian* court concluded that "it remains bound by the Second Circuit's decision to apply the discovery rule . . . , while at the same time, *Petrella* requires this Court to apply the rolling approach . . . ." 2017 WL 4339662, at *5 n.5. But this Court need not force a rule with such "doctrinal tension" when the Ninth Circuit provides—indeed, requires—a more

---

[5] To illustrate further, under MGM's version of the discovery rule, the outcome is exactly the same even if the discovery rule does *not* "save" the claim because the plaintiff reasonably should have known about the infringements. In this situation, the plaintiff can still recover for those infringements within the three-year window, because they occurred less than three years before the filing of the complaint.

| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk KT |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-4085-DMG (KSx)** | Date | January 5, 2021 |
|---|---|---|---|
| Title | ***Starz Entertainment, LLC v. MGM Domestic Television Distribution, LLC*** | Page | 11 of 15 |

harmonious solution: a three-year damages bar *except* when the plaintiff reasonably was not aware of the infringements at the time they occurred.

In sum, absent a definitive statement from the Ninth Circuit or the Supreme Court to the contrary, this Court will continue to apply the discovery rule as an exception to the three-year damages bar imposed by Section 507(b). MGM's infringements occurring more than three years before March 24, 2020 are not *per se* barred from recovery if Starz did not discover them and its failure to discover them was reasonable under the circumstances.

**C.     Application of the Discovery Rule**

The next question is whether the discovery rule does in fact save Starz's claims that are more than three years old. Taking all the facts in the Complaint as true, should Starz reasonably have known about MGM's exclusivity breaches prior to its fortuitous discovery of *Bill and Ted's Excellent Adventure* on Amazon in August 2019?

The answer is no. Although a copyright holder has a "duty of diligence" to investigate potential infringements, "inquiry notice must be triggered by some event or series of events that comes to the attention of the aggrieved party." *Warren Freedenfeld Assocs., Inc. v. McTigue*, 531 F.3d 38, 45 (1st Cir. 2008) ("The familiar aphorism teaches that where there is smoke there is fire; but smoke, or something tantamount to it, is necessary to put a person on inquiry notice that a fire has started."). No facts are alleged that would give Starz reason to suspect that MGM had breached its exclusivity obligations. When Starz did detect smoke, in the form of *Bill and Ted's Excellent Adventure*, it quickly discovered the fire and promptly sued for all 340 infringements. The duty of diligence does not create a duty to continuously monitor a licensor to ensure compliance with its obligations, absent any reason to otherwise suspect a breach. The law does not inject such paranoia into the licensor-licensee relationship. *See Design Basics, LLC v. Chelsea Lumber Co.*, 977 F. Supp. 2d 714, 725 (E.D. Mich. 2013) ("[I]t would be unreasonably burdensome to impose on a copyright owner a 'never ending obligation to discover whether anyone to whom he ever supplied his [copyrighted material] would copy it.'") (quoting *MacLean Assoc., Inc. v. WM. M. Mercer–Meidinger–Hansen, Inc.*, 952 F.2d 769, 780 (3d Cir. 1991)).

MGM argues that its alleged breaches were "open and notorious," having "occurred on popular streaming platforms for extended periods of time and [been] widely perceived by the general public and industry insiders alike." MTD at 10, Reply at 17. First, the Court is highly skeptical that being one of hundreds of movies and shows available on Amazon or any one of its ilk (an increasingly crowded market), is "open and notorious" such that any reasonable person

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-4085-DMG (KSx)** | Date | January 5, 2021 |
|---|---|---|---|
| Title | *Starz Entertainment, LLC v. MGM Domestic Television Distribution, LLC* | Page | 12 of 15 |

would be aware of it.  But even if it were, this misses the point.  The title must not merely be available on another platform, it must be available *during the exclusive license period*.  Starz had *nearly 1,000* individual license periods *with MGM alone*, each starting and ending at different times and ranging in length, with some covering only a handful of months.  MGM incredulously assumes that Starz should intrinsically be able to perceive not only when one of its hundreds of licensed titles was available on a competitor platform's own deep library, but also that it was available during that individual title's unique, narrow license period.[6]  Courts have declined to charge plaintiffs with inquiry notice in far more "open and notorious" cases of infringement.  *See, e.g.*, *Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1170-71 (N.D. Cal. 2019) (plaintiff's photographs were available on defendant's public website, with no license period at issue); *BMG Rights Mgmt. (US) LLC v. Glob. Eagle Entm't Inc.*, No. CV 18-03723-VAP (JEMx), 2019 WL 4544424, at *4 (C.D. Cal. Aug. 20, 2019) (infringing music playlists were available on airlines on which plaintiff's executives flew).

