JAY P. SRINIVASAN, SBN 181471
  jsrinivasan@gibsondunn.com
MINAE YU, SBN 268814
  myu@gibsondunn.com
JONATHAN N. SOLEIMANI, SBN 295673
  jsoleimani@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

ORIN SNYDER (admitted *pro hac vice*)
  osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
Telephone:  212.351.4000
Facsimile:   212.351.4035

Attorneys for Defendant MGM DOMESTIC
TELEVISION DISTRIBUTION LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| STARZ ENTERTAINMENT, LLC,<br><br>                  Plaintiff,<br><br>          v.<br><br>MGM DOMESTIC TELEVISION<br>DISTRIBUTION LLC,<br><br>                  Defendant. | CASE NO. 2:20-cv-04085-DMG-KS<br><br>**DEFENDANT MGM DOMESTIC TELEVISION DISTRIBUTION LLC'S REPLY IN SUPPORT OF ITS MOTION FOR CERTIFICATION UNDER 28 U.S.C. § 1292(B)**<br><br>Judge:            Hon. Dolly M. Gee<br>Hearing Date:  February 19, 2021<br>Time:             9:30 am<br>Courtroom:      8C, 8th Floor<br>Trial Date:       Not set<br>Action Filed:    May 4, 2020 |

Gibson, Dunn &
Crutcher LLP

1

## TABLE OF CONTENTS

2

Page

3   I. INTRODUCTION ........................................................................................ 1

4   II. ARGUMENT ............................................................................................. 3

5         A.     Starz Ignores the Established Conflicts Among Courts Across the
                 Country ............................................................................................. 3

6

7         B.     Starz Misapprehends the "Controlling" Question of Law
                 Requirement and the Implication of the Petrella Damages Bar ................ 7

8         C.     The Ninth Circuit's Resolution of the Unsettled Question of Law Is
                 Likely to Materially Advance the Ultimate Termination of This

9                Case ................................................................................................ 11

10  III. CONCLUSION ........................................................................................ 15

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Allstate Life Ins. Co. Litig.*,
   2013 WL 3187419 (D. Ariz. June 21, 2013) ................................................. 6

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
   7 Cal. 4th 503 (1994) ........................................................................ 12, 13

*Ass'n of Irritated Residents v. Fred Schakel Dairy*,
   634 F. Supp. 2d 1081 (E.D. Cal. 2008) ......................................... 9, 11, 14

*Banneck v. Fed. Nat'l Mortg. Ass'n*,
   2018 WL 5603632 (N.D. Cal. Oct. 29, 2018) ............................................. 10

*Bizar v. Dee*,
   618 F. App'x 913 (9th Cir. 2015) ................................................................ 4

*Casas v. Victoria's Secret Stores*,
   2015 WL 13446989 (C.D. Cal. Apr. 9, 2015) ............................. 8, 9, 10, 14

*In re Cement Antitrust Litig.*,
   673 F.2d 1020 (9th Cir. 1981) ............................................................ 2, 7, 8, 9

*Craftwood II, Inc. v. Tomy Int'l, Inc.*,
   2013 WL 12140946 (C.D. Cal. Nov. 15, 2013) ........................................... 6

*Envtl. World Watch, Inc. v. Walt Disney Co.*,
   2014 WL 10979864 (C.D. Cal. Apr. 2, 2014) .......................... 2, 7, 8, 11, 14

*F.T.C. v. Swish Mktg.*,
   2010 WL 1526483 (N.D. Cal. Apr. 14, 2010) ........................................... 10

*Fishman v. Subway Franchisee Advert. Fund Tr., Ltd.*,
   2020 WL 1676390 (C.D. Cal. Apr. 6, 2020) ............................................. 15

*Heaton v. Soc. Fin., Inc.*,
   2016 WL 232433 (N.D. Cal. Jan. 20, 2016) ............................................. 15

*Jaco v. WinCo Holdings, Inc.*,
   2019 WL 2615739 (E.D. Cal. June 26, 2019) ............................................. 9

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Jose Luis Pelaez, Inc. v. McGraw-Hill Glob. Educ. Holdings LLC*,
    399 F. Supp. 3d 120 (S.D.N.Y. 2019) ........................................................ 6

*Kling v. Hallmark Cards Inc.*,
    225 F.3d 1030 (9th Cir. 2000) .................................................................. 5

*Langere v. Verizon Wireless Servs., LLC*,
    983 F.3d 1115 (9th Cir. 2020) .................................................................. 4

*Media Rights Techs., Inc. v. Microsoft Corp.*,
    922 F.3d 1014 (9th Cir. 2019) .................................................................. 4

*Menzel v. Scholastic, Inc.*,
    2019 WL 6896145 (N.D. Cal. Dec. 18, 2019) ........................................... 3

*MLC Intellectual Prop., LLC v. Micron Tech., Inc.*,
    2019 WL 5269014 (N.D. Cal. Oct. 17, 2019) ......................................... 10

*Munger v. Cascade Steel Rolling Mills, Inc.*,
    2020 WL 423385 (D. Or. Jan. 27, 2020) ................................................. 6

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
    971 F.3d 1042 (9th Cir. 2020) .................................................................. 4

