Steven M. Goldberg (State Bar No. 82174)
sgoldberg@mzclaw.com
MARKUN ZUSMAN FRENIERE
COMPTON LLP
3 Hutton Centre Dr., 9th Floor
Santa Ana, CA 92707
Telephone: (310) 454-5900
Facsimile: (310) 454-5970

Evan R. Chesler (N.Y. Bar No. 1475722;
admitted *pro hac vice*)
echesler@cravath.com
J. Wesley Earnhardt (N.Y. Bar No.
4331609; admitted *pro hac vice*)
wearnhardt@cravath.com
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

Robert N. Klieger (State Bar No. 192962)
rklieger@hueston.com
HUESTON HENNIGAN LLP
523 West 6th St., Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
Facsimile: (888) 775-0898

*Attorneys for Plaintiff Starz Entertainment,
LLC*

Orin S. Snyder
osnyder@gibsondunn.com
Jay P. Srinivasan
jsrinivasan@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-2400
Facsimile: (212) 351-6335]

*Attorneys for Defendant MGM
Domestic Television Distribution LLC*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### Western Division

| | |
|---|---|
| STARZ ENTERTAINMENT, LLC<br><br>Plaintiff,<br><br>v.<br><br>MGM DOMESTIC TELEVISION DISTRIBUTION LLC<br><br>Defendant. | No. 2:20-CV-04085 DMG (KSx)<br><br>**JOINT DISCOVERY PLAN PURSUANT TO FED. R. CIV. P. 26(f)**<br>Date: March 12, 2021<br>Time: 9:30 AM<br>Ctrm: 8C, 8th Floor<br>Hon. Dolly M. Gee |

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure ("Rule 26(f)") and Local Rule 26-1, Plaintiff, Starz Entertainment, LLC ("Starz") and Defendant, MGM Domestic Television Distribution LLC ("MGM" and, together with STARZ, the "Parties"), by and through their undersigned counsel, having conducted their conference in accordance with Rule 26(f), hereby submit the following Joint Rule 26(f) Report:

## I.   STATEMENT OF THE CASE AND ISSUES IN DISPUTE

**Starz's Position:**   Starz respectfully requests that the Court enter a reasonable discovery plan and direct the Parties to engage in good faith discovery now, consistent with the Court's February 22, 2021 Order (Dkt. 52 at 4).  Despite Starz's efforts to obtain an agreement to conduct such discovery from MGM, we have been unsuccessful and need the Court's intervention.  (*See infra* Section II.E.)[1]  A summary of this action is set forth below.

---

[1] Contrary to MGM's inflammatory statements below, Starz does not seek a motion to compel through this report, nor does it request any exception to the Local Rules.  Rather, Starz merely seeks the entry of a discovery plan that orders discovery to commence, in good faith, now (for claims not subject to the Court's partial stay), and explains why there is no basis for the delay MGM seeks to impose.

MGM's claims of "sandbagging" are false.  Starz sent MGM a revised draft of the joint discovery report with an updated schedule on February 12, 2021.  Starz requested that MGM provide its positions by February 19, 2021 so that the Parties would have sufficient time to negotiate, finalize and file the joint discovery report.  MGM, however, stated that it did not anticipate providing its edits until Tuesday, February 23.  February 23 came and went without MGM providing its draft.  On a call the evening of February 24—two days before the filing deadline—MGM informed Starz for the first time that it intended to propose an extended schedule and seek phased discovery.  On that call, MGM suggested that the parties were unable to reach agreement and that MGM and Starz should present competing positions for the sections in

Starz's claims arise out of MGM's breach of two agreements, the 2013 and 2015 Library Agreements, in which MGM provided Starz with an exclusive license to exhibit hundreds of films and television episodes (the "Pictures").  In exchange for this exclusive right to exhibit these Pictures, Starz paid MGM nearly $70,000,000 over the life of the two agreements.

MGM breached both agreements on a massive scale.  Despite granting Starz the exclusive license to exhibit the Pictures, MGM licensed or otherwise exhibited the same Pictures to multiple other platforms, including Amazon and MGM's own network, Epix.  As a result, Pictures that should have been found only on Starz were available on competing platforms.  MGM's actions infringed Starz's copyrights and breached the Library Agreements.

MGM's actions caused Starz to lose profits from its customers and distributors, cost it valuable subscribers, and damaged its reputation.  Having exclusive content is critical to Starz's business, both because it allows Starz to compete with other content providers for direct subscribers, and because having exclusive content increases Starz's value to distributors, such as cable and satellite TV companies.  When MGM deprived Starz of the exclusivity for which it bargained, it damaged nearly every aspect of Starz's business.

MGM also benefited from the infringement.  It received improper license fees; it was paid for exclusivity it did not provide; and it used the infringements to advantage its own channel, Epix, over Starz.

---

dispute.  MGM did not share its extensive proposed edits (including requesting a trial date in 2024 (later revised to 2023) and more than two years of document discovery) with Starz until 7:55 p.m. ET on February 25, the evening before the filing deadline.  Starz returned edits to MGM in less than 24 hours, and in the middle of the work day on MGM's end.

Starz seeks damages under the Copyright Act and for breach of contract in the form of (i) MGM's profits attributable to its direct, contributory and vicarious copyright infringement; (ii) monetary damages equal to Starz's actual damages caused by MGM's direct, contributory and vicarious copyright infringement, including Starz's lost profits; (iii) compensatory and consequential damages as a result of MGM's breach of the Library Agreements and of the covenant of good faith and fair dealing; and (iv) Starz's costs and disbursements in this action.

