Steven M. Goldberg, SBN 82174
sgoldberg@mzclaw.com
MARKUN ZUSMAN FRENIERE
COMPTON LLP
3 Hutton Centre Dr., 9th Floor
Santa Ana, CA 92707
Telephone:  (310) 454-5900
Facsimile:  (310) 454-5970

Evan R. Chesler (*pro hac vice*)
echesler@cravath.com
J. Wesley Earnhardt (*pro hac vice*)
wearnhardt@cravath.com
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

Robert N. Klieger, SBN 192962
rklieger@hueston.com
HUESTON HENNIGAN LLP
523 West 6th St., Suite 400
Los Angeles, CA 90014
Telephone:  (213) 788-4340
Facsimile:  (888) 775-0898

*Attorneys for Plaintiff*
*STARZ ENTERTAINMENT, LLC*

Jay P. Srinivasan, SBN 181471
jsrinivasan@gibsondunn.com
Blaine H. Evanson, SBN 254338
bevanson@gibsondunn.com
Minae Yu, SBN 268814
myu@gibsondunn.com
Jonathan N. Soleimani, SBN 295673
jsoleimani@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  (213) 229-7000
Facsimile:  (213) 229-7520

Orin S. Snyder (*pro hac vice*)
osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone:  (212) 351-2400
Facsimile:  (212) 351-6335

*Attorneys for Defendant*
*MGM DOMESTIC TELEVISION*
*DISTRIBUTION LLC*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### Western Division

| | |
|---|---|
| STARZ ENTERTAINMENT, LLC,<br><br>Plaintiff,<br><br>v.<br><br>MGM DOMESTIC TELEVISION<br>DISTRIBUTION LLC,<br><br>Defendant. | Case No. 2:20-CV-04085 DMG (KSx)<br><br>DISCOVERY MATTER<br><br>**L.R. 37-2 JOINT STIPULATION RE: STARZ ENTERTAINMENT, LLC'S MOTION TO COMPEL**<br><br>Date: August 18, 2021<br>Time: 10:00 a.m.<br>Honorable Karen L. Stevenson<br><br>Fact Discovery Cutoff:  June 21, 2022<br>Expert Discovery Cutoff:  Sept. 6, 2022<br>Pretrial Conference:  Sept. 27, 2022<br>Trial:  Oct. 25, 2022 |

1

TABLE OF CONTENTS

2
**Page**

3    I.    INTRODUCTION ................................................................. 1

4          A.    Starz's Introductory Statement ................................ 1

5          B.    MGM's Introductory Statement.............................. 3

     II.   ISSUES IN DISPUTE............................................................. 7

6          A.    Discovery Concerning the Extent of MGM's Breach ................. 7

7                1.    Disputed Interrogatories and Requests ............................... 7

8                      (a)    Interrogatory 9 ........................................... 7

9                      (b)    Interrogatory 12 ......................................... 8

10                     (c)    Interrogatory 13 ........................................ 10

11                     (d)    Request No. 6 ........................................... 13

12               2.    Starz's Position:  Starz Is Entitled to Discovery
                       Regarding the Extent of MGM's Breach and
                       Infringement. ............................................... 15

13               3.    MGM's Position:  Starz ignores the actual discovery
14                     disputes between the parties, which focused on the
                       specific language in Starz's massively overbroad
15                     requests that seek irrelevant materials and impose an
                       unwarranted burden on MGM.............................. 19

16         B.    Discovery Regarding Damages ................................. 33

17               1.    Disputed Discovery Requests.............................. 33

18                     (a)    Request No. 14 ......................................... 33

19                     (b)    Request No. 15 ......................................... 34

20                     (c)    Request No. 16 ......................................... 36

21                     (d)    Request No. 17 ......................................... 37

                       (e)    Request No. 18 ......................................... 39
22
                       (f)    Request No. 20 ......................................... 40
23
                       (g)    Request No. 21 ......................................... 41
24
                 2.    Starz's Position:  Starz Is Entitled to Discovery
25                     Concerning its Contract and Copyright Damages that Is
                       Not Subject to the Partial Stay ......................... 43

26                     (a)    Starz's Actual Damages ............................... 43

27                     (b)    MGM's Profits........................................... 46

28

i

3. MGM's Position:  Starz again fails to justify its overbroad requests, which seek irrelevant information and would impose an undue burden on MGM..................47

C. Discovery into MGM's Willfulness or Recklessness................56

    1. Disputed Discovery Requests.............................................56

        (a) Interrogatory No. 8 ................................................56

        (b) Interrogatory No. 11 ..............................................57

        (c) Request No. 11 ......................................................58

        (d) Request No. 12 ......................................................60

    2. Starz's Position:  Starz Is Entitled to Discovery into MGM's Potential Willfulness. .........................................61

    3. MGM's Position:  There is no disagreement that Starz is entitled to evidence of MGM's state of mind, but only with respect to the alleged infringements at issue that are not subject to the District Court's discovery stay........65

III. REQUESTED RELIEF ....................................................................72

A. Starz's Position .........................................................................72

B. MGM's Position........................................................................72

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.   INTRODUCTION

## A.   Starz's Introductory Statement

Starz seeks to compel discovery concerning three issues, each of which is core to Starz's claims and unaffected by the partial stay.

*First*, Starz seeks discovery of information necessary to determine the extent of MGM's breach.  Starz and MGM entered into two agreements (the "Library Agreements"), pursuant to which MGM licensed 761 movies and television episodes ("Pictures") exclusively to Starz during particular windows of time ("Exclusivity Windows").  MGM breached its exclusivity promises by licensing some of the Pictures to third parties during the Exclusivity Windows.  MGM has admitted as much.  What is unknown however—and what can be determined only through discovery—is ***how many*** of the 761 Pictures MGM licensed or otherwise made available to third parties during the Exclusivity Windows, ***to whom*** were those Pictures made available, precisely ***when and for how long*** did the breaches occur, and ***what revenue did MGM earn*** as a result.

Specifically, MGM has admitted to 244 separate instances in which it violated its exclusivity promises, and Starz, through painstaking research of publicly available information, has identified nearly 100 more.  But to know ***the actual full extent*** of MGM's breach, Starz needs to compare each license agreement or other arrangement pursuant to which MGM made the 761 Pictures available to third parties to the dates of the Exclusivity Windows, so that Starz can determine for itself whether additional breaches occurred and, if so, how.  MGM seeks to limit discovery to the 340 breaches already identified.  But Starz should not be forced to "take MGM's word for it" that there are no additional breaches; that is not how discovery works, particularly in a situation like this one where MGM already underestimated ***by nearly 100 Pictures*** the extent of its breach.  Nor is this a burdensome request.  If MGM has in fact undertaken an analysis to

determine each instance in which it licensed the 761 Pictures to third parties during the Exclusivity Windows (as it has represented), then it by definition already has compiled (and analyzed) the information Starz seeks.  There is no basis to withhold the core documents and information sought by Interrogatories 9, 12 and 13 and RFP No. 6 (particularly where a two-tiered protective order addresses any confidentiality concerns), which is necessary to determine the extent of MGM's liability.

*Second*, Starz seeks discovery concerning its damages.  Starz brings breach of contract and copyright infringement claims.  Both types of claims entitle Starz to damages in the form of lost profits.  Here, Starz lost profits when MGM failed to honor its exclusivity promises, which, Starz alleges, (i) caused Starz to lose (and not attract additional) subscribers; (ii) devalued Starz to distributors; and (iii) allowed MGM's own channel, Epix, to replace Starz in cable packages. Critical to that damages claim is information concerning the value of the Pictures and, in particular, the value of having the Pictures *exclusively*.  What MGM has said internally or to third parties about the value of its Pictures and/or the value of exclusivity (in being able attract and retain subscribers and in negotiating with distributors) is directly relevant to Starz's damages claim.  Starz seeks this discovery through RFP Nos. 14, 15, 16 and 17.  MGM, of course, has a different damages theory, but that is no basis on which to deny Starz discovery relevant to its own damages theory.

Starz also is entitled to damages in the form of MGM's profits attributable to the infringement.  To determine the amount of said damages, Starz needs information concerning the revenue MGM earned from licensing the Pictures to third parties.  Starz seeks this discovery in RFP Nos. 18, 20 and 21. Because MGM's profits from its infringement are available as damages only under copyright law, Starz agrees to limit discovery during the interlocutory appeal to the

2

1  revenues MGM earned within three years before the Complaint was filed, in

2  accordance with the Court's partial stay.  (Ex. A, ECF No. 52.)

3          *Third*, Starz seeks discovery of information necessary to determine

4  whether MGM's infringement of Starz's copyrights was willful or reckless.  Under

5  the Copyright Act, Starz is entitled to enhanced damages if MGM willfully or

6  recklessly infringed Starz's copyrights.  To determine MGM's culpability, Starz

7  needs to know what MGM knew and when MGM knew it.  In Interrogatories 8 and

8  11 and RFP Nos. 11 and 12, Starz seeks discovery about MGM's current and past

9  conduct and potential investigations of similar copyright infringements that will

10  shine a light on whether MGM acted willfully or recklessly.  The District Court's

11  February 22, 2021 order expressly ordered discovery concerning "MGM's

12  potential willfulness" to proceed.  (Ex. A, ECF No. 52.)  There is no reason for

13  MGM's delay in providing this clearly relevant discovery.

14          Delay, however, appears to be MGM's goal.  Starz first served its

15  discovery requests over a year ago, and the Court ordered discovery to proceed in

16  this case nearly seven months ago.  (Ex. A, ECF No. 52.)  MGM, however, has

17  only produced 175 pages of organizational charts and responded to 5 of 13

18  interrogatories.  Starz has made every effort to obtain this discovery before filing

19  this motion.  The parties have engaged in over six hours of meet and confers and

20  while the parties were able to reach some compromises, the parties are now at an

21  impasse concerning these three categories of discovery.  Starz has exhausted its

22  other options and seeks a court order to enforce MGM's discovery obligations.

23  **B.    MGM's Introductory Statement**

24          Starz's Motion to Compel is both procedurally and substantively defective.

25  It violates the plain language of  Local Rule 37-2.1 and the common practice in

26  this District because Starz fails to address the discovery at issue individually on a

27  request-by-request basis.  Starz's Motion also fails substantively because it is

28

1    based on a series of strawman arguments over which there is no dispute between

2    the parties. MGM does not dispute that Starz is entitled to discovery into the

3    breaches alleged, the quantum of damages allegedly suffered, and MGM's state-of-

4    mind with respect to the alleged copyright infringements. But Starz's Motion fails

5    to raise, let alone address, the actual issues of contention between the parties—

6    namely, MGM's concern that Starz's individual discovery requests go far beyond

7    appropriate discovery. The disputed requests are massively overbroad, far afield of

8    the relevant issues, and would impose an undue and unnecessary burden on MGM.

9        Local Rule 37-2.1 prescribes the "Form of Joint Stipulation," which requires

10   disputed discovery requests to be separately set out and argued:

11       For example, if the sufficiency of an answer to an interrogatory is at

12       issue, the stipulation must contain, verbatim, both the interrogatory and

13       the allegedly insufficient answer, ***followed by each party's contentions***

14       ***as to that particular interrogatory, separately stated***.

15   L.R. 37-2.1 (emphasis added).

16       Instead of following this clear and simple format, Starz lumps a jumble of

17   interrogatories and document requests into a generalized discussion that fails to

18   grapple with the specific issues in dispute. Starz's haphazard format herein is

19   consistent with its obtuse approach during the parties' meet and confer. After

20   MGM repeatedly explained its specific objections to the specific language of

21   Starz's discovery requests—and not their general subject matter—Starz failed to

22   address them, let alone engage with MGM on its specific concerns. (Declaration

23   of Minae Yu ("Yu Decl."), ¶¶ 3, 6.)

24       For instance, contrary to Starz's repeated mischaracterizations, MGM has

25   never disputed that Starz is entitled to discovery relating to damages. Instead,

26   MGM asked for clarification on how Starz's overly broad discovery requests,

27   including a request that seeks "Documents sufficient to show MGM's aggregate

28

4

licensing revenue from all motion pictures and television episodes during the relevant time period on a month-by-month basis," are tailored to the allegations in this case, particularly when MGM's entire library is comprised of thousands of movies and television episodes[1], the overwhelming majority of which Starz has never licensed and never had any rights to whatsoever. MGM's revenue from licensing titles that could not possibly have been infringed or breached is, of course, well outside the bounds of proper discovery. Starz never explained the relevance of library-wide financial data, despite promising MGM that it would do so in a Local Rule 37-1 letter (*id.*, ¶ 6), and instead informed this Court at the status conference that MGM is refusing to provide any discovery concerning damages, which is simply not true. And even in this motion, by employing an improper format, Starz has obscured how each specific request relates to discovery that is appropriate for this case.

The parties meet and confer communications on other discovery requests followed a similar pattern, with MGM explaining to Starz in detail how Starz's individual requests are overbroad, seek discovery that has no relevance to this lawsuit, and are too attenuated to justify the undue burden on MGM. (*Id.*, ¶ 3.) At the parties' last meet and confer conference on May 19, 2021, the parties agreed to inquire with their respective clients about possible ways to reach compromise and Starz represented that it would provide MGM with a letter detailing how each of its requests are relevant and proposing compromises so that MGM could consider and respond appropriately. (*Id.*, ¶ 6.) During the following ***seven weeks*** culminating in the July 6, 2021 discovery conference with the Court, MGM never heard back from Starz on these discovery disputes and the promised letter never came. (*Id.*)

---

[1] See Amazon Press Release, *Amazon and MGM have signed an agreement for Amazon to acquire MGM*, dated May 26, 2021, available at https://press.aboutamazon.com/news-releases/news-release-details/amazon-and-mgm-have-signed-agreement-amazon-acquire-mgm.

L.R. 37-2 JOINT STIPULATION FOR
PLAINTIFF'S MOTION TO COMPEL

2:20-cv-04085-DMG-KS(x)

1    Starz's conduct and approach thus violates another requirement of Rule 37-2.1,

2    which is that "[w]hen a party states its contentions on a particular issue, such party

3    must also state how it proposed to resolve the dispute over that issue at the

4    conference of counsel."  L.R. 37-2.1.

5          These Local Rule 37-2.1 requirements are not mere formalities, but are

6    intended to allow this Court to assess and rule on the individual disputes.  Starz's

7    approach makes it difficult, if not impossible, for the Court to rule upon the

8    propriety of Starz's requests.  Failure to follow these rules, on its own, is grounds

9    for denial of Starz's Motion because there is no way for the Court to evaluate the

10   parties' dispute.  *Johansen v. LoanDepot.com LLC*, 2021 WL 2497939, at *5 (C.D.

11   Cal. Apr. 5, 2021) ("Courts may deny discovery motions for failure to comply with

12   the Local Rules' requirements for such motions."); *Belden v. Cty. of San*

13   *Bernardino*, 2020 WL 3129208, at *3 (C.D. Cal. June 12, 2020) (denying motion

14   to compel for failure to comply with Local Rule 37-2.1).

15         Rather than impose upon the Court the burden of picking through Starz's

16   generalized arguments untethered to the specific language of multiple

17   interrogatories and document requests, MGM respectfully suggests that Starz be

18   ordered to start over with a motion that follows the local rules.  MGM nevertheless

19   has endeavored to address each of the individual document requests and

20   interrogatories separately below to the extent possible despite not knowing Starz's

21   specific contentions with respect to them.

22         To be clear, MGM does not oppose properly focused discovery requests, and

23   repeatedly has said as much to Starz.  In fact, now that the Protective Order has

24   been entered and this Court has resolved the parties' dispute concerning the

25   Document Production Protocol, MGM stands ready to negotiate search terms and

26   custodians so it can get its document production started in earnest, along with the

27   contracts that MGM already has started to produce.  Starz, however, should not be

28

permitted to go an unfettered fishing expedition based on its generalized justification that is unmoored from specific claims and defenses at issue in this case.

