Steven M. Goldberg, SBN 82174
sgoldberg@mzclaw.com
MARKUN ZUSMAN FRENIERE COMPTON LLP
3 Hutton Centre Dr., 9th Floor
Santa Ana, CA 92707
Telephone:  (310) 454-5900
Facsimile:  (310) 454-5970

Evan R. Chesler (*pro hac vice*)
echesler@cravath.com
J. Wesley Earnhardt (*pro hac vice*)
wearnhardt@cravath.com
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

Robert N. Klieger, SBN 192962
rklieger@hueston.com
HUESTON HENNIGAN LLP
523 West 6th St., Suite 400
Los Angeles, CA 90014
Telephone:  (213) 788-4340
Facsimile:  (888) 775-0898

*Attorneys for Plaintiff*
*STARZ ENTERTAINMENT, LLC*

Jay P. Srinivasan, SBN 181471
jsrinivasan@gibsondunn.com
Blaine H. Evanson, SBN 254338
bevanson@gibsondunn.com
Minae Yu, SBN 268814
myu@gibsondunn.com
Jonathan N. Soleimani, SBN 295673
jsoleimani@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  (213) 229-7000
Facsimile:  (213) 229-7520

Orin S. Snyder (*pro hac vice*)
osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone:  (212) 351-2400
Facsimile:  (212) 351-6335

*Attorneys for Defendant*
*MGM DOMESTIC TELEVISION DISTRIBUTION LLC*

**UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
Western Division**

| | |
|---|---|
| STARZ ENTERTAINMENT, LLC,<br><br>Plaintiff,<br><br>v.<br><br>MGM DOMESTIC TELEVISION DISTRIBUTION LLC,<br><br>Defendant. | No.  2:20-CV-04085 DMG (KSx)<br><br>**STIPULATION AND ORDER RE DOCUMENT PRODUCTION PROTOCOL** |

## I.   PURPOSE AND SCOPE

Plaintiff Starz Entertainment, LLC, and Defendant MGM Domestic Television Distribution LLC hereby agree that the following Stipulation and [Proposed] Order (the "Protocol") shall govern the production of Documents by the Parties during the pendency of this litigation.

This Protocol supplements the Federal Rules of Civil Procedure, the Local Rules of the Central District of California, this Court's Standing Order on Discovery Disputes, and any other applicable caselaw, orders or rules.  Nothing in this Protocol is intended to alter or affect any Party's rights or obligations, but shall be construed, wherever possible, as consistent with the relevant authority governing discovery.  In addition, nothing in this Protocol establishes any agreement as to either the temporal or subject-matter scope of discovery in this case, or the specific procedures or criteria to be employed to define or limit the scope of search, review and production, such as the identification of relevant custodians and search parameters, which are to be separately agreed upon.

By stipulating to this Protocol, the Parties do not concede that any particular information sought or received or custodians identified under this Protocol are relevant or proportionate to the needs of this case.  The Protocol shall not be construed by any party as an admission that any particular discovery is relevant or proportional, nor shall the Protocol be construed to waive any objection by any Party to the discoverability and/or admissibility of any information or Documents.

## II.   DEFINITIONS

1.   **"Confidentiality Designation"** means the legend affixed to Documents as defined by, and subject to, the terms of the Protective Order entered in this case.

2.   **"Documents"** shall have the meaning and scope ascribed to it under the Federal Rule of Civil Procedure 34(a)(1)(A), specifically including ESI and Hard-Copy Documents.

3. **"Electronically Stored Information"** or **"ESI"** means Documents stored in electronic format.

4. **"Extracted Text"** means text extracted from ESI that allows the ESI to be electronically searched.

5. **"Hard-Copy Document"** means any Document existing in paper format at the time of collection.

6. **"Hash Value"** means the unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the text contained within the file or files.

7. **"Load Files"** means an electronic file used to import production information into a Document review platform, including, if available, information indicating Document breaks, information related to embedded content, and information about Document relationships such as those between an email and its attachments.

8. **"Metadata"** means structured data about ESI that is automatically generated by the operation of a computer file system or an application and embedded in the ESI.