The cases MGM cites are far afield.  In *Goldberg v. Cameron*, 482 F. Supp. 2d 1136 (N.D. Cal. 2007), the plaintiff alleged that *The Terminator* film infringed his screenplay and soundtrack, and he sued 20 years after the film's release.  *Id.* at 1142-43.  The court found the plaintiff's failure to discover the "exceedingly popular" movie, allegedly because he was on a 20-year spiritual Yoga journey without electronic media, to be "unreasonable."  *Id.* at 1148.  These facts are several steps removed from this case.  Starz would have to have been aware not merely of *The Terminator*'s[7] existence, but also that (a) it was available on another platform, and (b) that it was available during the narrow license period.  Similarly, in *In re Napster, Inc. Copyright Litig.*, No. C 04-3004 MHP, 2005 WL 289977 (N.D. Cal. Feb. 3, 2005), Napster "intentionally and *boastfully*" committed billions of infringing acts.  *Id.* at *3 (emphasis in original).  MGM and the competitor video platforms do not have such a reputation.  And in

---

[6] MGM claims that the Complaint contains no allegations regarding the difficulty of detecting infringements of licensed titles across platforms.  Reply at 20.  At the very least, the difficulty can be "reasonbl[y] infer[red]" from the facts that are alleged.  *Iqbal*, 556 U.S. at 678.  And MGM's reliance on *Michael Grecco Prods., Inc. v. BDG Media Inc.*, No. CV 19-04716-AB (KSx), 2020 WL 3957565 (C.D. Cal. Feb. 26, 2020), is unavailing.  There, "Plaintiff inserted 'boilerplate reasoning' for why copyright infringements are hard to detect, instead of specific reasons why the [infringing works] were not discovered for several years after publication."  *Id.* at *4.  Here, Starz articulated in its Opposition specifically why detecting infringements of this kind would be so difficult (the same as the reasons discussed above, *see* Opp. at 17), reasons that are evident from the face of the Complaint.  Moreover, the "reasonableness of discovering copyright infringement is generally a question of fact."  *Free Speech*, 390 F. Supp. 3d at 1170.  To the extent there is a reasonable dispute as to the difficulty of detecting the infringements, Starz's claims must survive the pleading stage.  *See id.*

[7] Incidentally, *The Terminator* is one of the titles MGM allegedly infringed.  Compl. ¶ 6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-4085-DMG (KSx)** | Date | January 5, 2021 |
|---|---|---|---|
| Title | ***Starz Entertainment, LLC v. MGM Domestic Television Distribution, LLC*** | Page | 13 of 15 |

*Minden Pictures, Inc. v. Buzzfeed, Inc.*, 390 F. Supp. 3d 461 (S.D.N.Y. 2019), the plaintiff was "a seasoned litigator" who had filed 36 prior lawsuits covering the same works at issue, some during the same time that the infringements at issue allegedly occurred. *Id.* at 467. Starz was not quite so litigious,[8] and had no reason to believe that its licensors were repeatedly violating their exclusivity agreements.

Accordingly, based on the allegations in the Complaint, Starz cannot be charged with knowledge of any of MGM's alleged infringements prior to August 2019. Because Starz filed suit well within three years of that date, none of its copyright infringement claims are barred by the statute of limitations as a matter of law.[9] Of course, precisely when a claim accrues is a question of fact. *Polar Bear*, 384 F.3d at 707. Therefore, the parties are free to pursue discovery to test the accuracy of the pleadings.

**D.     The Contract Claims**

MGM also argues that Starz's contract claims relating to six of the titles are barred by California's four-year statute of limitations for breach of contract and breach of the implied covenant of good faith and fair dealing, *see* Cal. Civ. Proc. Code § 337(a), because their exclusive license periods ended more than four years prior to March 24, 2020. MTD at 26-30.