*Papazian v. Sony Music Entm't*,
    2017 WL 4339662 (S.D.N.Y. Sept. 28, 2017) ........................................ 3, 4, 5, 6, 8

*Park v. Skidmore, Owings & Merrill LLP*,
    2019 WL 9228987 (S.D.N.Y. Sept. 30, 2019) ......................................... 6

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    572 U.S. 663 (2014)............................................................................ 1, 4, 15

*Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*,
    894 F.3d 1015 (9th Cir. 2018) ................................................................ 4, 5

*Polar Bear Prods., Inc. v. Timex Corp.*,
    384 F.3d 700 (9th Cir. 2004) ............................................................... 1, 6, 13

*Reese v. BP Expl. (Alaska) Inc.*,
    643 F.3d 681 (9th Cir. 2011) ................................................................ 2, 3, 14

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Rodman v. Safeway Inc.*,
   2015 WL 3863653 (N.D. Cal. June 22, 2015)........................................... 10

*Roley v. New World Pictures, Ltd.*,
   19 F.3d 479 (9th Cir. 1994) ............................................................................. 5

*S.E.C. v. Mercury Interactive, LLC.*,
   2011 WL 1335733 (N.D. Cal. Apr. 7, 2011)............................9, 10, 11, 14

*San Joaquin Valley Ins. Auth. v. Gallagher Benefit Servs., Inc.*,
   2020 WL 3642561 (E.D. Cal. July 6, 2020)...................................... 10, 14

*In re Snap Inc. Sec. Litig.*,
   2018 WL 3816764 (C.D. Cal. Aug. 8, 2018) .................................... 7, 8

*Sohm v. Scholastic Inc.*,
   959 F.3d 39 (2d Cir. 2020) ..........................................1, 3, 4, 5, 6

*Sterk v. Redbox Automated Retail, LLC*,
   672 F.3d 535 (7th Cir. 2012) .......................................................... 14

*Synagogue v. United States*,
   482 F.3d 1058 (9th Cir. 2007) .......................................................... 8

*United States v. Adam Bros. Farming, Inc.*,
   369 F. Supp. 2d 1180 (C.D. Cal. 2004) ........................................... 6

*United States v. Woodbury*,
   263 F.2d 784 (9th Cir. 1959) ............................................................ 9

*Werner v. BN Media, LLC*,
   477 F. Supp. 3d 452 (E.D. Va. 2020) ....................................... 4, 5, 6

*Wu v. John Wiley & Sons, Inc.*,
   2015 WL 5254885 (S.D.N.Y. Sept. 10, 2015) ................................ 6

*Zulewski v. Hershey Co.*,
   2013 WL 1334159 (N.D. Cal. Mar. 29, 2013) ................................. 9

**Statutes**

17 U.S.C. § 504........................................................................................ 12

Gibson, Dunn &
Crutcher LLP

iv

1

## TABLE OF AUTHORITIES
(continued)

Page(s)

17 U.S.C. § 505 ................................................................................................... 12

28 U.S.C. § 1292(b) ........................................................................................... 10

**Rules**

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 8

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn & Crutcher LLP

# I.   INTRODUCTION

Starz's Opposition ignores the most compelling reason for interlocutory review in this case:  a consequential split of authority between this Court and the Second Circuit Court of Appeals on a controlling question of law that impacts hundreds of Starz's copyright causes of action.  While correctly noting that *Sohm v. Scholastic Inc.*, 959 F.3d 39 (2d Cir. 2020) involved the exact same question, this Court's order denying MGM's motion to dismiss ("MTD Order") declined to follow the "*Sohm* framework" "absent a definitive statement from the Ninth Circuit."  Dkt. 39 at 8, 11.  Now is the best time to obtain that definitive statement, before the parties and the Court spend time and resources litigating hundreds of causes of action that the Ninth Circuit may ultimately deem barred by the Supreme Court's construction of the Copyright Act's statute of limitations.  A conflict between a federal court of appeals and district courts in a sister Circuit is ***by definition*** substantial ground for difference of opinion, and a classic ground for interlocutory appeal.  If there is to be such a conflict of authority on an issue of federal copyright law, the Ninth Circuit should make that decision.

Rather than acknowledge this conflict of authority, Starz rests entirely on *Polar Bear Productions., Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004), as if the Supreme Court's 2014 decision in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 677 (2014)—which overruled well-established Ninth Circuit law regarding the operation of the Copyright Act's statute of limitations—didn't even exist.  The question posed by MGM's Certification Motion concerns the implementation of *Petrella*, and therefore cannot possibly be answered by a decision that predated *Petrella* by a decade.  Indeed, as this Court recognized, since *Petrella*, the Ninth Circuit "has not had occasion to address whether a damages bar precludes recovery for infringements more than three years old that otherwise would be saved from the statute of limitations by the discovery rule."  Dkt. 39 at 8.

Starz argues that the *Petrella* damages bar is not a "controlling" question because it only concerns a subset of Starz's causes of action, but that is not the proper standard.