The principal issues in this case are (i) the extent to which MGM has infringed Starz's copyrights; (ii) the extent to which MGM has breached the Library Agreements; and (iii) the amount of damages Starz is entitled to recover.

**MGM's Position:**

Rather than comply with the Local Rules and this Court's standing orders and those of Magistrate Judge Stevenson, Starz has incorporated an improper motion to compel in this Joint Rule 26(f) Report, rife with mischaracterizations of the record and overheated rhetoric. *See* Section II.E. Moreover, Starz shoehorned this procedurally defective motion to compel into the Parties' Joint Rule 26(f) Report in the most highly prejudicial and unfair way possible, by sandbagging MGM with this improper argument at 2:43 p.m. on the day this filing is due.[2]

As MGM informed the Court during the February 19 hearing on MGM's motion for certification and stay, the Parties were scheduled to have their Rule 26(f) conference later that same day. After the hearing, Starz unilaterally cancelled the conference and said that it would reach out to MGM to reschedule

---

[2] At almost literally the eleventh hour (Friday night at 10:08 p.m.), less than two hours before this submission was due, Starz struck its express request for discovery relief but left in the eight pages of misrepresentations and distortions that supported that request.

it.  Several days later, Starz contacted MGM to say that the Court's stay order had no impact on how this case would proceed but did not offer to reschedule the Rule 26 conference.  MGM disagreed and said that the Parties should have their conference as ordered by the Court, particularly because it was especially necessary to discuss the discovery plan now that the Court had entered its order staying a portion of the case.  Starz eventually agreed to participate in the Rule 26 conference on February 24, just two days before this Report was due.  During the approximately hour-long call, MGM proposed options for how the Parties could conduct discovery in a fashion that would avoid duplicative discovery and discovery that could be mooted by the Ninth Circuit.  Although Starz disagreed with MGM's proposals, at no point during this conference did Starz ever mention that it intended to use this Joint Rule 26(f) Report as a vehicle to seek an order compelling discovery from MGM.  Had Starz done so, or even included these arguments in its initial draft, MGM would have advised Starz that such a gambit is impermissible in this District and would have prepared a response.

Instead, after the Parties had already exchanged drafts of this Report, it was not until this afternoon—the day on which this Report is due—that Starz inserted eight pages of completely new material, along with exhibits, which essentially embeds a meritless motion to compel inside this Joint Report (see Section II.E.), and demanded a response within four hours.  If Starz was dissatisfied with MGM's discovery responses, it could have said so when it provided MGM with its initial draft of this Report.  Instead, Starz waited until the eve of this filing to ambush MGM with eight pages of briefing about events that occurred months ago.

Starz's conduct is highly inappropriate and violates the Local Rules, standing orders of this Court and Magistrate Judge Stevenson and Central District's Civility and Professionalism Guidelines requiring counsel to treat

adversaries with fairness and due consideration.  The Court's Standing Order provides that "discovery motions are to be calendared before the Magistrate Judge assigned to the case."  Magistrate Judge Stevenson's Standing Order further provides that "[s]trict compliance with Local Civil Rule 37 is required" and that "[n]o discovery motion may be filed until the Court has conducted its pre-motion telephonic conference."  There is no basis to grant Starz an exception to the Local Rules, as Starz requests this Court to do, and permit Starz to flout the orders of this Court and Magistrate Judge Stevenson.

Considering the numerous misrepresentations and meritless arguments that Starz makes, MGM would require several pages of briefing to adequately respond.  Of course, a Joint Rule 26(f) Report is not the proper forum for these arguments, so MGM will refrain from responding in kind to Starz's improper sections of this document, reserving these arguments for the discovery dispute resolution procedures authorized by the Local Rules and the Orders of this Court. MGM respectfully requests that the Court disregard Starz's improper argument in Section II.E. below.  In the remainder of this Report, MGM has set forth its positions on the issues that the Court ordered the Parties to address.  MGM will respond to Starz's arguments if and when Starz properly raises them with Magistrate Judge Stevenson in a properly noticed motion.

* * *

Under the 2013 and 2015 Library Agreements, MGM granted Starz a limited license to exhibit certain content owned or distributed by MGM (referred to as "titles") for a limited time period, in limited territories, in limited languages and on limited media.  Except as provided by the Library Agreements, MGM retained the right to concurrently exploit those titles on all other media, in all other territories and in all other languages.  Starz fully enjoyed the benefit of its bargain for the vast majority of the titles it licensed under the Library

Agreements.   In some instances, certain titles licensed to Starz were also exhibited by third parties during Starz's license periods on media licensed to Starz.  These instances, referred to as "collisions," did not occur on a massive scale as Starz alleges and were not the cause of Starz's decline in the marketplace or MGM's successes.  Contrary to Starz's assertions, MGM has ***not*** admitted that it licensed hundreds of these titles to third parties during Starz's license periods. Indeed, the vast majority of Starz's claims are stale, trivial, or entirely baseless, involving license periods that expired long ago and collisions that were brief, economically insignificant, extraterritorial or non-existent.

The principal issues in this case are (i) whether MGM breached the Library Agreements and/or infringed Starz's purported copyrights in the titles in dispute; (ii) whether Starz's claims are barred by the applicable statute of limitations; and (iii) the amount of damages Starz is entitled to, if any.