## II.    ISSUES IN DISPUTE

### A.    Discovery Concerning the Extent of MGM's Breach

#### 1.    Disputed Interrogatories and Requests

##### (a)    *Interrogatory 9*

**Interrogatory No. 9:**  Identify all Platforms to which MGM marketed and or licensed any of the Pictures at any time in or after July 2013.

**Response and Objections to Interrogatory No. 9:**  MGM restates and incorporates by reference its General Response and General Objections as though fully set forth herein. MGM further objects to this Interrogatory on the ground that it seeks information that is not relevant to the subject matter of this litigation, is disproportionate to the needs of the case, imposes burdens and expenses that outweigh their likely benefit or is otherwise outside the proper scope of discovery. Among other things, the Library Agreements cover hundreds of Pictures as to which there is no dispute at all. As such, information concerning any Picture for which Plaintiff does not allege any copyright infringement or breach of contract are wholly irrelevant to this lawsuit. Moreover, even with respect to the Pictures in dispute in this case, any information concerning any time period, media, territories, or languages in which Starz did not have any rights have no relevance whatsoever to this lawsuit. Further, information concerning MGM's marketing activities have no relevance to any claims or defenses in this lawsuit. MGM further objects to this Interrogatory on the ground that it is premature because, among other things, Plaintiff has not provided any information concerning the infringements or the breaches that it alleges in the Complaint, including when such

infringements or breach purportedly occurred, what media they occurred on and the identity of the third party exhibitor that allegedly exhibited any Picture licensed to Plaintiff during Plaintiff's license period. Plaintiff should provide such information referenced in its Complaint so that MGM may fully investigate Plaintiff's allegations. MGM further objects to this Interrogatory on the ground that it seeks confidential, proprietary, private, or commercially or competitively sensitive information concerning MGM and its business relationships. MGM further objects to this Interrogatory on the grounds it purports to require MGM to provide confidential information in the absence of any protective order.

(b)   ***Interrogatory 12***

**Interrogatory No. 12:** Identify each instance in which MGM licensed a Picture to a third party during an Exclusivity Period, including for each Picture the name of the third party to which the Picture was licensed, the dates on which the Picture was licensed by MGM to that third party, and the period of overlap between the license to the third party and any Exclusivity Period.

**Response and Objections to Interrogatory No. 12:**  MGM restates and incorporates by reference its General Response and General Objections as though fully set forth herein. MGM further objects that the terms and phrases "Exclusivity Period" and "overlap" render this Interrogatory vague, ambiguous, overbroad, and unduly burdensome. MGM further objects to this Interrogatory on the grounds that it lacks foundation and assumes as true characterizations, definitions, arguments, allegations, assertions or assumptions that are disputed or erroneous, including Plaintiff's allegations or suggestions that it had the "sole rights to exhibit, distribute, display or otherwise exploit" any of the Pictures at any time. MGM further objects to this Interrogatory on the grounds that it seeks information that is not relevant to the subject matter of this litigation, is

8

1    disproportionate to the needs of the case, imposes burdens and expenses that

2    outweigh their likely benefit or is otherwise outside the proper scope of discovery.

3    Among other things, the Library Agreements cover hundreds of Pictures as to

4    which there is no dispute at all. As such, information concerning any Picture for

5    which Plaintiff does not allege any copyright infringement or breach of contract

6    are wholly irrelevant to this lawsuit. Moreover, even with respect to the Pictures in

7    dispute in this case, any information concerning any time period, media, territories,

8    or languages in which Starz did not have any rights have no relevance whatsoever

9    to this lawsuit. For example, the Library Agreements expressly provides that MGM

10   may exhibit, or authorize the exhibition of, each of the Picture licensed under the

11   Library Agreements via various media set forth in the Library Agreements during

12   the license period applicable to any of the Pictures. The Library Agreements

13   further provide that MGM may freely exploit any and all rights whatsoever outside

14   the territory covered by the Library Agreements, both inside and outside of the

15   license period applicable to any of the Pictures. As such, requesting MGM to

16   identify each instance when it properly exercised its rights is overly broad, unduly

17   burdensome, and disproportionate to the needs of this case. MGM further objects

18   to this Request on the grounds that it is premature. In addition to the fact that the

19   Court has not yet held a scheduling conference in this case, Plaintiff has not

20   provided any information concerning the infringements or the breaches that it

21   alleges in the Complaint, including when such infringements or breaches

22   purportedly occurred, what media they occurred on, and the identity of the third

23   party exhibitor that allegedly exhibited any Picture licensed to Starz during Starz's

24   license period. Plaintiff should provide such information referenced in its

25   Complaint before purporting to require MGM to provide any information

26   concerning its claims. MGM further objects to this Interrogatory on the ground that

27   it seeks confidential, proprietary, private, or commercially or competitively

28

9

1  sensitive information concerning MGM and its business relationships. MGM
2  further objects to this Interrogatory on the grounds it purports to require MGM to
3  provide confidential information in the absence of any protective order. MGM
4  further objects to the extent this Interrogatory is duplicative and seeks information
5  duplicative of other discovery requests served in this action, including its Request
6  for Production Nos. 6, 8 and 10. MGM further objects to this Interrogatory on the
7  grounds and to the extent it seeks information that is not in MGM's possession,
8  custody, or control; not obtainable at this time after reasonable investigation and
9  diligent inquiry; not reasonably accessible to MGM; or no longer in MGM's
10 possession, custody or control and which MGM was under no obligation to
11 maintain. MGM further objects to this Interrogatory on the ground that it contains
12 discrete subparts and is compound. The Library Agreements cover over 800
13 different titles. Starz has asserted a different cause of action with respect to each
14 Picture for which Starz alleges that MGM purportedly infringed Starz's purported
15 copyright in the Picture. As such, Starz has grossly exceeded the number of
16 Interrogatories permitted under Rule 33(a)(1) of the Federal Rules of Civil
17 Procedure.

18              (c)    *Interrogatory 13*

19         **Interrogatory No. 13:** To the extent not covered by Interrogatory 12,
20 identify each instance in which a Picture was exhibited by a third party with
21 MGM's permission during an Exclusivity Period, including any Pictures that
22 MGM published through Amazon's Prime Video Direct, and including for each
23 Picture the name of the third party that exhibited the Picture, the date of each
24 exhibition, and the period of overlap between any exhibition by a third party and
25 any Exclusivity Period.

26         **Response and Objections to Interrogatory No. 13:** MGM restates
27 and incorporates by reference its General Response and General Objections as

28

though fully set forth herein. MGM further objects that the terms and phrases "exhibited by a third party," "Exclusivity Period," "MGM's permission," "published," "overlap," and "exhibition" render the Interrogatory vague and ambiguous. MGM further objects to this Interrogatory on the grounds that it lacks foundation and assumes as true characterizations, definitions, arguments, allegations, assertions or assumptions that are disputed or erroneous, including Plaintiff's allegations or suggestions that it had the "sole rights to exhibit, distribute, display or otherwise exploit" any of the Pictures at any time. MGM further objects to this Interrogatory on the grounds that it seeks information that is not relevant to the subject matter of this litigation, is disproportionate to the needs of the case, imposes burdens and expenses that outweigh their likely benefit or is otherwise outside the proper scope of discovery. Among other things, the Library Agreements cover hundreds of Pictures as to which there is no dispute at all. As such, information concerning any Picture for which Plaintiff does not allege any copyright infringement or breach of contract are wholly irrelevant to this lawsuit. Moreover, even with respect to the Pictures in dispute in this case, any information concerning any time period, media, territories, or languages in which Starz did not have any rights have no relevance whatsoever to this lawsuit. For example, the Library Agreements expressly provides that MGM may exhibit, or authorize the exhibition of, each of the Picture licensed under the Library Agreements via various media set forth in the Library Agreements during the license period applicable to any of the Pictures. The Library Agreements further provide that MGM may freely exploit any and all rights whatsoever outside the territory covered by the Library Agreements, both inside and outside of the license period applicable to any of the Pictures. As such, requesting MGM to identify each instance when a third party may have properly exhibited the Pictures is overly broad, unduly burdensome, and disproportionate to the needs of this case. MGM

11

further objects to this Request on the grounds that it is premature. In addition to the fact that the Court has not yet held a scheduling conference in this case, Plaintiff has not provided any information concerning the infringements or the breaches that it alleges in the Complaint, including when such infringements or breaches purportedly occurred, what media they occurred on, and the identity of the third party exhibitor that allegedly exhibited any Picture licensed to Starz during Starz's license period. Plaintiff should provide such information referenced in its Complaint before purporting to require MGM to provide any information concerning its claims. MGM further objects to this Interrogatory on the ground that it seeks confidential, proprietary, private, or commercially or competitively sensitive information concerning MGM and its business relationships. MGM further objects to this Interrogatory on the grounds it purports to require MGM to provide confidential information in the absence of any protective order. MGM further objects to the extent this Interrogatory is duplicative and seeks information duplicative of other discovery requests served in this action, including its Request for Production Nos. 6, 8 and 10. MGM further objects to this Interrogatory on the grounds and to the extent it seeks information that is not in MGM's possession, custody, or control; not obtainable at this time after reasonable investigation and diligent inquiry; not reasonably accessible to MGM; or no longer in MGM's possession, custody or control and which MGM was under no obligation to maintain. MGM further objects to this Interrogatory on the grounds that it calls for information that is in possession, custody or control of third parties or nonparties. MGM further objects to this Interrogatory on the ground that it contains discrete subparts and is compound. MGM further objects to this Interrogatory on the ground that it contains discrete subparts and is compound. The Library Agreements cover over 800 different titles. Starz has asserted a different cause of action with respect to each Picture for which Starz alleges that MGM purportedly infringed

Starz's purported copyright in the Picture. As such, Starz has grossly exceeded the number of Interrogatories permitted under Rule 33(a)(1) of the Federal Rules of Civil Procedure.

(d)   ***Request No. 6***

**Request No. 6:**  Documents sufficient to show the following information:  i. the identification of each Person to whom you have licensed any of the Pictures; ii. the dates the Pictures were licensed to any Person, the territories covered by the licenses, the types of exhibition or distribution authorized (such as on pay television networks, SVOD, AVOD or TVOD) and the time period or windows covered by the licenses, on a Person-by-Person and Picture-by-Picture basis; iii. the revenue You received from each Person to whom a Picture was licensed, on a Person-by-Person, Picture-by-Picture, and date-by-date basis; iv. the revenue You received from each Platform or Distributor on which a Picture was exhibited, on a Platform-by-Platform, Picture by-Picture, and date-by-date basis, including any revenue received from self-publication or self-exhibition; v. all license agreements concerning any of the Pictures; vi. dates that information concerning the Pictures was entered into MGM's Rights Tracking System or other database; and vii. any surcharges, rebates or discounts offered to Persons that were licensed any of the Pictures.

**Response and Objections to Request No. 6:**  MGM restates and incorporates by reference its General Response and General Objections as though fully set forth herein. MGM further objects that the terms and phrases "rebates," "surcharges," and "discounts," render the Request vague, ambiguous, overbroad, and unduly burdensome. MGM further objects to this Request on the grounds that it seeks information and documents that are not relevant to the subject matter of this litigation, is disproportionate to the needs of the case, imposes burdens and expenses that outweigh their likely benefit, or is otherwise outside the proper scope

of discovery. Among other things, the Library Agreements cover hundreds of Pictures as to which there is no dispute at all. As such, documents concerning any Picture for which Plaintiff does not allege any copyright infringement or breach of contract are wholly irrelevant to this lawsuit. Moreover, even with respect to Pictures in dispute in this case, any information or documents concerning any time period, media, territories, or languages in which Starz did not have any rights have no relevance whatsoever to this lawsuit. Likewise, any surcharges, rebates, or discounts that MGM offered any licensee are wholly irrelevant to this lawsuit. Further, MGM's revenues derived from any Picture in dispute outside of the three years preceding this lawsuit are not relevant. MGM further objects to this Request on the grounds that it is not particularized and not reasonably calculated to lead to the discovery of admissible evidence. MGM further objects to this Request on the grounds and to the extent it seeks information and documents that are not in MGM's possession, custody, or control; not obtainable at this time after reasonable investigation and diligent inquiry; not reasonably accessible to MGM; or are no longer in MGM's possession, custody, or control and which MGM was under no obligation to maintain. MGM further objects to this Request on the grounds that it seeks confidential, proprietary, private, or commercially or competitively sensitive information or documents belonging to MGM, nonparties, and third-parties, including terms of license agreements that MGM is required to refrain from disclosing. MGM further objects to this Request on the grounds that it purports to require MGM to search for and produce information or documents in the absence of a protective order and/or a reasonable and mutually agreeable document production protocol, including a mutually-agreed upon search methodology, list of custodians, and/or list of search terms to apply to any ESI.

Subject to and without waiving the foregoing objections, MGM responds as follows:  MGM is willing to meet and confer with Plaintiff after the

Scheduling Conference set for March 12, 2021, to determine if this Request can be properly defined, modified, and limited so that it is confined to a relevant, reasonable, and identifiable collection of materials.

        2.    <u>Starz's Position:  Starz Is Entitled to Discovery Regarding the Extent of MGM's Breach and Infringement.</u>

At its core, this case is about MGM breaching its contractual promises of exclusivity by licensing to third parties Pictures that should have been available exclusively to Starz.  There is no debate that *some* breaches occurred.  But questions remain:  how many Pictures were licensed to or displayed by third parties inappropriately; for how long; to which third parties; at what cost.  Discovering those facts is fundamental to Starz's case.

It should go without saying that a plaintiff in a breach of contract case is entitled to discovery concerning the extent of the defendant's breach.  *See Lapekas Kaiser Foundation Health Plan, Inc.*, No. CV 10-5984-VBF(FMOx), 2011 WL 13217589, at *1 (C.D. Cal. May 25, 2011) (denying motion to dismiss in part and stating that "[a]lthough Plaintiff refers to additional unspecified 'other contractual documents,' Blue Cross is on notice as to at least one alleged breach of contract and may explore the scope of Plaintiff's claims through discovery"); *Bylin Heating Sys., Inc. v. Thermal Techs., Inc.*, No. 2:11-cv-1402 KJM KJN, 2013 WL 789124, at *7 (E.D. Cal. Mar. 1, 2013) (finding that plaintiffs were prejudiced by defendant's failure to respond to discovery requests relating to the "extent of defendant's breach of the settlement agreement and plaintiffs' potential damages", and granting discovery sanctions).  The same is true in copyright infringement cases.  *See, e.g.*, *Houdini, Inc. v. Gabriel*, No. 04-CV-09574, 2005 WL 6070171, at *2 (C.D. Cal. Oct. 21, 2005) (allowing discovery to determine full scope of infringement because "[i]f Defendant is utilizing its other domain names to infringe on Plaintiff's trademark, or to create a scheme to infringe, this information

        

is discoverable"); *Jacobsen v. Katzer*, 609 F. Supp. 2d 925, 935 (N.D. Cal. 2009) (finding that plaintiff "may find additional instances of infringement" through discovery).

In fact, discovery concerning the extent to which the defendant breached the relevant contract or infringed the relevant copyrights is the most fundamental question in those types of cases, and is relevant both to liability and damages. *See Bylin*, 2013 WL 789124, at *7 (finding that defendant's failure to produce discovery concerning the scope of the breach "significantly hampered plaintiffs' ability to prove their claims", "impair[ed] plaintiffs' ability to go to trial and threaten[ed] to interfere with the rightful decision of the case"). That is what Starz seeks to learn through the RFPs and Interrogatories at issue here.

Critically, the information necessary to know the full extent of MGM's breach is exclusively within MGM's possession. Only MGM can know each third party to whom it licensed or otherwise made available the Pictures during the Exclusivity Periods. Only MGM can know each Picture it licensed to each of those third parties and on what terms. And only MGM has possession of each license agreement or other arrangement pursuant to which that access was provided. Given the informational asymmetry between Starz and MGM—in which MGM has *all* of the discoverable information concerning its own licenses to third parties, and Starz lacks such information—"the burden of responding to discovery lies heavier on" MGM as "the party who has more information, and properly so". *See* Fed. R. Civ. P. 26 advisory committee notes (2015 amendment); *see also Ardestani v. BMW of N. Am., LLC*, No. SACV 17-0021-CJC (JDEx), 2018 WL 6016955, at *3 (C.D. Cal. May 4, 2018) (noting that, "as the Advisory Committee Notes recognize, an individual plaintiff may not be in a position to proffer a greater showing about internal systems of another party").