9. **"Native Format"** or **"Native File"** means and refers to the format or file that the ESI was originally created, generated, and/or as used in the normal course of business.

10. **"OCR Text"** refers to text generated using the OCR process.

11. **"Optical Character Recognition"** or **"OCR"** means the process of recognizing and converting text in scanned Documents and/or images into searchable text.

12. **"Producing Party"** means the Party upon whom a request for the production of Documents is served.

13. **"Requesting Party"** means the Party that serves a request for the production of Documents.

14. **"Tagged Image File Format"** or **"TIFF"** means and refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or Hard-Copy Documents.

### III.   PRESERVATION

1. The Parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant Documents will be reasonable and proportionate.

2. Any sources of data that are not reasonably accessible because of undue burden or cost pursuant to Federal Rule of Civil Procedure 26(b)(2)(B), need not be preserved, collected, processed, reviewed, and/or produced provided that if the Producing Party identifies a responsive source that it does not intend to search because the source is not reasonably accessible because of undue burden or cost, or for any other reason, the Producing Party shall timely disclose that intention and set forth the justification for not searching that responsive source. The Parties shall timely meet and confer regarding any disputes regarding these sources, and submit any unresolved disputes to the Court for resolution.

### IV.   SEARCH AND REVIEW

The Parties agree that collection, search and review of potentially responsive Documents shall be reasonable, proportionate and in good faith. After the entry of this Order, the Parties shall meet and confer about methodologies for collection, search and review of potentially discoverable Documents and to filter out Documents that are not subject to discovery.

1. <u>Custodial Documents.</u> The Parties shall meet and confer on a reasonable list of custodians for purposes of search, review, and production of Documents. In connection with the meet-and-confer process, each Party shall provide a proposed list of individual custodians likely to have discoverable information. The Parties shall

then meet and confer on each Parties' custodians. If the Parties cannot reach agreement, the matter may be submitted to the Court for resolution in accordance with the procedures set forth in the Local Rules and Magistrate Judge Stevenson's standing order. Once the list of custodians have been agreed to by the Parties or resolved by the Court, each Party shall collect Documents, including electronic files and emails, for each individual custodian from reasonably accessible sources where discoverable information is likely to be found. The inclusion of a particular custodian on the list of custodians shall not be construed as an admission by any Party that the custodian is in fact in possession, custody or control of any discoverable information or that any information within the custodian's possession, custody or control is discoverable and/or admissible.

      2.    <u>Non-Custodial Documents.</u> In addition to custodial documents, each Party shall conduct a reasonable search for non-custodial Documents responsive to requests seeking corporate Documents that are not likely to be in the possession, custody or control of an individual custodian. Such documents may include information maintained in shared database such as corporate ERP system, Documents stored in corporate or departmental record centers and general corporate Documents.

      3.    <u>Search Terms.</u> The Parties may use search terms and other limiters (*i.e.*, date ranges) to cull the volume of Documents to be reviewed for responsiveness. A Party who intends to use search terms and/or limiters shall disclose the search terms and/or limiters it proposes using and the sources to which the search terms and/or limiters will be applied. The Parties shall then meet and confer on the search terms and/or limiters. If the Parties cannot reach agreement, the matter may be submitted to the Court for resolution in accordance with the procedures set forth in the Local Rules and Magistrate Judge Stevenson's standing order.

      4.    <u>Technology Assisted Review.</u> The Parties may use technology assisted review (TAR) or other advanced technology-based analytics in addition to, or in lieu of, search terms to cull the volume of Documents to be reviewed for responsiveness.

A Party who intends to use TAR shall disclose the parameters that will apply to the use of TAR. The Parties shall then meet and confer on the TAR parameters. If the Parties cannot reach agreement, the matter may be submitted to the Court for resolution in accordance with the procedures set forth in the Local Rules and Magistrate Judge Stevenson's standing order.