California also has a discovery rule, which "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1192 (2013). In contract claims, accrual is delayed until discovery of the breach when "[t]he injury or the act causing the injury, or both, have been difficult for the plaintiff to detect; . . . the defendant has been in a far superior position to comprehend the act and the injury; or . . . the defendant had reason to believe the plaintiff remained ignorant [that] he had been wronged." *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1039 (9th Cir. 2003) (quoting

---

[8] MGM identifies a single prior lawsuit for copyright infringement that Starz filed in 2007. MTD at 25 (citing *STARZ Entm't LLC v. Buena Vista Television Inc.*, No. CV 07-1895-VBF (PJWx) (C.D. Cal.)).

[9] MGM makes one additional, bold claim: that *all* of the infringement claims are time-barred except those for *Bill and Ted's Excellent Adventure* because Starz does not specifically plead that they occurred within the statute of limitations. MTD at 21. This argument wildly misconstrues Starz's burden, especially at the pleading stage. *See Imageline Inc. v. Tacony Corp.*, No. SA CV 09-000353-CJC (MLGx), 2009 WL 10676056, at *2 (C.D. Cal. June 16, 2009) (denying motion to dismiss where plaintiff did not plead the date of the alleged infringements). The statute of limitations is an *affirmative defense*, after all. The only reason it is discussed here is because, for 126 of the titles, the Complaint and judicially noticeable materials make clear that the claims could not have occurred within three years of the filing of the lawsuit. *See Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1319 (9th Cir. 1998).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-4085-DMG (KSx)** | Date | January 5, 2021 |
| Title | *Starz Entertainment, LLC v. MGM Domestic Television Distribution, LLC* | Page | 14 of 15 |

*April Enter., Inc. v. KTTV and Metromedia, Inc.*, 147 Cal. App. 3d 805, 831 (1983)) (internal quotation marks omitted).

For substantially the same reasons discussed above, Starz's failure to discover MGM's breaches until August 2019 was not facially unreasonable. Breaches of some of nearly 1,000 individual exclusivity windows would be difficult to detect, MGM was in a far superior position to know about its own license agreements with third parties than Starz was, and MGM had no reason to believe that Starz would immediately discover a breach.

MGM relies primarily on *NBCUniversal Media, LLC v. Superior Court*, 225 Cal. App. 4th 1222 (2014). There, the defendant breached a confidentiality agreement by misappropriating the plaintiff's ideas in developing and broadcasting a reality TV show. *Id.* at 1225. The court held that a show's "public disclosure to even a limited audience is sufficient to preclude a plaintiff from arguing that the breach and injury were secretive and difficult to detect." *Id.* at 1235. But again, public disclosure is only part of the inquiry here. It is not merely the public exposure of the film or movie that establishes the breach, it is its availability on a third-party platform during a specific, limited period of time. While it may be, under California law, that a plaintiff can no longer claim ignorance of a show's *existence* once it has been aired,[10] that does not necessarily mean the plaintiff is charged with knowledge of *when* the show was exhibited on *which* platforms.[11] *See Carr v. AutoNation Inc.*, No. CV-17-01539-JAM-ACx, 2018 WL 341692, at *6 (E.D. Cal. Jan. 8, 2018) (holding that publicly available documents describing new business similar to plaintiff's confidential business idea did not establish constructive knowledge of breach of implied contract as a matter of law) (citing *NBCUniversal*, 225 Cal. App. 4th at 1234, 1236).

Accordingly, based on the allegations in the Complaint, Starz's contract claims did not accrue until August 2019, and so are not time-barred.

---

[10] It is clear though that, at least under federal copyright law, public exhibition alone is not sufficient to put a plaintiff on notice. *See Free Speech*, 390 F. Supp. 3d at 1170.

[11] In this sense, *NBCUniversal* is more like *Goldberg*—the case of the self-purported spiritual yogi's ignorance of *The Terminator* movie—than the present case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-4085-DMG (KSx)** | Date | January 5, 2021 |
|---|---|---|---|
| Title | *Starz Entertainment, LLC v. MGM Domestic Television Distribution, LLC* | Page | 15 of 15 |

## V. CONCLUSION

     MGM's theory of this case would place a daunting and unforgiving burden on copyright holders. For those copyright holders in the Ninth Circuit, however, the discovery rule acts as a safety valve to the usual three-year cut-off for recovery when the copyright holder had no reason to believe its works were being infringed. Because Starz's claims facially appear to qualify for this exception, MGM's MTD is **DENIED**. MGM shall file its Answer to the Complaint within 21 days of this Order.

**IT IS SO ORDERED**.