Gibson, Dunn &
Crutcher LLP

1    The Ninth Circuit has repeatedly refused to require that a controlling question terminate

2    the litigation.  *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981).  The

3    question whether *Petrella* bars relief for infringements occurring outside the three-year

4    look-back period is "controlling" because its resolution could materially affect the

5    outcome of this litigation.  MGM cited numerous examples in its Certification Motion

6    of non-dispositive questions certified for interlocutory review, which Starz ignores.  *See*,

7    *e.g.*, *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011); *Envt'l. World*

8    *Watch, Inc. v. Walt Disney Co.*, 2014 WL 10979864, at *2–4 (C.D. Cal. Apr. 2, 2014)

9    (Gee, J.).

10       Starz also argues that resolving the question presented for certification will not

11   materially advance the ultimate termination of this lawsuit because its breach of contract

12   cause of action would remain in the case and, therefore, the litigation would be identical

13   even if its copyright causes of action are dismissed.  But that argument is contradicted

14   by Starz's own Complaint, in which Starz seeks a far broader set of remedies and more

15   extensive damages for its copyright claims than its breach of contract claims.  Starz's

16   copyright infringement causes of action will require discovery, motion practice, and

17   potentially trial concerning numerous issues that have no bearing on its contract claims,

18   including MGM's profits attributable to each alleged act of infringement, the amount of

19   statutory damages for each work infringed, and whether and to what extent statutory

20   damages for individual claims may be reduced or enhanced, among other things.  If a

21   significant number of Starz's copyright causes of action are time-barred under *Petrella*,

22   as MGM contends, then the parties and the Court could materially narrow this case and

23   spare the time and resources litigating these copyright infringement-specific issues.

24       All the statutory requirements for certification are satisfied here, and

25   interlocutory appeal would benefit not only this case, but also numerous other copyright

26   infringement cases that raise the same issue.  Accordingly, MGM respectfully requests

27   that the Court certify its MTD Order for interlocutory appeal.

28

## II.   ARGUMENT

### A.   Starz Ignores the Established Conflicts Among Courts Across the Country

Starz's Opposition does not once discuss or even cite the Second Circuit's *Sohm* decision—the only appellate opinion to address the question posed by MGM's Certification Motion and the authority that is in sharp conflict with this Court's MTD Order.  The reason for Starz's omission is transparent, as the Second Circuit's and this Court's divergent conclusions leave no doubt that "reasonable jurists might disagree on an issue's resolution," thus satisfying the substantial ground for difference of opinion requirement.  *Reese*, 643 F.3d at 688.

Instead, Starz summarily concludes that "the Ninth Circuit already has answered the question posed."  Dkt. 44 at 7 (citing *Polar Bear*).  But as this Court clearly stated, the Ninth Circuit "***has not had occasion to address whether a damages bar precludes recovery for infringements more than three years old that otherwise would be saved from the statute of limitations by the discovery rule***."  Dkt. 39 at 8 (emphasis added).

Starz's argument defies logic.  Resolution of the question presented turns on implementation of specific language in the *Petrella* opinion and whether the Supreme Court's explication of the law is dicta or binding precedent—issues that the Ninth Circuit in *Polar Bear* could not have answered ten years before *Petrella* was decided.  *See* Dkt. 39 at 8–11 (examining the specific language and context of *Petrella* to determine whether recovery outside the three-year period is barred); *Sohm*, 959 F.3d at 51-52 (same); *Papazian v. Sony Music Entm't*, 2017 WL 4339662, at *4-5 (S.D.N.Y. Sept. 28, 2017) (same); *Menzel v. Scholastic, Inc.*, 2019 WL 6896145, at *6-7 (N.D. Cal. Dec. 18, 2019) (same).  Indeed, the question MGM presents for interlocutory review arose only after the Supreme Court in *Petrella* clarified how the time limits prescribed in section 507(b) function—a decade after the Ninth Circuit decided *Polar Bear*.  *See* Dkt. 39 at 6 (noting that "litigants ***after*** *Petrella* began arguing that the Supreme Court had strictly barred any recovery for infringements occurring prior to three years before the date of filing, without exception, and that it had overruled or otherwise curtailed the discovery

rule") (emphasis added).   Based on the Supreme Court's explicit assertion that "a successful plaintiff can gain retrospective relief only three years back from **the time of suit**" and that "***[n]o recovery*** may be had for infringement in earlier years" (*Petrella*, 572 U.S. at 677 (emphases added)), numerous courts concluded that they are bound to strictly limit damages to three years from the commencement of the action.   *See*, *e.g.*, *Sohm*, 959 F.3d at 51-52; *Werner v. BN Media, LLC*, 477 F. Supp. 3d 452, 455-56 (E.D. Va. 2020); *Papazian*, 2017 WL 4339662, at *4–5.   This is hardly surprising, since after new Supreme Court decisions are issued, lower courts must examine to what extent earlier circuit precedents may have been overruled and "are always required to follow the controlling opinions of the [Supreme] Court."   *Langere v. Verizon Wireless Servs., LLC*, 983 F.3d 1115, 1121 (9th Cir. 2020).