## II.   DISCOVERY PLAN

### A.   Initial Disclosures:

No changes are proposed in the form or other requirements for disclosures under Rule 26(a), and the Parties have agreed that initial disclosures will be exchanged by March 10, 2021.

### B.   Subjects of Discovery:

**Starz's Position:**   At this time, Starz anticipates taking discovery from MGM on the following topics:

     i.   the 2013 and 2015 Library Agreements;

     ii.   MGM's ownership of the copyrights for each Picture licensed in the Library Agreements;

iii.   MGM's breach of the Library Agreements, including information concerning to whom MGM licensed the Pictures and where the Pictures were exhibited during windows of Starz exclusivity;

iv.   MGM's systems, if any, for monitoring its licenses and ensuring compliance with its agreements;

v.   MGM self-publishing any of the Pictures licensed to Starz on Amazon or any other platform;

vi.   MGM's communications about Starz and about the value of the Pictures it licensed to Starz;

vii.   the value of MGM's library or licenses, including the value of any Picture licensed to Starz and the value of exclusivity; and

viii.   MGM's profits from its infringements (including Epix replacing Starz on major distribution channels as a result of the infringements) and Starz's damages from MGM's breaches and infringements.

Starz also anticipates taking discovery of relevant third parties, including entities that were licensed the Pictures by MGM, exhibited the Pictures, or distributed the Starz and/or Epix networks.  Starz further anticipates that this case will involve expert discovery.

**MGM's Position:**

MGM anticipates taking discovery on at least the following topics:

i.   the negotiation and execution of the 2013 and 2015 Library Agreements;

ii.   Starz's allegations that MGM breached the Library Agreements and/or infringed its purported copyrights in the titles in dispute, including when Starz alleges that these events occurred and on what platforms;

iii.   Starz's discovery of its claims, including any diligence it exercised

8

to discover the bases of its claims;

    iv.   any injury or damages that Starz allegedly suffered as a result of MGM's alleged breach of the Library Agreements and infringement of Starz's purported copyrights in any of the titles in dispute; and

    v.   any other reasons for Starz's business failures or other losses claimed by Starz.

In addition, MGM anticipates taking discovery of third parties, including Starz's distributors who allegedly devalued Starz due to MGM's alleged breach of the Library Agreements and/or infringements of Starz's purported copyrights in the titles in dispute. MGM further anticipates that this case will involve extensive expert discovery, particularly with respect to damages.

## C.   Document Production and Preservation

The Parties represent that they have complied with their preservation obligations relating to electronically stored information ("ESI"), pursuant to Rule 34 of the Federal Rules of Civil Procedure. The Parties are finalizing an ESI Agreement and intend to submit a draft stipulated ESI Agreement for the Court's approval. The Parties do not anticipate any issues regarding ESI that would require Court intervention at this time. If disagreements arise, the Parties will meet and confer in good faith to resolve those disagreements among themselves before involving the Court.

## D.   Claims of Privilege:

In accordance with the Federal Rules of Civil Procedures, the Parties agree to provide a privilege log for any documents withheld by the opposing Party on grounds of attorney-client privilege or work product privilege. The Parties will exchange privilege logs no later than 30 days following substantial completion of document discovery, and supplement that privilege log as necessary thereafter.

9

The Parties have further agreed to seek the entry of a protective order so as to limit the use or disclosure of sensitive materials and an order pursuant to Federal Rule of Evidence 502(d).  The Parties intend to prepare a joint stipulated confidentiality agreement and protective order and a joint stipulated 502(d) order for the Court's approval.

The Parties disagree on the scope of any exceptions to the requirement that Parties log documents withheld on the basis of privilege.

**Starz's Position:**  Starz proposes that the Parties adhere to Rule 26(b)(5)(A) and log all otherwise discoverable information withheld on the basis of privilege with four exceptions.  Starz proposes that the following communications, if generated in anticipation or furtherance of litigation, do not need to be logged on a privilege log:

1.     Communications between the Parties and their counsel of record;

2.     Communications (i) between or among outside and in-house counsel working directly on this litigation for Starz and (ii) between or among outside and in-house counsel working directly on this litigation for MGM;

3.     Consistent with Rule 26(b)(4), communications between counsel for the Parties and experts, both testifying and non-testifying, and drafts of expert reports, unless the expert relies on such communications pursuant to Rule 26(b)(4)(C)(ii) or (iii); and

4.     Privileged documents—including communications with counsel, documents created under the direction of counsel and counsel's work product— after the Parties entered into a tolling agreement on March 24, 2020.

MGM's proposed exceptions are far broader.  As drafted, MGM's proposal would eliminate the need to log nearly any form of privileged communication that may be at issue in this case.  MGM's first proposed exception seeks to exclude any form of work product as defined by Rule 26(b)(3).

Starz is not seeking to discover privileged materials from MGM.  Starz is, however, entitled to sufficient information concerning documents that MGM withholds on the basis of privilege so that Starz may assess MGM's privilege claim.  In the interest of reducing the burden on both Parties, Starz is willing to exclude certain categories of communications that are more likely to be privileged from the obligation to log.  Starz is not willing to forgo the obligation that MGM provide a log of information withheld on the basis of privilege.