This case is unusual only because MGM admitted to some breaches and infringements before Starz filed suit.  Those admissions allowed Starz (through substantial expense and effort) to uncover from publicly available sources additional breaches to which MGM did not confess.  As a result, Starz was able in its Complaint to identify with specificity 340 examples of MGM having breached the Library Agreements and infringed Starz's copyrights.  (*See* Ex. D, ECF No. 1, Complaint (Exhibit A).)  As Starz made clear in the Complaint, however, the breaches it identified were ***examples*** based on the information then available to it; Starz would need formal discovery to know the full extent of MGM's breach and infringement.  (Ex. D, Compl. ¶¶ 52-53 ("STARZ requires discovery to uncover the full extent of MGM's breach and infringement.").)

MGM now argues that because Starz was able to identify ***some*** specific breaches in the Complaint, it is not permitted to take discovery into whether ***other*** breaches occurred.  MGM's position is that Starz is entitled to discovery concerning only the 340 Pictures already identified in the Complaint as having been infringed, and not any of the other 761 Pictures it purported to license exclusively to Starz in the Library Agreements.  That turns the concept of discovery on its head.  Starz need not already have proof of MGM's breach to seek the discovery necessary to know whether MGM breached.  Numerous courts have so held.  *See Houdini, Inc.*, 2005 WL 6070171, at *2 (compelling discovery concerning trademark infringements not alleged in the complaint because such discovery "may provide information about other infring[ements] [] that Plaintiff was unaware of"); *see also Robert Half Int'l Inc. v. Ainsworth*, No. 14-CV-2481, 2015 WL 4662429, at *13 (S.D. Cal. Aug. 6, 2015) ("RHI is entitled to investigate whether additional solicitation of other RHI employees occurred, even if RHI is not currently aware of such facts." (citing Fed. R. Civ. P. 26(b)(1) advisory committee notes (2000 amendments))).  To the contrary, when a party has

1   substantiated its allegations of breach with specific evidence it should be entitled to

2   greater latitude (not less) in seeking discovery into the full extent of the breach

3   because it has already established that a breach occurred.  *See, e.g.*, *Charter Sch.*

4   *Cap., Inc. v. Charter Asset Mgmt. Fund, LP*, No. CV 14-3385-GW (PLAX), 2015

5   WL 12655550, at *3 (C.D. Cal. Mar. 9, 2015) (finding that where a "sufficient

6   possibility of a causal nexus has been shown here, plaintiff is entitled to 'explore

7   that issue further through the discovery process'" (citation omitted)).

8         Starz should not have to take MGM's word for it that there are no

9   additional breaches.  Discovery is meant to allow parties to discover the underlying

10  facts so that they can determine for themselves what happened.  "Discovery serves

11  as a device for ascertaining the facts and information as to the existence or

12  whereabouts of those facts."  *Carrillo v. Schneider Logistics, Inc.*, No. CV 11-

13  8557-CAS (DTBx), 2012 WL 4791614, at *9 (C.D. Cal. Oct. 5, 2012).  "It

14  provides a way for parties 'to obtain the fullest possible knowledge of the issues

15  and facts before trial.'"  *Id.* (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

16  That is what Starz seeks to do here.

17        Nor is Starz's request burdensome.  MGM purports already to have

18  analyzed whether the Pictures were licensed to third parties during the Exclusivity

19  Windows, which, if true, would have required MGM to gather and review the

20  relevant licenses to third parties.  It should produce what it already has gathered.  If

21  MGM has not gathered such information, it is not overly burdensome for it to do

22  so, particularly given the scope of MGM's known breach and the extensive

23  damage it has caused Starz.  The process would entail looking for and producing

24  license agreements, which is not an arduous undertaking.  Moreover, production

25  would be subject to the two-tiered protective order entered in this case, which

26  would adequately address any confidentiality concerns MGM might have.  (*See*

27  Ex. B, ECF No. 64.)  There is simply no basis for MGM to withhold the licenses or

28

other arrangements pursuant to which it made available to third parties the 761 Pictures in the Library Agreements.

3.   MGM's Position:  Starz ignores the actual discovery disputes between the parties, which focused on the specific language in Starz's massively overbroad requests that seek irrelevant materials and impose an unwarranted burden on MGM.

Starz devotes much of its position statement to a strawman argument—that MGM is opposing discovery into the extent of MGM's alleged breaches/infringements.  Not so.  MGM does not disagree with the unremarkable proposition that Starz should be permitted to conduct discovery into the extent of MGM's alleged breaches/infringements, provided that discovery is reasonably tailored to the allegations in the lawsuit.  But Starz fails to justify its actual discovery requests, which are wildly overbroad, facially burdensome, and vexatious.  Starz fails to individually justify its requests and instead impermissibly lumps them all together under the banner of some general platitudes.  Thus, Starz has not addressed the unique burdens imposed by each individual request or their lack of proportionality to the extent they even seek relevant information.  Starz's section above violates Local Rule 37-2.1, which requires the moving party to take an individualized approach to each discovery request.  *See* L.R. 37-2.1 ("For example, if the sufficiency of an answer to an interrogatory is at issue, the stipulation must contain, verbatim, both the interrogatory and the allegedly insufficient answer, followed by each party's contentions ***as to that particular interrogatory***, separately stated.") (emphasis added).  Despite being the moving party, Starz failed to provide specific contentions for each request.  MGM is unfairly left to guess what Starz might say to justify each individual request.  The Court should reject any attempt by Starz to cure its fundamental error in its Supplemental Brief, to which MGM will have no chance to respond.

19

1    When the discovery requests at issue are analyzed individually, as the Local

2  Rules require and as MGM does below, it becomes clear that Starz's requests are

3  overbroad, unduly burdensome, and not proportionate to the needs of the case.

4  Under the guise of claiming that it needs discovery into the extent of MGM's

5  alleged breaches/infringements at issue, Starz's has propounded discovery requests

6  that would require MGM to identify, collect, review, and produce hundreds of

7  thousands of pages of documents (if not more) with respect to territories,

8  languages, media, and time periods in which Starz never had any rights.

9  Collecting these documents would include manual searches through hard copy files

10  that would be unduly burdensome and time-consuming, all related to information

11  that is not relevant to the issues in this case.

12    Furthermore, the Court "has the authority to confine discovery to the claims

13  and defenses asserted in the pleadings" and parties "have no entitlement to

14  discovery to develop new claims or defenses that are not already identified in the

15  pleadings."  Advisory Committee Note to 2000 Amendment to Fed. R. Civ. P.

16  26(b)(1); *see also Lifeguard Licensing Corp. v. Kozak*, 2016 WL 3144049, at *2–3

17  (S.D.N.Y. May 23, 2016) (explaining it is "well-established that information

18  relevant only to claims not yet pled was beyond the scope of discovery"); *Altman*

19  *v. Ho Sports Co.*, 2010 WL 3703843, at *6 (E.D. Cal. Sept. 16, 2010) (holding that

20  federal rules prohibit discovery on unpled claims).  Because "[a] party must be

21  able to rely on its opponent's pleadings in guiding discovery," *United States v.*

22  *$17,980.00 in United States Currency*, 2014 WL 4924866, *4 (D. Or. Sept. 30,

23  2014), one party may not force the other "to conduct often wasteful discovery on

24  myriad unpled, but arguably factually-plausible claims," *id.*

25    Changes to the Federal Rules enacted in December 2015 imposed even

26  stricter restrictions on discovery relating to unpled claims.  "Prior to [the

27  amendment,] Rule 26(b) (1) contained a two-tier definition of the scope of

28

discovery." *Lifeguard*, 2016 WL 3144049, at *2.  First, "'[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any claim or defense ....'" *Id.* (quoting pre-amendment Fed. R. Civ. P. 26(b)(1)).  Second, "'[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.'" *Id.* (quoting pre-amendment Fed. R. Civ. P. 26(b)(1)).  The December 2015 amendments, however, "deleted the second tier, so that discovery now extends only as far as information relevant to claims or defenses." *Id.*; *see also* Fed. R. Civ. P. 26 Advisory Committee's Note to 2015 Amendment ("The amendment deletes the former provision authorizing the court, for good cause, to order discovery of any matter relevant to the subject matter involved in the action.").  The plain language of the amended Rules thus no longer "provide[s] for discovery of 'likely,' 'anticipated,' or 'potential' claims or defenses." *Lifeguard*, 2016 WL 3144049, at *2; *accord In re Bard IVC Filters Prod. Liab. Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016) ("The test going forward is whether evidence is 'relevant to any party's claim or defense,' not whether it is 'reasonably calculated to lead to admissible evidence.'").

This Court too has recognized the changed landscape after the December 2015 Amendments, stating that this Court "analyzes the discovery requests at issue here based on whether they seek information relevant to the claims and defenses ***in the case*** and Rule 26(b)(1)'s proportionality requirements." *Mfg. Automation & Software Sys., Inc. v. Hughes*, 2017 WL 5641120, at *3 (C.D. Cal. Sept. 21, 2017) (Stevenson, J.) (emphasis added).

There are good reasons for thusly limiting the scope of discovery.  In addition to avoiding needless discovery on matters that may never be litigated, under Rule 11, "a party and its attorney must have conducted 'an inquiry reasonable under the circumstances' before filing a pleading." *Lifeguard*, 2016 WL 3144049, at *3 (quoting Fed. R. Civ. P. 11(b)).  "Permitting discovery on

unpled claims or defenses would dilute this obligation by permitting a party to file one plausible claim and then take discovery on any tangentially related potential claims before deciding whether to actually assert them." *Id.* Moreover, claims that are pleaded in the complaint are subject to Rule 12(b)(6) challenges before any discovery can commence on them. Allowing discovery into unpled claims circumvents this whole process and allows discovery into unalleged claims that should have never gotten off the ground as a threshold matter.

This concern is particularly pronounced here, because the parties engaged in extensive dialogue for months before Starz filed its lawsuit. (Yu Decl., ¶ 2.) From September 2019 through March 2020, MGM provided Starz significant information about the titles that might be subject to a breach/infringement claim—in fact, the information that MGM provided Starz was intentionally overbroad, including many titles that ultimately have no associated breach/infringement but were provided by MGM to Starz out of an abundance of caution. (*Id.*, ¶ 2.) In addition, Starz claims to have conducted its own independent investigation, resulting in the putative discovery of more than a hundred additional titles at issue. (*Id.*, ¶ 5.) While Starz claims that "the full extent of MGM's breach is exclusively within MGM's possession," Joint Statement at 16, to date, MGM has not been able to ascertain these breaches—thus requiring MGM to prove a negative. The information underlying Starz's allegations is exclusively within Starz's possession and control, as they came about as a result of Starz's own internal investigation. During the parties' meet and confer, MGM asked Starz to provide some information about these additional titles so that MGM could search for and provide information to prove or disprove Starz's allegations, but Starz has refused to do so, leaving MGM in the dark as to when or on what platforms Starz alleges that these breaches supposedly occurred. (*Id.*, ¶ 5.) MGM disputes that these additional titles have an associated breach but is willing to provide discovery into them as

Starz alleged these claims, subject to its Rule 11 obligations.  But as to speculative allegations of breach, Starz should not be permitted to go on a fishing expedition.

Moreover, even for claims that are properly in this case, the scope of discovery must be limited to matters that are "relevant" and "proportional" to the needs of the case.  Fed. R. Civ. P. 26(b)(1).  "The amendment to Rule 26(b) adding the proportionality requirement is designed to avoid . . . sweeping discovery that is untethered to the claims and defenses in litigation."  *Manufacturing Automation*, 2017 WL 5641120, at *5.  Even if discovery into unpled claims were arguably relevant (which it is not), the proportionality requirement of Rule 26 does not permit the type of overly broad and burdensome discovery that Starz seeks.  *Id.*

Although Starz claims that the discovery it seeks is not burdensome because Starz is simply requesting information that MGM "has compiled (and analyzed)," Joint Stipulation at 2, that is not so.  MGM investigated third party licenses that potentially conflicted with Starz's limited rights and where a potential collision was found, MGM further examined the underlying records to determine whether there was an actual collision.  (Yu Decl., ¶ 2.)  MGM informed Starz during meet and confers that it would be willing to share information about titles where MGM believed that it could have licensed a title to a third party during the window when Starz had licensed an exclusive right to it.  (*Id.*, ¶ 4.)  But Starz seeks much more, including information about third party licenses covering platforms, territories, languages and license periods that Starz did not license and therefore could not possibly support a breach or infringement claim.  What's more, Starz wants information and documents about third party licenses where neither party's investigation to date has uncovered any potential breach.  Starz's discovery requests are in no way limited to information that pertain to the claims in Starz's complaint and "on that basis, the requests seek information concerning [MGM's]

1    business activities that is wholly irrelevant to this litigation." *Manufacturing

2    Automation*, 2017 WL 5641120, at *4.

3    The scope of this case is already "sprawling" as it is.  (Ex. A, ECF No. 52, at

4    4.)  Starz's Complaint alleges that MGM infringed its rights with respect to 340

5    titles, and Starz may not expand its discovery to hundreds of additional titles on the

6    theory that it is "arguably factually-plausible" that those were infringed as well.

7    *See Sec. & Exch. Comm'n v. Mazzo*, 2013 WL 12172628, at *6 (C.D. Cal. Oct. 24,

8    2013) (denying discovery into potential downstream tipper liability claims where

9    complaint only pleaded that tipper tipped off one individual).

10   The cases that Starz cites to do not justify such overly broad and

11   burdensome discovery.  All but one predates the December 2015 amendment to the

12   Federal Rules and thus applied the earlier version of Rule 26(b)(1).  *In re Bard*,

13   317 F.R.D. at 564.  "Thus, just as a statute could effectively overrule cases

14   applying a former legal standard, the 2015 amendment effectively abrogated cases

15   applying a prior version of Rule 26(b)(1)."  *Id.*; *accord Lifeguard*, 2016 WL

16   3144049, at *2.  Moreover, all of the cases cited by Starz feature a much different

17   posture than the one at bar.  In those cases, the nature and extent of the breach was

18   unknown or unknowable to plaintiffs before they filed their complaint.  *See, e.g.*,

19   *Bylin Heating Sys., Inc. v. Thermal Techs., Inc.*, No. 2:11-CV-1402 KJM KJN,

20   2013 WL 789124, at *5 (E.D. Cal. Mar. 1, 2013) (uncooperative defendant failed

21   to comply with discovery rules, failed to comply with the court's order compelling

22   discovery, failed to appear at noticed court hearings, and transferred assets to

23   render itself judgement-proof); *Lapekas Kaiser Found. Health Plan, Inc.*, No. CV

24   10-5984-VBF(FMOX), 2011 WL 13217589, at *1 (C.D. Cal. May 25, 2011)

25   (denying health care system's motion to dismiss individual plaintiff's breach of

26   contract claim and noting that plaintiff could pursue support through discovery).

27   Here, the situation is much different, for the reasons discussed above.

28

The one case cited by Starz that post-dates the amendment does not even address discovery concerning unpled claims and stands for the unremarkable proposition that a plaintiff should not have to provide details as to what is contained in data from defendant's internal vehicle repair and service tracking system before being entitled to that data, since plaintiff is not in a "position to proffer a greater showing about internal systems of another party." *Ardestani v. BMW of N. Am.*, LLC, 2018 WL 6016955, at *3 (C.D. Cal. May 4, 2018). This case is inapposite as MGM never required Starz to explain what is in MGM's internal data system. MGM simply asked Starz what its basis was for seeking discovery that is not "[]tethered to the claims and defenses in litigation," as is required under the Amended Rules. *Manufacturing Automation*, 2017 WL 5641120, at *5.