5. <u>Modifications to Search and Review Methodology.</u> Notwithstanding prior agreement on search methodologies, the Parties may request to add, remove, or modify the custodians, data sources, search terms and other culling methods as fact discovery progresses. Such requests must be made in good faith, for good cause and in a timely fashion, and such request shall not be unreasonably denied. Any disputes over modifications to search and review methodology that cannot be resolved between the Parties may be submitted to the Court for resolution in accordance with the procedures set forth in the Local Rules and Magistrate Judge Stevenson's standing order.

## V. PROCESSING SPECIFICATIONS

The Parties shall, to the extent reasonably and technically possible, process ESI and Hard-Copy Documents for production according to the specifications set forth in this Section.

**A. Electronically Stored Information**

1. <u>De-Duplication.</u> A Producing Party may remove Documents identified as duplicative based on MD5 or SHA-1 hash values of the full text of the Documents at the family level across custodians and sources. A Producing Party may use other reasonable methods to remove duplicate Documents from production provided that method is disclosed to the Requesting Party. The Producing Party shall produce a Metadata field for all produced Documents for which duplicate Documents were removed listing the custodians or sources that possessed a duplicate Document that was removed. If additional Documents are de-duplicated after production, the

Producing Party shall produce an overlay no later than fourteen days after the substantial completion date.

2. <u>Email Threading.</u> The Parties are permitted to use commercially available email threading tools to remove emails and their attachments where the contents of the email and its attachments are wholly included within another email and its attachments that are not removed. Upon good cause, a party may request additional information regarding the tool used for email threading.

3. <u>De-NISTing.</u> Non-user generated files may be removed from review and production using the list of non-user generated files maintained by the National Institute of Standards and Technology (NIST). Additional culling of system files based on file extension may include: WINNT, LOGS, DRVS, C++ Program File (c), C++ Builder 6 (cpp), Channel Definition Format (cdf), Creatures Object Sources (cos), Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System File (dll), temporary files (tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script files (.py, .pyc, .pud, .pyw), Program Installers.

4. <u>Embedded Objects.</u> Non-image files that are embedded in other files ("Embedded Objects") shall be extracted as separate files and treated as attachments to the parent Document. The Parties shall meet and confer over any dispute with regard to the treatment of Embedded Objects.

5. <u>Extracted Text.</u> Text must be extracted directly from the Native File of ESI unless the Document requires redaction, is an image file, or is any other native electronic file that does not contain text to extract (*e.g.*, non-searchable PDFs), in which case Searchable Text should be created using OCR. Documents with redacted content shall be run through an OCR process to capture only the visible text in lieu of the original extracted text from the Native File. Extracted text shall include all

comments, revisions, tracked changes, speaker's notes and text from Documents with comments or tracked changes, and hidden worksheets, slides, columns and rows to the extent possible. Extracted text from emails shall include all header information that would be visible if the email was viewed natively including, to the extent possible: (1) the individuals to whom the communication was directed, (2) the author of the email communication, (3) who was copied and blind copied on such email, (4) the subject line of the email, (5) the date and time of the email, and (6) the names of any attachments.

6. *Exception Files.* The Parties shall use reasonable efforts to address Documents that present processing or production problems (*e.g.*, encrypted and/or protected files) ("Exception Files"). Exception Files that are attached to produced Documents will be produced as a Bates-stamped placeholder TIFF indicating that the Document was unable to be processed. The Parties agree to meet and confer regarding the resolution of Exception Files, if relevant. Upon good cause, a party may request additional information about Exception Files, including passwords that may be located through a reasonable inquiry. If the Parties cannot reach agreement on the handling of Exception Files through the meet and confer process, the matter may be submitted to the Court for resolution in accordance with the procedures set forth in the Local Rules and Magistrate Judge Stevenson's standing order.

**B.  Hard-Copy Documents**

1. *General.* The Producing Party may elect to (a) allow the inspection and copying of responsive, nonprivileged Hard-Copy Documents by the Requesting Party at a time and location agreed to by the Parties; or (b) provide responsive, non-privileged Hard-Copy Documents in an electronic form. If the Producing Party elects to produce Hard-Copy Documents in an electronic form, the Hard-Copy Documents shall be scanned or otherwise converted into electronic form as they are kept in the ordinary course of business. For Hard-Copy Documents found in folders or other

containers with labels, tabs, or other identifying information, such labels and tabs shall be scanned where reasonably practicable.