Nor has any Ninth Circuit opinion after *Petrella* addressed, much less resolved, the question posed by MGM's Certification Motion, as Starz argues. Dkt. 44 at 9.  Starz cites *Media Rights Technologies., Inc. v. Microsoft Corp.*, but that case analyzed only when the plaintiff's copyright claims ***accrued*** under the discovery rule for purposes of claim preclusion.   922 F.3d 1014, 1022-24 (9th Cir. 2019); *see also* Dkt. 40 at 8 n.6. Nowhere in that decision did the Ninth Circuit resolve what damages, if any, are available outside the three-year look-back period under *Petrella*.   Similarly, in *Oracle America, Inc. v. Hewlett Packard Enterprise C*o., 971 F.3d 1042, 1047-49 (9th Cir. 2020), the Ninth Circuit applied the discovery rule to determine when the claims at issue ***accrued***.   Finding that the claims were time-barred even with the application of the discovery rule, the Ninth Circuit had no occasion to address the extent of damages available under *Petrella*.  *Id*.[1]

---

[1] *Bizar v. Dee*, 618 F. App'x 913, 916 (9th Cir. 2015) and *Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, 894 F.3d 1015, 1024 (9th Cir. 2018), two other cases Starz relies upon, are even further afield.  Dkt. 44 at 9.  *Bizar* does not mention the discovery rule or the damages bar and only cited *Petrella* for the proposition that the defense of laches "is unavailable in an action under the Copyright Act," (*Bizar*, 618 F. App'x at 916), which no one disputes.  *Pinkette* likewise addressed the entirely different question of "what effect, if any, *Petrella* and *SCA Hygiene* had on applying
*(Cont'd on next page)*

That the discovery rule continues to apply to determine when a copyright claim *accrues* does not answer the question whether damages outside the three-year look-back period are available post-*Petrella* *irrespective of whether the discovery rule applies*. Indeed, numerous courts have upheld the continuing application of the discovery rule while also concluding that *Petrella* precludes damages outside the three-year look-back period.  *See*, *e.g.*, *Sohm*, 959 F.3d at 50-52 (holding that discovery rule continues to apply, but *Petrella* nevertheless precludes recovery outside the three year look-back period); *Werner*, 477 F. Supp. 3d at 455-56 (same); *Papazian*, 2017 WL 4339662, at *3–6 (same).  As the Second Circuit explained, the discovery rule continues to apply "to determine when a copyright infringement claim *accrues*," as the Supreme Court did not expressly pass on that issue, but the *Petrella* damages bar must be followed to "determine *the extent of the relief available*," given that the Supreme Court's holding on *that* issue was explicit and necessary to the result reached.  *Sohm*, 959 F.3d at 50, 52 (emphases added); *accord Werner*, 477 F. Supp. 3d at 456 ("[A]lthough the discovery rule determines whether a plaintiff timely filed suit, 'a three-year lookback period from the time a suit is filed . . . determine[s] the extent of the relief available.'") (quoting *Sohm*, 959 F.3d at 52).

The Ninth Circuit has likewise recognized that the two questions are distinct.  In *Roley v. New World Pictures, Ltd*., the Ninth Circuit adopted the discovery rule to determine when claims accrued.  19 F.3d 479, 481 (9th Cir. 1994).  But the extent of damages available beyond three years from the filing of the complaint remained "an interesting, apparently unresolved issue," notwithstanding *Roley*'s adoption of the discovery rule.  *Kling v. Hallmark Cards Inc*., 225 F.3d 1030, 1042 (9th Cir. 2000)

---

laches to a trademark cancellation claim."  *Pinkette*, 894 F.3d at 1018.  Starz mischaracterizes *Pinkette* as having concluded that "*Petrella* merely 'confirmed and restated' a 'long-standing rule'" articulated in *Polar Bear*, which is particularly preposterous.  Dkt. 44 at 9.  The "long-standing rule" mentioned in that decision was in reference to the "the idea that laches will not bar a claim for legal relief," not the discovery rule in *Polar Bear* (*Pinkette*, 894 F.3d at 1024), and *Petrella* in fact overturned well-established Ninth Circuit precedent on that issue, rather than "confirm[ing] and restat[ing]" the Ninth Circuit rule.  Dkt. 44 at 9.

Gibson, Dunn & Crutcher LLP

(declining to resolve the issue because the district court had not addressed it in the first instance). And in *Polar Bear*, the Ninth Circuit reaffirmed the discovery rule adopted in *Roley* and separately considered the "different" and "novel" question concerning the extent of damages available outside of the three-year period. *Polar Bear*, 384 F.3d at 706. Since *Petrella*, the Ninth Circuit has only cited *Polar Bear* for the proposition that the discovery rule determines when a claim **accrues**, **not** on the issue of whether damages outside the three-year look-back period are available. *See* Dkt. 39 at 8.