**MGM's Position:**

MGM proposes that trial preparation materials and communications under Rule 26(b)(3) & (4) do not need to be logged on a privilege log, including:

1.    Documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent);

2.    Drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded;

3.    Communications between a party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, subject to exceptions provided under Rule 26(b)(4)(C);

4.    Communications (i) between the Parties and their counsel of record; (ii) between or among outside counsel for Starz and (iii) between or among outside counsel for MGM;

5.    Documents subject to settlement privilege, including all communications and documents concerning the pre-litigation mediation between the Parties; and

6.    Privileged documents—including communications with counsel, documents created under the direction of counsel and counsel's work product— created after Starz raised the possibility of legal action on October 18, 2019.

**E.      Discovery Timing, Phasing and Changes to Limitations on Discovery:**

**Starz's Position:**   Starz does not propose any changes to discovery imposed under the Federal Rules of Civil Procedure or the Local Civil Rules. Starz proposes a fact discovery cut-off date of November 23, 2021 and an expert discovery cut-off date of February 8, 2022, as set forth in the column outlining Starz's proposed schedule in the attached Exhibit A.

Starz believes that MGM's proposed discovery timeline is unreasonable in light of the nature of the case and the significant time that MGM already has had to prepare for discovery.  Starz believes that MGM's proposed discovery timeline is the latest in a series of attempts to needlessly delay the trial of this matter, as explained below.

There can be no dispute that MGM breached the Library Agreements and infringed Starz's copyrights on a massive scale.  In the fall of 2019, MGM acknowledged in a series of escalating admissions that it licensed over two hundred Pictures to Starz's competitors during the time periods in which Starz was entitled to exclusivity.  On August 13, 2019, MGM first admitted that it had improperly licensed one Picture (*Bill & Ted's Excellent Adventure*) and sought to end discussions there.  On September 11, 2019, after further questioning by Starz, MGM acknowledged that it improperly licensed 22 Pictures.   On September 30, 2019, after even more probing by Starz, MGM identified to Starz a new list of 22 Pictures—which overlapped only partially with the 22 Pictures that MGM previously acknowledged infringing—that were improperly licensed to Amazon.  Eventually, on November 1, 2019, after substantial back and forth with Starz, MGM conceded that 136 movies and 108 television series episodes had been licensed to third parties when Starz held an exclusive license.  Further research by Starz revealed nearly 100 additional Pictures that MGM infringed.

Given that history, Starz has no confidence that MGM has revealed the full extent of its breach; indeed, MGM's most recent representations to this Court (including in this submission) indicate that MGM is now attempting to walk back the extent of—and even the very fact of—its breach. Nor is Starz confident that it can uncover the full extent of MGM's breach on its own, without the tools of litigation discovery. This history (and the risk of ongoing but uncovered infringement) makes comprehensive and expedient discovery all the more important.

Starz filed this lawsuit on May 4, 2020. Consistent with the Court's Initial Standing Order (Dkt. 12 § 3.b), Starz sought to commence discovery right away. The Parties held their conference pursuant to Rule 26(f) on June 29, 2020, during which the Parties discussed a general plan for discovery and the other topics provided for by that Rule. The next day, on June 30, 2020, Starz sent MGM a draft joint discovery plan, along with a draft ESI and document production protocol. On July 8, 2020, Starz served its first set of document requests and first set of interrogatories on MGM, and provided MGM with a draft protective order. MGM asked for a short extension, to July 23, 2020, for the Parties to file their Rule 26(f) report with the Court, including a draft discovery plan, which Starz granted. Starz was optimistic, given MGM's prior candid admissions of breach and these helpful initial discussions, that MGM would cooperate on a reasonable discovery plan and that the case would proceed efficiently to a trial on the merits.

On July 16, 2020, however, MGM changed tactics. Despite already having conducted the Rule 26(f) conference, and despite having previously agreed to filing a joint Rule 26(f) report and discovery plan with the Court by July 23, MGM declined to provide any comments on Starz's joint discovery plan, refused to file the Rule 26(f) report with the Court at all, and took the position that it

would not engage in further discussions of discovery (let alone conduct any actual discovery) until the Court had ruled on its forthcoming motion to dismiss.

In order to avoid burdening the Court with motion practice at such an early stage of the litigation, Starz decided not to attempt to hold MGM to its earlier agreements, and instead agreed that MGM could provide its responses to Starz's initial discovery requests 14 days after MGM served its Answer.

The Court denied MGM's motion to dismiss on January 5, 2021, and gave MGM until January 26, 2021 to answer the Complaint, which it did.  That made MGM's responses to Starz's initial discovery requests due on February 9, 2021, more than seven months after they had been served.

Despite the Parties' lengthy pre-trial discussions concerning the nature and scope of MGM's breach (during which time MGM represented that it conducted a thorough investigation of its licensing activity as it related to the Pictures in the Library Agreements), and despite having had Starz's discovery requests for more than seven months, when MGM finally provided its discovery responses on February 9, 2021, ***MGM refused to answer a single interrogatory and refused to produce a single document***.[3]  (*See* Pl.'s Exs. 1, 2.)  Starz's discovery requests seek information at the heart of this case, including MGM's licensing of the

---

[3] In response to certain document requests, MGM stated that was "willing to meet and confer with Plaintiff after the Scheduling Conference set for March 12, 2021".  MGM has since backtracked and refused any meet and confer until Starz first provides MGM with a letter pursuant to Local Rule 37-1 that outlines the legal authority for all discovery Starz propounded, taking the position that it has no obligation to respond to discovery at all unless Starz first complies with the discovery dispute procedures of Local Rule 37-1.  In response to certain interrogatories, MGM also suggested that it was willing to provide answers after a protective order has been entered in the case but MGM has yet to provide its comments on the draft protective order Starz first provided on July 8, 2020.