Starz already has cast an overly broad net, asserting hundreds of claimed breaches of the agreements at issue against MGM despite their being no substantiation whatsoever for the vast majority of Starz's allegations. But because these breaches are pled, MGM has agreed to provide discovery into them to the extent the requests are otherwise reasonable and do not impinge on the District Court's February 22, 2021 Order, which granted a partial stay of certain discovery (the "Stay Order"). There is no reason for the Court to authorize an even broader fishing expedition into additional titles with respect to which neither party's extensive pre-litigation investigation revealed any issue and with respect to which there is no inkling that any breach occurred.

As required by Rule 37-2, MGM will address each request individually below.

**Starz Interrogatory No. 9:** Identify all Platforms to which MGM marketed and or licensed any of the Pictures at any time in or after July 2013.

**MGM's Position:**  Interrogatory No. 9 seeks information that is not relevant to this case and is overbroad and unduly burdensome.  First, while purporting to seek information regarding the extent of MGM's alleged breaches of the agreements at issue, Interrogatory No. 9 seeks information with respect to all platforms, all time periods, and all territories over the past 8 years, regardless of whether that information has any bearing on the claims at issue.  For example, this Interrogatory seeks information regarding countless territories in which Starz never had any rights.  Even if MGM produced information regarding licensing activity in various territories all over the world, that information could not support Starz's breach claim because the agreements at issue are confined to the United States and its territories.  This Interrogatory also seeks information about all distribution platforms even though Starz's license and contractual rights concern only a few of them, namely pay television and subscription video-on-demand.  MGM never licensed Starz any theatrical, home video, electronic sell-through, transactional video-on-demand, or near video-on-demand rights—but Starz seeks discovery concerning MGM's licensing activity on such platforms.

Starz also seeks information during time periods when Starz had no rights in a particular title.  Although the general terms of the Library Agreements applied to all of the licensed titles, the license periods were individually negotiated and varied from title-to-title, with most license periods lasting for less than fifteen months.  But Starz's Interrogatories call for all platforms to which MGM marketed and licensed "any of the Pictures at any time in or after July 2013."  This is facially overbroad.  For instance, even if a title was licensed to Starz for one month in 2020, Starz's Interrogatory would require MGM to identify all third parties to which MGM licensed that picture from 2013 to the present, even though Starz had no rights of any kind that could have possibly been breached or infringed outside of its one month license window.

Discovery into third-party licenses covering territories, platforms and time periods in which Starz has no rights would do nothing to advance Starz's claims while imposing a severe burden on MGM.  This Interrogatory therefore cannot be justified with broad bromides that "plaintiff in a breach of contract case is entitled to discovery concerning the extent of the defendant's breach," as it seeks information about third party licenses that could not possibly result in any breach of Starz's rights.  MGM has repeatedly explained this to Starz during meet and confers, making its failure to address MGM's actual concern regarding this (and other) requests by using an improper format in its motion particularly frustrating.

In addition, the Interrogatory is further overbroad in that it seeks discovery into *hundreds* of titles over which there is no allegation of a breach.  To be sure, MGM disagrees with Starz that MGM breached the agreements with respect to the 300+ titles alleged in the Complaint.  Nevertheless, MGM will be providing discovery about them, to the extent they are not subject to the Court's Stay Order, because they are alleged and therefore in the case.  But MGM should not be required to provide discovery into the hundreds of additional titles over which Starz has made no claim despite conducting a pre-lawsuit investigation into all of them and about which Starz only speculates that there could be a breach with no substantiation whatsoever.  Such discovery is particularly unwarranted where, as here, the burden of complying with a "kitchen sink" interrogatory like this one would be enormously expensive and time consuming.

Furthermore, Interrogatory No. 9's request for information regarding marketing activities has nothing to do with whether MGM breached the agreement at issue in any way, and, in any event, MGM has already informed Starz that it does not conduct any marketing activities with respect to the titles at issue.

For these and other reasons, this Interrogatory imposes an undue and unnecessary burden on MGM as it seeks discovery into much, much more than

27

what is relevant to this lawsuit.  The relevant and proportional information sought by this Interrogatory would be better targeted by negotiating mutually acceptable search or query parameters, which MGM has been willing, and remains willing, to do.  This approach would provide Starz with ample discovery into the relevant issues in this case.

**Starz Interrogatory No. 12**:  Identify each instance in which MGM licensed a Picture to a third party during an Exclusivity Period, including for each Picture the name of the third party to which the Picture was licensed, the dates on which the Picture was licensed by MGM to that third party, and the period of overlap between the license to the third party and any Exclusivity Period.

**MGM's Position**:  This Interrogatory also seeks irrelevant information and is overbroad and unduly burdensome.  First, while purporting to seek information regarding the extent of MGM's alleged infringement of Starz's licenses, this Interrogatory, just like the previous Interrogatory,  seeks information with respect to all platforms, all territories, all languages, and all pictures, regardless of whether Starz had any rights in them or whether that information could support Starz's claims.  For example, Interrogatory No. 12 would require MGM to produce information regarding any instance where MGM licensed any of the titles in theatrical, home video, electronic sell-through, transactional video-on-demand and near video-on-demand platforms during an "Exclusivity Period."  Starz did not secure any license or rights in these platforms under the parties' library agreements and MGM expressly retained the right to exploit the titles in these platforms even during Starz's license periods.  Starz has never explained why information concerning third party licenses that are expressly retained by MGM under the agreements at issue are relevant to determining the "extent of the defendant's breach."  Similarly, Starz's discovery seeks information concerning instances in which MGM licensed a picture for distribution in Portuguese even though Starz

only had an exclusive license to distribute the picture in English.  Likewise, it would also require MGM to produce information regarding licensing activity in South Korea, for example, even though Starz only had an exclusive license to distribute the  picture in the United States and its territories.  And, as noted above, it would require MGM to provide discovery into *hundreds* of titles over which there is no allegation that MGM breached any obligation to Starz.

In other words, even though Starz claims this Interrogatory is reasonably tailored to the allegations in the lawsuit, it seeks voluminous information regarding licensing that could not be subject to liability under any circumstances.  Starz appears to acknowledge the impermissible overbreadth of its requests, conceding a much more reasonable means to get at this discovery:  "MGM should produce what it has already gathered."  Joint Stipulation at 18.  This is a reference to what MGM already has done in good faith in this case.  Before Starz filed this lawsuit, it approached MGM in September 2019 after it learned of a single alleged breach of the agreements at issue.  MGM subsequently conducted an internal investigation to determine what titles were potentially breached and disclosed a list of more than two hundred titles to Starz (a list that itself is overbroad in that MGM identified titles that turned out not to have any infringements of Starz's exclusivity), after which MGM continued to investigate this issue.  MGM is willing to negotiate with Starz over the terms of producing the results of its investigation, which would provide Starz with the relevant and proportional information that it needs while avoiding the tremendous burden associated with responding to this interrogatory as drafted.  (Yu Decl., ¶ 6.)

**Starz Interrogatory No. 13:**  To the extent not covered by Interrogatory 12, identify each instance in which a Picture was exhibited by a third party with MGM's permission during an Exclusivity Period, including any Pictures that MGM published through Amazon's Prime Video Direct, and including for each

Picture the name of the third party that exhibited the Picture, the date of each exhibition, and the period of overlap between any exhibition by a third party and any Exclusivity Period.

**MGM's Position:** MGM incorporates its Response to Interrogatory No. 12.

**Starz Request No. 6:**  Documents sufficient to show the following information:  i. the identification of each Person to whom you have licensed any of the Pictures; ii. the dates the Pictures were licensed to any Person, the territories covered by the licenses, the types of exhibition or distribution authorized (such as on pay television networks, SVOD, AVOD or TVOD) and the time period or windows covered by the licenses, on a Person-by-Person and Picture-by-Picture basis; iii. the revenue You received from each Person to whom a Picture was licensed, on a Person-by-Person, Picture-by-Picture, and date-by-date basis; iv. the revenue You received from each Platform or Distributor on which a Picture was exhibited, on a Platform-by-Platform, Picture by-Picture, and date-by-date basis, including any revenue received from self-publication or self-exhibition; v. all license agreements concerning any of the Pictures; vi. dates that information concerning the Pictures was entered into MGM's Rights Tracking System or other database; and vii. any surcharges, rebates or discounts offered to Persons that were licensed any of the Pictures.

**MGM's Position:**  Again, under the guise of seeking discovery into the extent of MGM's alleged breach, Starz seeks countless documents that are definitively irrelevant to the alleged breaches/infringements at issue because they relate to time periods, media, territories, and languages in which Starz was not licensed any rights.  Starz demands every document evidencing every aspect of every license MGM has ever issued with no regard to whether the documents have any bearing to Starz's claims.  MGM has hundreds of such licenses that have nothing to do with Starz.

30

As with the prior requests, this Request would require MGM to produce information regarding third party licenses that could not possibly support any claims of infringement or contract breach.  For instance, Starz seeks documents sufficient to show "each Person to whom [MGM] has licensed any of the Pictures," as well as "all license agreements concerning any of the Pictures."  But nothing in the library agreements prohibited MGM from licensing the Pictures to third parties in platforms, languages, territories and time periods not covered by the Library Agreements.  Starz has never explained, for instance, how a third party license for any of the titles outside of Starz's license period for that title is relevant to its claims of breach or infringement.  Nor could it, as such licenses, by definition, do not constitute a breach or infringement of the Library Agreements.

Similarly, MGM expressly retained the right to license the Pictures for distribution in theatrical, home video, electronic sell-through, transactional video-on-demand and near video-on-demand platforms, both during and outside of Starz's license periods.  MGM's license agreements concerning the distribution of the Pictures on these platforms cannot possibly be a breach or an infringement of any rights that Starz secured under the Library Agreements.  Likewise, this Request would require MGM to provide information about licenses in Portuguese even though Starz only had an exclusive license to distribute the Picture in English.  It would also require MGM to produce information regarding licensing activity in South Korea, even though Starz only had a license to distribute the Picture in the United States and its territories.

As such, the documents and information that Starz seeks with this Request plainly has nothing to do with the "extent of the defendant's breach."  And, as noted above, it would require MGM to provide discovery into **hundreds** of titles over which there is no allegation that MGM breached any obligation to Starz.

What's more, Starz also seeks information and documents concerning "the revenue You received from each Person to whom a Picture was licensed, on a Person-by-Person, Picture-by-Picture, and date-by-date basis" and "the revenue You received from each Platform or Distributor on which a Picture was exhibited, on a Platform-by-Platform, Picture by-Picture, and date-by-date basis, including any revenue received from self-publication or self-exhibition."   Not only does this Request violate Judge Gee's stay order, much of the information it seeks concerns revenue that relate to third party licenses that is neither infringing of any copyright Starz purports to have nor in breach of the Library Agreements in any way.  For instance, for the vast majority of the Pictures that Starz licensed under the Library Agreements, Starz's licenses periods lasted less than 15 months and was limited to the right to exhibit these titles in pay television and subscription video-on-demand platforms in the English and Spanish language and in U.S. and its territories.  Yet, Starz seeks information concerning all of MGM's licensing revenue earned on every Picture licensed under the Library Agreements on every platform in every language in every territory over a time period covering nearly a decade.  MGM is not aware of, and Starz has not cited to, any authority that suggests that Starz is entitled to a portion of MGM's revenue from MGM's rightful exploitation of its rights.  These "requests seek information concerning Defendants' business activities that is wholly irrelevant to this litigation" and is the "type of sweeping discovery that is untethered to the claims and defenses in litigation" that the amendment to Rule 26(b) was designed to avoid.  *Manufacturing Automation*, 2017 WL 5641120, at *4–5.

Even if the documents Starz seeks were relevant (they are not), the Request also imposes an undue burden and is not proportionate to the needs of the case.  There are many hundreds of titles that are swept into this Request, most of which have been licensed many times.  Collecting materials related to each of these

hundreds of licenses would be extremely burdensome, and made even more so by the fact that some of the documents are maintained in hardcopy and would require manual retrieval and review.

For these and other reasons, relevant and proportional information sought by this Request would be better targeted by negotiating mutually acceptable search terms, custodians, and time frames, which MGM has been willing, and remains willing, to do.  It would also provide Starz with ample discovery into the relevant issues in this case.

**B.    Discovery Regarding Damages**

  1. <u>Disputed Discovery Requests</u>

   (a) ***Request No. 14***

**Request No. 14:**  All Documents concerning the value of films or television episodes exhibited in non-U.S. territories as compared to U.S. territories.

**Response and Objections to Request No. 14:**  MGM restates and incorporates by reference its General Response and General Objections as though fully set forth herein. MGM further objects that the terms and phrases "value," "non-U.S. territories," and "U.S. territories," render the Request vague, ambiguous, overbroad, and unduly burdensome. MGM further objects to this Request on the grounds that it seeks information and documents that are not relevant to the subject matter of this litigation, is disproportionate to the needs of the case, imposes burdens and expenses that outweigh their likely benefit, or is otherwise outside the proper scope of discovery. Among other things, information or documents that do not concern any of the Pictures in dispute in this case are wholly irrelevant. Moreover, even with respect to Pictures in dispute in this case, any information or documents concerning any time period, media, territories, or languages in which Starz did not have any rights have no relevance whatsoever to this lawsuit. Further, the Library Agreements themselves set forth the value of Starz's licenses in the

Picture, and any information or documents concerning the value of any licenses, films, or television episodes unmoored from the terms and conditions particular to the Library Agreements are wholly irrelevant. Additionally, a Request for "All Documents" concerning such irrelevant topics is facially overbroad and disproportionate. MGM further objects to this Request on the grounds that it is not particularized and not reasonably calculated to lead to the discovery of admissible evidence. MGM further objects to this Request on the grounds and to the extent it seeks information and documents that are not in MGM's possession, custody, or control; not obtainable at this time after reasonable investigation and diligent inquiry; not reasonably accessible to MGM; or are no longer in MGM's possession, custody, or control and which MGM was under no obligation to maintain. MGM further objects to this Request on the grounds that it calls for information or documents that are protected by the attorney-client privilege, the work product doctrine, and Federal Rules of Civil Procedure 26(b)(3) & (4). MGM further objects to this Request on the grounds that it seeks confidential, proprietary, private, or commercially or competitively sensitive information or documents belonging to MGM. MGM further objects to this Request on the grounds that it purports to require MGM to search for and produce information or documents in the absence of a protective order and/or a reasonable and mutually agreeable document production protocol, including a mutually-agreed upon search methodology, list of custodians, and/or list of search terms to apply to any ESI.

(b)   ***Request No. 15***

**Request No. 15:**  All Documents concerning any marketing, promotion, or description of rights in MGM's Library, or any of the motion pictures or television episodes comprising MGM's Library, as exclusive.

**Response and Objections to Request No. 15:**  MGM restates and incorporates by reference its General Response and General Objections as though

34

fully set forth herein. MGM further objects that the terms and phrases "marketing," "promotion," "description of rights," and "exclusive," render the Request vague, ambiguous, overbroad, and unduly burdensome. MGM further objects to this Request on the grounds that it seeks information and documents that are not relevant to the subject matter of this litigation, is disproportionate to the needs of the case, imposes burdens and expenses that outweigh their likely benefit, or is otherwise outside the proper scope of discovery. Among other things, information or documents that do not concern any of the Pictures in dispute in this case are wholly irrelevant. Moreover, even with respect to Pictures in dispute in this case, any information or documents concerning any time period, media, territories, or languages in which Starz did not have any rights have no relevance whatsoever to this lawsuit. Further, a Request for "All Documents" concerning such irrelevant topics is facially overbroad and disproportionate. MGM further objects to this Request on the grounds that it is not particularized and not reasonably calculated to lead to the discovery of admissible evidence. MGM further objects to this Request on the grounds and to the extent it seeks information and documents that are not in MGM's possession, custody, or control; not obtainable at this time after reasonable investigation and diligent inquiry; not reasonably accessible to MGM; or are no longer in MGM's possession, custody or control and which MGM was under no obligation to maintain. MGM further objects to this Request on the grounds that it calls for information or documents that are protected by the attorney-client privilege, the work product doctrine and Federal Rules of Civil Procedure 26(b)(3) & (4). MGM further objects to this Request on the grounds that it seeks confidential, proprietary, private, or commercially or competitively sensitive information or documents belonging to MGM. MGM further objects to this Request on the grounds that it purports to require MGM to search for and produce information or documents in the absence of a protective order and/or a reasonable

and mutually agreeable document production protocol, including a mutually-agreed upon search methodology, list of custodians, and/or list of search terms to apply to any ESI.