2.   <u>Unitization.</u>  In scanning Hard-Copy Documents, the Parties shall make reasonable efforts to avoid merging distinct Hard-Copy Documents into a single record, and splitting a single Hard-Copy Document into multiple records.  Original Document orientation (*i.e.*, portrait v. landscape) should be maintained where reasonably practicable.

3.   <u>OCR Text.</u>  OCR Text of scanned paper Documents shall be produced by the Producing Party to the extent it exists.  Any documents produced without OCR Text shall be identified as such and segregated from documents for which OCR Text was produced.

## VI.   PRODUCTION FORMAT

1.   <u>General.</u>  Except as otherwise provided herein, the Parties shall produce Documents as Imaged Documents.  Spreadsheets (*e.g.*, Excel files), PowerPoint Presentations, photo, audio, and video files shall be produced in Native Format, except as otherwise provided herein.  A Requesting Party may request the production of other Documents in Native Format where the production of the Native File is reasonably necessary to the Document's comprehension or use, and such request shall not unreasonably be denied.  If the Parties cannot reach agreement, the matter may be submitted to the Court for resolution in accordance with the procedures set forth in the Local Rules and Magistrate Judge Stevenson's standing order.

2.   <u>Imaged Documents.</u>  All Imaged Documents produced by the Parties shall be single page Group IV TIFF format with 300 dpi quality or better and on 8½ x 11-inch page size, except for Documents requiring a different resolution or page size.  All Documents that contain comments, deletions and revision marks (including the identity of the person making the deletion or revision and the date and time thereof), speaker notes, or other user-entered data that the source application can display to the user will be processed such that all that data is visible in the image.

Each Imaged Document shall be branded in the lower right-hand corner of each page with its corresponding Bates number, and in the lower left-hand corner with any applicable Confidentiality Designation, provided that the Bates number and the Confidentiality Designation may be placed elsewhere to avoid obscuring the underlying image.  Images may be reduced only to the extent necessary to allow space for Bates number and Confidentiality Designation.  Each Imaged Document shall have a unique file name, which shall be the corresponding Bates numbered images.

    3.    <u>Native Files.</u>  Documents produced in Native Format need not be imaged.  Instead, a placeholder Imaged Document bearing the legend "Document Provided in Native Format" shall also be produced in the same way as any other Imaged Document, with proper Bates stamping and any applicable Confidentiality Designation.  Native Files shall have a file name that includes the Bates number.  Any Party printing the Native File for use in this matter shall append and use the placeholder Imaged Document as a cover sheet to the Native File at all times.  The Producing Party may to object to the native production of any files where such production would result in the disclosure of information that is protected from disclosure by the attorney-client privilege, work product doctrine or any other protection from disclosure and it is impossible to redact or otherwise produce the Native File while maintaining such privilege or protection.  The Parties shall meet and confer with respect to the form of production for audio and video files in nonstandard formats, or any files included in this sub-paragraph for which a claim of privilege or protection exists.

    4.    <u>Load Files.</u>  Productions shall include image load files in Opticon or IPRO format and Concordance format data (.dat) files with Metadata listed in Appendix A to the extent reasonably available.  All Metadata shall be produced in UTF-16LE or UTF-8 with Byte Order Mark format.

    5.    <u>Text Files.</u>  A single text file containing the Extracted Text or OCR Text shall be provided for each Document to the extent available.  The text file name shall

be the same as the Bates number of the first page of the Document with the Document extension ".txt" suffixed. File names shall not have any special characters or embedded spaces. Text files shall be provided in UTF-8 with Byte Order Mark format text.

      6. <u>Databases, Structured, Aggregated or Application Data.</u> For requests in which responsive information is contained in a database or other structured or aggregated data source or otherwise maintained by an application, the Parties shall meet and confer to determine an appropriate format. If the Parties cannot reach agreement, the matter may be submitted to the Court for resolution in accordance with the procedures set forth in the Local Rules and Magistrate Judge Stevenson's standing order.