There is an established and growing split among the courts on whether *Petrella*'s interpretation of section 507(b) bars damages outside the three-year period without exception (including between this Court and the Second Circuit). *See, e.g.*, Dkt. 39 at 6-11; *Sohm*, 959 F.3d at 52; *Werner*, 477 F. Supp. 3d at 456; *Jose Luis Pelaez, Inc. v. McGraw-Hill Glob. Educ. Holdings LLC*, 399 F. Supp. 3d 120, 134-36 (S.D.N.Y. 2019); *Park v. Skidmore, Owings & Merrill LLP*, 2019 WL 9228987, at *3–4 (S.D.N.Y. Sept. 30, 2019); *Papazian*, 2017 WL 4339662, at *5–6; *Wu v. John Wiley & Sons, Inc.*, 2015 WL 5254885, at *6–7 (S.D.N.Y. Sept. 10, 2015). MGM seeks guidance from the Ninth Circuit on that question, not the general applicability of the discovery rule. The Ninth Circuit indisputably has not yet weighed in on the *Petrella* damages bar issue.[2] While this Court disagreed with the *Sohm* framework, in part to reconcile *Polar Bear* with

---

[2] All of the cases cited by Starz to argue that no substantial grounds for difference of opinion exists are inapposite, as they involve instances where the Ninth Circuit clearly and actually addressed the issue presented for interlocutory review. *See Munger v. Cascade Steel Rolling Mills, Inc.*, 2020 WL 423385 at *4 (D. Or. Jan. 27, 2020) (finding no substantial ground for difference of opinion because "there is no circuit split on the endurance of the Supreme Court's 'clear and unmistakable' standard that it most recently articulated in Penn Plaza in 2009, it is not an issue of first impression, and the Ninth Circuit has already spoken clearly on the issue"); *United States v. Adam Bros. Farming, Inc.*, 369 F. Supp. 2d 1180, 1183-84 (C.D. Cal. 2004) (denying defendant's motion for certification where defendant acknowledged that the Ninth Circuit and all other Circuits agreed with the district court's interpretation of a Supreme Court precedent and the Fifth Circuit was the lone outlier); *Craftwood II, Inc. v. Tomy Int'l, Inc.*, 2013 WL 12140946, at *4 (C.D. Cal. Nov. 15, 2013) (finding no substantial ground for difference of opinion where a Ninth Circuit decision recognized a circuit split and then resolved it); *In re Allstate Life Ins. Co. Litig.*, 2013 WL 3187419 at *2 (D. Ariz. June 21, 2013) ("This is not an issue on which the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point.") (internal quotations omitted).

*Petrella*, it is absurd to pretend that *Polar Bear* actually answered the question presented for interlocutory review.

Importantly, the central issue for purposes of MGM's Certification Motion is ***not*** whether this Court's ruling or the Second Circuit's ruling is the correct one; rather, the issue is whether there are substantial grounds for difference of opinion. *Reese*, 643 F.3d at 688. Indeed, courts regularly certify orders for interlocutory review, even while maintaining the correctness of the certified order. *See, e.g.*, *Walt Disney*, 2014 WL 10979864, at *3 (finding that substantial ground for difference of opinion exists while maintaining that the Court disagrees with the moving party's position). Here, the existence of an acknowledged and deepening split between district courts in this Circuit and the Second Circuit indisputably satisfies the standard.

## B. Starz Misapprehends the "Controlling" Question of Law Requirement and the Implication of the *Petrella* Damages Bar

Starz does not (and cannot) dispute that the question MGM presents for interlocutory review is one of pure law, but argues that the question is not "controlling" because (1) the resolution of the question would not change how this lawsuit would be conducted, (2) questions concerning damages are not certifiable and (3) the damages avoided through interlocutory appeal would be insignificant. Starz's arguments are meritless and reflect a misunderstanding of the controlling question of law requirement.

***First***, Starz wrongly argues that the Ninth Circuit's resolution of the question MGM presents for certification "would not change how the litigation would be conducted." Dkt. 44 at 4. Starz is confusing the "controlling law" requirement with the "advance the ultimate termination of the litigation" requirement, as evidenced by Starz's reliance on the portion of *In re Snap Inc. Sec. Litig.* that analyzed whether the appellate court's resolution of the interlocutory appeal "would more speedily terminate the litigation." *See* 2018 WL 3816764, at *1 (C.D. Cal. Aug. 8, 2018). As discussed below, Starz likewise wrongly applies the "terminate the litigation" requirement, but Starz is doubly wrong in conflating the two requirements.

The standard for determining whether a question is "controlling" is whether "resolution of the issue on appeal could materially affect the **outcome** of litigation in the district court"—**not** its conduct or duration. *In re Cement*, 673 F.2d at 1026-27 (emphasis added). The question posed by MGM plainly meets that standard, because its resolution will determine whether several hundred of Starz's copyright causes of action fail as a matter of law. *See Casas v. Victoria's Secret Stores*, 2015 WL 13446989, at *2 (C.D. Cal. Apr. 9, 2015) (controlling question of law includes "the question of whether a claim exists as a matter of law") (quoting 19 James Wm. Moore, Moore's Fed. Prac. (3d ed. 2006) § 203.31 [2], at 203–87) (brackets in the original). If the Ninth Circuit agrees with MGM and the Second Circuit, the entire cause of action for 378 counts will be dismissed because there is no relief of any kind that the Court may grant. *See* Fed. R. Civ. P. 12(b)(6) (a cause of action may be dismissed for "failure to state a claim upon which relief can be granted"); *Synagogue v. United States*, 482 F.3d 1058, 1064 (9th Cir. 2007) (affirming 12(b)(6) dismissal where the only relief sought by plaintiff was precluded as a matter of law). Moreover, MGM anticipates that even cursory discovery will show that the vast majority of the remaining copyright infringements alleged by Starz occurred well outside of the three-year look-back period, subjecting those causes of action to dismissal as well. *See Papazian*, 2017 WL 4339662, at *6 ("[S]ince any infringing acts for which Sony could be liable occurred long before the three-year look back period for relief, Plaintiff is barred from recovering actual damages in this action. The Court grants Defendant's motion for partial summary judgment on this basis.").