Pictures to other parties (*e.g.*, Pl.'s Ex. 1 at 26, 27 (RFP Nos. 8, 9); Pl.'s Ex. 2 at 23 (ROG No. 9)); information concerning MGM's system for monitoring and tracking its licenses, (*e.g.*, Pl.'s Ex. 1 at 19, 21 (RFP Nos. 4, 5); Pl.'s Ex. 2 at 14, 20, 24 (ROG Nos. 2, 6, 10)); and information relevant to damages (*e.g.*, Pl.'s Ex. 1 at 33, 37, 38 (RFP No. 13, 16, 17)).

The Court has now denied MGM's motion to dismiss (Dkt. 39) and has granted a partial stay "only of discovery and motion practice relating to evidence and issues that may be impacted by the resolution of MGM's appeal". (Dkt. 52 at 4.)

The Court explicitly directed that the balance of discovery should proceed. (*See infra* p. 18.) MGM's refusal to provide any discovery is thus wholly unreasonable and can be nothing more than an attempt to delay the trial of this matter. MGM refuses to produce a single document in response to even the most basic document requests. For example, Starz requested documents showing to which third parties MGM licensed the Pictures in the Library Agreements (*see* Pl.'s Ex. 1 at 26 (RFP No. 8))—such documents are at the very heart of this dispute and only MGM has the full set. Yet MGM refused to produce a single document in response to that Request. MGM based its refusal on specious objections, such as claiming that the request "seeks information and documents that are not relevant to the subject matter of this litigation". (Pl.'s Ex. 1 at 26.) As another example, MGM objected to the production of documents "concerning the implementation and use of MGM's Rights Tracking Systems in relation to the Pictures" on the basis that it seeks discovery that that is "not relevant to the subject matter of this litigation, is disproportionate to the needs of the case, imposes burdens and expenses that outweigh their likely benefit, or is otherwise outside the proper scope of discovery"—despite MGM having previously stated that a failure of its rights tracking system led to the infringements. (Pl.'s Ex. 1 at

19; Compl. ¶ 50.)   MGM refuses even to produce its "insurance policies, indemnification agreements or hold harmless agreements that may provide coverage for Defendant for all or part of any potential liability arising from the claims alleged in this Action"—even though disclosure of those documents is required under Rule 26(a)(1)(A)(iv) of the Federal Rules of Civil Procedure. (Pl's. Ex. 1 at 48.)

Starz attaches hereto as Plaintiff's Exhibits 1–4 the full text of MGM's responses and objections to Starz's document requests and interrogatories, which, Starz submits, speak for themselves.

When Starz sought to meet and confer with MGM about its unreasonable discovery responses, MGM refused, taking the position that Starz should first send MGM a letter pursuant to Local Rule 37-1 outlining the legal authority for all discovery Starz propounded.  Local Rule 37-1 is a mechanism for resolving discovery *disputes*; it is not a requirement that the requesting party brief for the other party the basis for each and every discovery request, particularly requests for which there can be no legitimate disagreement (such as, here, documents showing the third parties to whom MGM licensed the Pictures).  The Federal Rules and the Local Rules require parties receiving discovery requests to respond in good faith, not to treat each and every request as a dispute to be litigated.

MGM's position also is inconsistent with the language and spirit of the Court's Stay Order, which made clear that discovery "relating to other issues, such as MGM's breaches of the exclusivity agreements, potential contract damages, MGM's potential willfulness, potential copyright damages within the three years prior to the filing of the Complaint, and other issues involving the copyright claims that would survive even if the MTD Order is reversed shall proceed".  (Dkt. 52 at 4.)  It also smacks of gamesmanship.  It is obvious that certain categories of documents will need to be produced in this litigation:

documents concerning to whom MGM licensed the Pictures and when; documents concerning MGM's profits from its infringement during the three years prior to March 24, 2020; documents concerning the value MGM has attributed to the exclusivity of its pictures; and additional documents concerning damages, including Epix replacing Starz on major distribution channels. There can be no real debate about the relevance of such documents. But MGM has refused to produce a single one.

Now MGM submits to the Court a proposed schedule contemplating *over two years just to complete document discovery and a trial in August 2023*.[4] MGM has known about Starz's claims since October 2019, and has known precisely what discovery Starz seeks for over seven months. It represented that it had thoroughly investigated Starz's claims, including by checking its license agreements for conflicts with Starz's exclusivity periods, even before Starz filed suit. It has had more than sufficient time to prepare for discovery. Consistent with the Court's order, discovery of all issues not impacted by the appeal can and should occur now, and should finish within a reasonable timeframe. There is no reason a case of this nature should take *more than three years to litigate*, as MGM proposes. It is clear that MGM seeks delay at all costs.

Starz's proposed schedule tracks this Court's anticipated timeline. Starz acknowledges this Court's February 22, 2021 Order, which granted "a partial stay only of discovery and motion practice relating to evidence and issues that may be impacted by the resolution of MGM's appeal". (Dkt. 52 at 4.) As such, Starz

---

[4] Despite Starz providing MGM with its draft joint discovery plan on June 30, 2020 and again on February 12, 2021, and repeatedly requesting that MGM provide comments on that draft, MGM failed to exchange any written comments until 4:55 PM PT on February 25, 2021—the day before the deadline for filing this report—which prevented a meaningful opportunity for the Parties to meet and confer on disputed issues.