(c)    *Request No. 16*

**Request No. 16:**  All Communications and Documents concerning Communications by MGM concerning the value of its licenses or the Pictures.

**Response and Objections to Request No. 16:**  MGM restates and incorporates by reference its General Response and General Objections as though fully set forth herein. MGM further objects that the terms and phrases "value" and "its licenses" render the Request vague, ambiguous, overbroad, and unduly burdensome. MGM further objects to this Request on the grounds that it seeks information and documents that are not relevant to the subject matter of this litigation, is disproportionate to the needs of the case, imposes burdens and expenses that outweigh their likely benefit, or is otherwise outside the proper scope of discovery. Among other things, information or documents that do not concern any of the Pictures in dispute in this case are wholly irrelevant. Moreover, even with respect to Pictures in dispute in this case, any information or documents concerning any time period, media, territories, or languages in which Starz did not have any rights have no relevance whatsoever to this lawsuit. Further, the Library Agreements themselves set forth the value of Starz's licenses in the Picture, and any information or documents concerning the value of any licenses or Pictures unmoored from the terms and conditions particular to the Library Agreements are wholly irrelevant. Additionally, a Request for "All Documents" concerning such irrelevant topics is facially overbroad and disproportionate. MGM further objects to this Request on the grounds that it is not particularized and not reasonably calculated to lead to the discovery of admissible evidence. MGM further objects to this Request on the grounds and to the extent it seeks information and documents

that are not in MGM's possession, custody, or control; not obtainable at this time after reasonable investigation and diligent inquiry; not reasonably accessible to MGM; or are no longer in MGM's possession, custody, or control and which MGM was under no obligation to maintain. MGM further objects to this Request on the grounds that it calls for information or documents that are protected by the attorney-client privilege, the work product doctrine, and Federal Rules of Civil Procedure 26(b)(3) & (4). MGM further objects to this Request on the grounds that it seeks confidential, proprietary, private, or commercially or competitively sensitive information or documents belonging to MGM. MGM further objects to this Request on the grounds that it purports to require MGM to search for and produce information or documents in the absence of a protective order and/or a reasonable and mutually agreeable document production protocol, including a mutually agreed search methodology, list of custodians, and/or list of search terms to apply to any ESI.

(d)     ***Request No. 17***

**Request No. 17:**  All Documents concerning the value of exclusivity in the licensing of motion pictures or television episodes.

**Response and Objections to Request No. 17:**  MGM restates and incorporates by reference its General Response and General Objections as though fully set forth herein. MGM further objects that the terms and phrases "value" and "exclusivity" render the Request vague, ambiguous, overbroad, and unduly burdensome. MGM further objects to this Request on the grounds that it lacks foundation and assumes as true characterizations, definitions, arguments, allegations, assertions, or assumptions that are disputed or erroneous, including Plaintiff's allegations that it had "exclusivity" in any Picture licensed by MGM to Starz. MGM further objects to this Request on the grounds that it seeks information and documents that are not relevant to the subject matter of this

litigation, is disproportionate to the needs of the case, imposes burdens and expenses that outweigh their likely benefit, or is otherwise outside the proper scope of discovery. Among other things, information or documents that do not concern any of the Pictures in dispute in this case are wholly irrelevant. Moreover, even with respect to Pictures in dispute in this case, any information, or documents concerning any time period, media, territories, or languages in which Starz did not have any rights have no relevance whatsoever to this lawsuit. Further, the Library Agreements themselves set forth the value of Starz's licenses in the Picture, and any information or documents concerning the value of any licenses or purported "exclusivity" unmoored from the terms and conditions particular to the Library Agreements are wholly irrelevant. Additionally, a Request for "All Documents" concerning such irrelevant topics is facially overbroad and disproportionate. MGM further objects to this Request on the grounds that it is not particularized and not reasonably calculated to lead to the discovery of admissible evidence. MGM further objects to this Request on the grounds and to the extent it seeks information and documents that are not in MGM's possession, custody, or control; not obtainable at this time after reasonable investigation and diligent inquiry; not reasonably accessible to MGM; or are no longer in MGM's possession, custody, or control and which MGM was under no obligation to maintain. MGM further objects to this Request on the grounds that it calls for information or documents that are protected by the attorney-client privilege, the work product doctrine, and Federal Rules of Civil Procedure 26(b)(3) & (4). MGM further objects to this Request on the grounds that it seeks confidential, proprietary, private, or commercially or competitively sensitive information or documents belonging to MGM. MGM further objects to this Request on the grounds that it purports to require MGM to search for and produce information or documents in the absence of a protective order and/or a reasonable and mutually agreeable document

production protocol, including a mutually-agreed upon search methodology, list of custodians, and/or list of search terms to apply to any ESI.

(e)   ***Request No. 18***

**Request No. 18:**  Documents sufficient to show MGM's aggregate licensing revenue from all motion pictures and television episodes during the relevant time period on a month-by-month basis.

**Response and Objections to Request No. 18:**  MGM restates and incorporates by reference its General Response and General Objections as though fully set forth herein. MGM further objects that the terms and phrases "licensing revenue" and "the relevant time period" render the Request vague, ambiguous, overbroad, and unduly burdensome. MGM further objects to this Request on the grounds that it seeks information and documents that are not relevant to the subject matter of this litigation, is disproportionate to the needs of the case, imposes burdens and expenses that outweigh their likely benefit, or is otherwise outside the proper scope of discovery. Among other things, MGM owns and distributes thousands of motion pictures and television episodes, the vast majority of which have no relevance whatsoever to this lawsuit.  As such, documents concerning any Picture for which Plaintiff does not allege any copyright infringement or breach of contract are wholly irrelevant to this lawsuit. Moreover, even with respect to Pictures in dispute in this case, any information or documents concerning any time period, media, territories, or languages in which Starz did not have any rights have no relevance whatsoever to this lawsuit.  Further, MGM's revenues derived from any Picture in dispute outside of the three years preceding this lawsuit are not relevant. MGM further objects to this Request on the grounds that it is not particularized and not reasonably calculated to lead to the discovery of admissible evidence. MGM further objects to this Request on the grounds and to the extent it seeks information and documents that are not in MGM's possession, custody, or

control; not obtainable at this time after reasonable investigation and diligent inquiry; not reasonably accessible to MGM; or are no longer in MGM's possession, custody, or control and which MGM was under no obligation to maintain. MGM further objects to this Request on the grounds that it seeks confidential, proprietary, private, or commercially or competitively sensitive information or documents belonging to MGM, nonparties and third-parties, including terms of license agreements that MGM is required to refrain from disclosing. MGM further objects to this Request on the grounds that it purports to require MGM to search for and produce information or documents in the absence of a protective order and/or a reasonable and mutually agreeable document production protocol, including a mutually-agreed upon search methodology, list of custodians, and/or list of search terms to apply to any ESI.

(f)     *Request No. 20*

**Request No. 20:**  All Communications with Distributors concerning Epix or MGM having exclusive content.

**Response and Objections to Request No. 20:**  MGM restates and incorporates by reference its General Response and General Objections as though fully set forth herein. MGM further objects that the terms and phrases "Distributors," "concerning Epix," and "MGM having exclusive content" render the Request vague, ambiguous, overbroad, and unduly burdensome. MGM further objects to this Request on the grounds that it seeks information and documents that are not relevant to the subject matter of this litigation, is disproportionate to the needs of the case, imposes burdens and expenses that outweigh their likely benefit, or is otherwise outside the proper scope of discovery. Among other things, information or documents concerning "Epix or MGM having exclusive content" that are not tethered to any specific allegations in this case are irrelevant, overly broad, unduly burdensome, and disproportionate to the needs of this case.

Moreover, a Request for "All Communications" concerning such irrelevant topics is facially overbroad and disproportionate. MGM further objects to this Request on the grounds that it is not particularized and not reasonably calculated to lead to the discovery of admissible evidence. MGM further objects to this Request on the grounds and to the extent it seeks information and documents that are not in MGM's possession, custody, or control; not obtainable at this time after reasonable investigation and diligent inquiry; not reasonably accessible to MGM; or are no longer in MGM's possession, custody, or control and which MGM was under no obligation to maintain. MGM further objects to this Request on the grounds that it seeks confidential, proprietary, private, or commercially or competitively sensitive information or documents belonging to MGM, nonparties, or third parties, including any confidential discussions that MGM had with its Distributors. MGM further objects to this Request on the grounds that it purports to require MGM to search for and produce information or documents in the absence of a protective order and/or a reasonable and mutually agreeable document production protocol, including a mutually-agreed upon search methodology, list of custodians, and/or list of search terms to apply to any ESI.

(g)   ***Request No. 21***

**Request No. 21:**  All Communications with MVPDs concerning Epix as a replacement for Starz, the value of Epix and/or comparing Epix to Starz.

**Response and Objections to Request No. 21:**  MGM restates and incorporates by reference its General Response and General Objections as though fully set forth herein. MGM further objects that the terms and phrases "MVPDs," "Epix as a replacement for Starz," "value of Epix," and "comparing Epix to Starz," render the Request vague, ambiguous, overbroad, and unduly burdensome. MGM further objects to this Request on the grounds that it seeks information and documents that are not relevant to the subject matter of this litigation, is

41

disproportionate to the needs of the case, imposes burdens and expenses that outweigh their likely benefit, or is otherwise outside the proper scope of discovery. Among other things, information or documents concerning "Epix as a replacement for Starz" and "the value of Epix and/or comparing Epix to Starz" that are not tethered to any specific allegations in this case are irrelevant, overly broad, unduly burdensome, and disproportionate to the needs of this case. Moreover, a Request for "All Communications" concerning such irrelevant topics is facially overbroad and disproportionate. MGM further objects to this Request on the grounds that it is not particularized and not reasonably calculated to lead to the discovery of admissible evidence. MGM further objects to this Request on the grounds and to the extent it seeks information and documents that are not in MGM's possession, custody, or control; not obtainable at this time after reasonable investigation and diligent inquiry; not reasonably accessible to MGM; or are no longer in MGM's possession, custody or control and which MGM was under no obligation to maintain. MGM further objects to this Request on the grounds that it seeks confidential, proprietary, private, or commercially or competitively sensitive information or documents belonging to MGM, nonparties, or third parties, including any confidential discussions that MGM had with its Distributors. MGM further objects to this Request on the grounds that it purports to require MGM to search for and produce information or documents in the absence of a protective order and/or a reasonable and mutually agreeable document production protocol, including a mutually-agreed upon search methodology, list of custodians, and/or list of search terms to apply to any ESI.

1    2.    Starz's Position:  Starz Is Entitled to Discovery Concerning its
2          Contract and Copyright Damages that Is Not Subject to the
           Partial Stay

3          There is no question that Starz is entitled to discovery regarding its

4   claimed damages.  *See Semiconductor Energy Laboratory Co. v. Chimei Innolux*

5   *Corp.*, SACV 12-0021-JST (JPRx), 2012 WL 12896204, at *2 (C.D. Cal. Oct. 17,

6   2012) (compelling defendants to produce documents relating to damages because,

7   "even if the damages discovery is somewhat arduous, Plaintiff is entitled to

8   discovery needed to prove its theories of damages").  Indeed, "[r]elevancy is

9   broadly construed and requests for discovery should be considered relevant if there

10  is any possibility that the information sought may be relevant to the claim or

11  defense of any party."  *Cinezeta Internationale v. Seibel*, No. CV 14-5049-JFW

12  (ASx), 2015 WL 12781406, at *1 (C.D. Cal. Jan. 15, 2015) (citation omitted); *Pom*

13  *Wonderful LLC v. Coca-Cola Co.*, No. CV 08-6237 SJO (FMOx), 2009 WL

14  10655253, at *1 (C.D. Cal. Sept. 16, 2009) ("A request for discovery should be

15  allowed unless it is clear that the information sought can have no possible bearing

16  on the claim or defense of a party.").  To the extent MGM seeks to stand on its

17  objections, it is MGM's burden as the resisting party "to show that discovery

18  should not be allowed, and has the burden of clarifying, explaining, and supporting

19  its objections".  *Keith H. v. Long Beach Unified Sch. Dist.*, 228 F.R.D. 652, 655-56

20  (C.D. Cal. 2005).

21         The damages RFPs at issue here relate to information concerning two

22  types of damages:  (1) Starz's actual damages in the form of lost profits (RFP

23  Nos. 14, 15, 16 and 17), and (2) the profits MGM itself earned from the

24  infringement (RFP Nos. 18, 20 and 21).

25                    (a)    ***Starz's Actual Damages***

26         Starz is entitled to recover the damages it incurred as a result of

27  MGM's breach and infringement.  For Starz's contract claims, "[l]ost profits may

28

43

be recoverable as damages for breach of a contract . . . where the evidence makes reasonably certain their occurrence and extent." *Sargon Enterprises, Inc. v. Univ. of S. California*, 55 Cal. 4th 747, 773 (2012) (citation omitted); *see also Alpha GRP, Inc. v. Subaru of Am., Inc.*, No. CV 18-2133-MWF (MRWx), 2021 WL 1146029, at *8 (C.D. Cal. Feb. 8, 2021) (citing *Sargon*).  In fact, "[u]nearned profits can sometimes be used as the measure of general damages for breach of contract." *Lewis Jorge Constr. Mgmt, Inc. v. Pomona Unified School Dist.*, 102 P.3d 257, 263 (Cal. 2004).  Lost profits are also available as a form of damages in copyright infringement cases.  *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1087 (9th Cir. 2014) (noting that "actual damages can be awarded in the form of lost profits" (quotation omitted)).  Because foreseeable lost profits are recoverable under Starz's contract claims, discovery relevant to lost profits is not impacted by the partial stay, which does not reach Starz's breach of contract claims.  (Ex. A, ECF No. 52, at 4 ("Litigation relating to other issues, such as MGM's breaches of the exclusivity agreements [and] potential contract damages . . . shall proceed.").)

Starz alleges that MGM's failure to honor its exclusivity commitments cost Starz subscribers and diminished the value of Starz in the eyes of distributors.  (Ex. D, Compl. ¶ 55.)  Starz further alleges that at least one distributor replaced Starz with MGM's own channel, Epix, due to MGM's breach of its exclusivity commitments to Starz.  (Ex. D, Compl. ¶ 42.)  Each of those events—lost subscribers, lost distribution revenue, and lost programming opportunity to Epix—were a result of MGM's breach and infringements and caused Starz to lose profits.  (Ex. D, Compl. ¶ 9.)  Starz seeks those lost profits as damages.

Starz is entitled to discovery to substantiate its damages theory.  Such discovery may take a number of forms.  For example, if MGM has internal documents stating that exclusive content is helpful to attract subscribers and is

valuable to distributors, that would directly support Starz's theory that MGM's
breach of Starz's exclusive licenses cost Starz subscribers and damaged Starz's
position with distributors.  That information would be responsive to RFP No. 15.
Similarly, if MGM has documents in which it, for example, marketed Epix as
being more valuable for having exclusive content, or in which it communicated to
distributors that they should replace Starz with Epix due to Starz's lack of
exclusive content, that also would support Starz's damages theory.  That discovery
would be responsive to RFP No. 17.  If MGM had communications with third
parties discussing the value of a Picture that MGM failed to provide exclusively to
Starz in breach of the Agreements, this information would be relevant in
determining the value of that which Starz was deprived, *i.e.*, the "benefit of the
plaintiff's contractual bargain" (for contract damages), *see Lewis Jorge*, 102 P.3d
at 261, and the "fair market value" of the license MGM breached (for copyright
damages), *see Oracle*, 765 F.3d at 1087 (explaining the role of the reasonable
market value in copyright damages).  This is the type of information Starz seeks in
RFP No. 16.  Finally, MGM has taken the position that Pictures licensed to third
parties in the U.S. are more valuable than Pictures licensed to third parties outside
the U.S.  Starz is entitled to test the veracity of MGM's position with discovery.
That information would be responsive to RFP No. 14.