      7. <u>Redactions.</u> Privileged and/or otherwise protected information may be redacted. No redactions for relevance may be made within a produced Document or ESI item. Any such redactions shall be clearly marked on the Document (*e.g.*, "privileged" or "work product"). Redacted Documents shall be identified as such in the Metadata.

      8. <u>Color.</u> All Imaged Documents may be produced in black & white, except that the Requesting Party may request that certain Imaged Documents be produced in color where color is reasonably necessary to their comprehension or use, and such request shall not unreasonably be denied. Imaged Documents produced in color shall be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image.

      9. <u>Parent-Child Relationships.</u> Parent-child relationships (the association between an attachment and its parent Document or between embedded Documents and their parent) shall be preserved through the production of an appropriate Metadata field as listed in Appendix A.

      10. <u>Family Groups.</u> A Document and all other Documents in its attachment range constitute a Family Group. If any member of a Family Group is determined to

be responsive to a Party's document, the entirety of the Family Group must be produced without selective redactions to individual portions or attachments, except as required to preserve a privilege or work product assertion. To the extent any Document within a Family Group is privileged, that Document may be redacted in full or in part, but no Family Group shall be withheld on the basis of privilege unless the entire Family Group is privileged and/or otherwise protected.

11. <u>Re-productions.</u>  Notwithstanding any provisions to the contrary, Documents that the Producing Party reproduces in whole or in part from the production files of a historical litigation, arbitration, government inquiry, or other matter may be produced in the same manner and form as originally produced in the historical matter.

12. <u>Production Media.</u>  The Producing Party shall use appropriate electronic media (CD, DVD, secure FTP or other secure file transfer utility, hard drive or other mutually agreeable media) for its production, and shall use high-capacity media to minimize associated overhead.  The Producing Party shall label any physical media with the Producing Party, media volume name, and Document number range.

## VII.   DOCUMENTS PROTECTED FROM DISCOVERY

Pursuant to Federal Rule of Procedure 26(b)(5), the parties agree that a Producing Party may redact or, to the extent necessary, withhold from disclosure any Document that is protected by attorney-client privilege, the work-product doctrine, protection accorded to trial preparation materials, settlement privilege or any other reasonably applicable privilege.

**A.     Privilege Log**

The Producing Party shall provide the Requesting Party with a log of Documents withheld on grounds of privilege or other protection from disclosure as follows ("Privilege Log"):

1. The Privilege Log shall contain information sufficient to enable the Requesting Party to evaluate the claims made, including the following information:

11

Custodian, From, To, CC, BCC, Date, Basis for Withholding (*e.g.*, Attorney-Client Communication), and Document Description. In-house attorney names shall be designated with an asterisk; outside counsel attorney names will be designated with a double asterisk and any other individuals, including those working at the direction of an attorney, will be designated with a triple asterisk.

2. A single Document containing multiple email messages (*i.e.*, in an email chain) may be logged as a single entry. A Document family (*e.g.*, email and attachments) may be logged as a single entry so long as the log entry accurately describes both the email and its attachment(s).

3. A party is not required to log redacted Documents but agrees to respond to reasonable requests for additional information regarding the basis for redactions on specific Documents where the basis is unclear from the Document itself.

4. The parties shall exchange privilege logs no later than 30 days following substantial completion of document discovery, and supplement that privilege log as necessary thereafter.

5. The following Documents exempted ("Exempted Documents") from discovery do not need to be logged on the Privilege Log:

    a. Communications between the Parties and their counsel of record;

    b. Communications (i) between or among outside and in-house counsel working directly on this litigation for Starz and (ii) between or among outside and in-house counsel working directly on this litigation for MGM;

    c. Consistent with Rule 26(b)(4), communications between counsel for the Parties and experts, both testifying and non-testifying, and drafts of expert reports, unless the expert relies on such communications pursuant to Rule 26(b)(4)(C)(ii) or (iii); and

    d. Privileged documents—including communications with counsel, documents created under the direction of counsel and counsel's work product—after January 8, 2020.