As this Court and other courts have recognized, for a question of law to be *controlling*, its resolution need only dispose of *some* of the causes of action asserted in the lawsuit.[3] *See Walt Disney Co.*, 2014 WL 10979864, at *3 ("The Court concludes

---

[3] None of the cases cited by Starz hold otherwise. For example, in the portion of *Snap* that actually deals with the controlling question of law requirement, the Court held that the requirement was not satisfied because neither of the questions presented for

*(Cont'd on next page)*

that the proposed question concerns a controlling question of law because its resolution could dispose of Plaintiffs' claim regarding non-storm water discharges containing pollutants, thereby 'materially affect[ing] the outcome of litigation in the [trial] court.'") (citing *In re Cement*, 673 F.2d at 1026) (brackets in the original); *Ass'n of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1093 (E.D. Cal. 2008) (holding that a question of law was controlling because its resolution could lead to the dismissal of one of the causes of action asserted in the case); *S.E.C. v. Mercury Interactive, LLC.*, 2011 WL 1335733, at *3 (N.D. Cal. Apr. 7, 2011) (holding that a question of law that could lead to the dismissal of one cause of action was controlling); *Casas*, 2015 WL 13446989, at *2 (holding that a question of law that could dispose of one of the causes of action was controlling). That other causes of action may still remain in the case is of no moment. "[T]he Ninth Circuit has not limited 1292(b) motions to actions where the question is dispositive of the entire action." *Fred Schakel Dairy*, 634 F. Supp. 2d at 1093; *accord United States v. Woodbury*, 263 F.2d 784, 787 (9th Cir. 1959) ("[W]e do not hold that a question brought here on interlocutory appeal must be dispositive of the lawsuit in order to be regarded as controlling."); *Jaco v. WinCo Holdings, Inc.*, 2019 WL 2615739, at *1 (E.D. Cal. June 26, 2019) ("[T]he question need not be dispositive of the lawsuit for an interlocutory appeal to be appropriate.").

**Second**, Starz's contention that questions that may reduce damages are categorically not certifiable is flatly incorrect and misses the point in any event. Dkt. 44 at 6. If the Ninth Circuit resolves the question presented in MGM's favor, hundreds of Starz's copyright causes of action would be subject to immediate dismissal in their entirety. This is not simply a question of the amount of damages, as Starz argues; there

---

immediate review would dispose of any claims in that case at all, as there were alternative grounds for allowing the claims to survive. *Snap*, 2018 WL 3816764, at *2. Similarly, in *Zulewski v. Hershey Co.*, the court found that the question presented for interlocutory review was not a controlling one because its resolution would not change the outcome of any cause of action, but would only impact the calculation of on form of damages. 2013 WL 1334159, at *1 (N.D. Cal. Mar. 29, 2013).

will be no liability as to the works where there is no alleged infringement within the three-year look-back window.

Moreover, nothing in the text of section 1292(b) or relevant case law supports Starz's contention. *See* 28 U.S.C. § 1292(b); *San Joaquin Valley Ins. Auth. v. Gallagher Benefit Servs., Inc.*, 2020 WL 3642561, at *4 (E.D. Cal. July 6, 2020) (finding that a question of law that could negate the bulk or all of the damages in the case is controlling); *MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, 2019 WL 5269014, at *4 (N.D. Cal. Oct. 17, 2019) (finding that questions concerning admissibility of certain evidence relating to damages were controlling); *Mercury Interactive*, 2011 WL 1335733, at *3 (finding that a question concerning the appropriate construction of a statute that affected "the bulk of the damages" satisfied both the "materially advance" and "controlling question" elements of section 1292(b)); *Casas*, 2015 WL 13446989, at *2-4 (finding that a question of law that could dispose of a claim that was the basis for a substantial amount of damages sought by plaintiffs met both the "materially advance" and "controlling question" requirements).

The handful of cases Starz cites does not suggest otherwise. In *Banneck v. Fed. Nat'l Mortg. Ass'n*, for example, the Court declined to certify questions concerning the availability of statutory damages and injunctive relief for the causes of action at issue because it was uncontested that plaintiffs would still be entitled to actual damages for those same causes of action. 2018 WL 5603632, at *2 (N.D. Cal. Oct. 29, 2018). Similarly, in *F.T.C. v. Swish Mktg.*, the court declined to certify a question concerning the availability of monetary relief under the Federal Trade Commission Act because it was undisputed that the FTC would still be entitled to injunctive relief and "[t]he possibility for purely injunctive relief still presents a live controversy." 2010 WL 1526483, at *1-2 (N.D. Cal. Apr. 14, 2010). In *Rodman v. Safeway Inc.*, the court declined to certify a breach of contract theory, because the defendant did not even challenge an alternative theory. 2015 WL 3863653, at *2 (N.D. Cal. June 22, 2015). In each case Starz cites, the question presented was deemed not "controlling" because

plaintiffs had alternative remedies or bases to uphold of the causes of action at issue and the resolution of the question presented would not affect the outcome of *any* cause of action.  Here, by contrast, a resolution of the question presented in MGM's favor leaves hundreds of Starz's copyright infringement causes of action with no alternative remedies and is dispositive of those counts.