JOINT RULE 26(f) REPORT                                        2:20-cv-04085-DMG-KS

agrees that, consistent with this Court's order, it will not seek discovery concerning "evidence and issues that may be impacted by the resolution of MGM's appeal". (*Id.*)  In particular, Starz will not seek discovery concerning MGM's profits from its infringement committed outside the three-year period prior to March 24, 2020, nor will Starz seek any other discovery related solely and specifically to copyright issues concerning the 126 Pictures subject to MGM's appeal, until MGM's attempted appeal is resolved.

As the Court recognized in its February 22, 2021 Order, however, the majority of the issues in this case will be unaffected by the outcome of MGM's interlocutory appeal. (*Id.*)  Based on information currently available to Starz, Starz has every reason to believe that the vast majority of the Pictures (aside from the 126 on appeal) were infringed within the three years preceding the Parties' tolling agreement.  MGM's assertion that it believes more Pictures (in addition to the 126 Pictures subject to its appeal) were infringed over three years ago and should be covered by the partial stay is based on pure speculation.  As such, MGM's assertion is not a reasonable basis on which to propose a preliminary phase of discovery that would dramatically slow down the progress of this case. In any event, Starz continues to have, in addition to copyright claims concerning the 214 Pictures that MGM has not challenged on appeal, claims for contract infringement for all 340 Pictures.  Starz is entitled to discovery on these claims without further delay.

Starz requests, consistent with the Court's order, that discovery as to "MGM's breaches of the exclusivity agreements, potential contract damages, MGM's potential willfulness, potential copyright damages within the three years prior to the filing of the Complaint, and other issues involving the copyright claims that would survive even if the MTD Order is reversed" should proceed. (*Id.*)  In addition, Starz asks that the Court direct MGM to comply with its

discovery obligations without undue delay and in good faith in accordance with the schedule set forth by Starz in Exhibit A, including by making clear that a party need not comply with the procedures outlined in Local Rule 37-1 for each and every discovery request and interrogatory served in this action (but instead only when good faith disputes have arisen), as the Local Rules themselves presuppose..

**MGM's Position:**

As stated above, MGM will respond to Starz's numerous misstatements, false accusations and meritless arguments if and when Starz follows proper procedures for resolving discovery disputes with Magistrate Judge Stevenson. Consistent with the Court's order regarding MGM's Motion for Certification and Motion for Stay (Dkt. 52 at 4), and to further the interests of efficiency and judicial economy, MGM proposes that discovery be conducted in orderly phases as follows:

The first phase of discovery should be focused on ascertaining whether and when the infringement(s) and/or breaches alleged by Starz occurred. As MGM explained during the hearing on MGM's Motion for Certification and Stay, the Ninth Circuit's resolution of MGM's appeal will impact more titles than the 126 that MGM moved to dismiss. Based on the information currently available to MGM, the majority of the collisions alleged by Starz occurred outside of the three years preceding the commencement of this action. Hence, the threshold discovery issue for the parties is to ascertain whether and when the alleged collisions occurred in order to identify which of the titles, in addition to the 126 that MGM moved to dismiss, may be impacted by the interlocutory appeal and are therefore subject to the Court's order staying "discovery and motion practice relating to evidence and issues that may be impacted by the resolution of MGM's appeal." Dkt. 52 at 4. For many of the titles, the Parties  previously exchanged

information concerning the alleged collisions, including the dates when the alleged collisions occurred and the third party platform involved.  For such titles, MGM anticipates that discovery would entail production of documents that would show whether those collisions occurred or were identified in error.  For certain titles included in Starz's Complaint, MGM is unaware of any collisions.  Accordingly, MGM needs discovery from Starz concerning when and on which platforms Starz alleges the collisions occurred.

Many potentially responsive documents are maintained in hard copy formats that need to be retrieved from storage.  Because of government-mandated orders and the safety restrictions in place due to the COVID-19 pandemic, MGM's offices are currently closed and nearly all MGM employees are working remotely.  Accordingly, MGM anticipates that retrieval, review and production of responsive documents will take longer than in normal circumstances.  With Starz's cooperation, MGM anticipates that this phase of discovery may be completed in approximately six months.[5]  Starz, however, has requested that MGM produce all third party licenses concerning all of the titles that Starz licensed under the Library Agreements—including titles for which Starz has not alleged any breach or infringement—from January 1, 2013 to present.  MGM believes that such discovery is outside the proper scope of discovery and exceeds the Court's stay order, but as is relevant here, if MGM is ordered to retrieve and produce all such documents, MGM anticipates that completion of phase one will take twelve months or longer to complete.

The second phase of discovery should be open to all other issues relating to Starz's breach of contract claim and all other issues related to Starz's copyright

---

[5]  These estimates may change depending on the speed of vaccination and the status of COVID-19 restrictions.

infringement claims for titles allegedly infringed within the three year look-back period.  MGM anticipates that this discovery will take approximately six months to complete.

The third phase of discovery relating to copyright specific issues, such as MGM's profits, statutory damages and MGM's state of mind, *inter alia,* concerning titles for which the alleged collisions occurred outside of the three year lookback period should be stayed pending resolution of MGM's petition for interlocutory appeal.  If the Ninth Circuit rules in MGM's favor, this discovery will not be necessary.  If the Ninth Circuit affirms the Court's ruling on MGM's motion to dismiss, MGM anticipates the completion of this discovery will take approximately six months.