       Unsurprisingly, MGM has a different damages theory.  However, that
MGM has an alternative damages theory is no basis to deny Starz discovery of
information relevant to its own claimed damages.  Rather, "in ruling on a discovery
motion, it is not this Court's function to determine whether a theory of liability or
damages or defense being advanced by a party is viable.  Unless and until the
District Judge rules in connection with a motion to dismiss, a summary judgment
motion, or an in limine motion that a theory of liability or damages or defense
being advanced by a party is not viable, ***the party is entitled to obtain discovery***

1   *relevant to that theory of liability or damages or defense*." *Transamerica Life Ins.*

2   *Co. v. Axsys Grp., Inc.*, No. SA CV 13-1658-AGR (NBx), 2015 WL 12658481, at

3   *1 (C.D. Cal. May 28, 2015) (emphasis added); *Charter Sch. Cap., Inc.*, 2015 WL

4   12655550, at *3 ("the question of whether or not plaintiff will be able to prove a

5   sufficient nexus to recover indirect profits is a question for another day" (internal

6   quotations omitted)).

7           (b)    ***MGM's Profits***

8           Under the Copyright Act, Starz is entitled to seek MGM's profits

9   "attributable to copyright infringement". *See* 17 U.S.C. § 504(b); *Polar Bear*

10   *Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004). Because this form

11   of damages is available only under copyright, Starz agrees that only information

12   related to MGM's profits during the three years prior to Starz filing suit should be

13   produced immediately, while information regarding MGM's earlier profits can be

14   held in abeyance while the partial stay remains in place.

15           Starz is entitled to receive information concerning MGM's profits for

16   the three years before filing suit without further delay. Under the Copyright Act's

17   Section 504(b), as a first step to recover MGM's profits from the infringement,

18   Starz needs to show all of MGM's gross revenue that could be related to the

19   infringement. *Polar Bear Productions*, 384 F.3d at 707 ("In establishing the

20   infringer's profits, the copyright owner is required to present proof only of the

21   infringer's gross revenue[.]" (quoting 17 U.S.C. § 504(b))); *Minx Int'l, Inc. v.*

22   *M.R.R. Fabric, Inc.*, Case No. CV 13-5947 PSG (Cwx), 2015 WL 12645752, at *3

23   (C.D. Cal. Feb. 11, 2015) ("In the classic case, the copyright owner first presents

24   the gross revenue earned by the infringer on sales of the infringing item."). Here,

25   that would be MGM's gross revenue from any party to which MGM licensed any

26   of the Pictures during the Exclusivity Periods. After producing that information,

27   MGM may attempt to show which, if any, of those profits were not attributable to

28

46

the infringement—but it must produce the profit information in full first.  *Polar Bear Productions*, 384 F.3d at 707 ("[T]he infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." (quoting 17 U.S.C. § 504(b))); *Minx Int'l*, 2015 WL 12645752, at *3 ("[T]he infringer then chips away at that figure by deducting the costs of producing or acquiring the product, advertising the product, and overhead expenses that contributed to sales of the infringing product" and "can further reduce that profit figure by isolating elements of profit attributable to factors other than the copyrighted work." (internal quotation omitted)).

For Starz to carry its initial burden, it needs information regarding MGM's gross revenue from each distributor or other source where an infringement occurred.  (*See* Ex. D, Compl. ¶¶ 8, 11, 42, 53.)  This is what Starz seeks with RFP Nos. 8, 20 and 21.

For RFP Nos. 20 and 21, Starz also seeks discovery to assess the extent to which MGM profited from Epix having exclusive content at a time when due to MGM's actions Starz did not.  Starz strongly suspects that MGM marketed its own movie channel, Epix, as having valuable exclusive content at the same time that MGM was infringing Starz's exclusive licenses, including by licensing or otherwise providing Pictures to Epix in breach of the Library Agreements.  *See Minx Int'l*, 2015 WL 12645752, at *5 ("[T]he statute directs the Court to determine the extent to which inclusion of the copyrighted work induced people to purchase the infringer's products" when calculating damages).  RFP Nos. 20 and 21 seek discovery to evaluate these allegations.

   3. <u>MGM's Position:  Starz again fails to justify its overbroad requests, which seek irrelevant information and would impose an undue burden on MGM.</u>

As with the prior group of requests, Starz is again fighting a strawman here. MGM does not dispute that Starz is entitled to discovery regarding its claimed damages except to the extent such discovery is subject to the District Court's Stay Order.  The issue again is with the specific language in Starz's specific interrogatories and document requests, which are wildly overbroad, burdensome, and often untethered to the parties' claims and defenses.

"Upon a motion to compel discovery, the movant has the initial burden of demonstrating relevance." *Arcadian Cap., LLC v. Cura Partners, Inc.*, 2020 WL 8372647, at *2 (C.D. Cal. Dec. 28, 2020) (quoting *United States v. McGraw-Hill Companies, Inc.*, 2014 WL 1647385, at *8 (C.D. Cal. Apr. 15, 2014) (internal quotations omitted)).  "Further, district courts have broad discretion to control discovery and in determining relevancy for discovery purposes. *Id.* (internal quotations omitted).

Starz argues that it is entitled to pursue discovery into its actual damages, which it says consist of lost subscribers, lost distribution revenue, and lost programming opportunity to EPIX.  Joint Stipulation at 44.  But Starz's requests, each specifically discussed below, are not targeted to seek relevant information but instead seek every document at MGM that relates to the value of any film or television episode in MGM's entire library and every document related to the marketing, promotion, or description of every single film and television episode in MGM's entire library.  In other words, these "requests seek information concerning [MGM's] business activities that is wholly irrelevant to this litigation" and is the very "type of sweeping discovery that is untethered to the claims and defenses in litigation" that the amendment to Rule 26(b) was designed to avoid. *Manufacturing Automation*, 2017 WL 5641120, at *4–5.

These self-evidently improper and facially overbroad requests would require the collection, review, and production of a mountain of materials related to motion

48

pictures, television episodes, markets, languages, licenses, platforms, media, and territories for which Starz was never licensed any rights whatsoever.  Although a plaintiff is entitled to discovery concerning damages, it is not entitled to limitless discovery into every aspect of a defendant's financial picture and unmoored from the allegations at bar.  *See, e.g., Myers v. City of Hermosa Beach*, 2007 WL 9757803, at *2 (C.D. Cal. Mar. 23, 2007) (plaintiff's claim for lost wages for time away from work due to on-the-job injury did not justify discovery into ten years of her financial records).

To the extent the expansive scope of these requests sometimes includes information that is potentially relevant, such material can be discovered through far more targeted and far less burdensome and expensive means.  *Mailhoit v. Home Depot U.S.A., Inc.*, 285 F.R.D. 566, 571 (C.D. Cal. 2012) ("A court can limit discovery if it determines, among other things, that the discovery is . . . obtainable from another source that is more convenient, less burdensome, or less expensive.") (internal citations and quotation marks omitted).

Starz also argues that it is entitled to discovery into MGM's profits to justify some of these requests.  Joint Stipulation at 46.  But again, the disputed requests suffer from the same concerns regarding relevance, burden, and overbreadth because they are in no way limited to the motion pictures, television episodes, markets, languages, licenses, platforms, media, or territories in which Starz actually had any rights.  Furthermore, Starz's discovery requests are not even limited to seeking MGM's profits, but information concerning the profits earned by EPIX, a nonparty to this lawsuit.  Additionally, while Starz concedes that MGM's profits are only a relevant measure of damages for Starz's copyright claims, Joint Stipulation at 46, some of Starz's requests seek information that is subject to the District Court's Stay Order and, therefore, are not the proper subject of discovery at this juncture.

1  MGM explained the overbreadth problem in its multiple meet and confer

2  communications with Starz, agreeing that targeted discovery relevant to damages

3  associated with the alleged claims at issue was appropriate.  (Yu Decl., ¶¶ 3, 6.)

4  MGM sought ways to narrow the scope of the requests, suggesting a search term

5  and custodial approach but also making clear that it would entertain other

6  alternatives from Starz.  (*Id.*)  Starz stopped engaging in this process in May, and

7  now brings this motion as if none of those discussions occurred while still

8  proposing no solutions for bringing its requests into compliance with its

9  obligations to propound relevant and proportional discovery.

10  As required by Local Rule 37-2, MGM addresses each request individually

11  below.

12  **Starz Request No. 14:**  All Documents concerning the value of films or

13  television episodes exhibited in non-U.S. territories as compared to U.S. territories.

14  **MGM's Position**: This request seeks every document ever generated

15  regarding the value of the thousands of films and television shows in MGM's

16  library, *see supra* footnote 1, with respect to which Starz never had any rights

17  whatsoever.  This is akin to a plaintiff in a medical malpractice action involving a

18  single knee surgery seeking discovery into every procedure performed by every

19  doctor at the hospital.  Starz claims this information is relevant because "MGM has

20  taken the position that Pictures licensed to third parties in the U.S. are more

21  valuable than Pictures licensed to third parties outside the U.S." and "Starz is

22  entitled to test the veracity of MGM's position with discovery."  Joint Stipulation

23  at 45.  But a more focused interrogatory could provide the relevant information

24  without the immense burden of Starz's unbounded document request.  *See*

25  *Mailhoit*, 285 F.R.D. at 571 ("A court can limit discovery if it determines, among

26  other things, that the discovery is . . . obtainable from another source that is more

27  convenient, less burdensome, or less expensive.") (internal citations and quotation

28

marks omitted).  The burdens and costs of locating, retrieving, and producing the information sought by this Request dramatically outweighs any potential benefit to Starz.

For these and other reasons, relevant and proportional information sought by this Request would be better discovered through mutually acceptable search terms, custodians, and time frames, which MGM has been willing, and remains willing, to do.  It would also provide Starz with ample discovery into what it needs.

**Starz Request No. 15:**  All Documents concerning any marketing, promotion, or description of rights in MGM's Library, or any of the motion pictures or television episodes comprising MGM's Library, as exclusive.

**MGM's Position**:  As with the prior request, this one also seeks a limitless set of documents regarding every right, every motion picture, and every television episode in MGM's library, which numbers in the thousands.  In addition, this Request demands every document in the company that contains the word "exclusive" along with a reference to any right, motion picture, or television episode in MGM's vast library, of which only a small fraction are implicated in this lawsuit.  This is wildly overbroad, unduly burdensome, and would require the production of substantial documents with no relevance to this case whatsoever.

Starz attempts to defend this Request by claiming that "if MGM has internal documents stating that exclusive content is helpful to attract subscribers and is valuable to distributors, that would directly support Starz's theory that MGM's breach of Starz's exclusive licenses cost Starz subscribers and damaged Starz's position with distributors."  Joint Statement at 44.  This weak and incredibly attenuated justification for its broad and burdensome request is plainly insufficient and not remotely proportionate.

On the other hand, relevant and proportional information sought by this Request would be better discovered through negotiating mutually acceptable

search terms, custodians, and time frames, which MGM has been willing, and remains willing, to do.  It would also provide Starz with ample discovery into what it needs.

**Starz Request No. 16:**  All Communications and Documents concerning Communications by MGM concerning the value of its licenses or the Pictures.

**MGM's Position:**  This Request seeks every document and communication in which MGM discusses the value of any license and yet again, is completely unmoored from the claims at issue.  It is not limited to titles licensed to Starz, and instead seeks discovery into the value of every license MGM has ever struck in the history of its company.  It is no surprise that Starz did not attempt to individually justify each of the requests on which it is moving because this Request, like many of the others, cannot be justified.  They are facially absurd and yet Starz is pressing them forward, which only underscores the unreasonable positions Starz is taking in this dispute.

In attempting to defend  this Request, Starz claims "if MGM had communications with third parties discussing the value of a Picture that MGM failed to provide exclusively to Starz in breach of the Agreements, this information would be relevant in determining the value of that which Starz was deprived."  Joint Stipulation at 45.  But critically, this Request is not limited to communications with third parties regarding the value of a title at issue in this lawsuit but instead asks for every communication related to the value of every license that MGM ever entered with respect to any of its thousands of properties, implicating, without exaggeration, many thousands of licenses.  Starz has not even tried to limit this Request to something proportional and the Court should reject it outright.  *See In re St. Jude Med. Devices Litig.*, 2014 WL 12564114, at *2 (C.D. Cal. May 29, 2014) (denying requests for discovery into all types of lead

manufactured by defendant where plaintiff alleged he was exposed to only one type of lead).

**Starz Request No. 17:**  All Documents concerning the value of exclusivity in the licensing of motion pictures or television episodes.

**MGM's Position:**  As with the previous Request, Starz seeks every document discussing the value of exclusivity for every motion picture or television episode that MGM has ever licensed; in no way does Starz attempt to limit this Request to the at-issue titles in the two relevant agreements.  As with the prior Request, this one is also facially absurd and the Court should summarily reject it.

Starz argues for the relevance of this Request by stating "if MGM has documents in which it, for example, marketed Epix as being more valuable for having exclusive content, or in which it communicated to distributors that they should replace Starz with Epix due to Starz's lack of exclusive content, that also would support Starz's damages theory."  Joint Stipulation at 44–45.  But this Request seeks documents far beyond this narrow category of communications.  If Starz were requesting documents in which MGM "communicated to distributors that they should replace Starz with Epix" because EPIX had more exclusive content, the parties could discuss the terms for the collection and production of such documents.  But as drafted, this Request is in no way narrowly targeted to information relevant and proportional to Starz's case.  These are the very concerns that MGM conveyed to Starz in the parties' multiple meet-and-confer discussions.  Starz did not address MGM's concerns in those discussions nor does it bother to engage them in its Motion, which should be sufficient for the Court to deny it.

**Starz Request No. 18:**  Documents sufficient to show MGM's aggregate licensing revenue from all motion pictures and television episodes during the relevant time period on a month-by-month basis.

**MGM's Position:**  This Request is also unreasonably overbroad, unduly burdensome, and seeks highly confidential, proprietary information that is not necessary for this case.  This is yet another request that seeks licensing information about the entirety of MGM's vast film and television library, of which Starz has licensed a small fraction and only a fraction of what Starz has licensed is at issue in this case.  And yet Starz wants it all.  Again, this Request is facially unreasonable and that Starz does not recognize this should give the Court an idea of MGM's difficulty in negotiating the scope of discovery with Starz.

Starz casually states that it is "entitled to damages in the form of MGM's profits attributable to the infringement" and that it "needs information concerning the revenue MGM earned from licensing the Pictures to third parties."  Joint Stipulation at 2.  But again, this Request is not at all tailored to seek this information.  Starz has no rights to MGM's revenue from exploitation reserved to MGM under the agreements at issue, namely by licensing them to third parties in territories, languages, platforms and time periods that were not licensed to Starz.  Furthermore, "MGM's profits attributable to the alleged infringements," Joint Stipulation at 2, is relevant only to the copyright claims and not the breach of contract claims.  As such, to the extent the copyright claims are subject to the Court's Stay Order, discovery over such claims is not appropriate at this juncture.

MGM believes that relevant and proportional information sought by this Request would be better discovered through negotiating mutually acceptable search or query terms, which MGM has been willing, and remains willing, to do. It would also provide Starz with ample discovery into what it needs without impinging on the partial stay order.