**B.     Inadvertent Disclosure**

Pursuant to Federal Rule of Evidence 502(d), the production of a privileged or work-product-protected Document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. The Rule 502(d) Order filed in this case shall govern the procedures for claw back of inadvertently disclosed Documents.

## VIII.   THIRD-PARTY DOCUMENTS AND ESI

1.     A Party that issues a subpoena upon any third party ("Issuing Party") shall include a copy of the protective order entered in this litigation with the subpoena.

2.     The Issuing Party shall request that third parties produce the same documents to all Parties simultaneously. In the event that the third party fails to do so (as indicated by, among other means, failing to address both Parties in its production cover letter), the Issuing Party shall produce a copy to the other Party of any Documents obtained pursuant to the subpoena in the same form and format as produced by that third party within fourteen (14) calendar days of receipt from the third party.

3.     If a third-party production is not Bates-stamped, the Issuing Party shall stamp the non-Party production with unique Bates prefixes and numbering scheme prior to reproducing them to all other Parties.

## IX.    MODIFICATIONS

1.     Any practice or procedure set forth herein may be varied by agreement of the Parties, which shall be confirmed in writing.

2.     The Parties shall meet and confer to resolve any dispute regarding the application of this Protocol before seeking Court intervention.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

DATED: July 28, 2021        By:   /s/ J. Wesley Earnhardt
                                  Evan R. Chesler (*pro hac vice*)
                                  echesler@cravath.com
                                  J. Wesley Earnhardt (*pro hac vice*)
                                  wearnhardt@cravath.com
                                  CRAVATH, SWAINE & MOORE LLP
                                  825 Eighth Avenue
                                  New York, NY 10019
                                  Telephone: (212) 474-1000
                                  Facsimile: (212) 474-3700

                                  Steven M. Goldberg, SBN 82174
                                  sgoldberg@mzclaw.com
                                  MARKUN ZUSMAN FRENIERE COMPTON LLP
                                  3 Hutton Centre Dr., 9th Floor
                                  Santa Ana, CA 92707
                                  Telephone: (310) 454-5900
                                  Facsimile: (310) 454-5970

                                  Robert N. Klieger, SBN 192962
                                  rklieger@hueston.com
                                  HUESTON HENNIGAN LLP
                                  523 West 6th St., Suite 400
                                  Los Angeles, CA 90014
                                  Telephone: (213) 788-4340
                                  Facsimile: (888) 775-0898

                                  *Attorneys for Plaintiff*
                                  STARZ ENTERTAINMENT, LLC

DATED: July 28, 2021        By:   /s/ Jay P. Srinivasan
                                  Jay P. Srinivasan, SBN 181471
                                  jsrinivasan@gibsondunn.com
                                  Blaine H. Evanson, SBN 254338
                                  bevanson@gibsondunn.com
                                  Minae Yu, SBN 268814
                                  myu@gibsondunn.com
                                  Jonathan N. Soleimani, SBN 295673
                                  jsoleimani@gibsondunn.com
                                  GIBSON, DUNN & CRUTCHER LLP
                                  333 South Grand Avenue
                                  Los Angeles, CA 90071-3197
                                  Telephone: (213) 229-7000
                                  Facsimile: (213) 229-7520

Orin Snyder (*pro hac vice*)
osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