*Third*, Starz argues that even if the Ninth Circuit agrees with MGM, the damages avoided would be insignificant, claiming that "MGM acknowledge[d] [that] the only category of damages that potentially would be eliminated by its appeal are [sic] MGM's profits" and that Starz could still recover its own lost profits.  Dkt. 44 at 6-7.

That is false.  MGM made no such acknowledgement.  Instead, in its motion for stay, MGM offered its profits as an example of one area of intrusive and burdensome discovery that may be avoided by the Ninth Circuit's guidance on *Petrella's* damages bar.  Dkt. 41 at 6.  The *Petrella* damages bar, if applied consistent with the Second Circuit, would leave Starz with no relief of any kind for the copyright causes of action that MGM moved to dismiss (and for hundreds more on summary judgment).  Dkt. 40 at 1-2, 9.  Such a question is undoubtedly "controlling."  *See Walt Disney Co.*, 2014 WL 10979864, at *3; *Fred Schakel Dairy*, 634 F. Supp. 2d at 1093; *Mercury Interactive*, 2011 WL 1335733, at *3; *Casas*, 2015 WL 13446989, at *2.

## C.   The Ninth Circuit's Resolution of the Unsettled Question of Law Is Likely to Materially Advance the Ultimate Termination of This Case

Starz's argument that interlocutory appeal would not materially advance the ultimate termination of this case rests on the faulty premise that its copyright causes of action and breach of contract cause of action are identical.  Based on this incorrect premise, Starz argues that regardless of how the Ninth Circuit rules, this litigation would remain unchanged, as would the prospect for settlement.  Starz is wrong.

Starz's own Complaint exposes the differences between its copyright causes of action and breach of contract cause of action.  Among other things, the types of remedies available for copyright infringement claims are far broader than those available for

breach of contract claims.  Under the Copyright Act, a successful plaintiff may seek its own actual damages, additional profits of the infringer, statutory damages with enhancement for willful conduct, and attorney's fees in the district court's discretion. Dkt. 1 at 23-24; *see also* 17 U.S.C. §§ 504, 505.  By contrast, "[c]ontract damages are generally limited to those within the contemplation of the parties when the contract was entered into or at least reasonably foreseeable by them at that time; consequential damages beyond the expectations of the parties are not recoverable." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd*., 7 Cal. 4th 503, 515 (1994).

If Starz's copyright causes of action are eliminated for the time-barred claims, as MGM has argued, there would be no need to take any discovery concerning MGM's profits going back seven years.  This would avoid intrusive and burdensome discovery for not only MGM, but also numerous third parties who had business dealings with MGM.  And this concern is not just a hypothetical one.  Before MGM even filed its Answer, Starz propounded overly broad and burdensome discovery requests seeking highly confidential and proprietary documents concerning MGM's and nonparty EPIX's business for the time period covering January 1, 2013 to present, including, *inter alia*:

- Documents concerning the revenue MGM received from each Person to whom a Picture was licensed, on a Person-by-Person, Picture-by-Picture, and date-by-date basis

- Documents concerning the revenue MGM received from each Platform or Distributor on which a Picture was exhibited, on a Platform-by-Platform, Picture-by-Picture, and date-by-date basis, including any revenue received from self-publication or self-exhibition

- All license agreements concerning any of the Pictures

- Documents sufficient to show MGM's aggregate licensing revenue from all motion pictures and television episodes during the relevant time period on a month-by-month basis

- Documents sufficient to show the revenues earned by EPIX from distribution agreements with Comcast, AT&T/DIRECTV, DISH and Charter on a month-by-month basis

The Ninth Circuit's prompt resolution of the question posed by MGM would greatly reduce the burden on MGM and nonparties, as it would limit any permissible

discovery on MGM's profits to last three years.  Discovery concerning the circumstances surrounding the alleged infringements would likewise be limited, as the willfulness of MGM's conduct is only relevant to enhancement or reduction of statutory damages for copyright infringement claims, not breach of contract claims.  *Litton*, 7 Cal. 4th at 516 ("Varying personal or economic reasons motivate one to breach his contract, but the general rule is that ... motives ... are immaterial and cannot be inquired into on the question of compensatory damages.") (internal quotations omitted, ellipsis in original).