### F.    Other Orders:

The Parties are not currently seeking any additional orders from the Court under Rules 16(b) or (c), or 26(c).

### III.    PROPOSED CASE SCHEDULE AND OTHER MATTERS

### A.    Proposed Schedule of Pretrial and Trial Dates:

The Parties have attached as Exhibit A to this Report their respective proposed schedule of pretrial and trial dates.

**Starz's Position:**  Starz's proposed dates for the discovery deadlines are included in Exhibit A.  As the Court recognized in its February 22, 2021 Order, most of the discovery in this case will be "unaffected" by the appeal.  (Dkt. 52 at 4.)  Accordingly, Starz proposes that the Parties complete fact discovery by November 23, 2021 and expert discovery by February 8, 2022.  As described above, MGM already has had Starz's initial requests for production for seven months.  Starz's proposed schedule would provide for an additional nine months to complete fact discovery and over two months for expert discovery.  Starz

requests that the start date for trial be set for May 10, 2022.  This date is appropriate and would allow the Parties ample time to prepare for trial.[6]

**MGM's Position:**

MGM's proposed schedule tracks its proposed plan for phased discovery outlined above, consistent with the Court's stay order.  Many of the deadlines— including dates for discovery cutoff, expert discovery cutoff, deadlines for filing dispositive or partially dispositive motions, other law and motion matters, motion cutoff, final pretrial conference and trial—will be impacted by the Ninth Circuit's resolution of MGM's interlocutory appeal.  Among other things, Phase three of MGM's proposed discovery plan may be entirely avoided if the Ninth Circuit rules in MGM's favor.  The uncertainties created by the COVID-19 pandemic further complicates scheduling, as many of MGM's documents are stored in hard copy files and retrieval of such documents will require manually sorting through hundreds of boxes of documents at storage sites.  Accordingly, MGM has proposed estimated pretrial and trial dates based on certain assumptions, as explained in Exhibit A.  MGM's estimates likely will change depending on how the Ninth Circuit resolves MGM's appeal and when non-essential businesses such as MGM are permitted to return to normal operations.

**B.    Complex Case:**

The Parties agree that this case should not be designated as complex and will not require utilization of the procedures in the Manual for Complex Litigation.

---

[6] To the extent that the Ninth Circuit accepts MGM's appeal and that appeal remains pending such that, at some point, the Parties cannot complete discovery within the deadlines proposed by Starz, Starz believes that the Parties and the Court should discuss potential modifications to the schedule at that time.

**C.     Motion Schedule:**

Starz anticipates moving for summary judgment and/or partial summary judgment on some or all of its claims, including MGM's direct, contributory and vicarious infringement of Starz's copyrights, and MGM's breach of the Library Agreements.  Starz also reserves its right to exclude any expert testimony, report and/or opinion pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

MGM moved to dismiss more than a third of Starz's copyright causes of action and Starz's breach of contract claim for certain titles.  The Court has denied MGM's motion to dismiss, but certified its order for interlocutory appeal.  Dkt. 52.  MGM will petition the Ninth Circuit for immediate review, which may dispose of a third or more of Starz's copyright infringement causes of action.  In addition, MGM anticipates moving for summary judgment or partial summary judgment on Starz's remaining copyright causes of action and breach of contract claims on the grounds that they are barred by the statute of limitations; that Starz fails to state a claim for which relief may be granted; and/or that Starz's claimed damages are barred as a matter of law.  Moreover, MGM may move to exclude any expert report and/or opinion that does not comport with the standards for expert witness testimony under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny.

The Parties' proposed schedule of law and motion matters and a proposed dispositive motion cutoff date are set forth in Exhibit A, subject to the contingencies MGM described above.

**D.     Settlement:**

Before Starz filed this action, the Parties engaged in private mediation in an attempt to settle their dispute.  Following the mediation, the Parties and

counsel engaged in additional discussions to attempt to resolve the matter.

The Parties propose ADR Procedure No. 3—participation in private dispute resolution proceedings—as set forth in L.R. 16-15.4 as the recommended alternative dispute resolution procedure to employ for further settlement attempts.

**E.     Trial Estimate:**

Starz presently anticipates a trial of approximately 10 days, to be tried by a jury as demanded by Starz, and Starz's proposed dates for the final pretrial conference and for trial are set forth in the proposed schedule attached as Exhibit A.  Starz will inform the Court if its estimate changes as discovery progresses.

MGM submits that the duration of the trial will largely depend on the number of Starz's claims that remain in the case.  Accordingly, MGM is unable to provide an estimate of trial duration at this time with certainty, but anticipates that trial may require between 10 and 20 days, depending on the issues that would need to be tried.

**F.     Additional Parties/Amending the Pleadings:**

Starz represents that it is presently unaware of any issues that would require the addition of other parties or amendments to the pleadings, but reserves the right to do so should the need arise.

MGM does not anticipate any amendments to its pleadings at this time.  To the extent Starz seeks leave to amend its pleadings, MGM reserves its right to oppose any amendment and/or to respond to any permitted amendments by a motion under Rule 12 or amendments to MGM's Answer.

As set forth in Exhibit A, the Parties propose that any motion to amend the pleadings and add new parties must be served and filed no later than ninety days after the initial scheduling conference.