**Starz Request No. 20:**  All Communications with Distributors concerning Epix or MGM having exclusive content.

1
2
3

**MGM's Position**:  This is yet another request that seeks  irrelevant information, is unduly burdensome, and seeks highly confidential, proprietary information that is not necessary for Starz to prosecute its lawsuit.

4
5
6
7
8
9
10
11
12
13

It is possible that MGM, and its affiliate EPIX, have had discussions with distributors about their exclusive content in a variety of contexts and implicating the thousands of titles in MGM's library.  The volume of discovery in which such communications might exist is potentially enormous.  Of course, virtually none of these communications bears any relevance whatsoever to any claim or allegation in this lawsuit, and is thus outside the scope of discovery set forth in the amended rules.  *Manufacturing Automation*, 2017 WL 5641120, at *3–4.  And to the extent some small fraction of such communications might marginally bear on Starz's theories does not justify this type of request that asks MGM to comb through haystacks on the speculative hunch that a needle might exist.

14
15
16
17

Furthermore, MGM's profits are relevant only to the copyright claims and not the breach of contract claims.  As such, to the extent most of the copyright claims are subject to the Court's Stay Order, discovery over such claims is not appropriate at this juncture.

18
19
20
21
22

MGM believes that relevant and proportional information sought by this Request would be better discovered through negotiating mutually acceptable search terms, custodians, and time frames, which MGM has been willing, and remains willing, to do.  It would also provide Starz with ample discovery into what it needs without impinging on the partial stay order.

23
24

**Starz Request No. 21:**  All Communications with MVPDs concerning Epix as a replacement for Starz, the value of Epix and/or comparing Epix to Starz.

25

**MGM's Position:**  MGM incorporates its response to Request No. 20.

26
27

Again, MGM remains willing to continue its meet and confer communications with Starz in an attempt to narrow the overbroad and unduly

28

burdensome scope of the above request.  Indeed, MGM believed that is what the parties were doing when Starz stopped communicating with MGM, failed to respond to MGM's suggestions on proposed ways to tailor the requests, and suddenly initiated the instant Motion, which the Court should deny for the reasons set forth above.  (Yu Decl., ¶ 6.)

### C. Discovery into MGM's Willfulness or Recklessness

#### 1. Disputed Discovery Requests

##### (a) *Interrogatory No. 8*

**Interrogatory No. 8:**  Describe any investigation that MGM conducted upon learning that it had licensed certain Pictures to other Persons during time periods in which those same Pictures had been licensed exclusively to STARZ under the Library Agreements.

**Response and Objections to Interrogatory No. 8:**  MGM restates and incorporates by reference its General Response and General Objections as though fully set forth herein. MGM further objects to this Interrogatory on the ground that it lacks foundation and assumes as true characterizations, definitions, arguments, allegations, assertions or assumptions that are disputed or erroneous, including Plaintiff's allegations that any Picture had been "exclusively" licensed to Starz under the Library Agreements. MGM further objects to this Interrogatory on the ground that it seeks information that is not relevant to the subject matter of this litigation, is disproportionate to the needs of the case, imposes burdens and expenses that outweigh their likely benefit or is otherwise outside the proper scope of discovery. Starz's discovery and diligence in investigating the bases of its allegations are relevant to the statute of limitations, not MGM's discovery or investigation. MGM further objects to this Interrogatory on the ground that it is premature because, among other things, Plaintiff has not provided any information concerning the infringements or the breaches that it alleges in the Complaint,

including when such infringements or breach purportedly occurred, what media they occurred on and the identity of the third party exhibitor that allegedly exhibited any Picture licensed to Plaintiff during Plaintiff's license period. Plaintiff should provide such information referenced in its Complaint so that MGM may fully investigate Plaintiff's allegations. MGM further objects to this Interrogatory on the grounds that it calls for information that is protected by the attorney client privilege, the work product doctrine and Federal Rules of Civil Procedure 26(b)(3) & (4).

(b)     *Interrogatory No. 11*

**Interrogatory No. 11:**  Identify all instances at any time in or after July 2013 in which MGM found that it had licensed content from MGM's Library to Persons while the same content was exclusively licensed to other Persons.

**Response and Objections to Interrogatory No. 11:**  MGM restates and incorporates by reference its General Response and General Objections as though fully set forth herein. MGM further objects that the terms "licensed content" and "exclusively licensed" render this Interrogatory vague, ambiguous, overbroad, and unduly burdensome. MGM's licenses often provide the limited right to exhibit certain content during limited time periods on limited media in limited territories and in limited languages. As such, the same content may be licensed to more than one licensee, consistent with the terms of the particular licenses at issue. Starz's use of the term "exclusively licensed" to mean and refer to "the sole right to exhibit, distribute, display or otherwise exploit certain films or television episodes for a specific length of time" is not applicable to many of MGM's licenses, including the Library Agreements, and therefore the term renders this Interrogatory vague, ambiguous and unintelligible. MGM further objects to this Interrogatory on the ground that it seeks information that is not relevant to the subject matter of this litigation, is disproportionate to the needs of the case,

imposes burdens and expenses that outweigh their likely benefit or is otherwise
outside the proper scope of discovery. Among other things, information concerning
any licenses other than the Library Agreements not relevant to this lawsuit.
Moreover, any Picture for which Plaintiff does not allege any copyright
infringement or breach of contract are wholly irrelevant to this lawsuit, including
the vast majority of MGM's Library, which is comprised of thousands of titles.
*See, supra*, footnote 1.  Even with respect to the Pictures in dispute in this case,
any information concerning any time period, media, territories, or languages in
which Starz did not have any rights have no relevance whatsoever to this lawsuit.
MGM further objects to this Interrogatory on the ground that it is premature
because, among other things, Plaintiff has not provided any information
concerning the infringements or the breaches that it alleges in the Complaint,
including when such infringements or breach purportedly occurred, what media
they occurred on and the identity of the third party exhibitor that allegedly
exhibited any Picture licensed to Plaintiff during Plaintiff's license period. Plaintiff
should provide such information referenced in its Complaint so that MGM may
fully investigate Plaintiff's allegations. MGM further objects to this Interrogatory
on the ground that it seeks confidential, proprietary, private, or commercially or
competitively sensitive information concerning MGM and its business
relationships. MGM further objects to this Interrogatory on the grounds it purports
to require MGM to provide confidential information in the absence of any
protective order.

(c)   ***Request No. 11***

**Request No. 11:**  All Documents related to any investigation by
MGM concerning any actual or alleged breach or violation of the Library
Agreements or of STARZ's exclusive rights in the Pictures.

**Response and Objections to Request No. 11:**  MGM restates and incorporates by reference its General Response and General Objections as though fully set forth herein. MGM further objects that the terms "related to any investigation" and "violation" render the Request vague, ambiguous, overbroad, and unduly burdensome. MGM further objects to this Request on the grounds that it lacks foundation and assumes as true characterizations, definitions, arguments, allegations, assertions, or assumptions that are disputed or erroneous, including assertion that Starz had any exclusive rights and that MGM actually or allegedly breached or violated the Library Agreements. MGM further objects to this Request on the grounds that it seeks information and documents that are not relevant to the subject matter of this litigation, is disproportionate to the needs of the case, imposes burdens and expenses that outweigh their likely benefit, or is otherwise outside the proper scope of discovery. Among other things, the Library Agreements cover hundreds of Pictures as to which there is no dispute at all. As such, documents concerning any Picture for which Plaintiff does not allege any copyright infringement or breach of contract are wholly irrelevant to this lawsuit. Moreover, any purported breach or violation of the Library Agreement that is not alleged in the Complaint is not relevant to any claims or defenses in this action. Further, MGM's investigation is not probative of any issues in dispute in this case. Additionally, a Request for "All Documents" concerning any purported investigation is facially overbroad and disproportionate. MGM further objects to this Request on the grounds that it is not particularized and not reasonably calculated to lead to the discovery of admissible evidence. MGM further objects to this Request on the grounds that it calls for information or documents that are protected by the attorney-client privilege, the work product doctrine, and Federal Rules of Civil Procedure 26(b)(3) & (4). MGM further objects to this Request on the grounds that it purports to require MGM to search for and produce information

or documents in the absence of a protective order and/or a reasonable and mutually agreeable document production protocol, including a mutually agreed-upon search methodology, list of custodians, and/or list of search terms to apply to any ESI.

(d)   *Request No. 12*

**Request No. 12:**  All Documents concerning MGM's actual or alleged breach or violation of any Person's rights of exclusivity in one or more motion pictures or television episodes licensed by MGM, including all Documents concerning actual or potential claims other Persons have made against MGM for breaches of exclusivity from January 2013 through the present.

**Response and Objections to Request No. 12:**  MGM restates and incorporates by reference its General Response and General Objections as though fully set forth herein. MGM further objects that the terms and phrases "violation," "rights of exclusivity," "one or more motion pictures or television episodes licensed by MGM," "breaches of exclusivity," and "actual or potential claims," render the Request vague, ambiguous, overbroad, and unduly burdensome. MGM further objects to the Request on the grounds that it lacks foundation and assumes as true characterizations, definitions, arguments, allegations, assertions or assumptions that are erroneous. MGM further objects to this Request on the grounds that it seeks information and documents that are not relevant to the subject matter of this litigation, is disproportionate to the needs of the case, imposes burdens and expenses that outweigh their likely benefit, or is otherwise outside the proper scope of discovery. Among other things, information or documents that do not concern any of the Pictures in dispute in this case are wholly irrelevant. Moreover, MGM's actual or alleged breach or violation of any Person's rights other than as alleged in the Complaint is not relevant to any claims or defenses in this action. Further, a Request for "All Documents" concerning such irrelevant topics is facially overbroad and disproportionate. MGM further objects to this

Request on the grounds that it is not particularized and not reasonably calculated to lead to the discovery of admissible evidence. MGM further objects to this Request on the grounds and to the extent it seeks information and documents that are not in MGM's possession, custody, or control; not obtainable at this time after reasonable investigation and diligent inquiry; not reasonably accessible to MGM; or are no longer in MGM's possession, custody or control and which MGM was under no obligation to maintain. MGM further objects to this Request on the grounds that it calls for information or documents that are protected by the attorney-client privilege, the work product doctrine, and Federal Rules of Civil Procedure 26(b)(3) & (4). MGM further objects to this Request on the grounds that it seeks confidential, proprietary, private, or commercially or competitively sensitive information or documents belonging to MGM, nonparties, and third-parties, including MGM's dealings with third parties that are not at issue in this lawsuit. MGM further objects to this Request on the grounds that it purports to require MGM to search for and produce information or documents in the absence of a protective order and/or a reasonable and mutually agreeable document production protocol, including a mutually agreed-upon search methodology, list of custodians, and/or list of search terms to apply to any ESI.

  2. <u>Starz's Position:  Starz Is Entitled to Discovery into MGM's Potential Willfulness.</u>

   What MGM knew about its breaches and when, including its ability (or lack of ability) to honor its exclusivity commitments, is critical to this case. Under the Copyright Act, Starz is entitled to enhanced damages if MGM's infringement was willful or reckless.  17 U.S.C. § 504(c)(2) ("In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages.").

Willfulness, in turn, depends on MGM's state of mind and knowledge. "[T]o prove willfulness under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights." *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 991 (9th Cir. 2017) (citation omitted). "[A] defendant acts willfully if he or she knew, had reason to know, or recklessly disregarded the fact that his or her conduct constituted copyright infringement." *Columbia Pictures Indus., Inc. v. Kofroth*, No. CV 08-7801 GAF (JCx), 2009 WL 10672285, at *6 (C.D. Cal. May 29, 2009) (quoting *A&M Records, Inc. v. Abdallah*, 948 F. Supp. 1449, 1457 (C.D. Cal. 1996)).

The relevant state of mind can be shown through direct evidence, but as courts in this Circuit have acknowledged, more often it is shown through circumstantial evidence of a defendant's conduct. *Werner v. Evolve Media, LLC*, No. 2:18-CV-7188-VAP-SKX, 2020 WL 4012784, at *2 (C.D. Cal. June 22, 2020) ("A defendant's willful intent to infringe on a mark need not be proven directly, but may be inferred from circumstantial evidence of his conduct." (citation omitted)); *Columbia Pictures*, 2009 WL 10672285, at *6 ("Such knowledge may be actual or constructive, and it may be inferred from Defendant's conduct rather than proven directly.").

The District Court already has recognized that discovery into MGM's willfulness is appropriate, and is not subject to the stay. (Ex. A, ECF No. 52, at 4 (ordering that discovery concerning "MGM's breaches of the exclusivity agreements, potential contract damages, ***MGM's potential willfulness***, potential copyright damages within the three years prior to the filing of the Complaint, and other issues . . . shall proceed" (emphasis added)).)

Discovery concerning MGM's potential willfulness—what MGM knew or should have known and when—is precisely what Starz seeks with Interrogatories 8 and 11 and RFP Nos. 11 and 12.  For example, MGM has blamed its infringements on a faulty rights tracking system—an internal system used by MGM to record its current licenses.  (*See* Ex. C, ECF No. 24, at 1-2; Ex. D, Compl. ¶ 50.)  Starz is entitled to discovery into that issue, including:  how it was faulty; when MGM learned it was faulty; whether MGM undertook an investigation to identify the full scope of the system's faults; whether the errors in the system were due to willful or reckless actions; whether MGM corrected the issue and, if so, should it reasonably have instituted the fix sooner.  All of this is relevant to MGM's potential willfulness or recklessness and would be responsive to Starz's RFP No. 11 and Interrogatory 8.

Likewise, if MGM had infringed other promises of exclusivity in the past, and investigated the cause of these infringements but turned a blind eye to the issue, that would be direct evidence of MGM's willful infringement.  Evidence of past investigations of infringement or past infringement claims brought by others is a proper subject of discovery.  Indeed, "it is well-settled that events and prior incidents of alleged misconduct are always relevant to establishing individual claims."  *Mata v. Associated Builders & Contractors of S. Cal., Inc.*, No. 05-CV-1433, 2006 WL 8434410, at *2 (C.D. Cal. Jan. 17, 2006).  This information would be responsive to Starz's Interrogatories 8 and 11 and RFP No. 12.

Similarly, if MGM knew it had breached the exclusivity promise in the Library Agreements, and hid the breach from Starz, that would be clear evidence of willfulness.  If, on the other hand, MGM did not know of its own breach, that too would be relevant.  It could show recklessness.  Such evidence also would rebut any argument that Starz should have discovered MGM's infringement earlier, as MGM has claimed.  (*See* Ex. C, ECF No. 24, at 17 (arguing in MGM's

1   motion to dismiss that "Starz offers no reason why such diligence was not (and

2   could not have been) conducted earlier")).  If MGM was unable to discover its own

3   infringements, there is no reason to believe Starz should have discovered them

4   earlier either.  Either way, Starz is entitled to discovery on these issues, which it

5   seeks in Interrogatory 8 and RFP No. 11.

6           MGM's position that the discovery Starz seeks related to willfulness

7   should be time-limited is wrong.  Numerous courts in this Circuit "have considered

8   defendants' earlier conduct in assessing the willfulness of their infringement".  *WB*

9   *Music Corp. v. Royce Int'l Broad. Corp.*, No. 16-CV-600, 2018 WL 3830237, at

10  *3 (C.D. Cal. Jan. 24, 2018); *see, e.g.*, *Getty Images (U.S.), Inc. v. Virtual Clinics*,

11  No. C13-0626JLR, 2014 WL 1116775, at *4 (W.D. Wash. Mar. 20, 2014) (holding

12  defendants willfully infringed on plaintiff's copyrights because defendants

13  continued to infringe on the images at issue after plaintiffs first informed

14  defendants of their infringing activity over five years before initiating their lawsuit

15  and continued to inform them afterwards, and awarding maximum statutory

16  damages); *Controversy Music v. Shiferaw*, No. C03-5254 MJJ, 2003 WL

17  22048519, at *2 (N.D. Cal. July 7, 2003) (considering plaintiff's "more than 80

18  separate contacts" with defendant to inform defendant of the need to secure a

19  license and five-year-old suit for copyright infringement against defendant—all

20  outside the three-year statute for limitations—in finding willful infringement and

21  awarding statutory damages); *see also Mata*, 2006 WL 8434410, at *3 ("The time

22  bar of an applicable statute of limitations for the filing of an action based on

23  particular events does not necessarily foreclose discovery of information

24  concerning those events.") (quoting 6 Moore's Federal Practice § 26-146.5).