*Attorneys for Defendant*
MGM DOMESTIC TELEVISION DISTRIBUTION LLC

**FOR GOOD CAUSE SHOWN, IT IS SO ORDERED.**

DATED: August 11, 2021          By: /s/ Karen L. Stevenson

**Appendix A: Metadata Fields For ESI And Hard-Copy Documents**

| FIELD NAME | FIELD DESCRIPTION | REQUIRED FOR EMAIL | REQUIRED FOR NON-EMAIL ESI | REQUIRED FOR HARD-COPY DOCUMENTS |
|---|---|---|---|---|
| Custodian | Name of custodian(s) of email(s) or file(s) produced (Last Name, First Name format) as available. For non-custodial documents, the name of the Party may be used. | X | X | X |
| Allcustodians | The Custodian value of the Document as well as the Custodian value for all copies of the Document that were removed as a result of de-duplication. | X | X | |
| BegBates | Beginning Bates# (including Prefix) | X | X | X |
| EndBates | Ending Bates# (including Prefix) | X | X | X |
| BegAttach | Beginning Bates number of the first document in an attachment range (only in emails with attachments) | X | X | X |
| EndAttach | Ending Bates number of the last document in attachment range (only in emails with attachments) | X | X | X |
| From | From field extracted from an email message | X | | |
| Author | Author field extracted from the metadata of a non-email document | | X | |
| To | To or Recipient extracted from an email message | X | | |
| Cc | Carbon Copy ("Cc") field extracted from an email message | X | | |

| FIELD NAME | FIELD DESCRIPTION | REQUIRED FOR EMAIL | REQUIRED FOR NON-EMAIL ESI | REQUIRED FOR HARD-COPY DOCUMENTS |
|---|---|---|---|---|
| Bcc | Blind Carbon Copy ("Bcc") field extracted from an email message | X | | |
| EmailSubject | Subject line extracted from an email message | X | | |
| Filename | File name — Original name of file as appeared in original location | | X | |
| Title | Title field extracted from the metadata of a non-email document | | X | |
| DateSent | Sent date of an email message (mm/dd/yyyy format) | X | | |
| DateRcvd | Received date of an email message (mm/dd/yyyy format) | X | | |
| Outlook Type | Type of Outlook item, e.g., e-mail, calendar item, contact, note, task | X | X | |
| Conversation ID | Identifier indicating the email thread to which an email belongs | X | X | |
| DateCreated | Date that a non-email file was created (mm/dd/yyyy format) | | X | |
| Time Created | Time that a non-email file was created | | X | |
| DateLastModified | The application recorded time on which the document was last modified (mm/dd/yyyy format) | | X | |
| TimeLast Modified | Time that a non-email file was last modified | | X | |
| Last Modified By | Last person who modified (saved) a Document | | X | |

17

| FIELD NAME | FIELD DESCRIPTION | REQUIRED FOR EMAIL | REQUIRED FOR NON-EMAIL ESI | REQUIRED FOR HARD-COPY DOCUMENTS |
|---|---|---|---|---|
| TimeSent | Time e-mail was sent (hh:mm:ss format) | X | | |
| TimeRcvd | Time e-mail was received (hh:mm:ss format) | X | | |
| Timezone | Timezone of data at time of Ingestion | X | X | |
| FileType | The type of Document: "**EDoc**" for electronic Documents not attached to e-mails; "**E-mail**" for all e-mails; "**Email_Attachment**" for files that were attachments to e-mails; and "**Hard Copy**" for Hard-Copy Documents. | | X | |
| Application | Commonly associated application for the specified file type | X | X | |
| Page Count | Number of pages in the Document | X | X | X |
| HashValue | MD5 or SHA-1 hash value used to deduplicate the data | X | X | |
| Exception | "Yes" for Documents that were processing or extraction exceptions, blank/null if not present | X | X | |
| Exception Reason | Reason the item is flagged as an exception | X | X | |
| Redacted | "Yes" for redacted Documents; "No" for un-redacted Documents. | X | X | X |
| Redacted Basis | Basis of redaction (*e.g.*, Attorney-Client Communication, Attorney Work Product). If more than one are contained in | X | X | X |

| FIELD NAME | FIELD DESCRIPTION | REQUIRED FOR EMAIL | REQUIRED FOR NON-EMAIL ESI | REQUIRED FOR HARD-COPY DOCUMENTS |
|---|---|---|---|---|
| | a Document, separate reasons by semi-colons. | | | |
| Confidentiality | Confidentiality level if assigned pursuant to any applicable Protective Order or stipulation | X | X | X |
| Native File Link | The file path for Documents provided in Native Format. | | X | |
| TextPath | File path for OCR or Extracted Text files. | X | X | X |