Expert discovery would likely be streamlined as well, if the three-year *Petrella* damages bar eliminates hundreds of causes of action as MGM contends.  Proving entitlement to the alleged infringer's profits is not as simple as establishing the defendant's gross profits.  Instead, the plaintiff must first prove that each of defendant's revenue streams bears a legally significant relationship to the alleged infringement. *Polar Bear*, 384 F.3d at 711.  Once this causal nexus is shown, a defendant bears the burden of apportioning the profits that were not the result of infringement.  *Id.*  Due to the complexity of this exercise, the alleged infringer's profits are often the subject of extensive expert testimony and fraught with numerous points of contention.  *Id.* at 712-16.  Establishing an infringer's profits with respect to one work is complicated enough, but the parties may need to individually litigate this issue for all 340 titles underlying Starz's copyright infringement claims if this case is not narrowed.  And the inquiry would need to be individualized, as the titles at issue have varying levels of value and popularity, and therefore different potential impact on MGM's profits.  If the Ninth Circuit resolves the question posed in MGM's favor, however, the vast majority of Starz's copyright causes of action would be dismissed on the pleadings or on summary judgment, without the need to expend resources and time trying to quantify the impact of each act of alleged infringement on MGM's profits.

But absent resolution of the question posed by MGM, the Court or the jury would need to adjudicate for each of the 340 titles at issue whether Starz had any copyright in each of the titles at issue, whether MGM infringed any of the exclusive rights under the

Gibson, Dunn &
Crutcher LLP

Copyright Act for each of the titles at issue, what additional profits MGM earned that could be apportioned to each title and alleged acts of infringement, the amount of statutory damages that may be proper for each title, whether any acts of infringement by MGM were willful and whether and to what extent the Court should enhance or reduce statutory damages for each of the titles at issue in this case, among others.  None of these issues unique to copyright infringement causes of action would need to be adjudicated for any title for which Starz only has a surviving breach of contract claim.

Unsurprisingly, many courts find that the materially advance the litigation requirement is satisfied where, as here, interlocutory appeal "may" remove a subset of claims from the case and streamline the case, even if it does not resolve all of the claims in the case.  *See, e.g.*, *Reese*, 643 F.3d at 688; *Walt Disney*, 2014 WL 10979864, at *4; *Mercury Interactive*, 2011 WL 1335733, at *3; *Fred Schakel Dairy*, 634 F. Supp. 2d at 1092–93; *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012).

Starz self-servingly claims that its settlement posture would not be impacted in any way by the Ninth Circuit's resolution of the question raised by MGM, but it is doubtful that Starz could credibly demand an exorbitant settlement amount if the Ninth Circuit's ruling wipes out its copyright causes of action for the majority of the titles at issue in this case, given that damages for its breach of contract claims are likely to be far lower.  Moreover, if the Ninth Circuit disagrees with MGM, it would certainly cause MGM to reassess its potential exposure in this case and affect MGM's settlement position.  "[T]hat is enough to satisfy the may materially advance clause of section 1292(b)[.]"  *Casas*, 2015 WL 13446989, at *3 (internal quotations omitted) (quoting *Sterk*, 672 F.3d at 536); *accord Gallagher*, 2020 WL 3642561, at *5 (finding the may materially advance the litigation requirement satisfied where the moving party represented that an immediate resolution would have a significant effect on its settlement position and the court found that representation logical); *Mercury Interactive*, 2011 WL 1335733, at *3 (finding that a question relating to the bulk of the damages may have an effect on the parties' efforts to reach settlement and thus may materially advance the

1   litigation).

2        Lastly, while Starz argues that the Court should not consider the potential impact

3   of the Ninth Circuit's ruling on other copyright cases, it cites no authority even

4   suggesting that consideration of such factors is inappropriate.  To the contrary, many

5   courts consider whether interlocutory appeal may advance the litigation for other similar

6   cases when deciding whether to certify a question for interlocutory appeal.  *See*, *e.g.*,

7   *Fishman v. Subway Franchisee Advert. Fund Tr., Ltd*., 2020 WL 1676390, at *3 (C.D.

8   Cal. Apr. 6, 2020); *Heaton v. Soc. Fin., Inc*., 2016 WL 232433, at *6 (N.D. Cal. Jan. 20,

9   2016); Dkt. 40 at 11, n.8.  It would no doubt benefit district courts and copyright litigants

10   alike to obtain "a definitive statement from the Ninth Circuit" on this recurring question

11   of critical importance in copyright litigation.  Dkt. 39 at 11.

12   **III.   CONCLUSION**

13        As the Supreme Court explained, "[t]he federal limitations prescription governing

14   copyright suits serves two purposes: (1) to render uniform and certain the time within

15   which copyright claims could be pursued; and (2) to prevent the forum shopping invited

16   by disparate state limitations periods[.]"  *Petrella*, 572 U.S. at 670.  The conflict between

17   the Second Circuit and some of the district courts in this Circuit leads to the very result

18   that Congress has sought to avoid.  MGM respectfully requests that the Court certify its

19   order denying MGM's motion to dismiss so that MGM may seek immediate review of

20   whether Section 507(b) of the Copyright Act limits damages to three years prior to the

21   commencement of a copyright infringement action.

22

23

24

25

26

27

28

1  DATED:  February 5, 2021

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP


By:  */s/  Jay P. Srinivasan*
     Jay P. Srinivasan

Attorneys for Defendant
MGM DOMESTIC TELEVISION
DISTRIBUTION LLC

Gibson, Dunn &
Crutcher LLP

16