**G.     Expert Witnesses:**

The Parties' proposed timing of the expert disclosures is set forth in Exhibit A, subject to the contingencies MGM described above.

**H.     Severance, Bifurcation or Other Ordering of Proof:**

Starz believes that there are no issues relating to, and they do not intend to request, severance, bifurcation or other ordering of proof.

MGM proposes that discovery should be conducted in phases as outlined above.

1     Dated:  February 26, 2021       By:     */s/ J. Wesley Earnhardt*

2

3                                   Evan R. Chesler (pro hac vice)
(N.Y. Bar No. 1475722)
echesler@cravath.com
J. Wesley Earnhardt (pro hac vice)
(N.Y. Bar No. 4331609)
wearnhardt@cravath.com
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza, 825 Eighth Avenue
New York, New York 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

Robert N. Klieger
(State Bar No. 192962)
rklieger@hueston.com
HUESTON HENNIGAN LLP
523 West 6th St., Suite 400
Los Angeles, CA 90014
Telephone:  (213) 788-4340
Facsimile:  (888) 775-0898

Steven M. Goldberg
(State Bar No. 82174)
sgoldberg@mzclaw.com
MARKUN ZUSMAN FRENIERE
COMPTON LLP
3 Hutton Centre Dr., 9th Floor
Santa Ana, CA 92707
Telephone:  (310) 454-5900
Facsimile:  (310) 454-5970

*Attorneys for Plaintiff STARZ
ENTERTAINMENT, LLC*

20    Dated:  February 26, 2021       By:     */s/ Jay P. Srinivasan*

21                                 Orin S. Snyder
osnyder@gibsondunn.com
Jay P. Srinivasan
jsrinivasan@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone:  (212) 351-2400
Facsimile:  (212) 351-6335]

*Attorneys for Defendant MGM
DOMESTIC TELEVISION
DISTRIBUTION LLC*

**EXHIBIT A:**  SCHEDULE OF PRETRIAL & TRIAL DATES

**Case No:**          2:20-cv-04085-DMG-KS

**Case Name:**       *Starz Entertainment, LLC v. MGM Domestic Television Distribution LLC*

| MATTER | STARZ'S REQUESTED DATE | MGM'S REQUESTED DATE | TIME |
|---|---|---|---|
| **TRIAL** <br> [ ] Court [X] Jury <br> Duration Estimate: | May 10, 2022 (Tuesday) <br><br> Duration Estimate: 10 days | August 15, 2023[7] (Tuesday) <br><br> Duration Estimate: 10-20 days | 8:30 a.m. |
| **FINAL PRETRIAL CONFERENCE ("FPTC")** <br> 4 wks before trial | April 5, 2022 (Tuesday) | July 18, 2023 (Tuesday) | 2:00 p.m. |

---

[7]   As discussed above, MGM submits that the scheduling in this case depends on various contingencies, including the Ninth Circuit's disposition of MGM's appeal, the scope of discovery, and current restrictions imposed due to COVID-19 pandemic.  MGM proposed these dates based on certain assumptions as discussed below, including that discovery would proceed as Starz proposes and that all of Starz's copyright claims would remain in the case.

| MATTER | STARZ'S REQUESTED DATE | MGM'S REQUESTED DATE |
|---|---|---|
| Amended Pleadings and Addition of Parties Cut-Off (includes hearing of motions to amend) | June 10, 2021 | June 11, 2021 |
| Non-Expert Discovery Cut-Off (includes hearing of discovery motions) | November 23, 2021 | • Phase 1: March 11, 2022;[8]<br>• Phase 2: September 9, 2022;<br>• Phase 3: March 10, 2023[9] |
| Initial Expert Disclosure & Report Deadline | December 21, 2021 | April 21, 2023[10] |
| Motion Cut-Off (filing deadline) (other than motions in limine) | January 4, 2022 | May 5, 2023 |

---

[8]  MGM's estimated date is based on the extensive discovery requested by Starz.  If discovery is phased and targeted as MGM proposes, MGM anticipates that the first phase may be completed within six months from the initial scheduling conference, which would be September 10, 2021.  The estimated deadline for other phases of discovery would also be advanced accordingly as well.

[9]  MGM's estimated date here assumes that the Ninth Circuit affirms the Court's order on MGM's motion to dismiss.  But if the Ninth Circuit rules in MGM's favor, this phase would be unnecessary and all other dates would be advanced accordingly.

[10]  MGM's estimated date assumes that all of Starz's copyright claims remain in the case.  If some portion of Starz's copyright claims are time-barred, MGM anticipates that initial expert reports may be exchanged three weeks after the close of fact discovery and all other dates would be advanced accordingly.

28

| | | |
|---|---|---|
| Rebuttal Expert Disclosure & Report Deadline | January 25, 2022 | June 2, 2023[11] |
| Expert Discovery Cut-Off (includes hearing of discovery motions) | February 8, 2022 | June 16, 2023 |
| Settlement Conference Completion Date | February 1, 2022 | June 9, 2023 |
| Motions in Limine Filing Deadline | February 8, 2022 | June 23, 2023 |
| Opposition to Motion in Limine Filing Deadline | February 15, 2022 | June 30, 2023 |

---

[11] MGM's estimated date assumes all of Starz's copyright claims remain in the case.  If some portion of Starz's copyright claims are dismissed, MGM anticipates that rebuttal expert reports may be exchanged three weeks after initial expert disclosures and all other dates would be advanced accordingly.