25          "These cases demonstrate a defendant's earlier conduct, even outside

26  the statute of limitations, may be considered in determining the willfulness of the

27  defendant's infringement at issue."  *WB Music Corp.*, 2018 WL 3830237, at *3.

28

1   Thus, evidence of MGM infringing Starz's copyrights or other parties' copyrights

2   will be relevant to demonstrate MGM's willfulness—even if the past conduct

3   occurred more than three years ago.  Because this discovery would continue to be

4   relevant regardless of the outcome of the Ninth Circuit appeal, the discovery is not

5   subject to the partial stay, as the District Court already has ordered.  (Ex. A, ECF

6   No. 52.)

7           3.      <u>MGM's Position:  There is no disagreement that Starz is</u>

8                        <u>entitled to evidence of MGM's state of mind, but only with</u>

9                        <u>respect to the alleged infringements at issue that are not subject</u>

10                       <u>to the District Court's discovery stay.</u>

11       As with the prior two categories above, Starz has not presented the Court

12  with a true dispute here because MGM agrees that Starz may seek discovery

13  related to MGM's "potential willfulness" with respect to its alleged conduct.  As

14  stated above, MGM stands ready to negotiate search terms and custodians so it can

15  produce responsive documents and begin the lion's share of its document

16  production.  For whatever reason, Starz has not taken up MGM on its invitation,

17  and instead has pressed this Motion to Compel, wherein it fails to engage on the

18  specific language in its requests.

19       As with the prior two categories, the requests at issue here are impermissible

20  because they are not proportionate and vastly overbroad.  Both of the requests at

21  issue here would require MGM to isolate, collect, review and produce a mountain

22  of materials concerning thousands of titles in which Starz never had any rights and

23  with respect to territories, media, language, and exclusivity windows in which

24  Starz never had any rights.  These requests, which seek discovery on titles and

25  licenses completely unrelated to the present dispute, are outside the bounds of Rule

26  26.  *See Sec. & Exch. Comm'n*, 2013 WL 12172628, at *6 (denying discovery into

27  potential downstream tipper liability where complaint only pleaded that one person

28

was tipped off).  Moreover, to collect this content, MGM would have to engage in manual searches through hard copy files that would be extremely burdensome and time consuming.

Further, the two requests at issue are improper to the extent they violate Judge Gee's Stay Order.  MGM's position is that the Court plainly stayed all discovery impacted by MGM's pending Ninth Circuit appeal and that Starz is obligated to honor that stay.  Beyond that, MGM is willing to produce discovery responsive to Starz's requests to the extent the requests are not overboard, unduly burdensome, and unconfined to relevant issues in this lawsuit.

As the District Court noted in its Order, evidence of "willfulness" applies only to Starz's copyright claims but is not relevant to any alleged contract claims. *See* Ex. A, ECF No. 52 at 4 (noting that "contract damages are limited to foreseeable actual damages," but ***copyright damages*** "may be enhanced with a showing of willfulness"); *see also Applied Equipment Corp. v. Litton Saudi Arabia, Ltd.*, 7 Cal. 4th 503, 516 (noting that "the law generally does not distinguish between good and bad motives for breaching a contract" and that "motives are immaterial and cannot be inquired into on the question of compensatory damages").

There is also no dispute that the Court's Stay Order plainly stays discovery into "evidence and issues that may be impacted by the resolution of MGM's appeal" (Ex. A, ECF No. 52 at 4)—an appeal which covers titles whose exclusivity windows expired at least three years before Starz filed its Complaint or titles allegedly infringed at least three years before the Starz filed its Complaint.  The Court's Stay Order, thus, limits discovery into "MGM's potential willfulness" and "potential copyright damages" to only those claims that are alleged to have accrued in the "***three years prior*** to the filing of the Complaint."  (Ex. A, ECF No. 52 at 4 (recognizing that absent a stay, Starz could seek discovery into "MGM's state of

1   mind relating to each breach" for the titles subject to MGM's Appeal, which would

2   be "largely unnecessary if the Ninth Circuit reverses" the Court's Motion to

3   Dismiss Order) (emphasis added)).  There are 126 titles that are subject to the

4   Court's Stay Order, leaving more than 200 titles about which discovery may be

5   had with respect to MGM's "willfulness."[2]  This is not a complicated issue.

6         But Starz is trying an end run around the District Court's Stay Order.

7   Specifically, Starz argues that even though the District Court expressly ruled that

8   discovery into the copyright claims subject to the pending Ninth Circuit appeal is

9   stayed and should not go forward now, MGM should nevertheless be forced to

10   produce discovery about such claims because such discovery might have some

11   attenuated bearing on the 100+ copyright claims that are not subject to the Stay

12   Order.  *See* Joint Stipulation at 50 ("Thus, evidence of MGM infringing Starz's

13   copyrights or other parties' copyrights will be relevant to demonstrate MGM's

14   willfulness—even if the past conduct occurred more than three years ago.").

15         But the cases cited by Starz in support of this proposition are distinguishable

16   in one important respect:  there was no court order staying discovery into "past

17   conduct [that] occurred more than three years ago."  *Id*.  Here, the issue of the

18   scope of discovery was litigated in the context of MGM's motion for interlocutory

19   appeal and MGM won a partial stay of this very discovery.  Adopting Starz's

20   reading of the Stay Order would effectively eviscerate the Stay Order altogether, as

21   Starz's interpretation permits discovery into ***all*** titles and copyright claims

22   allegedly infringed—even those that may later be dismissed if the Ninth Circuit

23   agrees with MGM.

24

25

---

26   [2]  It is MGM's position that approximately 80% of Starz's copyright claims

27   accrued more than three years ago and ultimately will be dismissed by the Court.

28

In fact, given the volume of alleged claims that are not subject to the Court's Stay Order (more than 200), there is no need for Starz to seek discovery of "willfulness" that allegedly occurred more than three years before Starz filed its Complaint even if the Court's Stay Order had not expressly forbid such discovery right now.  As it stands, Starz will already receive an ample amount of discovery relating to MGM's alleged willfulness for the titles and copyright claims that are not at issue in the Ninth Circuit appeal and are thus not subject to the stay.  MGM should not be forced to engage in this unnecessarily burdensome and duplicative discovery (which is barred by the Stay Order in any event).

Rather than engage MGM on these points, Starz claims that it is entitled to discovery on these unrelated licenses and titles on the theory that a party's conduct with respect to completely unrelated licenses could inform the party's state of mind with respect to the infringement actually at issue.  Joint Stipulation at 38–39.  But this argument, too, fails.  First, none of the cases Starz relies on for the proposition that prior conduct may inform present willful infringement involved a court-mandated stay of discovery.  In fact, none of the cases on which Starz relies involves the appropriate scope of discovery at all, and so none of them stands for the proposition that blanket discovery into every one of MGM's thousands of licenses is appropriate.  None of them weigh whether some attenuated theory of relevance outweighs the immense burden on MGM, not to mention the highly confidential nature of the materials.  *See WB Music Corp. v. Royce Int'l Broadcasting Corp.*, 2018 WL 3830237, at *2–3 (denying defendants' motion for judgment on the pleadings on their defense of laches); *Controversy Music v. Shiferaw*, 2003 WL 22048519, at *1–2 (determining appropriate statutory damages in relation to plaintiffs' application for judgment by default); *Getty Images (US), Inc. v. Virtual Clinics*, 2014 WL 1116775, at *1, 4 (determining the appropriate

amount of statutory damages for willful copyright infringement after entering default judgment against defendants).

Starz's cases are thus a far cry from the situation here, where the Court has not only ordered a stay on copyright-related discovery involving the claims that accrued more than three years before the filing of the Complaint, but also where there are plenty of recent alleged copyright infringements with respect to which Starz is entitled to take discovery right now.

As required by Local Rule 37-2, MGM will address each disputed interrogatory and request individually below:

**Starz's Interrogatory No. 8:**  Describe any investigation that MGM conducted upon learning that it had licensed certain Pictures to other Persons during time periods in which those same Pictures had been licensed exclusively to STARZ under the Library Agreements.

**MGM's Position:**  Although MGM does not agree that this interrogatory seeks information related to MGM's state-of-mind with respect to the claims at issue, MGM will respond to this interrogatory subject to its privilege, work product and other objections.

**Starz's Interrogatory No. 11:**  Identify all instances at any time in or after July 2013 in which MGM found that it had licensed content from MGM's Library to Persons while the same content was exclusively licensed to other Persons.

**MGM's Position:**  As with its impermissibly broad requests related to damages and breach, Starz once again seeks countless information that are not only irrelevant to the alleged breaches and infringements at issue here, but is also prohibited by the Court's Stay Order.  Interrogatory No. 11 is impermissibly overbroad and unduly burdensome because it asks MGM to identify "all instances any time in or after July 2013" where MGM discovered that *any* licensed content in its vast film and television library was licensed to any third party while the same

69

content was allegedly exclusively licensed to some other third party, which by its terms includes alleged infringements that have nothing to do with Starz and which occurred more than three years before this lawsuit was filed.  To respond to this interrogatory, MGM would have to first identify each license or exclusivity agreement with *anyone* from the past eight years (each of which could include hundreds of titles or pictures per contract) and then determine whether any of those titles or media rights were potentially breached or infringed.  Such a request is patently overbroad, not proportionate, and unduly burdensome—and effectively demands MGM review and extract information from every document evidencing every aspect of every license or exclusivity agreement MGM has ever had with any third party all under the attenuated theory that such information *could* show MGM's potential willfulness with respect to the claims at issue.  Even if this interrogatory was not hopelessly overbroad and sought relevant information (it is and it does not), it would still impose an undue burden on MGM because collecting materials and information related to each of these hundreds of licenses (or more) will be extremely burdensome and time consuming.  *See James*, 2013 WL 5978322, at *1 (denying motion to compel where requests' "include[] documents that would not be directly relevant to Plaintiffs' claims and would place an undue burden upon Defendant to produce").

This interrogatory is inappropriate for the independent reason that it seeks information regarding alleged breaches and infringements from "any time in or after July 2013," which by its terms includes alleged infringements that occurred more than three years before Starz filed its complaint.  Interrogatory No. 11 thus seeks information covered by the Court's Stay Order.

For these and other reasons, relevant and proportional information sought by this interrogatory (and not subject to Stay Order) would be better targeted by negotiating mutually acceptable search and query terms, which MGM has been

70

willing and remains willing, to do.  It would also provide Starz ample discovery
into what it needs.

**Starz's Request No. 11:**  All Documents related to any investigation by
MGM concerning any actual or alleged breach or violation of the Library
Agreements or of STARZ's exclusive rights in the Pictures.

**MGM's Position:**  Although MGM does not agree that this document
request seeks information related to MGM's state-of-mind with respect to the
claims at issue, MGM agrees to produce relevant and proportional information
sought by this Request subject to MGM's privilege, work product and other
objections.

**Starz's Request No. 12:**  All Documents concerning MGM's actual or
alleged breach or violation of any Person's rights of exclusivity in one or more
motion pictures or television episodes licensed by MGM, including all Documents
concerning actual or potential claims other Persons have made against MGM for
breaches of exclusivity from January 2013 through the present.

**MGM's Position:**   Like all of the discovery Starz advances in this Motion,
this document request is also impermissibly overbroad and is untethered to the
claims in this action because it seeks documents relating to MGM's alleged
"breaches of exclusivity from January 2013 to present," which by its terms
implicates every one of MGM's thousands of films and television episodes, *see,
supra*, footnote 1, only a tiny percentage of which are at issue in this lawsuit.
Responding to this Request would require MGM to first identify each license or
exclusivity agreement with ***anyone*** from the last eight years (each of which could
include hundreds of titles or pictures per agreement) and then determine whether
any of those titles or pictures was potentially breached or infringed—such a
request is patently overbroad and unduly burdensome.  In effect, Starz demands
every document evidencing every aspect of every license MGM has ever issued to

71

non-parties and which concern titles, pictures, and exclusivity windows in which Starz never had any rights, all under the guise that such evidence ***could*** show MGM's potential willingness if such documents were to show infringing activity on these ***non-parties'*** rights.  Even if these documents were relevant (they are not), such a request imposes an undue burden because, as discussed above, collecting materials related to each of these potentially thousands of licenses would be extremely burdensome, time-consuming and expensive.

Finally, because the request seeks information relating to alleged breaches occurring more than three years before Starz filed its Complaint, it violates the Stay Order.   For these and other reasons, relevant and proportional information sought by this Request and not subject to the stay would be better targeted by negotiating mutually acceptable search terms, custodians, and time frames, which MGM has been willing and remains willing, to do.  It would also provide Starz with ample discovery into what it needs.

## III.    REQUESTED RELIEF

### A.    Starz's Position

Starz respectfully requests the Court enter an order compelling MGM to supplement its written responses to Starz's Interrogatories Nos. 8, 9, 11, 12 and 13 and to produce responsive, non-privileged information to Starz's RFP Nos. 6, 11, 12, 14-18, 20 and 21, which MGM has avoided for over seven months.

### B.    MGM's Position

MGM respectfully requests that the Court deny Starz's Motion, and require Starz to complete its meet and confer with MGM so that the parties bring only those disputes to the Court over which they have reached an impasse.  Further, to the extent Starz's renews this Motion or brings a different Motion to Compel, the Court should order it to comply with all Local Rules.

72

1
2

Respectfully submitted,

3   DATED:      July 28, 2021          By:  */s/ J. Wesley Earnhardt*
4                                     Evan R. Chesler (*pro hac vice*)
                                      echesler@cravath.com
5                                     J. Wesley Earnhardt (*pro hac vice*)
                                      wearnhardt@cravath.com
6                                     CRAVATH, SWAINE & MOORE LLP
7                                     825 Eighth Avenue
                                      New York, NY 10019
8                                     Telephone:  (212) 474-1000
9                                     Facsimile:  (212) 474-3700

10                                    Steven M. Goldberg, SBN 82174
11                                    sgoldberg@mzclaw.com
                                      MARKUN ZUSMAN FRENIERE
12                                    COMPTON LLP
13                                    3 Hutton Centre Dr., 9th Floor
                                      Santa Ana, CA 92707
14                                    Telephone:  (310) 454-5900
15                                    Facsimile:  (310) 454-5970

16                                    Robert N. Klieger, SBN 192962
17                                    rklieger@hueston.com
                                      HUESTON HENNIGAN LLP
18                                    523 West 6th St., Suite 400
19                                    Los Angeles, CA 90014
                                      Telephone:  (213) 788-4340
20                                    Facsimile:  (888) 775-0898

21
22                                    *Attorneys for Plaintiff*
                                      STARZ ENTERTAINMENT, LLC
23

24  DATED:      July 28, 2021          By:  */s/ Jay P. Srinivasan*_____
                                      Jay P. Srinivasan, SBN 181471
25                                    jsrinivasan@gibsondunn.com
26                                    Blaine H. Evanson, SBN 254338
                                      bevanson@gibsondunn.com
27                                    Minae Yu, SBN 268814
28

73

1

myu@gibsondunn.com

2

Jonathan N. Soleimani, SBN 295673
jsoleimani@gibsondunn.com

3

GIBSON, DUNN & CRUTCHER LLP

4

333 South Grand Avenue
Los Angeles, CA 90071-3197

5

Telephone: (213) 229-7000

6

Facsimile: (213) 229-7520

7

Orin Snyder (*pro hac vice*)

8

osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP

9

200 Park Avenue
New York, NY 10166-0193

10

Telephone: (212) 351-4000

11

Facsimile: (212) 351-4035

12

*Attorneys for Defendant*

13

MGM DOMESTIC TELEVISION
DISTRIBUTION LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28